## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

REBECCA GARTENBERG, PERIE
HOFFMAN, JACOB KHALILI, GABRIEL
KRET, TAYLOR ROSLYN LENT,
BENJAMIN MEINER, MICHELLE
MEINER, MEGHAN NOTKIN, GILA
ROSENZWEIG, and ANNA WEISMAN

          Plaintiffs,

        v.

THE COOPER UNION FOR THE
ADVANCEMENT OF SCIENCE AND
ART

          Defendant.

Case No. 24-cv-2669

Hon. John P. Cronan, U.S.D.J.

## DEFENDANT THE COOPER UNION FOR THE ADVANCEMENT OF SCIENCE AND ART'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT AND MOTION TO STRIKE

PATTERSON BELKNAP WEBB & TYLER LLP
Lisa E. Cleary
Jacqueline L. Bonneau
1133 Avenue of the Americas
New York, NY 10036
Phone: (212) 336-2000
Fax: (212) 336-2222
lecleary@pbwt.com
jbonneau@pbwt.com

*Attorneys for The Cooper Union for the Advancement of Science and Art*

15153354

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL BACKGROUND............................................................................................4

LEGAL STANDARD........................................................................................................7

ARGUMENT ....................................................................................................................7

I.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER TITLE VI.......................7

       A.      Plaintiffs Have Not Alleged "Severe" or "Pervasive Harassment" that Deprived Them of Educational Benefits........................................................8

              1.      The Challenged Expression Does Not Violate Title VI.............................9

              2.      Plaintiffs Have Not Alleged Severe or Pervasive Harassment .................12

              3.      Plaintiffs Were Not Deprived of Any Educational Benefits.....................14

       B.      Plaintiffs Fail to State that Cooper Union's Actions Were Either "Deliberately Indifferent" or "Clearly Unreasonable" ..........................................14

              1.      Plaintiffs Fail to State that Cooper Union Was "Deliberately Indifferent" to the October 25 Protest........................................................15

              2.      Plaintiffs Fail to State that Cooper Union Was "Deliberately Indifferent" to Unauthorized Posters ..................................................16

II.     PLAINTIFFS' OTHER DISCRIMINATION CLAIMS SHOULD BE DISMISSED .................................................................................................16

III.     PLAINTIFFS' BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED...........18

       A.      Plaintiffs Do Not Identify Specific Promises Allegedly Violated by Cooper Union ........................................................................................18

       B.      Cooper Union's Campus Policies Confer Broad Discretion to the College ..........19

IV.     PLAINTIFFS' COMMON LAW CLAIMS SHOULD BE DISMISSED........................20

       A.      Plaintiffs' Negligence and Premises Liability Claims Should Be Dismissed........20

       B.      The Claim for Negligent Infliction of Emotional Distress Must Be Dismissed ........................................................................................21

V.     THE REQUESTS FOR PUNITIVE DAMAGES AND INJUNCTIVE RELIEF MUST BE STRICKEN...................................................................................23

       A.      Plaintiffs Are Not Entitled to Punitive Damages...................................23

       B.      Plaintiffs Are Not Entitled to Injunctive Relief ......................................24

CONCLUSION................................................................................................................25

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Aluminum Warehousing Antitrust Litig.*,
    2014 WL 4277510 (S.D.N.Y. Aug. 29, 2014) .........................................................................6

*Anderson v. City of New York*,
    2024 WL 183103 (S.D.N.Y. Jan. 17, 2024) ........................................................................17

*Annabi v. New York Univ.*,
    2023 WL 6393422 (S.D.N.Y. Sept. 29, 2023) ....................................................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................7

*Aubrey v. New Sch.*,
    624 F. Supp. 3d 403 (S.D.N.Y. 2022) ...............................................................................19

*Aulicino v. New York City Dep't of Homeless Servs.*,
    580 F.3d 73 (2d Cir. 2009) ...........................................................................................13, 14

*Baker v. Dorfman*,
    239 F.3d 415 (2d Cir. 2000) ...............................................................................................22

*Barnes v. Gorman*,
    536 U.S. 181 (2002) ...........................................................................................................23

*Benoit v. Saint-Gobain Performance Plastics Corp.*,
    959 F.3d 491 (2d Cir. 2020) ...............................................................................................20

*Carney v. Bos. Mkt.*,
    2018 WL 6698444 (S.D.N.Y. Dec. 20, 2018) ...................................................................22

*Caronia v. Philip Morris USA, Inc.*,
    22 N.Y.3d 439 (2013) ........................................................................................................20

*Chauca v. Abraham*,
    89 N.E.3d 475 (2017) .........................................................................................................23

*D.J.C.V. v. United States*,
    605 F. Supp. 3d 571 (S.D.N.Y. 2022) ...............................................................................22

*Doe v. Indyke*,
    457 F. Supp. 3d 278 (S.D.N.Y. 2020) ...............................................................................23

15153354

*Doe v. Sarah Lawrence Coll.*,
   453 F. Supp. 3d 653 (S.D.N.Y. 2020)..........................................................................18

*Dube v. State Univ. of N.Y.*,
   900 F.2d 587 (2d Cir.1990).......................................................................................11

*Farias v. Instructional Sys., Inc.*,
   259 F.3d 91 (2d Cir. 2001).........................................................................................23

*Farmer v. Shake Shack Enterprises, LLC*,
   473 F. Supp. 3d 309 (S.D.N.Y. 2020)..................................................................16, 17

*Felber v. Yudof*,
   851 F. Supp. 2d 1182 (N.D. Cal. 2011) ...............................................................11, 12

*Fennell v. Marion Indep. Sch. Dist.*,
   804 F.3d 398 (5th Cir. 2015) ....................................................................................14

*Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*,
   680 F. Supp. 3d 322 (S.D.N.Y. 2023).......................................................................23

*Gally v. Columbia Univ.*,
   22 F. Supp. 2d 199 (S.D.N.Y. 1998).........................................................................18

*Healy v. James*,
   408 U.S. 169 (1972)..................................................................................................10

*Johnson v. Nat'l Football League Players Ass'n*,
   2018 WL 8188558 (S.D.N.Y. Oct. 3, 2018) ...............................................................7

*Kaye v. New York City Health & Hosps. Corp.*,
   2023 WL 2745556 (S.D.N.Y. Mar. 31, 2023) .........................................................17

*Khaykin v. Adelphi Acad. of Brooklyn*,
   124 A.D.3d 781 (2015) .............................................................................................24

*Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. Of Educ.*,
   526 U.S. 629 (1999)........................................................................................7, 14, 24

*Littlejohn v. City of New York*,
   795 F.3d 297 (2d Cir. 2015).......................................................................................8

*Mandel v. Bd. of Trustees of California State Univ.*,
   2018 WL 1242067 (N.D. Cal. Mar. 9, 2018).......................................................14, 16

*Mirand v. City of New York*,
   84 N.Y.2d 44 (1994) .................................................................................................21

iii

*Mortise v. United States,*
102 F.3d 693 (2d Cir. 1996)........................................................................................22

*Newman v. Point Park University,*
2022 WL 969601 (W.D. Pa. Mar. 31, 2022) ...........................................................12

*Nungesser v. Columbia Univ.,*
169 F. Supp. 3d 353 (S.D.N.Y. 2016)........................................................................21

*Ogbolu v. Trustees of Columbia Univ. in City of New York,*
2022 WL 280934 (S.D.N.Y. Jan. 31, 2022) ........................................................21, 22

*Oncale v. Sundowner Offshore Servs., Inc.,*
523 U.S. 75 (1998)........................................................................................................8

*Papelino v. Albany Coll. Of Pharmacy of Union Univ.,*
633 F.3d 81 (2d Cir. 2011)...........................................................................................8

*PB-36 Doe v. Niagara Falls City Sch. Dist.,*
152 N.Y.S.3d 242 (N.Y. Sup. Ct. 2021) ..............................................................20, 21

*Potrzeba v. Sherburne-Earlville High Sch. through Sherburne-Earlville Cent. Sch.*
*Dist. Bd. of Educ.,*
2023 WL 8827178 (N.D.N.Y. Dec. 21, 2023)............................................................22

*Red Rock Sourcing LLC v. JGX LLC,*
2024 WL 1243325 (S.D.N.Y. Mar. 22, 2024) .......................................................7, 10

*Roenick v. Flood,*
2021 WL 2355108 (S.D.N.Y. June 9, 2021) .......................................................17, 18

*Russo v. New York Presbyterian Hosp.,*
972 F. Supp. 2d 429 (E.D.N.Y. 2013) .......................................................................17

*Santiago v. ACACIA Network, Inc.,*
634 F. Supp. 3d 143 (S.D.N.Y. 2022).......................................................................17

*Sec. & Exch. Comm'n v. Stubos,*
634 F. Supp. 3d 174 (S.D.N.Y. 2022).......................................................................25

*Swersky v. Dreyer & Traub,*
219 A.D.2d 321 (1996) ..........................................................................................23, 24

*Truman v. Brown,*
434 F. Supp. 3d 100 (S.D.N.Y. 2020).......................................................................21

*Tubbs v. Stony Brook Univ.,*
343 F. Supp. 3d 292 (S.D.N.Y. 2018).................................................................7, 8, 15

iv

*Vega v. Miller*,
    273 F.3d 460 (2d Cir. 2001) .......................................................................................11

*W. Virginia State Bd. of Educ. v. Barnette*,
    319 U.S. 624 (1943) ...................................................................................................11

*Ward v. New York Univ.*,
    2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000) ..........................................................19

*Yan v. Ziba Mode Inc.*,
    2016 WL 1276456 (S.D.N.Y. Mar. 29, 2016) .............................................................8

*Zeno v. Pine Plains Cent. Sch. Dist.*,
    702 F.3d 655 (2d Cir. 2012) ................................................................................7, 8, 14

*Zicherman v. State Farm Fire & Cas. Co.*,
    2023 WL 6675327 (E.D.N.Y. Oct. 12, 2023) ............................................................24

## Statutes

*Civil Rights Act of 1964, Title VI* ........................................................................... *passim*

N.Y. Civ. Rights Law § 40-d ........................................................................................23

## Other Authorities

Exec. Order 13899, 84 Fed. Reg. 68779 (Dec. 11, 2019) ...............................................9

Fed. R. Civ. P. 12(b)(6) ....................................................................................................1

Fed. R. Civ. P. 12(f) ...................................................................................................1, 23

U.S. Const. Amend. I ......................................................................................2, 9, 10, 11

U.S. Department of Education, Office of Civil Rights, *Dear Colleague Letter:*
    *Title VI and Shared Ancestry or Ethnic Characteristics Discrimination*
    (May 7, 2024) ............................................................................................................10

U.S. Department of Education, Office of Civil Rights, *Questions and Answers on*
    *Executive Order 13899 (Combating Anti-Semitism) and OCR's Enforcement*
    *of Title VI of the Civil Rights Act of 1964* (Jan. 19, 2021) ......................................10

15153354

Defendant The Cooper Union for The Advancement of Science And Art ("Cooper Union" or "the College") respectfully submits this memorandum of law in support of its motion to dismiss and/or strike the Complaint ("Compl.") filed by Plaintiffs Rebecca Gartenberg et al., ("Plaintiffs"), pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f).

## PRELIMINARY STATEMENT

Peter Cooper founded Cooper Union in 1859, on the eve of the Civil War. He believed that education is an essential building block to promoting civic engagement and bridging societal divides. The institution he created became a place where people of all religions, genders, races, and backgrounds could congregate, learn from one another, and enrich their lives. The College's Great Hall has long been one of the most important national venues for political engagement, debate, and the mobilization of ideas. Peter Cooper's foundational precept has guided the College throughout its history, as exemplified by its institutional policies, practices, and procedures. Since the October 7, 2023 terrorist attacks by Hamas and Israel's subsequent military operations in Gaza, there has been an outpouring of political expression on college campuses throughout this country both criticizing and supporting Israel's actions. Cooper Union, guided by Peter Cooper's vision, has ensured a safe and supportive environment free of any form of harassment and discrimination for its community. Equally, Cooper Union is deeply committed to the principle of freedom of expression on campus, ensuring an environment for appropriate vigorous intellectual exchange. A democratic society cannot thrive unless citizens are able to express a diversity of perspectives freely, especially on complex and controversial issues. Balancing these dual commitments is a delicate task; Cooper Union is legally entitled to a great deal of latitude on such academic and administrative decisions.

Plaintiffs do not allege even a single incident in which they (or any other student) were discriminated against for being Jewish. *Every* instance of challenged conduct in the Complaint is

15153354

speech or expression about controversial geopolitical issues, including the Israel/Gaza conflict, which was not personally directed at Plaintiffs (or at any individual). The Complaint describes miscellaneous incidents involving students expressing pro-Palestinian geopolitical opinions through signs, posters, and banners—which Plaintiffs admit *Cooper Union removed*—and alleges that Cooper Union failed to discipline students for expressing such opinions. The Complaint also criticizes Cooper Union for its handling of a pro-Palestinian demonstration that occurred on campus and the adjacent public square ("Cooper Square") on October 25, 2023 ("October 25 Protest"). Plaintiffs admit that they engaged in a three-hour counterprotest that day without incident and then followed the protesters into the Cooper Union Foundation Building. Plaintiffs later refused a Cooper Union employee's offer to leave the building through a back exit that would have allowed them to avoid the protesters. Plaintiffs further acknowledge that members of Cooper Union's security team and the New York Police Department ("NYPD") were present on campus throughout the October 25 Protest.

In essence, Plaintiffs' position is that Cooper Union must stifle on campus all criticism of Israel and any support for Palestinians to comply with relevant anti-discrimination statutes. Plaintiffs assert that they have a cause of action because Cooper Union neither forbade such political expression nor disciplined faculty and expelled students for engaging in such expression. This position is contrary to the weight of established precedent. Title VI does not require educational institutions to engage in viewpoint discrimination. Neither criticizing Israel nor showing support for the Palestinian cause, standing alone, supports a Title VI claim. The Second Circuit has held that anti-Zionist speech is First Amendment protected and cautioned colleges not to censor such expression. Since the Complaint is exclusively about such political

15153354

expression— i.e., Plaintiffs do not identify any instance of antisemitic harassment—this precedent alone is fatal to Plaintiffs' claims.

To be clear, Cooper Union disputes Plaintiffs' characterizations of the incidents detailed in the Complaint, many of which are flatly contradicted by the public record as the evidence would show. Even accepting Plaintiffs' allegations as true for this motion, Plaintiffs fail to plead sufficient facts to state any of the claims in the Complaint. If Plaintiffs are allowed to maintain their claims—i.e., to impose liability for third-party political expression; force Cooper Union to engage in viewpoint-discrimination to shut down political debate; and require the College to discipline students and faculty engaging in such expression—it would have deleterious consequences for the freedom of expression on private college campuses. Recognizing a cause of action on these facts would seriously impair Cooper Union's academic and administrative discretion to enforce its policies. For this reason, and those set forth below, Cooper Union respectfully submits that the Court should dismiss this Complaint in its entirety, and strike Plaintiffs' improper requests for punitive damages and injunctive relief.

*First*, Title VI does not require Cooper Union to censor political speech or expression about controversial geopolitical issues. It is established precedent that anti-Israel or anti-Zionist expression, standing alone, cannot support a Title VI claim. Moreover, Plaintiffs' own assertions reveal that the College took reasonable measures prior to, during, and after the October 25 Protest. Plaintiffs have not pleaded sufficient facts to show they were subjected to "severe" and "pervasive" harassment or that the College was "deliberately indifferent" to harassment.

*Second*, Plaintiffs' state and local anti-discrimination claims should be dismissed for similar reasons. The challenged third-party conduct constitutes political speech. There is no well-pled allegation that any challenged expression was personally directed at Plaintiffs, which is

15153354

required to state a claim.  Plaintiffs cannot show that they were either subjected to a hostile environment or denied access to a public accommodation due to a protected characteristic.

*Third*, Plaintiffs' breach of contract action must be dismissed because they do not identify any specific or concrete promises that Cooper Union allegedly breached.

*Fourth*, Plaintiffs' negligence and premises liability claims must also be dismissed because Plaintiffs did not suffer any physical injury on campus and fail to identify any duty of care owed by Cooper Union to protect Plaintiffs from the actions of third parties.  The Complaint also does not state facts under the three established theories available for maintaining a negligent infliction of emotional distress ("NIED") claim.

*Finally*, Plaintiffs' requests for punitive damages and injunctions must be struck. Plaintiffs are not entitled to punitive damages as a matter of law on their Title VI, New York State Human Rights Law ("NYSHRL"), and New York Civil Rights Law ("NYCRL") claims. As to the remaining claims including the New York City Human Rights Law ("NYCHRL"), Plaintiffs fail to plead the aggravated factors necessary to sustain such relief.  Moreover, colleges are afforded broad discretion in administering their programs and making disciplinary decisions involving students.  Plaintiffs are not entitled to injunctive remedies that would essentially place Cooper Union's core academic and administrative functions under the supervision of this Court.

## FACTUAL BACKGROUND

Plaintiffs' allegations that they were subjected to a hostile environment because of antisemitic animus fall into three broad categories—*all* of which involve expressions of political speech regarding the conflict in Gaza and *none* of which include instances of antisemitism directed at Plaintiffs.

Institutional Statements: *First*, Plaintiffs take issue with Cooper Union's statement regarding the October 7 attacks, which they claim was delayed because it was issued two days

4

later, on October 9, and was allegedly "inadequate" because the statement did not provide details

they prefer about the "slaughter, torture, rape, and kidnapping of Israelis."  Compl. ¶¶ 50-51.

Pro-Palestinian Posters: *Second*, Plaintiffs claim they were "triggered" by unauthorized

political posters and signs that were displayed on Cooper Union's campus during the academic

year, *id*. ¶ 64, which they admit the College later removed.  *See id.* ¶¶ 65, 104, 112.  Specifically,

unauthorized posters were placed on campus on October 23 that "accused Israel of 'occupation,

apartheid, ethnic cleansing, and settler colonialism.'"  *Id*. ¶ 59.  Cooper Union removed these

posters "several hours" after they were discovered.  *Id.* ¶ 65.  Similarly, the phrase "Free

Palestine" was graffitied on the Foundation Building; unauthorized posters with the words "From

the river to the sea" and equating Zionism with terrorism were put up on campus; and flyers

commemorating "the 36th anniversary of the First Intifada," were placed across campus.  *Id.* ¶

104 (cleaned up).  Cooper Union also removed the unauthorized signs and graffiti.  *See id.*  A

banner was displayed on campus with the slogan, "Resist Colonialism from the Bronx to

Palestine 'By any means necessary'" along with an image of the famed Black activist, Malcolm

X.  *Id.* ¶¶ 111-112.  Here again, Plaintiffs admit Cooper Union removed this banner "several days

later."  *Id.* ¶ 112.

October 25 Protest: *Finally*, Plaintiffs criticize Cooper Union's handling of the October

25 Protest.  On October 25, pro-Palestinian demonstrators protested *outside* the Foundation

Building for three hours, holding up signs and chanting slogans such as "From the river to the

sea, Palestine will be free" and "Shame on you."  *Id.* ¶ 77.  Several Plaintiffs staged a pro-Israel

counterprotest in the vicinity of these demonstrators for the entirety of that time.  *See id.* ¶ 78.

Security guards and plainclothes NYPD officers were present on the scene and in communication

with President Laura Sparks throughout.  *See id.* ¶¶ 80-81.  After about three hours of protesting

outside, the pro-Palestine demonstrators, who were holding up signs and chanting, marched into the Foundation Building and gathered on the seventh floor outside the President's office. *See id*. ¶¶ 80, 82, 84. A group of Plaintiffs later chose to follow the demonstrators into the Foundation Building and gathered "by the floor-to-ceiling windows of the library." *Id*. ¶ 84. The demonstrators returned from the seventh floor and "attempted to enter the library." *Id*. ¶ 85. Plaintiffs allege that Cooper Union's administration locked the library doors at some point after Plaintiffs entered the library. *See id*. ¶¶ 85, 139, 156(c), 209-10.[1] The demonstrators gathered outside the library's windows, raising slogans and "pounding on the glass." *Id*. ¶ 87. Plaintiffs, who were visible to the demonstrators, allege they feared for their safety and "endured the harassment and intimidation for approximately twenty minutes." *Id*. ¶ 89. Plaintiffs, however, admit they refused a Cooper Union employee's suggestion that they move away from the windows or leave the library through the back exit to avoid the protesters. *See id*. ¶ 92. Campus security and the NYPD were present in the building throughout, *see id*. ¶¶ 80-81, but Plaintiffs allegedly sought police assistance. *See id*. ¶ 89. The College administration allegedly refused the NYPD's "intervention." *Id*. ¶ 91.[2] "The demonstrators ultimately left the area of their own accord," *id*. ¶ 94, and plaintiffs exited the "building as a group . . . with some accepting brief escorts by campus security guards." *Id*. ¶ 95. No one was injured during the protest and no one's property was damaged. Plaintiffs do not allege that the protest endangered their physical safety.

---

[1] This allegation is contrary to the NYPD's public statements that the doors of the library were never locked at any time during the October 25 Protest. *See* Declaration of Lisa E. Cleary ("Cleary Decl.") Ex.1. Although the Court must generally take well-pled allegations as true, courts in this District have recognized that "allegations directly contradicted by the public record impact plausibility." *In re Aluminum Warehousing Antitrust Litig.*, 2014 WL 4277510, at *13, n.22 (S.D.N.Y. Aug. 29, 2014) *aff'd*, 833 F.3d 151 (2d Cir. 2016).

[2] This assertion is also contradicted by the public record. Chief Chell publicly stated the following day that NYPD officers, who were present on campus throughout the protest, "were there at the library." Cleary Decl. Ex. 1.

## LEGAL STANDARD

To survive a motion to dismiss, the "complaint must contain more than mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Red Rock Sourcing LLC v. JGX LLC*, 2024 WL 1243325, at *10 (S.D.N.Y. Mar. 22, 2024) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts "need not consider conclusory allegations or legal conclusions couched as factual allegations." *Id*. (cleaned up). Rather, the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Johnson v. Nat'l Football League Players Ass'n*, 2018 WL 8188558, at *7 (S.D.N.Y. Oct. 3, 2018), *aff'd*, 820 F. App'x 51 (2d Cir. 2020).

## ARGUMENT

### I.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER TITLE VI

Title VI prohibits educational institutions that receive federal funds from intentionally discriminating against students because of their race, color, or national origin, including by demonstrating "deliberate indifference" to intentional discrimination by third parties. *See Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 664–66 (2d Cir. 2012) (*citing Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 643-50 (1999)). Under the four-prong *Davis* test, plaintiffs asserting a deliberate indifference claim must show that: (1) the College had substantial control over the relevant third parties; (2) the harassment was "severe, pervasive, and objectively offensive" and discriminatory in effect, such that it deprived the plaintiffs of educational benefits and opportunities; (3) the College had actual knowledge of the discrimination; and (4) the College (i) failed to respond, (ii) responded "after a lengthy and unjustified delay," or (iii) responded in a manner that "amount[s] to deliberate indifference to discrimination." *Zeno*, 702 F.3d at 665-66. Plaintiffs do not meet the "high bar" for stating a claim for deliberate indifference. *Tubbs v. Stony Brook Univ.*, 343 F. Supp. 3d 292, 309

7

(S.D.N.Y. 2018).  Not only have Plaintiffs failed to allege sufficient facts to show that the alleged

third-party harassment was so severe and pervasive as to deprive them of educational benefits

and opportunities, but they have not—and cannot—allege that Cooper Union was deliberately

indifferent to the challenged expression.

### A.    Plaintiffs Have Not Alleged "Severe" or "Pervasive Harassment" that Deprived Them of Educational Benefits

To establish a hostile environment under Title VI, Plaintiffs must show that the

environment "is permeated with discriminatory intimidation, ridicule, and insult that is

sufficiently severe or pervasive to alter the conditions of the[ir educational] environment.

*Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir. 2015).[3]  Courts assess whether

alleged harassment is sufficiently severe or pervasive to violate Title VI based on "the totality of

the circumstances including the frequency of the discriminatory conduct; its severity; whether it

is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with [the plaintiff's academic] performance." *Yan v. Ziba Mode Inc.*,

2016 WL 1276456, at *5 (S.D.N.Y. Mar. 29, 2016) (cleaned up).  Plaintiffs must show more than

a just few isolated incidents or "sporadic racial slurs" to state a claim for hostile academic

environment. *Id.*  Plaintiffs must also show that harassment was directed at them *because* of

their protected characteristics. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-

81 (1998).

Plaintiffs have not met this burden.  Plaintiffs do not allege that they were personally

singled out for being Jewish or subjected to antisemitic insults. *See id*.  The thrust of the

Complaint conflates anti-Israel criticism with antisemitic sentiment. *All* of the third-party

---

[3] The hostile environment claim under Title VI, Title VII, and Title IX are, for all relevant purposes, identical. *See Papelino v. Albany Coll. Of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011); *Zeno*, 702 F.3d at 665, n.10.

postings and slogans at issue in the Complaint constitute political speech either criticizing Israel or supporting the Palestinian cause.[4]  Title VI does not require colleges to act in a manner inconsistent with the First Amendment; and multiple courts have held that anti-Israel statements, standing alone, are insufficient to support a Title VI claim.  *None* of the challenged expression was directed specifically towards Plaintiffs or were made "because of" Plaintiffs' national origin.

1.    The Challenged Expression Does Not Violate Title VI

Both criticisms of Israel and/or its policies and shows of solidarity for the Palestinian cause, standing alone, are protected political expression that cannot support a Title VI claim.  To characterize such political expression as antisemitic, Plaintiffs rely on the International Holocaust Remembrance Alliance's ("IHRA") working definition of antisemitism, noting that Exec. Order 13899, 84 Fed. Reg. 68779 (Dec. 11, 2019), directs the U.S. Department of Education ("DOE") to consider this definition in enforcing Title VI.  Plaintiffs assert that "anti-Zionism is a form of antisemitism" under the IHRA's expansive working definition.  Compl. ¶ 38.  For Plaintiffs, describing Zionism as a "racist ideology," or characterizing Palestinians as "experiencing genocide" is discriminatory.  *Id*. ¶ 59 (cleaned up).  The IHRA's working definition, however, does not determine the criteria for identifying discriminatory expression under Title VI.  As the DOE emphasized, "a detailed analysis is required to determine if a particular act constitutes discrimination prohibited by Title VI, as is true with all other Title VI

---

[4] There are only two possible exceptions.  *First*, the Muslim Students Association ("MSA") questioned "the account of the Jewish students being trapped in the library as 'a false narrative' further compounding [Plaintiffs'] trauma." Compl. ¶ 107.  Even Plaintiffs do not allege that MSA's divergent account of the October 25 Protest was antisemitic.  *Second*, Cooper Union alumni issued a letter dated December 5, 2023, asking the College administration to "denounce accusations of antisemitism made against students by organizations from within and outside the school's community."  *Id*. ¶¶ 109-110.  Cooper Union does not, and cannot, exercise any "substantial control" over its alumni as required for stating a Title VI claim.

complaints."[5]  Moreover, "[n]othing in Title VI or regulations implementing it requires or authorizes a school to restrict any rights otherwise protected by the First Amendment to the U.S. Constitution." [6]

Cooper Union's academic programming on the history and sociopolitical issues of the Middle East ensures that a variety of perspectives are taught and discussed on campus.  *See* Cleary Decl. Ex. 4.[7]  The Complaint, which relies on an expansive definition of antisemitism, has the effect of compelling the College to impose on campus a new kind of geopolitical orthodoxy about Israel and Palestine.  This is plainly evident when Plaintiffs allege that they endured "harassment and discrimination" because Cooper Union organized a lecture by "anti-Israel activist" Omer Bartov.  Compl. ¶¶ 113-114.  Prof. Bartov holds a professorship on Holocaust and Genocide Studies at Brown University.[8]  Prof. Bartov may not endorse in his scholarly work the beliefs that Plaintiffs would like to impose at Cooper Union, but this fact alone is insufficient to state a Title VI claim.

Cooper Union is deeply committed to providing an environment in which students can express a multitude of varying perspectives, even on controversial geopolitical issues.  Enforcing one group's orthodoxies, by contrast, is anathema to the College's academic mission and contravenes principles of free expression, the "vigilant protection" of which is "nowhere more vital than in the community of American schools."  *Healy v. James*, 408 U.S. 169, 180 (1972)

---

[5] DOE, Office of Civil Rights ("OCR"), *Questions and Answers on Executive Order 13899 (Combating Anti-Semitism) and OCR's Enforcement of Title VI of the Civil Rights Act of 1964*, (Jan. 19, 2021), at 2 (cleaned up).

[6] OCR, *Dear Colleague Letter: Title VI and Shared Ancestry or Ethnic Characteristics Discrimination*, (May 7, 2024), at 2.

[7] The Court may consider documents on a motion to dismiss that are incorporated by reference in, or integral to, the Complaint.  *See Red Rock Sourcing LLC*, 2024 WL 1243325, at *10.

[8] *See* Compl. 40, n.33.

(cleaned up); *see also W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) ("If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion.").

The Second Circuit has previously recognized that teachers are permitted to criticize Zionism in classrooms. *See Dube v. State Univ. of N.Y.,* 900 F.2d 587 (2d Cir.1990). The Second Circuit later concluded that "Protection was accorded [in *Dube*] despite the offensiveness of the teacher's viewpoint to some students and some members of the community." *Vega v. Miller*, 273 F.3d 460, 467 (2d Cir. 2001) (discussing *Dube,* 900 F.2d at 589, 598). The broad principle is that "administrators [must] not discipline a college teacher for expressing controversial, even offensive, views lest a pall of orthodoxy inhibit the free exchange of ideas in the classroom." *Id.* (cleaned up). These principles equally weigh in favor of protecting the students' speech here.

Title VI also does not compel the College to enforce orthodoxies. Multiple courts across the country have dismissed the notion that anti-Israel expression, standing alone, could support a claim for antisemitic discrimination. In *Felber v. Yudof*, the Northern District of California dismissed a Title VI claim that, like Plaintiffs' claims here, was based solely on statements critical of Israel and Zionism.[9] *Felber* concluded that anti-Israel expression "represents pure political speech and expressive conduct, in a public setting, regarding matters of public concern, which is entitled to special protection under the First Amendment." *Felber v. Yudof*, 851 F. Supp. 2d 1182, 1188 (N.D. Cal. 2011). In *Felber*, pro-Palestinian students allegedly organized "Apartheid Week"; published statements highly critical of Israel and supportive or "laudatory" of Hamas and Hezbollah; accused Israel of committing a Holocaust against Palestinians; equated

---

[9] In their pre-motion letter response, Plaintiffs attempt to undermine *Felber*'s holding by citing inapposite cases involving claimants who, unlike Plaintiffs, were personally singled out for harassment. *See* ECF No. 17, 2.

Israel with Nazis; and disrupted pro-Israel events by flying Palestinian flags. *Id*. at 1184–86. By contrast, at Cooper Union, students raised slogans or held up signs with the words "Free Palestine," "Resistance is justified when people are occupied," or "Palestine is our demand. No peace on stolen land." Compl. ¶¶ 77, 85. Not only is the holding in *Felber* on all fours with the instant action, but the comments at issue in *Felber* were in fact far more extreme than anything described by Plaintiffs in their Complaint.

In *Newman v. Point Park University*, a Jewish Israeli professor brought, *inter alia*, a Title VII claim for hostile environment because two of her colleagues vocally supported the Boycott, Divest, and Sanctions ("BDS") movement in support of the Palestinian cause. As the court explained, however, "disagreements on a contentious geopolitical conflict do not in and of themselves form the basis of a hostile work environment claim." 2022 WL 969601 *25, n.16 (W.D. Pa. Mar. 31, 2022). The court rejected the argument that "criticism of the actions of the Israeli government by other faculty members or students [] in an academic employment setting is *per se* unlawful discrimination . . . generat[ing] an objectively hostile work environment." *Id*. The court concluded that permitting a hostile environment claim on these grounds "would invalidate as a facial matter . . . an entire academic and public debate and give Plaintiff a veto over others engaging in that same debate," and "effectively compel . . . that any speech and viewpoints held and espoused by others as part of that debate and that are contrary to Plaintiff's point of view be reformulated to be consistent with Plaintiff's views on such topics." *Id*. at *25. These observations are equally relevant to the present dispute.

2.    Plaintiffs Have Not Alleged Severe or Pervasive Harassment

Once references to postings and political expression are eliminated from the Complaint, Plaintiffs' Title VI claims rely solely on an event that lasted for "approximately 20 minutes" during the October 25 Protest. Compl. ¶ 89. Courts assessing whether alleged harassment was

15153354

sufficiently "severe or pervasive" to sustain a hostile environment claim look to a variety of factors, including the frequency of the conduct and whether it was "physically threatening or humiliating." *Aulicino v. New York City Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009). Plaintiffs' allegations with respect to the October 25 Protest do not include examples of frequent, repeated, or physically threatening conduct. Plaintiffs do not allege that *anyone* was physically harmed or that *anyone's* property was damaged during this incident.

Notably, earlier that day, Plaintiffs and the demonstrators were advocating for their respective views in physical proximity at Cooper Square from 1:00PM to approximately 4:00PM. During this time, Plaintiffs did not have *any* direct or physical interactions with the demonstrators whatsoever. There are no allegations that the demonstrators acted in a threatening or aggressive manner apart from raising generic political slogans. *See* Compl. ¶¶ 77-80. Plaintiffs do not plead that they were personally targeted or singled out for abuse. Rather, Plaintiffs assert that political chants such as "Palestine is our demand. No peace on stolen land," "Shame on you," *id*. ¶ 77, constituted "threats of violence" directed at Plaintiffs. This conclusory allegation—that political chants about Israel and Palestine were specifically directed at Plaintiffs—need not be credited. Moreover, Plaintiffs admit that they later *followed the demonstrators into the Foundation Building*, gathered at a prominent place in the library where they could be seen by the demonstrators and then refused offers to move away from the windows or leave the building to avoid the protesters. *See id*. ¶¶ 84, 92. Moreover, the Complaint does not establish that the protesters specifically targeted Plaintiffs during the protest outside the library. On the contrary, Plaintiffs admit that the protest outside the library, which lasted for 20 minutes, was part of a broader protest in which protesters demonstrated throughout the building, including outside President Sparks's office. *See id*. ¶¶ 82, 84. Plaintiffs have not, therefore,

15153354

alleged sufficient facts to establish the type of repeated or physically threatening conduct sufficient to state a hostile environment claim.  *See Aulicino*, 580 F.3d at 82.

        3.      <u>Plaintiffs Were Not Deprived of Any Educational Benefits</u>

Under *Davis*, Plaintiffs must show that they endured harassment that had a "concrete, negative effect" on their education.  *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 410 (5th Cir. 2015) (citing *Davis*, 529 U.S. at 654).  Plaintiffs assert in a vague and conclusory fashion that they "engaged therapists, missed and/or dropped classes, failed to perform on their schoolwork, delayed receiving graduation degrees and avoided campus buildings."  Compl. ¶ 158.  Courts have recognized that similar allegations, such as missed/dropped classes or not accessing certain buildings or campus spaces, do not constitute deprivation of a specific educational benefit or opportunity sufficient to establish Title VI liability.  *See Mandel v. Bd. of Trustees of California State Univ.*, 2018 WL 1242067, at *20-21 (N.D. Cal. Mar. 9, 2018). Plaintiffs identify no other educational benefits or opportunities of which they have been denied.

    **B.**    **Plaintiffs Fail to State that Cooper Union's Actions Were Either "Deliberately Indifferent" or "Clearly Unreasonable"**

Even if Plaintiffs could show harassment here, they have not sufficiently alleged that Cooper Union's response to the alleged harassment amounted to "deliberate indifference."  As the Second Circuit has recognized, a college's actions will constitute deliberate indifference only "if they are clearly unreasonable in light of known circumstances."  *Zeno*, 702 F.3d at 666.

Plaintiffs allege that Cooper Union showed itself to be "deliberately indifferent" because it failed to stop the October 25 Protest and "failed to discipline the demonstrators" thereafter. Compl.  ¶ 96.  However, *Davis* "stress[ed]" that its holding "does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action."  *Davis*, 526 U.S. at 648.  *Davis* does not *legally*

15153354

*bind* the College to discipline students, but rather permits colleges "to enjoy the flexibility they require" to respond to instances of harassment. *Id.* The Second Circuit, in interpreting timing requirements for such causes of action, has held that "delay may indicate deliberate indifference only when it is lengthy and unjustified." *Tubbs*, 343 F. Supp. at 311. Plaintiffs do not plead that Cooper Union's actions were "lengthy and unjustified" under this established standard.

      1.     <u>Plaintiffs Fail to State that Cooper Union Was "Deliberately Indifferent"</u>
                  <u>to the October 25 Protest</u>

As Plaintiffs admit repeatedly in their Complaint, Cooper Union *did* respond promptly to any potential violations of school policy. Cooper Union consulted with, and was briefed by, the NYPD and campus security ahead of the protest to address potential security threats. *See* Compl. ¶ 56. On the day of the protest, both campus security and the NYPD were on the scene throughout, communicating closely with Cooper Union administration. *See id*. ¶¶ 80-81. Security guards even escorted Plaintiffs as they departed the campus. *See id*. ¶ 95. Plaintiffs allege that Cooper Union locked the doors to the library ensuring that the demonstrators were separated from Plaintiffs, and that the two groups did not come into physical contact. *See id*. ¶¶ 1, 85, 139, 156(c), 209-10. Since the evening of October 25, President Sparks issued several statements "condemning discrimination of any kind, including antisemitism," and emphasizing that Cooper Union has no tolerance for hate. *Id*. ¶¶ 98-102 (cleaned up); Cleary Decl. Exs. 2, 3. Ten days later, on November 3, Cooper Union announced: (i) continued engagement with the NYPD for ensuring campus safety; (ii) a comprehensive review of the events on campus for any potential discrimination; (iii) a suite of additional mental health resources for students; and (iv) special programming events to educate its community members on the history and politics of the Middle East. *See* Cleary Decl. Ex. 4. Plaintiffs either downplay or criticize all the College's

15153354

responses following the Protest, *see* compl. ¶ 102, but are unable to establish that Cooper

Union's actions in response to the October 25 Protest were "clearly unreasonable."

    2.    <u>Plaintiffs Fail to State that Cooper Union Was "Deliberately Indifferent" to Unauthorized Posters</u>

This basic pattern—in which Plaintiffs allege deliberate indifference but later admit

Cooper Union took concrete measures in response to alleged violations of campus policy—

recurs throughout the Complaint.  Plaintiffs complain about various posters, signs, and banners

put up at unauthorized places on campus.  They allege that the College "should have removed

them immediately, the students who posted them should have been disciplined, and the School

should have issued a clear statement of condemnation and a warning about further violations."

Compl. ¶ 61.  However, Plaintiffs later admit that Cooper Union *did* remove these posters, signs,

and graffiti—often within hours—and issued community statements denouncing antisemitism

and hate.  *See id*. ¶¶ 65, 99, 100, 104, 112.  Plaintiffs' grievance is that Cooper Union did not

move as quickly as Plaintiffs might have wished in removing these posters.  There is no

mandated timeline for removing posters, and Cooper Union acted promptly and consistently with

its campus policies.  Plaintiffs fail to identify any basis to support their assertion that Cooper

Union deliberately delayed their removal.  That Cooper Union "may not have acted as Plaintiffs

would prefer does not rise to 'deliberate indifference.'" *Mandel*, 2018 WL 1242067, at *20.

## II.    PLAINTIFFS' OTHER DISCRIMINATION CLAIMS SHOULD BE DISMISSED

Plaintiffs state and local discrimination claims closely track their Title VI claim:  they

allege that they were denied access to a public accommodation—the educational benefits of

Cooper Union—based on a discriminatory hostile environment stemming from the protest

activity on campus during the 2023-24 academic year.  The analysis for claims under the

NYSHRL and federal anti-discrimination statutes have been treated as "'analytically identical'

and addressed together." *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 323 (S.D.N.Y. 2020). This Court has held that where a plaintiff has not met their burden under the NYSHRL, their NYCRL claims must also be dismissed. *See Roenick v. Flood*, 2021 WL 2355108, at *6, n.2 (S.D.N.Y. June 9, 2021). Plaintiffs' NYSHRL and NYCRL claims fail for the same reason that their Title VI claim fails—they have not shown sufficiently pervasive conduct to establish a hostile environment that barred them from enjoying the benefit of their Cooper Union education.[10]

To state a claim under the NYCHRL, Plaintiffs must show that they suffered a hostile environment *because* of their protected characteristics. *See Russo v. New York Presbyterian Hosp.*, 972 F. Supp. 2d 429, 451 (E.D.N.Y. 2013). Plaintiffs must therefore plead sufficient facts to prove that "the conduct is caused at least in part by discriminatory or retaliatory motives." *Anderson v. City of New York*, 2024 WL 183103, at *12 (S.D.N.Y. Jan. 17, 2024). All the expression that Plaintiffs regard as contributing to a hostile environment is, in fact, protected political expression. More importantly, Plaintiffs do not sufficiently allege that such political expression was directed at any of them personally. Plaintiffs do not—and cannot—show that they endured any "harassment . . . motivated by [their] protected status." *Anderson*, 2024 WL 183103, at *13. Since the Complaint does not provide any relevant comparator evidence, Plaintiffs have not shown that they were treated "less well" by the College than other students in any respect *because* they are Jewish. *See, e.g., Santiago v. ACACIA Network, Inc.*, 634 F. Supp. 3d 143, 155-56 (S.D.N.Y. 2022). This Court has dismissed NYCHRL claims supported by only

---

[10] Following a 2019 amendment, "courts have not yet produced any substantive analysis of how this amendment changes standards of liability under the NYSHRL." *Kaye v. New York City Health & Hosps. Corp.*, 2023 WL 2745556, at *17 (S.D.N.Y. Mar. 31, 2023). Courts have interpreted the amendment as "rendering the standard for claims closer to the standard of the NYCHRL." *Id.* (cleaned up). Because Plaintiffs fail to meet the more liberal NYCHRL standard as well, their NYSHRL claims should be dismissed regardless of which standard applies.

conclusory allegations without "any indication of how any alleged adverse . . . action was connected" to Plaintiffs' protected characteristics. *Roenick*, 2021 WL 2355108, at *7. As set forth above, anti-Israel or pro-Palestinian sentiment is not always synonymous with anti-Semitism, and Plaintiffs have not identified any instances in which they were individually targeted based on their national origin. The NYCHRL claims merit dismissal here as well.

## III. PLAINTIFFS' BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED

Plaintiffs' theory of contractual liability rests on an allegation that Cooper Union did not appropriately enforce campus policies against third parties. Although "New York law recognizes an implied contract between students and the university they attend, which is created upon enrollment," Compl. ¶ 196, all this means is that "if the student complies with the terms prescribed by the university, she will obtain the degree she seeks." *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998). New York law does not give Plaintiffs license to police Cooper Union's contractual relationship with unrelated third parties.

### A. Plaintiffs Do Not Identify Specific Promises Allegedly Violated by Cooper Union

To plead a breach of contract, Plaintiffs must allege: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Annabi v. New York Univ.*, 2023 WL 6393422, at *7 (S.D.N.Y. Sept. 29, 2023). The claim fails if Plaintiffs "do [] not allege an agreement on all material terms, with definiteness, that Defendant breached." *Id.* at *9. Breach of contract claims do not survive unless plaintiffs identify a specific set of resources or facilities to which they were entitled under campus policies. *See, e.g., Doe v. Sarah Lawrence Coll.*, 453 F. Supp. 3d 653, 668 (S.D.N.Y. 2020) (allegations that College refused to offer accommodations available under campus policies to a victim of sexual assault and mishandling Title IX investigations were sufficiently specific).

Plaintiffs do not identify any specific set of accommodations, facilities, or procedures to which they were contractually entitled under campus policies.  Rather, Plaintiffs seek to enforce the general provisions of multiple campus policies that were allegedly not followed.  Such "bald assertions and conclusory allegations claiming that the University's rules or procedures were not followed, do not state a valid claim."  *Ward v. New York Univ.*, 2000 WL 1448641, at *5 (S.D.N.Y. Sept. 28, 2000).  Plaintiffs further allege that the College breached its contractual duty to "provide Plaintiffs a campus free from unlawful discrimination and harassment."  Compl. ¶ 200.  It is well-established that promises "to not discriminate against adult students," to "provide [students] with an educational environment free of sex discrimination," etc., are "generalized promises too vague to be enforced."  *Aubrey v. New Sch.*, 624 F. Supp. 3d 403, 414 (S.D.N.Y. 2022) (cleaned up).  Such "broad pronouncements of the University's compliance with existing anti-discrimination laws, promising equitable treatment of all students [] cannot form the basis for a breach of contract claim."  *Ward*, 2000 WL 1448641, at *4 (cleaned up).

### B.    Cooper Union's Campus Policies Confer Broad Discretion to the College

Cooper Union's campus policies establish broad standards for regulating conduct on campus, while reserving authority to the College to initiate appropriate disciplinary measures or to adopt remedial action in certain circumstances.  Peremptory statements that Plaintiffs identify in the campus policies are directed at students or other community members, not to the College.  *See, e.g.,* Compl. ¶ 199 (f).  The Code of Conduct does not legally bind Cooper Union to prosecute every potential violation or impose any specific disciplinary actions.  As Plaintiffs themselves admit, the Code of Conduct provides that violations "*may* result in disciplinary action being taken by The Coper [sic] Union."  *Id*. ¶ 199 (b) (emphasis added).  Despite quoting extensively from Cooper Union's Code of Conduct, Non-Discrimination Policy, Posting Policy, Policy on Campus Safety and Security, and Building Access Policy, *see id*. ¶ 199, Plaintiffs do

19

not identify a single clause in any of these policies that *obligates* Cooper Union to adopt a

particular course of action that the College has then failed to take.[11]  Campus policies

categorically do *not* delegate legal powers to Plaintiffs to regulate how Cooper Union chooses to

administer its own academic or administrative affairs.  It defies the basic principles of common

law, and indeed of common sense, to assert that Plaintiffs can sue Cooper Union to enforce

duties owed *to* Cooper Union by unrelated third parties.

## IV.    PLAINTIFFS' COMMON LAW CLAIMS SHOULD BE DISMISSED

### A.    Plaintiffs' Negligence and Premises Liability Claims Should Be Dismissed

Premises liability under New York common law must be pleaded and proved exactly as

common law negligence.  *See PB-36 Doe v. Niagara Falls City Sch. Dist.*, 152 N.Y.S.3d 242,

246 (N.Y. Sup. Ct. 2021), *aff'd*, 182 N.Y.S.3d 850 (4th Dep't 2023) ("[T]he elements of a cause

of action based on premises liability and the elements of a cause of action for negligence . . . are

the same: a duty to protect; breach of that duty; notice; and injury.").

Plaintiffs bringing actions for negligence "must prove, *inter alia*, that their persons or

property have been injured."  *Benoit v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 491,

498 (2d Cir. 2020).  As the New York Court of Appeals explained, "The requirement that a

plaintiff sustain physical harm before being able to recover in tort is a fundamental principle of

our state's tort system."  *Caronia v. Philip Morris USA, Inc.*, 22 N.Y.3d 439, 446 (2013).

Plaintiffs do not allege that any of them suffered any physical harm or property damage during

the October 25 Protest.  *See* Compl. ¶¶ 213, 222 (alleging "temporal and financial losses" but no

---

[11] Only the Title IX Protections are alleged to use mandatory language with respect to discipline ("discipline will be imposed").  *Id.* ¶ 199 (a).  Conveniently, Plaintiffs do not quote the full sentence from this Policy, which reads, "If a policy violation is found, appropriate discipline will be imposed."  Cleary Decl. Ex.5.  Cooper Union must, in other words, satisfy itself that there have been policy violations before imposing discipline.  Moreover, that clause in the Policy does not require Cooper Union to adopt any set of disciplinary measures, let alone mandate expulsion.

physical harm).  The axiomatic physical harm requirement bars the claims that Plaintiffs bring in the Complaint.  Plaintiffs also fail to identify a legal duty that the College allegedly breached. Cooper Union does not owe Plaintiffs a duty of care to protect them from the tortious acts of third parties, because "New York courts have rejected the doctrine of *in loco parentis* at the university level."  *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 374 (S.D.N.Y. 2016).

To plead premises liability, Plaintiffs must further establish that Cooper Union had "sufficiently specific knowledge or notice of the dangerous conduct which caused injury; that is, that the third-party acts could reasonably have been anticipated." *Mirand v. City of New York*, 84 N.Y.2d 44, 49 (1994).  Here too, Plaintiffs' pleadings fail to state a claim.[12]  Finally, both the negligence and premises liability claims are also based on identical facts related to the October 25 Protest; and as such, the premises liability claim must also be dismissed as duplicative.  *See PB-36 Doe.*, 152 N.Y.S.3d at 246.

### B.        The Claim for Negligent Infliction of Emotional Distress Must Be Dismissed

To state a claim for negligent infliction of emotional distress (NIED), Plaintiffs must plead "(1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress." *Truman v. Brown*, 434 F. Supp. 3d 100, 122 (S.D.N.Y. 2020).  Courts have taken a restrictive view of NIED's scope.  "In New York, extreme and outrageous conduct is conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  The standard of outrageous conduct is strict, rigorous, and difficult to satisfy." *Ogbolu v. Trustees of Columbia Univ. in City of New York*, 2022 WL 280934, at *7

---

[12] No one sustained physical injury or property damage during this nearly four-hour protest, which contradicts Plaintiffs' conclusory assertion that the demonstrators were engaged in a "dangerous activity." Compl. ¶ 220.  For the 20 minutes that the demonstrators were outside the library, they did little besides "loud chanting," hold up signs, unsuccessfully attempt to enter the library, *Id.* ¶¶ 85-87, before "le[aving] the area of their own accord." *Id.* ¶ 94.

15153354

(S.D.N.Y. Jan. 31, 2022), *aff'd*, 2023 WL 2579044 (2d Cir. Mar. 21, 2023) *cert. denied*, 144 S.

Ct. 101 (2023).  Plaintiffs have not met this threshold.  The events of October 25 consisted of a

protest that occurred without physical injury or property damage.  Plaintiffs' allegations fall far

short of the "extreme and outrageous" standard necessary to support an NIED claim.[13]

Moreover, Plaintiffs must traverse one of three narrow avenues for asserting a NIED

claim.  *See D.J.C.V. v. United States*, 605 F. Supp. 3d 571, 600 (S.D.N.Y. 2022).  Since

witnessing a nonviolent protest is not analogous to the bystander or special circumstances cases,

two of those avenues are manifestly closed.[14]  Under the third, "direct duty" theory, Plaintiffs

must – but cannot – show they "suffer[ed] emotional distress caused by defendant's breach of a

duty which unreasonably endangered plaintiff's own physical safety."  *Carney v. Bos. Mkt.*, 2018

WL 6698444, at *3 (S.D.N.Y. Dec. 20, 2018) (cleaned up).  Determining whether a plaintiff's

physical safety was "unreasonably endangered" is "an objective inquiry turning on whether a

plaintiff's physical safety actually was endangered, not a subjective evaluation dependent on the

plaintiff's state of mind."  *Id*.  The Complaint contains no plausible allegations that Plaintiffs'

physical safety was objectively endangered at any time during the October 25 Protest.  Plaintiffs

instead concede that they staged a counterprotest at Cooper Square in physical proximity to the

demonstrators on the afternoon of October 25 that proceeded without any direct or physical

---

[13] Plaintiffs cite *Potrzeba v. Sherburne-Earlville High Sch. through Sherburne-Earlville Cent. Sch. Dist. Bd. of Educ.*, 2023 WL 8827178, at *13 (N.D.N.Y. Dec. 21, 2023) for the proposition that they "need not plead 'extreme and outrageous' conduct" for stating an NIED claim.  ECF. No. 17, 3.  This minority view is contrary to the SDNY's recent reaffirmation that NIED claims require a pleading of "extreme and outrageous" conduct.  *Ogbolu*, 2022 WL 280934 at *7.

[14] Under the "bystander" theory, a plaintiff is threatened with physical injury and "suffers emotional injury from witnessing the death or serious bodily injury of a member of her immediate family," may establish a claim.  *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996).  A claim may also arise where there is "an especial likelihood of genuine and serious mental distress, arising from [] special circumstances which serves as a guarantee that the claim is not spurious."  *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000).  Special circumstances include misdiagnoses of HIV, mishandling a loved one's remains, or misinforming someone that their parent died.

interactions between the two groups.  Compl. ¶¶ 78-79, 84.  Nor can Plaintiffs establish that they were objectively endangered later that day.  Indeed, Plaintiffs contend the library doors were locked when the demonstrators arrived outside.  *See id.* ¶ 210.  Since Plaintiffs' safety was never objectively at risk, their NIED claim must fail.

## V.    THE REQUESTS FOR PUNITIVE DAMAGES AND INJUNCTIVE RELIEF MUST BE STRICKEN

"Rule 12(f) authorizes the court to strike from the pleadings a request for relief if the allegations and claims asserted would not support that form of relief."  *Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*, 680 F. Supp. 3d 322, 353 (S.D.N.Y. 2023).  There is "ample authority [that] permits striking prayers for punitive damages where such relief is unavailable as a matter of law."  *Doe v. Indyke*, 457 F. Supp. 3d 278, 284 (S.D.N.Y. 2020).

### A.    Plaintiffs Are Not Entitled to Punitive Damages

Punitive damages are not available under Title VI, the NYSHRL, or the NYCRL, *see, e.g., Barnes v. Gorman*, 536 U.S. 181, 189 (2002) (Title VI); *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 101 (2d Cir. 2001) (NYSHRL); N.Y. Civ. Rights Law § 40-d (authorizing statutory penalties for violations of NYCRL).  And Plaintiffs have not met the stringent pleading standard to recover such damages under their NYCHRL and state common law claims.  Under the NYCHRL, Plaintiffs must plead that Cooper Union "engaged in discrimination with willful or wanton negligence, or recklessness," or a "conscious disregard of the rights of others or conduct so reckless as to amount to such disregard."  *Chauca v. Abraham,* 89 N.E.3d 475, 481 (2017).  To obtain punitive damages for a tort action, Plaintiffs must plead that the wrongdoing is "intentional or deliberate, has circumstances of aggravation or outrage, has a fraudulent or evil motive, or is in such conscious disregard of the rights of another that it is deemed willful and wanton."  *Swersky v. Dreyer & Traub*, 219 A.D.2d 321, 328 (1996).  To obtain punitive damages

23

for breach of contract, Plaintiffs must allege that "(1) defendant's conduct must be actionable as

an independent tort; (2) the tortious conduct must be egregious in nature; (3) the egregious

conduct must be directed to plaintiff; and (4) it must be part of a pattern directed at the public

generally." *Zicherman v. State Farm Fire & Cas. Co.*, 2023 WL 6675327, at *4 (E.D.N.Y. Oct.

12, 2023) (cleaned up).  Plaintiffs have not alleged that Cooper Union acted in a willful, wanton,

or egregious manner, and therefore fail to allege aggravating factors sufficient to meet any of

these pleading standards.

### B.    Plaintiffs Are Not Entitled to Injunctive Relief

Plaintiffs request sweeping injunctive remedies, which would essentially place most of

Cooper Union's core academic and administrative functions under the supervision of this Court.

Plaintiffs seek to compel Cooper Union to discipline faculty and staff; suspend, expel, or

otherwise discipline students; launch investigations into alleged antisemitic harassment on

campus; compel Cooper Union to enforce various policies; and enjoin Cooper Union from

funding various student organizations.  Compl., at 67-68.

Title VI Plaintiffs do not have a "right to make particular remedial demands."  *Davis*, 526

U.S. at 648.  Plaintiffs cannot compel Cooper Union to take specific disciplinary measures

against other students, staff, and faculty members.  Private colleges and universities under New

York common law enjoy "broad discretion in conducting their programs, including decisions

involving the discipline, suspension and expulsion of their students."  *Khaykin v. Adelphi Acad.

of Brooklyn*, 124 A.D.3d 781, 782, (2015) (cleaned up).  Plaintiffs impermissibly seek to strip

away Cooper Union's broad discretion in managing its own academic and administrative affairs

and to interpose themselves into issues of funding student organizations or remedial actions

under the Code of Conduct.  Such decisions are within Cooper Union's sole and exclusive

authority.  Moreover, in their zeal to wield injunctions to punish unnamed third parties, Plaintiffs

15153354

only allege past violations.  Injunctions cannot be granted unless movants show "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive for an injunction."  *Sec. & Exch. Comm'n v. Stubos*, 634 F. Supp. 3d 174, 192 (S.D.N.Y. 2022) (cleaned up).  Plaintiffs do not plead the possibility of future violations, and thus are not entitled to injunctive relief.  Several of the Plaintiffs, moreover, *cannot establish* the possibility of future harm because they have since graduated; they are therefore disentitled to injunctive relief.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint in its entirety, or in the alternative, should strike the requests for punitive damages and injunctive relief.

Dated:  July 3, 2024                Respectfully submitted,

*/s/ Lisa E. Cleary*
Lisa E. Cleary
Jacqueline L. Bonneau
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Phone: (212) 336-2000
lecleary@pbwt.com
jbonneau@pbwt.com

15153354

**CERTIFICATE OF SERVICE**

I, Lisa E. Cleary, hereby certify that a copy of the foregoing Memorandum of Law in

Support of Cooper Union's Motion to Dismiss the Complaint and Motion to Strike Reliefs, filed

through the CM/ECF system, will be sent electronically to the registered participants as

identified on the Notice of Electronic Filing (NEF) on July 3, 2024.

DATED:  July 3, 2024                          */s/ Lisa E. Cleary*
                                             Lisa E. Cleary