# EXHIBIT 5.

**THE COOPER UNION FOR THE ADVANCEMENT OF SCIENCE AND ART**

**POLICY UPHOLDING HUMAN RIGHTS AND TITLE IX PROTECTIONS**

**Effective July 1, 2015**
**Updated January 2, 2018**
**Updated August 12, 2020**

**TABLE OF CONTENTS**

**Page**

POLICY UPHOLDING HUMAN RIGHTS AND TITLE IX PROTECTIONS................................................1

    STATEMENT OF EQUAL OPPORTUNITY..............................................................................1

    TITLE IX COORDINATOR & OTHER RESOURCES ................................................................1

    ACADEMIC FREEDOM ........................................................................................................2

    PROHIBITED CONDUCT .....................................................................................................2

        Definitions ...................................................................................................................3

    WHEN AND TO WHOM DOES THIS POLICY APPLY...........................................................7

    CONSENSUAL ROMANTIC RELATIONSHIPS ......................................................................8

REASONABLE ACCOMMODATION OF DISABILITY, PREGNANCY AND RELIGION ..........................9

    DISABILITY ........................................................................................................................9

    PREGNANCY ....................................................................................................................10

    RELIGION.........................................................................................................................10

REPORTING TO LAW ENFORCEMENT .........................................................................................12

EXPLANATION OF TITLE IX AND TITLE IX GRIEVANCES ...............................................................13

    WHAT IS THE PURPOSE OF THE TITLE IX GRIEVANCE POLICY? ......................................13

INTERNAL COMPLAINT PROCEDURES FOR ALLEGED VIOLATIONS OF HUMAN RIGHTS

OUTSIDE OF THE SCOPE OF TITLE IX ........................................................................................36

    COMPLAINTS OF SEXUAL MISCONDUCT.......................................................................36

        Filing a Complaint .....................................................................................................36

    WHO CAN I TALK TO?   WILL IT BE CONFIDENTIAL?.......................................................37

        Advisors ....................................................................................................................38

        Student Complainants and Respondents have a right to be accompanied by an advisor of his or her choice at all meetings, interviews and hearings related to an allegation of sexual misconduct.  In cases involving allegations of domestic violence, dating violence, sexual assault or stalking, the advisor may be an attorney. ....................................................................................................................38

        Employees are entitled to be accompanied by an advisor of their choice, who may be an attorney, in cases involving allegations of dating violence, domestic violence, sexual assault or stalking.................................................................................38

        Advisors are not permitted to advocate on behalf of the individual or to address the investigator, the Title IX Coordinator, Designee of the Title IX Coordinator, or

the Appeal Panel directly.  The party may confer with the advisor as necessary, and the advisor may pass notes to the party during meetings and hearings.  If the advisor is disruptive or otherwise fails to comply with these parameters, they may be asked to leave. ................................................................................38

Conflict of Interest ..............................................................................................38

Notice ...................................................................................................................39

Processing A Complaint .......................................................................................39

Interim Protective Measures ...............................................................................40

Negotiated Resolution .........................................................................................41

Formal Investigation ............................................................................................41

Determination of Responsibility and Discipline...................................................43

Appeals .................................................................................................................44

Timeline ................................................................................................................46

Compliance with Sanctions and Accommodations...............................................47

Ongoing Accommodations for the Complainant .................................................47

Transcript Notations ............................................................................................47

Separate Rights of Faculty and Bargaining Unit Staff .........................................47

RIGHTS IN CASES OF SEXUAL ASSAULT, DATING VIOLENCE, DOMESTIC VIOLENCE AND STALKING  Students' Bill of Rights .......................................................................49

Rights of All Complainants ...................................................................................50

Rights of the Respondent ....................................................................................50

COMPLIANCE WITH FEDERAL, STATE AND LOCAL LAWS PROMOTING EQUAL OPPORTUNITY, PROHIBITING DISCRIMINATION AND HARASSMENT AND AUTHORIZING AFFIRMATIVE ACTION.....................................................................52

RESOURCES AND SUPPORT FOR VICTIMS OF SEXUAL MISCONDUCT...........................54

MEDICAL ATTENTION AND EVIDENCE PRESERVATION........................................54

Privileged and Confidential Communications.......................................................55

Professional Counselors .......................................................................................55

Victim Advocacy Services .....................................................................................55

External Resources ...............................................................................................56

Who Is Obligated to Report What I Tell Them to the Cooper Union? .................58

CAN I REQUEST THAT THE COOPER UNION NOT TAKE ACTION REGARDING AN INCIDENT? ..................................................................................................................59

WILL INFORMATION ABOUT AN INCIDENT BE SHARED WITH MY PARENTS? ................61

DUTY TO REPORT STATISTICS AND TIMELY WARNING ....................................................61

ADDITIONAL GOVERNMENT RESOURCES .......................................................................61

COMPLAINTS OF DISCRIMINATION, IDENTITY-BASED OR DISCRIMINATORY HARASSMENT, AND RETALIATION INVOLVING STUDENTS, FACULTY, STAFF AND THIRD PARTIES.................................................................................................................63

     To Whom Should Complaints Be Submitted .....................................................63

     Negotiated Resolution.......................................................................................64

     Formal Investigation .........................................................................................64

     Notification of Outcome ....................................................................................64

     Discipline ..........................................................................................................64

     Separate Rights of Faculty and Bargaining Unit Staff .......................................65

# POLICY UPHOLDING HUMAN RIGHTS AND TITLE IX PROTECTIONS

## STATEMENT OF EQUAL OPPORTUNITY

The Cooper Union is committed to providing a working, learning and living environment free from unlawful discrimination and harassment and to fostering a nurturing and vibrant community founded upon the fundamental dignity and worth of all of its members.  The Cooper Union does not discriminate on the basis of race, color, religion, sex, sexual orientation, gender identity or expression, age, disability, national origin, military status, marital status, familial status, partnership status, or any other legally protected characteristic, in admissions, financial aid, or employment, or in the administration of any Cooper Union program or activity, including athletics.

Consistent with its commitment and with applicable laws, The Cooper Union prohibits discrimination on the basis of membership in a protected class, sexual harassment, sexual assault, sexual exploitation, domestic violence, dating violence, and stalking and further prohibits knowingly assisting another in committing such an act.  The Cooper Union is committed to provide those who feel that they[1] have been subjected to conduct in violation of this policy with mechanisms for seeking redress and resources for support. Accordingly, The Cooper Union prohibits retaliation against any person for complaining of a violation of this policy or for participating in any investigation or proceedings related to an alleged violation.

Community members are protected from discrimination, harassment and sexual misconduct (as defined below) regardless of their sex, sexual orientation, immigration status, citizenship status or national origin, or any other protected characteristic.

## TITLE IX COORDINATOR & OTHER RESOURCES

The Cooper Union's Title IX Coordinator has overall responsibility for the administration of this Policy and has been designated to coordinate compliance activities under this Policy and applicable federal, state and local laws, including without limitation Title IX of the Education Amendments of 1972, Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act and New York Education Law Article 129-B

The Cooper Union's Title IX Coordinator is:

1. Knowledgeable and trained in The Cooper Union's Title IX policies and procedures and relevant federal, state and local laws;
2. Available to answer questions about this Policy and the associated procedures;
3. Able to advise regarding available resources for support and reporting options; and

---

[1] For the purposes of this policy, the pronoun "they" will be used to refer to individuals of any gender-identity, except in appendices citing specfic sections of state or local law.

1

4.   Available to receive complaints of violations of this Policy.

The Cooper Union Title IX Coordinator:
Grace Kendall, Associate Dean of Students
Office:  29 3rd Avenue, 3rd  Floor, New York, NY  10003
Email:  grace.kendall@cooper.edu
Phone:  (212) 353-4053

Section 504 Coorinator:
Christopher Chamberlin, Dean of Students
Office:  29 3rd. Ave., New York, NY, 10003
Email:  christopher.chamberlin@cooper.edu
Phone:  (212) 353-4130 / 212-353-4114

Equal Opportunity Officer:
Natalie Brooks, Chief Talent Manager
Office: 30 Cooper Square, 7th Floor, New York, NY 10003
Email: natalie.brooks@cooper.edu
Phone: (212) 353-4156

## ACADEMIC FREEDOM

Nothing in this policy shall abridge academic freedom or The Cooper Union's educational mission or prohibit genuine contributions to the marketplace of ideas. Prohibitions against discrimination and harassment do not extend to statements or written materials that are germane to the classroom subject matter and circulated in the context of legitimate classroom discourse.

## PROHIBITED CONDUCT

All members of The Cooper Union community, including applicants, students, employees (both faculty and staff) and third parties doing business with The Cooper Union are prohibited from engaging in identity-based discrimination or harassment, including but not limited to behavior targeting an individual or group's gender, race, religion, sexual orientation, or any other protected class described on page 1 of this policy, or behavior that falls under the categories of sexual harassment, sexual assault, dating violence, domestic violence, sexual exploitation, stalking, and retaliation as those terms are defined below.  Any attempt to engage in prohibited conduct may itself constitute a violation of this policy.  Any actions knowingly taken to aid, facilitate or encourage another to engage in prohibited conduct and any actions taken for the purpose of interfering in the investigation of an allegation of prohibited conduct shall constitute a violation of this policy.  Anyone found to have violated this policy will be subject to disciplinary action as set forth in the procedures below.

**Definitions**

For purposes of these policies and procedures, the following definitions apply:

***Identity-based Discrimination*** is defined as:

- Treating individuals or groups less favorably on the basis of their race, color, religion, sex, sexual orientation, gender identity or expression, age, disability, national or ethnic origin, military status, marital status, partnership status, familial status or any other legally protected characteristic; or

- Having a policy or practice that has a disproportionately adverse impact on individuals or groups based upon one of the protected characteristics listed above.

***Identity-based Harassment,*** also known as discriminatory harassment, is defined as unwelcome identity-based verbal, visual or physical conduct, which substantially interferes with an individual's living, learning or working environment by subjecting them to severe or threatening conduct or to repeated humiliating or abusive conduct, based on their membership in a protected characteristic(s).  Under this policy, harassment is verbal or physical conduct that belittles or shows hostility or aversion toward an individual because of their membership in a protected characteristic(s), or that of their relatives, friends, or associates, and that:

- Has the purpose or effect of creating an intimidating, hostile, or offensive living, learning or working environment;

- Has the purpose or effect of unreasonably interfering with an individual's academic or job performance or limiting or depriving someone of the ability to participate in or benefit from the Cooper Union's educational programs, activities and/or employment;

- otherwise adversely affects an individual's academic or employment experience.

Harassing conduct includes, but is not limited to: epithets, slurs, or negative stereotyping; threatening, intimidating, or hostile acts, the circulation or display of written or graphic material that belittles or shows hostility or aversion toward an individual or group (including through e-mail and other electronic media).

***Protected Characteristic*** refers to any personal trait or category that is protected by law, including an individual's race, religion, color, ethnicity, national origin, age, sex, gender identity or expression, sexual orientation, pregnancy, marital status, partnership status, creed, genetic predisposition and carrier status, alienage, citizenship status, veteran status, disability, or any other characteristic protected by law.

For the purpose of The Cooper Union's policy the term "*Gender"* refers to the following personal traits: sex, gender identity or expression, sexual orientation, pregnancy, marital status, familial status, or partnership status.

*Race discrimination* involves treating a person or group unfavorably because they are of a certain race or because of personal characteristics associated with race (such as hair texture, skin color, or certain facial features). *Color discrimination* involves treating someone unfavorably because of skin color complexion.  Race/color discrimination also can involve treating someone unfavorably because the person is married to (or associated with) a person of a certain race or color.

*Sexual Harassment* is defined as unwelcome verbal, visual or physical conduct of a sexual nature, or the unwelcome or inappropriate promise of rewards in exchange for sexual favors:

- where submission to the conduct is explicitly or implicitly made a term or condition of an individual's education, employment, or participation in other activities sponsored by The Cooper Union; or

- where submission to or rejection of the conduct is used as the basis for academic or employment decisions; or

- otherwise adversely affects an individual's academic or employment experience.

Examples of sexual harassment that may cause a hostile environment include, but are not limited to:

- subtle or persistent pressure for sexual activity;

- unnecessary touching, or brushing against a person;

- requesting or demanding sexual favors in connection with employment, academics, or other Cooper Union activities;

- unwelcome communications (verbal, written, electronic, etc.) of a sexual nature;

- failure to accept the termination of a consensual relationship with repeated and persistent requests and behavior;

- Verbal and/or physical aggression toward another based upon a perception that the other fails to conform to stereotypical notions of expected characteristics for males or females.

*Sexual Assault* is divided into two categories of behavior:  *Non-consensual Sexual Contact* and *Non-consensual Sexual Intercourse.*

*Sexual Assault--Non-consensual Sexual Contact* includes any intentional touching of a sexual nature, however slight, whether clothed or unclothed, with any object or body part by a person

4

against another person that is without affirmative consent and/or by force.[2]  Consent is required regardless of whether the person initiating the sexual contact is under the influence of drugs and/or alcohol.  When consent is withdrawn or can no longer be given due to incapacitation, sexual activity must stop.

Examples of non-consensual sexual contact include, but are not limited to:

- intentional contact with the breasts, buttocks, groin, or genitals;
- intentional touching of another with breasts, buttocks, groin, or genitals;
- making another person touch someone or themselves in a sexual manner;
- forcibly kissing;
- any intentional bodily contact in a sexual manner.

***Sexual Assault--Non-consensual Sexual Intercourse*** includes any sexual intercourse, however slight, with any object or body part by a person against other person that is without affirmative consent and/or by force.  Consent is required regardless of whether the person initiating the sexual contact is under the influence of drugs and/or alcohol.   When consent is withdrawn or can no longer be given due to incapacitation, sexual activity must stop.

Examples of non-consensual sexual intercourse include, but are not limited to:

- vaginal penetration by a penis, object, tongue or finger;
- anal penetration by a penis, object, tongue or finger;
- oral copulation (mouth to genital contact or genital to mouth contact).

***Domestic Violence*** includes the use of physical violence, coercion, threats, intimidation, isolation, stalking, or other forms of emotional, sexual or economic abuse directed towards (i) a current or former spouse or intimate partner; (ii) a person with whom one shares a child; or (iii) anyone who is protected from the respondent's acts under the domestic or family violence laws of New York. This includes any behaviors that intimidate, manipulate, humiliate, isolate, frighten, terrorize, coerce, threaten, blame, hurt, injure, or wound someone. Domestic violence can be a single act or a pattern of behavior in relationships.

***Dating Violence*** includes violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim. The existence of such a relationship would be determined based on the reporting party's statement and with consideration of the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship. For purposes of this definition, dating violence would include, but would not be limited to, sexual or physical abuse or the

---

[2] Although The Cooper Union only enforces its own policy, some of the conduct prohibited by this policy may also be a prohibited by New York state law.  The state law definitions are contained in an Appendix at the end of the policy.  Those interested in filing a complaint with the police are encouraged to do so, and The Cooper Union will assist any complainant in contacting law enforcement.

threat of such abuse. Dating violence does not include acts that meet the definition of "domestic violence."

**Sexual Exploitation** includes but is not limited to:

- invasion of sexual privacy and voyeurism (in-person or through audio or video recording);
- knowingly transmitting a sexually transmitted infection;
- exposing of a person's body or genitals;
- prostituting or soliciting another community member.

**Stalking** is a course of conduct directed at a specific person that would cause a reasonable person to feel fear for her, his, or others' safety, or to suffer substantial emotional distress.

Examples of stalking include but are not limited to:

- constantly appearing at places the victim is known to frequent;
- persistent unwanted communication or contact whether in person, by telephone, text, or email;
- persistent unwanted gifts;
- following or surveillance.

**Sexual Misconduct** includes sexual assault, sexual exploitation, sexual harassment, dating violence, domestic violence, and stalking.

**Retaliation** includes intimidating, threatening, coercing, or in any way discriminating against an individual because of the individual's informal or formal complaint of a violation of this policy or participation in a school or government investigation or proceedings related to an alleged violation of this policy or related civil rights law. Federal, state and local civil rights laws, including Title IX, make it unlawful to retaliate against an individual for the purpose of interfering with any right or privilege secured by these laws.

**Intimidation** means unlawfully placing another person in reasonable fear of bodily harm through the use of threatening words and/or other conduct, but without displaying a weapon or subjecting the victim to actual physical attack.

**Affirmative consent** is a knowing, voluntary, and mutual decision among all participants to engage in sexual activity. Consent can be given by words or actions, as long as those words or actions create clear permission regarding willingness to engage in the sexual activity. Silence or lack of resistance, in and of itself, does not demonstrate consent. The definition of consent does not vary based upon a participant's sex, sexual orientation, gender identity, or gender expression.

Consent must be freely and actively given; it cannot be obtained by coercive use of force, threats or intimidation. Coercion, force, or threat of either invalidates consent. Consent to one form of sexual activity does not imply consent to other forms of sexual activity, nor does past consent to intimacy imply consent to future intimacy. Consent to engage in sexual activity with one person does not imply consent to engage in sexual activity with another. In order to give consent, a person must be of the legal age of consent, which is 17 in New York. A person who is incapacitated for any reason cannot give consent. Consent can be withdrawn at any time.

*Incapacitation* is a state where someone cannot make rational, reasoned decisions. Affirmative consent cannot be given when a person is incapacitated.

A person may be incapacitated due to mental disability, sleep, unconsciousness, physical restraint, or from the consumption (voluntary or otherwise) of incapacitating drugs or quantities of alcohol. Sexual activity with someone whom you know or, reasonably should know, is mentally or physically incapacitated (i.e., by alcohol or other drug use, unconsciousness or blackout) constitutes a violation of this policy. Evidence of incapacity may be detected by physical cues, such as slurred speech, bloodshot eyes, the odor of alcohol on a person's breath or clothing, inability to maintain balance, vomiting, unusual or irrational behavior, and unconsciousness. Incapacity may be indicated by the quantity of alcohol consumed. The presence of one or more of these cues does not necessarily indicate incapacity, nor does the absence of these cues necessarily indicate capacity.

*Force* is the use of physical violence and/or imposing on someone physically to gain sexual access. Force also includes threats, intimidation and coercion to overcome resistance.

*Coercion* is unreasonable pressure. The use of emotional manipulation to persuade someone to do something they may not want to do, such as being sexual or performing certain sexual acts, constitutes coercion. Coercing someone into having sex or performing sexual acts does not constitute obtaining consent and is considered sexual misconduct.

*Complainant* is the person alleging that they have been the victim of a violation of this Policy.

*Respondent* is the person who is accused of violating this Policy.

*Bystander* **is a person wh**o observes **conduct that** is potentially in violation of this policy. A bystander is not **directly** impacted by the alleged violation**. A bystander does not become a** complainant when they **bring forth a report.**

## WHEN AND TO WHOM DOES THIS POLICY APPLY

This Policy applies to the conduct of The Cooper Union applicants, students, and employees, including faculty and non-faculty, as well as third parties doing business with The Cooper Union or attending school sponsored programs or activities.

This policy shall apply to conduct that occurs on The Cooper Union's campus; technological systems; at school sponsored programs, activities, and events; as well as off-campus when the

accused is a matriculated Cooper Union student or when the conduct has a continuing adverse impact upon the Cooper Union work or school environment.  Each student shall be responsible for their conduct from the time of application for admission through the awarding of a degree, as well as during periods between terms of actual enrollment, study abroad and leaves of absence or suspension.

## CONSENSUAL ROMANTIC RELATIONSHIPS

Truly consensual romantic relationships do not qualify as sexual harassment or sexual misconduct and are not prohibited by The Cooper Union's policies. Individuals should be aware, however, that romantic relationships are susceptible to being determined after the fact to have been nonconsensual, and even coercive, whenever there is an inherent power differential between the parties. Therefore, any such relationship between a faculty or staff member and a student or between a supervisor and a subordinate is strongly discouraged.  Supervisors and managers are prohibited from engaging in romantic relationships with those who report to them.  Faculty are prohibited from engaging in romantic relationships with students who are currently or who, in the future, are reasonably likely to be enrolled in their courses or under their supervision.

# REASONABLE ACCOMMODATION OF DISABILITY, PREGNANCY AND RELIGION

## DISABILITY

The Cooper Union is committed to fostering a learning, living, and working environment that is accessible for individuals with disabilities in compliance with federal, state and local law.   It is The Cooper Union's policy not to discriminate against any qualified applicant, student or employee because of such individual's disability or perceived disability so long as the applicant or student can meet the essential requirements of the course or degree or the employee or applicant can perform the essential functions of the job.  Consistent with this policy of nondiscrimination, The Cooper Union will provide reasonable accommodations to a qualified individual with a disability who has made the Cooper Union aware of his or her disability.  The individual may be asked to present medical documentation of the need for accommodation. Cooper Union personnel will work with the individual to identify and provide reasonable and appropriate accommodations as needed.

Upon request, individuals with disabilities will be provided with reasonable accommodations to permit them to avail themselves of the complaint procedures relating to claims of prohibited conduct.

An employee, applicant, or student who has questions regarding this policy or believes that he or she has been discriminated against based on a disability or that an accommodation request has not been appropriately addressed should notify the Equal Opportunity Officer.  No individual will be retaliated against for requesting an accommodation.

**Procedures for Requesting Reasonable Disability Accommodations**

*Students*

Students seeking reasonable accommodations, modifications of policies, practices or procedures, and/or auxiliary aids and services for a disability should contact the Dean of Students.  When the need for accommodation can be anticipated, students should request accommodations in advance of the need and ideally at least six weeks before the beginning of the semester.  In the event the Dean of Students is unavailable, such requests should be directed to the Equal Opportunity Officer (see contact information on page 2). Contact information for the Dean of Students is:

Christopher Chamberlin, Dean of Students
Office: 29 3rd Avenue, New York, NY 10003
Email: christopher.chamberlin@cooper.edu
Phone: (212) 353-4130

***Employees***

Employees seeking reasonable accommodations for a disability should contact the Director of Human Resources:

Mary Ann Nissen, Director of Human Resources
Office: 30 Cooper Square, 7th Floor, New York, NY 10003
Email: maryann.nissen@cooper.edu
Phone: (212) 353-4145

## <u>PREGNANCY</u>

The Cooper Union will provide reasonable accommodations based on the needs of pregnancy, child birth or related medical conditions consistent with applicable federal, state and local law. The individual may be asked to provide medical documentation of the need for accommodation.  No individual will be retaliated against for requesting an accommodation.

***Students***

Students who require accommodations for pregnancy, child birth or related medical conditions should contact the Dean of Students (see contact information on page 8).

***Employees***

Employees needing an accommodation based on pregnancy, child birth or related medical conditions should contact the Director of Human Resources (see contact information on page 9).

## <u>RELIGION</u>

***Students***

Consistent with The Cooper Union's policy of supporting cultural diversity, no student shall be refused admission to or be dismissed from the Cooper Union solely because he/she is unable to participate in any examination, study, or work requirement due to his/her religious observances and practices. It is the intent of the Cooper Union to reasonably accommodate an individual student's religious obligations and practices without penalty, based on good faith, effort and due notice to those concerned of the anticipated religious observance date. It is the student's obligation to provide prior notice of anticipated absences. Students absent due to religious observances and practices will be given an opportunity to make up any examination, study, or work requirement missed, without penalty. Students who require an accommodation for religious observance should contact the Dean of Students (see contact information on page 2).

***Employees***

The Cooper Union will provide reasonable accommodations of religious practices and beliefs consistent with applicable federal, state and local law.  Employees needing a religious accommodation should contact the Director of Human Resources (see contact information on page 10).

No individual will be retaliated against for requesting an accommodation.

## **REPORTING TO LAW ENFORCEMENT**

**If you are in immediate danger, dial 911 and attempt to get to a safe place.**

Acts of violence, including sexual assault, domestic violence, dating violence, and stalking, are against the law.  If you are not in immediate danger and would like to report an incident to the police, you can do so by contacting:

NYPD 9th Precinct
Detective Jamie Hernandez, Community Affairs Officer
(212) 477-7805

If you would like someone to assist you in contacting the police or go with you to the police department, any of the following individuals at The Cooper Union can assist you:

Title IX Coordinator
Deputy Title IX Coordinator
Dean of Students
Equal Opportunity Officer
Director of Safety and Security

The Cooper Union will investigate an alleged violation of this policy regardless of whether a criminal investigation is being conducted.  In the event a criminal investigation is conducted into events that are the subject of an investigation under this Policy, The Cooper Union will not delay its investigation unless specifically requested by law enforcement.  Even then, the investigation will not be delayed more than ten days, absent extraordinary circumstances.

A Complainant may report an incident to law enforcement regardless of whether they choose to report the incident to The Cooper Union.  Conversely, reporting an incident to The Cooper Union does not require the Complainant to report the incident to law enforcement.  The Cooper Union reserves the right to report any crime to law enforcement, but, as a general rule, will not alert law enforcement to an incident of sexual misconduct without the Complainant's permission, except where there is a serious and immediate threat to the campus community, when a minor is involved, or as otherwise required by law.

In addition to any protective measures that The Cooper Union may put into place, law enforcement may be able to provide additional protections, such as a restraining order.  The Cooper Union can assist students in contacting law enforcement and legal services organizations to learn about additional remedies that may be available.

# EXPLANATION OF TITLE IX AND TITLE IX GRIEVANCES

## WHAT IS THE PURPOSE OF THE TITLE IX GRIEVANCE POLICY?

Title IX of the Educational Amendments of 1972 prohibits any person in the United States from being discriminated against on the basis of sex in seeking access to any educational program or activity receiving federal financial assistance. The U.S. Department of Education, which enforces Title IX, has long defined the meaning of Title IX's prohibition on sex discrimination broadly to include various forms of sexual harassment and sexual violence that interfere with a student's ability to equally access our educational programs and opportunities.

On May 19, 2020, the U.S. Department of Education issued a Final Rule under Title IX of the Education Amendments of 1972 that:
- Defines the meaning of "sexual harassment" (including forms of sex-based violence)
- Addresses how this institution **must** respond to reports of misconduct falling within that definition of sexual harassment, and
- Mandates a grievance process that this institution **must** follow to comply with the law in these specific covered cases before issuing a disciplinary sanction against a person accused of sexual harassment.

*See*, 85 Fed. Reg. 30026 (May 19, 2020). The full text of the Final Rule and its extensive Preamble are available here: http://bit.ly/TitleIXReg

Based on the Final Rule, The Cooper Union will implement the following Title IX Grievance Policy, effective August 14, 2020.

### How does the Title IX Grievance Policy impact other campus disciplinary policies?

In recent years, "Title IX" cases have become a short-hand for any campus disciplinary process involving sex discrimination, including those arising from sexual harassment and sexual assault. But under the Final Rule, The Cooper Union must narrow both the geographic scope of its authority to act under Title IX and the types of "sexual harassment" that it must subject to its Title IX investigation and adjudication process. ***Only*** incidents falling within the Final Rule's definition of sexual harassment will be investigated and, if appropriate, brought to a live hearing through the Title IX Grievance Policy defined below.

The Cooper Union remains committed to addressing any violations of its policies, even those not meeting the narrow standards defined under the Title IX Final Rule.

Specifically, our campus has: a **Code of Conduct** that defines certain behavior as a violation of campus policy, and a separate **Human Rights Policy**, which addresses acts of **Sexual Misconduct** that no longer fall within the scope of Title IX Grievances.  The **Human Rights Policy**

addresses the types of sex-based offenses constituting a violation of campus policy, and the procedures for investigating and adjudicating those sex-based offenses.

To the extent that alleged misconduct falls outside the Title IX Grievance Policy, or misconduct falling outside the Title IX Grievance Policy is discovered in the course of investigating covered Title IX misconduct, the institution retains authority to investigate and adjudicate the allegations under the policies and procedures defined within the Code of Conduct and Human Rights Policies through a separate grievance proceeding.

The elements established in the Title IX Grievance Policy under the Final Rule have no effect and are not transferable to any other policy of the College for any violation of the Code of Conduct, employment policies, or any civil rights violation except as narrowly defined in this Policy. This Policy does not set a precedent for other policies or processes of the College and may not be cited for or against any right or aspect of any other policy or process.

**How does the Title IX Grievance Policy impact the handling of complaints?**

Our existing Title IX Coordinator and reporting structures remain in place. What has changed is the way The Cooper Union will handle different types of reports arising from sexual misconduct that falls within the scope of Title IX Grievances, as detailed in this document.  All other complaints of Human Rights violations, including non-Title IX acts of sexual misconduct will follow the previously existing structure and process as described later in this document.


# THE TITLE IX GRIEVANCE POLICY

**<u>General Rules of Application</u>**

**Effective Date**

The Title IX Grievance Policy will become effective on August 14, 2020, and will only apply to sexual harassment alleged to have occurred on or after August 14, 2020. Incidents of sexual harassment alleged to have occurred before August 14, 2020, will be investigated and adjudicated according to the process in place at the time the incident allegedly occurred.[3]

---

[3] According to the Department of Education Office for Civil Rights Blog Post of August 5, 2020, "the Rule does not apply to schools' responses to sexual harassment that allegedly occurred prior to August 14, 2020.  The Department will only enforce the Rule as to sexual harassment that allegedly occurred on or after August 14, 2020.  With respect to sexual harassment that allegedly occurred prior to August 14, 2020, OCR will judge the school's Title IX compliance against the Title IX statute and the Title IX regulations in place at the time that the alleged sexual harassment occurred.  In other words, the Rule governs how schools must respond to sexual harassment that allegedly occurs on or after August 14, 2020."

**Revocation by Operation of Law**

Should any portion of the Title IX Final Rule, 85 Fed. Reg. 30026 (May 19, 2020), be stayed or held invalid by a court of law, or should the Title IX Final Rule be withdrawn or modified to not require the elements of this policy, this policy, or the invalidated elements of this policy, will be deemed revoked as of the publication date of the opinion or order and for all reports after that date, as well as any elements of the process that occur after that date if a case is not complete by that date of opinion or order publication. Should the Title IX Grievance Policy be revoked in this manner, any conduct covered under the Title IX Grievance Policy shall be investigated and adjudicated under the existing **Human Rights Policy**.

**Non-Discrimination in Application**

The requirements and protections of this policy apply equally regardless of sex, sexual orientation, gender identity, gender expression, or other protected classes covered by federal or state law. All requirements and protections are equitably provided to individuals regardless of such status or status as a Complainant, Respondent, or Witness. Individuals who wish to file a complaint about the institution's policy or process may contact the Department of Education's Office for Civil Rights using contact information available at https://ocrcas.ed.gov/contact-ocr.

<u>**Definitions**</u>

***Covered Sexual Harassment***
For the purposes of this Title IX Grievance Policy, "covered sexual harassment" includes any conduct on the basis of sex that satisfies one or more of the following:
1. An employee conditioning educational benefits on participation in unwelcome sexual conduct (i.e., quid pro quo);
2. Unwelcome conduct that a reasonable person would determine is so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the educational institution's education program or activity;
3. Sexual assault (as defined in the Clery Act), which includes any sexual act directed against another person, without the consent of the victim including instances where the victim is incapable of giving consent;
4. Dating violence (as defined in the Violence Against Women Act (VAWA) amendments to the Clery Act), which includes any violence committed by a person: (A) who is or has been in a social relationship of a romantic or intimate nature with the victim; and (B) where the existence of such a relationship shall be determined based on a consideration of the following factors: (i) The length of the relationship; (ii) The type of

15

relationship; (iii) The frequency of interaction between the persons involved in the relationship.

5. Domestic violence (as defined in the VAWA amendments to the Clery Act), which includes any felony or misdemeanor crimes of violence committed by a current or former spouse or intimate partner of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse or intimate partner, by a person similarly situated to a spouse of the victim under New York State's domestic or family violence laws or by any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of New York.

6. Stalking (as defined in the VAWA amendments to the Clery Act), meaning engaging in a course of conduct directed at a specific person that would cause a reasonable person to-
- (A) fear for their safety or the safety of others; or (B) suffer substantial emotional distress.

Note that conduct that does not meet one or more of these criteria may still be prohibited under the **Human Rights Policy**.

### *Consent*

For the purposes of this Title IX Grievance Policy, "consent" means a knowing, voluntary, and mutual decision among all participants to engage in sexual activity.  Consent can be given by words or actions, as long as those words or actions create clear permission regarding willingness to engage in the sexual activity. Silence or lack of resistance, in and of itself, does not demonstrate consent. The definition of consent does not vary based upon a participant's sex, sexual orientation, gender identity, or gender expression.

Consent must be freely and actively given; it cannot be obtained by coercive use of force, threats or intimidation.  Coercion, force, or threat of either invalidates consent.  Consent to one form of sexual activity does not imply consent to other forms of sexual activity, nor does past consent to intimacy imply consent to future intimacy.  Consent to engage in sexual activity with one person does not imply consent to engage in sexual activity with another.  In order to give consent, a person must be of the legal age of consent, which is 17 in New York.  A person who is incapacitated for any reason cannot give consent.  Consent can be withdrawn at any time.

### *Education Program or Activity*

For the purposes of this Title IX Grievance Policy, The Cooper Union's "education program or activity" includes:

- Any on-campus premises
- Any off-campus premises that The Cooper Union has substantial control over. This includes buildings or property owned or controlled by a recognized student organization.

- Activity occurring within computer and internet networks, digital platforms, and computer hardware or software owned or operated by, or used in the operations of The Cooper Union's programs and activities over which The Cooper Union has substantial control.

***Formal Complaint***

For the purposes of this Title IX Grievance Policy, "formal complaint" means a document – including an electronic submission - filed by a complainant with a signature or other indication that the complainant is the person filing the formal complaint, or signed by the Title IX Coordinator, alleging sexual harassment against a respondent about conduct within The Cooper Union's education program or activity and requesting initiation of the procedures consistent with the Title IX Grievance Policy to investigate the allegation of sexual harassment.

***Complainant***

For the purposes of this Title IX Grievance Policy, Complainant means any individual who has reported being or is alleged to be the victim of conduct that could constitute covered sexual harassment as defined under this policy.

***Relevant evidence and questions***

"Relevant" evidence and questions refer to any questions and evidence that tends to make an allegation of sexual harassment more or less likely to be true.

"Relevant" evidence and questions do not include the following types of evidence and questions, which are deemed "irrelevant" at all stages of the Title IX Grievance Process:

- Evidence and questions about the complainant's sexual predisposition or prior sexual behavior unless:
  - They are offered to prove that someone other than the respondent committed the conduct alleged by the complainant, or
  - They concern specific incidents of the complainant's prior sexual behavior with respect to the respondent and are offered to prove consent. 34 C.F.R. § 106.45(6)(i).
- Evidence and questions that constitute, or seek disclosure of, information protected under a legally-recognized privilege.
- Any party's medical, psychological, and similar records unless the party has given voluntary, written consent. 85 Fed. Reg. 30026, 30294 (May 19, 2020).

***Respondent***

For the purposes of this Title IX Grievance policy, Respondent means any individual who has been reported to be the perpetrator of conduct that could constitute covered sexual harassment as defined under this policy.

***Privacy vs. Confidentiality***
Consistent with the **Human Rights Policy**, references made to *confidentiality* refer to the ability of identified confidential resources to not report crimes and violations to law enforcement or college officials without permission, except for extreme circumstances, such as a health and/or safety emergency or child abuse. References made to *privacy* mean The Cooper Union offices and employees who cannot guarantee confidentiality but will maintain privacy to the greatest extent possible, and information disclosed will be relayed only as necessary to investigate and/or seek a resolution and to notify the Title IX Coordinator or designee, who is responsible for tracking patterns and spotting systemic issues. The Cooper Union will limit the disclosure as much as practicable, even if the Title IX Coordinator determines that the request for confidentiality cannot be honored.


**Disability Accommodations**
This Policy does not alter any institutional obligations under federal disability laws including the Americans with Disabilities Act of 1990, and Section 504 of the Rehabilitation Act of 1973. Parties may request reasonable accommodations for disclosed disabilities to the Title IX Coordinator at any point before or during the Title IX Grievance Process that do not fundamentally alter the Process. The Title IX Coordinator will not affirmatively provide disability accommodations that have not been specifically requested by the Parties, even where the Parties may be receiving accommodations in other institutional programs and activities.


**<u>Making a Report Regarding Covered Sexual Harassment to the Institution</u>**
Any person may report sex discrimination, including sexual harassment (whether or not the person reporting is the person alleged to be the victim of conduct that could constitute sex discrimination or sexual harassment), in person, by mail, by telephone, or by electronic mail, using the contact information listed for the Title IX Coordinator, or by any other means that results in the Title IX Coordinator receiving the person's verbal or written report.

Contact Information for the Title IX Coordinator:
       Name: Grace Kendall
       Title: Associate Dean of Students
       Office Address: 29 3rd Avenue, Suite 3B, New York, NY 10003
       Email Address: grace.kendall@cooper.edu OR titleix@cooper.edu
       Telephone Number: 212-353-4053

Such a report may be made at any time (including during non-business hours) by using the telephone number or electronic mail address, or by mail to the office address listed for the Title IX Coordinator.


**Confidential Reporting**
The following Officials will provide privacy, but **<u>not confidentiality</u>**, upon receiving a report of conduct prohibited under this policy:
- Grace Kendall, Title IX Coordinator, or designee thereof

- Natalie Brooks, EEO Officer and Chief Talent Manager
- Christopher Chamberlin, Dean of Students
- Mary Ann Nissen, Director of Human Resources

The following Officials may provide **confidentiality**:
- Cassandra Jolicour, Student Care Coordinator
- Elizabeth London, Counselor

### Non-Investigatory Measures Available Under the Title IX Grievance Policy

**Supportive Measures**
Complainants (as defined above), who report allegations that could constitute covered sexual harassment under this policy, have the right to receive supportive measures from The Cooper Union regardless of whether they desire to file a complaint. Supportive measures are non-disciplinary and non-punitive.

As appropriate, supportive measures may include, but not be limited to:
- Counseling
- Extensions of deadlines or other course-related adjustments
- Modifications of work or class schedules, where feasible
- Restrictions on contact between the parties (no contact orders)
- Changes in work or housing locations, where feasible
  Lleaves of absence
- Increased security and monitoring of certain areas of the campus

*See* 85 Fed. Reg. 30401.

**Emergency Removal**
The Cooper Union retains the authority to remove a respondent from The Cooper Union's program or activity on an emergency basis, where The Cooper Union (1) undertakes an individualized safety and risk analysis and (2) determines that an immediate threat to the physical health or safety of any student or other individual arising from the allegations of covered sexual harassment justifies a removal.

If The Cooper Union determines such removal is necessary, the respondent will be provided notice and an opportunity to challenge the decision immediately following the removal.

**Administrative Leave**

The Cooper Union retains the authority to place a non-student employee respondent on administrative leave during the Title IX Grievance Process, consistent with the Employee handbooks.

## The Title IX Grievance Process

### Filing a Formal Complaint

The timeframe for the Title IX Grievance Process begins with the filing of a Formal Complaint. The Grievance Process will be concluded within a reasonably prompt manner, and no longer than ninety (90) business[4] days after the filing of the Formal Complaint, provided that the Process may be extended for a good reason, including but not limited to the absence of a party, a party's advisor, or a witness; concurrent law enforcement activity; or the need for language assistance or accommodation of disabilities. The procedure for applying for extensions is described below.

To file a Formal Complaint, a complainant must provide the Title IX Coordinator a written, signed complaint describing the facts alleged. Complainants are only able to file a Formal Complaint under this Policy if they are currently participating in, or attempting to participate in, the education programs or activities of The Cooper Union, including as an employee. For complainants who do not meet this criteria, the College will utilize existing policy in The Human Rights Policy.

If a complainant does not wish to make a Formal Complaint, the Title IX Coordinator may determine a Formal Complaint is necessary. The Cooper Union will inform the complainant of this decision in writing, and the complainant need not participate in the process further but will receive all notices issued under this Policy and Process.

Nothing in the Title IX Grievance Policy, Human Rights Policy, or Code of Conduct prevents a complainant from seeking the assistance of state or local law enforcement alongside the appropriate on-campus process.

### Informal Resolution

A complainant who files a Formal Complaint may elect, at any time, to address the matter through the Institution's Informal Resolution Process. All Parties to a Formal Complaint must agree to enter the Informal Resolution Process through an informed written consent. Information about this Process is available later in this document.

### Multi-Party Situations

The institution may consolidate Formal Complaints alleging covered sexual harassment against more than one respondent, or by more than one complainant against one or more

---

[4] For the purposes of this document, "business day" will refer to days when administrative offices of The Cooper Union are open, regardless of whether classes are in session or those offices are functioning remotely.

respondents, or by one party against the other party, where the allegations of covered sexual harassment arise out of the same facts or circumstances.

**Determining Jurisdiction**

The Title IX Coordinator, or designee, will determine if the instant Title IX Grievance Process should apply to a Formal Complaint. The Process will apply when all of the following elements are met, in the reasonable determination of the Title IX Coordinator:

1. The conduct is alleged to have occurred on or after August 14, 2020;
2. The conduct is alleged to have occurred in the United States;
3. The conduct is alleged to have occurred in The Cooper Union's education program or activity; and
4. The alleged conduct, if true, would constitute covered sexual harassment as defined in this policy.

If all of the elements are met, The Cooper Union will investigate the allegations according to the Grievance Process.

**Allegations Potentially Falling Under Two Policies:**

If the alleged conduct, if true, includes conduct that would constitute covered sexual harassment and conduct that would not constitute covered sexual harassment, the Title IX Grievance Process will be applied to investigation and adjudication of only the allegations that constitute covered sexual harassment.  All other allegations will be investigated and adjudicated the Human Rights Policy and associated procedures.

**Mandatory Dismissal**

If any one of these elements are not met, the Title IX Coordinator, or designee, will notify the parties that the Formal Complaint is being dismissed for the purposes of the Title IX Grievance Policy. Each party may appeal this dismissal using the procedure outlined in "Appeals," below.

**Discretionary Dismissal**

The Title IX Coordinator, or designee, may dismiss a Formal Complaint brought under the Title IX Grievance Policy, or any specific allegations raised within that Formal Complaint, at any time during the investigation or hearing, if:

- A complainant notifies the Title IX Coordinator in writing that they would like to withdraw the Formal Complaint or any allegations raised in the Formal Complaint;
- The respondent is no longer enrolled or employed by {the institution}; or,

- If specific circumstances prevent {the institution} from gathering evidence sufficient to reach a determination regarding the Formal Complaint or allegations within the Formal Complaint.

Any party may appeal a dismissal determination using the process set forth in "Appeals," below.

**Notice of Dismissal**

Upon reaching a decision that the Formal Complaint will be dismissed, the institution will promptly send written notice of the dismissal of the Formal Complaint or any specific allegation within the Formal Complaint, and the reason for the dismissal, simultaneously to the parties through their institutional email accounts. It is the responsibility of parties to maintain and regularly check their email accounts.

**Notice of Removal**

Upon dismissal for the purposes of Title IX, The Cooper Union retains discretion to utilize the Human Rights Policy and/or the Code of Conduct to determine if a violation of policy has occurred. If so, The Cooper Union will promptly send written notice of the dismissal of the Formal Complaint under the Title IX Grievance Process and removal of the allegations to the Code of Conduct or Human Rights Complaint process.

**<u>Notice of Allegations</u>**

The Title IX Coordinator will draft and provide the Notice of Allegations to any party to the allegations of sexual harassment. Such notice will occur as soon as practicable after the institution receives a Formal Complaint of the allegations, if there are no extenuating circumstances.

The parties will be notified by their institutional email accounts if they are a student or employee, and by other reasonable means if they are neither.

The institution will provide sufficient time for the parties to review the Notice of Allegations and prepare a response before any initial interview.

The Title IX Coordinator, or designee, may determine that the Formal Complaint must be dismissed on the mandatory grounds identified above, and will issue a Notice of Dismissal. If such a determination is made, any party to the allegations of sexual harassment identified in the Formal Complaint will receive the Notice of Dismissal in conjunction with, or in separate correspondence after, the Notice of Allegations.

**Contents of Notice**

The Notice of Allegations will include the following:

- Notice of the institution's Title IX Grievance Process and a hyperlink to a copy of the process.
- Notice of the allegations potentially constituting covered sexual harassment, and sufficient details known at the time the Notice is issued, such as the identities of the parties involved in the incident, if known, including the complainant; the conduct allegedly constituting covered sexual harassment; and the date and location of the alleged incident, if known.
- A statement that the respondent is presumed not responsible for the alleged conduct and that a determination regarding responsibility is made at the conclusion of the grievance process.
- A statement that the parties may have an advisor of their choice, who may be, but is not required to be, an attorney, as required under 34 C.F.R. § 106.45(b)(5)(iv);
- A statement that before the conclusion of the investigation, the parties may inspect and review evidence obtained as part of the investigation that is directly related to the allegations raised in the Formal Complaint, including the evidence upon which the institution does not intend to rely in reaching a determination regarding responsibility, and evidence that both tends to prove or disprove the allegations, whether obtained from a party or other source, as required under 34 C.F.R. § 106.45(b)(5)(vi);
- A statement that prohibits knowingly making false statements or knowingly submitting false information during the grievance process.

**Ongoing Notice**

If, in the course of an investigation, the institution decides to investigate allegations about the complainant or respondent that are not included in the Notice of Allegations and are otherwise covered "sexual harassment" falling within the Title IX Grievance Policy, the institution will notify the parties whose identities are known of the additional allegations by their institutional email accounts or other reasonable means.

The parties will be provided sufficient time to review the additional allegations to prepare a response before any initial interview regarding those additional charges.

**Advisor of Choice and Participation of Advisor of Choice**

The Cooper Union will provide the parties equal access to advisors and support persons; any restrictions on advisor participation will be applied equally.

The Cooper Union has a long-standing practice of requiring students to participate in the process directly and not through an advocate or representative. Students participating as Complainant or Respondent in this process may be accompanied by an Advisor of Choice to any meeting or hearing to which they are required or are eligible to attend. The Advisor of Choice is not an advocate. Except where explicitly stated by this Policy, as consistent with the Final Rule, Advisors of Choice shall not participate directly in the process as per standard policy and practice of The Cooper Union.

The Cooper Union will not intentionally schedule meetings or hearings on dates where the Advisors of Choice for all parties are not available, provided that the Advisors act reasonably in providing available dates and work collegially to find dates and times that meet all schedules.

The Cooper Union's obligations to investigate and adjudicate in a prompt timeframe under Title IX and other college policies apply to matters governed under this Policy, and The Cooper Union cannot agree to extensive delays solely to accommodate the schedule of an Advisor of Choice. The determination of what is reasonable shall be made by the Title IX Coordinator, or designee. The Cooper Union will not be obligated to delay a meeting or hearing under this process more than five (5) days due to the unavailability of an Advisor of Choice, and may offer the party the opportunity to obtain a different Advisor of Choice or utilize one provided by The Cooper Union.

**Notice of Meetings and Interviews**

The Cooper Union will provide, to a party whose participation is invited or expected, written notice of the date, time, location, participants, and purpose of all hearings, investigative interviews, or other meetings with a party, with sufficient time for the party to prepare to participate.

**Delays**

Each party may request a one-time delay in the Grievance Process of up to five (5) days for good cause (granted or denied in the sole judgment of the Title IX Coordinator, or designee) provided that the requestor provides reasonable notice and the delay does not overly inconvenience other parties.

For example, a request to take a five day pause made an hour before a hearing for which multiple parties and their advisors have traveled to and prepared for shall generally not be granted, while a request for a five day pause in the middle of investigation interviews to allow a party to obtain certain documentary evidence shall generally be granted.

The Title IX Coordinator, or designee shall have sole judgment to grant further pauses in the Process.

**Investigation**

**General Rules of Investigations**

The Title IX Coordinator and/or an investigator designated by the Title IX Coordinator will perform an investigation under a reasonably prompt timeframe of the conduct alleged to constitute covered sexual harassment after issuing the Notice of Allegations.

The Cooper Union, and not the parties, has the burden of proof and the burden of gathering evidence, i.e. the responsibility of showing a violation of this Policy has occurred. This burden does not rest with either party, and either party may decide not to share their account of what occurred or may decide not to participate in an investigation or hearing. This does not shift the burden of proof away from The Cooper Union and does not indicate responsibility.

The Cooper Union cannot access, consider, or disclose medical records without a waiver from the party (or parent, if applicable) to whom the records belong or of whom the records include information. The Cooper Union will provide an equal opportunity for the parties to present witnesses, including fact and expert witnesses, and other inculpatory and exculpatory evidence, (i.e. evidence that tends to prove and disprove the allegations) as described below.

**Inspection and Review of Evidence**

Prior to the completion of the investigation, the parties will have an equal opportunity to inspect and review the evidence obtained through the investigation. The purpose of the inspection and review process is to allow each party the equal opportunity to meaningfully respond to the evidence prior to conclusion of the investigation.

Evidence that will be available for inspection and review by the parties will be any evidence that is directly related to the allegations raised in the Formal Complaint. It will include any:

1. Evidence that is relevant, even if that evidence does not end up being relied upon by the institution in making a determination regarding responsibility;
2. inculpatory or exculpatory evidence (i.e. evidence that tends to prove or disprove the allegations) that is directly related to the allegations, whether obtained from a party or other source.

All parties must submit any evidence they would like the investigator to consider prior to when the parties' time to inspect and review evidence begins. See, 85 Fed. Reg. 30026, 30307 (May 19, 2020).

The institution will send the evidence made available for each party and each party's advisor, if any, to inspect and review through an electronic format or a hard copy. The Institution is not

under an obligation to use any specific process or technology to provide the evidence and shall have the sole discretion in terms of determining format and any restrictions or limitations on access.

The parties will have ten (10) business days to inspect and review the evidence and submit a written response by email to the investigator. The investigator will consider the parties' written responses before completing the Investigative Report. Parties may request a reasonable extension as their designated extension request.

The institution will provide copies of the parties' written responses to the investigator to all parties and their advisors, if any. See, 85 Fed. Reg. 30026, 30307 (May 19, 2020).

Any evidence subject to inspection and review will be available at any hearing, including for purposes of cross-examination.

The parties and their advisors must sign an agreement not to disseminate any of the evidence subject to inspection and review or use such evidence for any purpose unrelated to the Title IX grievance process. See, 85 Fed. Reg. 30026, 30435 (May 19, 2020).

The parties and their advisors agree not to photograph or otherwise copy the evidence. See, 85 Fed. Reg. 30026, 30435 (May 19, 2020).

**Inclusion of Evidence Not Directly Related to the Allegations:**

Evidence obtained in the investigation that is determined in the reasoned judgment of the investigator not to be directly related to the allegations in the Formal Complaint will not be disclosed, or may be appropriately redacted before the parties' inspection to avoid disclosure of personally identifiable information of a student. Any evidence obtained in the investigation that is kept from disclosure or appropriately redacted will be documented in a "privilege log" that may be reviewed by the parties and their advisors, if any. See, 85 Fed. Reg. 30026, 30438 (May 19, 2020).

<u>**Investigative Report**</u>

The Title IX Coordinator and/or an investigator designated by the Title IX Coordinator will create an Investigative Report that fairly summarizes relevant evidence, will and provide that Report to the parties at least ten (10) business days prior the hearing in an electronic format or a hard copy for each party's review and written response.

The Investigative Report is not intended to catalog all evidence obtained by the investigator, but only to provide a fair summary of that evidence.

Only relevant evidence (including both inculpatory and exculpatory – i.e. tending to prove and disprove the allegations - relevant evidence) will be referenced in the Investigative Report.

The investigator may redact irrelevant information from the Investigative Report when that information is contained in documents or evidence that is/are otherwise relevant. See, 85 Fed. Reg. 30026, 30304 (May 19, 2020).

## Hearing

### General Rules of Hearings

The Cooper Union will not issue a disciplinary sanction arising from an allegation of covered sexual harassment without holding a live hearing, unless otherwise resolved through an informal resolution process.

The live hearing may be conducted with all parties physically present in the same geographic location, or, at The Cooper Union's discretion, any or all parties, witnesses, and other participants may appear at the live hearing virtually through Zoom, Skype, or Microsoft Teams. This technology will enable participants simultaneously to see and hear each other. At its discretion, The Cooper Union may delay or adjourn a hearing based on technological errors not within a party's control.

All proceedings will be recorded through video recording. That recording will be made available to the parties for inspection and review.

Prior to obtaining access to any evidence, the parties and their advisors must sign an agreement not to disseminate any of the testimony heard or evidence obtained in the hearing or use such testimony or evidence for any purpose unrelated to the Title IX Grievance Process. Once signed, this Agreement may not be withdrawn See, 85 Fed. Reg. 30026, 30435 (May 19, 2020).

### Continuances or Granting Extensions

The Cooper Union may determine that multiple sessions or a continuance (i.e. a pause on the continuation of the hearing until a later date or time) is needed to complete a hearing. If so, The Cooper Union will notify all participants and endeavor to accommodate all participants' schedules and complete the hearing as promptly as practicable.

### Newly-discovered Evidence

As a general rule, no new evidence or witnesses may be submitted during the live hearing.

If a party identifies new evidence or witnesses that were not reasonably available prior to the live hearing and could affect the outcome of the matter, the party may request that such evidence or witnesses be considered at the live hearing.

The Hearing Officers will consider this request and make a determination regarding (1) whether such evidence or witness testimony was actually unavailable by reasonable effort prior to the hearing, and (2) whether such evidence or witness testimony could affect the outcome of the matter. The party offering the newly-discovered evidence or witness has the burden of establishing these questions by the preponderance of the evidence.

If the Hearing Officers answer in the affirmative to both questions, then the parties will be granted a reasonable pause in the hearing to review the evidence or prepare for questioning of the witness.

**Participants in the live hearing**

Live hearings are not public, and the only individuals permitted to participate in the hearing are as follows:

*Complainant and Respondent (The Parties)*
- The parties cannot waive the right to a live hearing.
- The institution may still proceed with the live hearing in the absence of a party, and may reach a determination of responsibility in their absence, including through any evidence gathered that does not constitute a "statement" by that party. 85 Fed. Reg. 30026, 30361 (May 19, 2020).
  - For example, A verbal or written statement constituting part or all of the sexual harassment itself is not a "prior statement" that must be excluded if the maker of the statement does not submit to cross-examination about that statement. In other words, a prior statement would not include a document, audio recording, audiovisual reading, and digital media, including but not limited to text messages, emails, and social media postings, that constitute the conduct alleged to have been the act of sexual harassment under the formal complaint. See, OCR Blog (May 22, 2020), available at *https://www2.ed.gov/about/offices/list/ocr/blog/20200522.html*
- The Cooper Union will not threaten, coerce, intimidate or discriminate against the party in an attempt to secure the party's participation. See 34 C.F.R. § 106.71; see also 85 Fed. Reg. 30026, 30216 (May 19, 2020).
- If a party does not submit to cross-examination, the decision-maker cannot rely on any prior statements made by that party in reaching a determination regarding responsibility, but may reach a determination regarding responsibility based on evidence that does not constitute a "statement" by that party.
- The decision-maker cannot draw an inference about the determination regarding responsibility based solely on a party's absence from the live hearing or refusal to answer cross examination or other questions. See 34 C.F.R. §106.45(b)(6)(i).
- The parties shall be subject to the institution's Rules of Decoru*m.*

*The Decision-makers*

- The hearing body will consist of a Hearing Panel of three (3) Hearing Officers, who will select one member to serve as Hearing Chair.
- No member of the hearing body will also have served as the Title IX Coordinator, Title IX investigator, or advisor to any party in the case, nor may any member of the hearing body serve on the appeals body in the case.
- No member of the hearing body will have a conflict of interest or bias in favor of or against complainants or respondents generally, or in favor or against the parties to the particular case.
- The hearing body will be trained on topics including how to serve impartially, issues of relevance, including how to apply the rape shield protections provided for complainants, and any technology to be used at the hearing.
- The parties will have an opportunity to raise any objections regarding a decision-maker's actual or perceived conflicts of interest or bias at the commencement of the live hearing.

*Advisor of choice*

- The parties have the right to select an advisor of their choice, who may be, but does not have to be, an attorney.
- The advisor of choice may accompany the parties to any meeting or hearing they are permitted to attend, but may not speak for the party, except for the purpose of cross-examination [optional: and direct examination].
- In addition to selecting an advisor to conduct cross-examination, the parties may select an advisor who may accompany the parties to any meeting or hearing they are permitted to attend, but may not speak for the party.
- The parties are not permitted to conduct cross-examination; it must be conducted by the advisor. As a result, if a party does not select an advisor, the institution will select an advisor to serve in this role for the limited purpose of conducting the cross-examination at no fee or charge to the party.
- The advisor is not prohibited from having a conflict of interest or bias in favor of or against complainants or respondents generally, or in favor or against the parties to the particular case.
- The advisor is not prohibited from being a witness in the matter.
- If a party does not attend the live hearing, the party's advisor may appear and conduct cross-examination on their behalf. 85 Fed. Reg. 30026, 30340 (May 19, 2020).
- If neither a party nor their advisor appear at the hearing, The Cooper Union will provide an advisor to appear on behalf of the non-appearing party. See, 85 Fed. Reg. 30026, 30339-40 (May 19, 2020).

29

- Advisors shall be subject to the institution's Rules of Decorum, and may be removed upon violation of those Rules.

*Witnesses*
- Witnesses cannot be compelled to participate in the live hearing, and have the right not to participate in the hearing free from retaliation. See, 85 Fed. Reg. 30026, 30360 (May 19, 2020).
- If a witness does not submit to cross-examination, as described below, the decision-maker cannot rely on any statements made by that witness in reaching a determination regarding responsibility, including any statement relayed by the absent witness to a witness or party who testifies at the live hearing. 85 Fed. Reg. 30026, 30347 (May 19, 2020).
- Witnesses shall be subject to the institution's Rules of Decorum.

**Hearing Procedures**

For all live hearings conducted under this Title IX Grievance Process, the procedure will be as follows:
- The Hearing Chair will open and establish rules and expectations for the hearing;
- The Parties will each be given the opportunity to provide opening statements;
- The Hearing Panel will ask questions of the Parties and Witnesses;
- Parties will be given the opportunity for live cross-examination after the Hearing Panel conducts its initial round of questioning; During the Parties' cross-examination, the Hearing Chair will have the authority to pause cross-examination at any time for the purposes of asking the Hearing Panel's own follow up questions; and any time necessary in order to enforce the established rules of decorum.
- Should a Party or the Party's Advisor choose not to cross-examine a Party or Witness, the Party shall affirmatively waive cross-examination through a written or oral statement to the Hearing Panel A Party's waiver of cross-examination does not eliminate the ability of the Hearing Panel to use statements made by the Party.

**Live Cross-Examination Procedure**

Each party's advisor will conduct live cross-examination of the other party or parties and witnesses. During this live-cross examination the advisor will ask the other party or parties and witnesses relevant questions and follow-up questions, including those challenging credibility directly, orally, and in real time.

Before any cross-examination question is answered, the Hearing Panel will determine if the question is relevant. Cross-examination questions that are duplicative of those already asked, including by Hearing Panel may be deemed irrelevant if they have been asked and answered.

**Review of Recording**

The recording of the hearing will be available for review by the parties within 5 business days}, unless there are any extenuating circumstances. The recording of the hearing will not be provided to parties or advisors of choice.

**Determination Regarding Responsibility**

**Standard of Proof**

The Cooper Union uses the preponderance of the evidence standard for investigations and determinations regarding responsibility of formal complaints covered under this Policy. This means that the investigation and hearing determines whether it is more likely than not that a violation of the Policy occurred .

**General Considerations for Evaluating Testimony and Evidence**

While the opportunity for cross-examination is required in all Title IX hearings, determinations regarding responsibility may be based in part, or entirely, on documentary, audiovisual, and digital evidence, as warranted in the reasoned judgment of the Decision-makers.

Decision-makers shall not draw inferences regarding a party or witness' credibility based on the party or witness' status as a complainant, respondent, or witness, nor shall it base its judgments in stereotypes about how a party or witness would or should act under the circumstances.

Generally, credibility judgments should rest on the demeanor of the party or witness, the plausibility of their testimony, the consistency of their testimony, and its reliability in light of corroborating or conflicting testimony or evidence.

Still, credibility judgments should not rest on whether a party or witness' testimony is non-linear or incomplete, or if the party or witness is displaying stress or anxiety.

Decision-makers will afford the highest weight relative to other testimony to first-hand testimony by parties and witnesses regarding their own memory of specific facts that occurred. Both inculpatory and exculpatory (i.e. tending to prove and disprove the allegations) evidence will be weighed in equal fashion.

Except where specifically barred by the Title IX Final Rule, a witness' testimony regarding third-party knowledge of the facts at issue will be allowed, but will generally be accorded lower weight than testimony regarding direct knowledge of specific facts that occurred.

The Final Rule requires that The Cooper Union allow parties to call "expert witnesses" for direct and cross examination.  The Cooper Union does not provide for expert witnesses in other proceedings. While the expert witness will be allowed to testify and be crossed as required by the Final Rule, the decision-maker will be instructed to afford lower weight to non-factual testimony of the expert relative to fact witnesses, and any expert testimony that is not directed to the specific facts that occurred in the case will be afforded lower weight relative to fact witnesses, regardless of whether the expert witness testimony is the subject of cross examination and regardless of whether all parties present experts as witnesses.

The Final Rule requires that The Cooper Union allow parties to call character witnesses to testify. The Cooper Union does not provide for character witnesses in other proceedings. While the character witnesses will be allowed to testify and be crossed as required by the Final Rule, the decision-maker will be instructed to afford very low weight to any non-factual character testimony of any witness.

The Final Rule requires that The Cooper Union admit and allow testimony regarding polygraph tests ("lie detector tests") and other procedures that are outside of standard use in academic and non-academic conduct processes. While the processes and testimony about them will be allowed to testify and be crossed as required by the Final Rule, the decision-maker will be instructed to afford lower weight to such processes relative to the testimony of fact witnesses.

Where a party or witness' conduct or statements demonstrate that the party or witness is engaging in retaliatory conduct, including but not limited to witness tampering and intimidation, the Hearing Panel may draw an adverse inference as to that party or witness' credibility.

**Components of the Determination Regarding Responsibility**

The written Determination Regarding Responsibility will be issued simultaneously to all parties through their institution email account, or other reasonable means as necessary. The Determination will include:
1. Identification of the allegations potentially constituting covered sexual harassment;
2. A description of the procedural steps taken from the receipt of the formal complaint through the determination, including any notifications to the parties, interviews with parties and witnesses, site visits, methods used to gather other evidence, and hearings held;
3. Findings of fact supporting the determination;
4. Conclusions regarding which section of the Title IX Grievance Policy, Code of Conduct, or Human Rights Policy, if any, the respondent has or has not violated.

5. For each allegation:
   a. A statement of, and rationale for, a determination regarding responsibility;
   b. A statement of, and rationale for, any disciplinary sanctions the recipient imposes on the respondent; and
   c. A statement of, and rationale for, whether remedies designed to restore or preserve equal access to the recipient's education program or activity will be provided by the recipient to the complainant; and
6. The recipient's procedures and the permitted reasons for the complainant and respondent to appeal (described below in "Appeal").

**Timeline of Determination Regarding Responsibility**

If there are no extenuating circumstances, the determination regarding responsibility will be issued by The Cooper Union within ten (10) business days of the completion of the hearing.

**Finality**

The determination regarding responsibility becomes final either on the date that the institution provides the parties with the written determination of the result of the appeal, if an appeal is filed consistent with the procedures and timeline outlined in "Appeals" below, or if an appeal is not filed, the date on which the opportunity to appeal expires.

**<u>Appeals</u>**

Each party may appeal (1) the dismissal of a formal complaint or any included allegations and/or (2) a determination regarding responsibility. To appeal, a party must submit their written appeal within five (5) business days of being notified of the decision, indicating the grounds for the appeal.

The limited grounds for appeal available are as follows:
- Procedural irregularity that affected the outcome of the matter (i.e. a failure to follow the institution's own procedures);
- New evidence that was not reasonably available at the time the determination regarding responsibility or dismissal was made, that could affect the outcome of the matter;
- The Title IX Coordinator, investigator(s), or decision-maker(s) had a conflict of interest or bias for or against an individual party, or for or against complainants or respondents in general, that affected the outcome of the matter.
- The sanctions imposed were incongruent with the severity of the policy violation.

The submission of appeal stays any sanctions for the pendency of an appeal. Supportive measures and remote learning opportunities remain available during the pendency of the appeal.

If a party appeals, the institution will as soon as practicable notify the other party in writing of the appeal, however the time for appeal shall be offered equitably to all parties and shall not be extended for any party solely because the other party filed an appeal.

Appeals may be no longer than five (5) pages (including attachments). Appeals should be submitted in electronic form using ARIAL or TIMES NEW ROMAN, 12 point font, and single-spaced. Appeals should use footnotes, not endnotes. Appeals that do not meet these standards may be returned to the party for correction, but the time for appeal will not be extended unless there is evidence that technical malfunction caused the appeal document not to meet these standards.

Appeals will be decided by an Appeal Panel of three Appeal Offiers, who will be free of conflict of interest and bias, and will not serve as investigator, Title IX Coordinator, or hearing decision-maker in the same matter.

Outcome of appeal will be provided in writing simultaneously to both parties, and include rationale for the decision.

**Retaliation**

The Cooper Union will keep the identity of any individual who has made a report or complaint of sex discrimination confidential, including the identity of any individual who has made a report or filed a Formal Complaint of sexual harassment under this Title IX Grievance Policy, any Complainant, any individual who has been reported to be the perpetrator of sex discrimination, any Respondent, and any witness, except as permitted by the FERPA statute, 20 U.S.C. 1232g, or FERPA regulations, 34 CFR part 99, or as required by law, or to carry out the purposes of 34 CFR part 106, including the conduct of any investigation, hearing, or judicial proceeding under this Title IX Grievance Policy.

No person may intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by Title IX of the Education Amendments of 1972 or its implementing regulations.

No person may intimidate, threaten, coerce, or discriminate against any individual because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding or hearing under this Title IX Grievance Policy.

Any intimidation, threats, coercion, or discrimination, for the purpose of interfering with any right or privilege secured by Title IX or its implementing regulations constitutes retaliation. This

includes any charges filed against an individual for code of conduct violations that do not involve sex discrimination or sexual harassment, but that arise from the same facts or circumstances as a report or complaint of sex discrimination or a report or Formal Complaint of sexual harassment. Congruent with New York State law, a bystander acting in good faith or a reporting individual acting in good faith that discloses any incident of domestic violence, dating violence, stalking, or sexual assault to Cooper Union officials or law enforcement will not be subject to The Cooper Union's code of conduct for violations of alcohol and/or drug use policies occurring at or near the time of the commission of the domestic violence, dating violence, stalking, or sexual assault.

Complaints alleging retaliation may be filed according to the Human Rights Policy

# INTERNAL COMPLAINT PROCEDURES FOR ALLEGED VIOLATIONS OF HUMAN RIGHTS OUTSIDE OF THE SCOPE OF TITLE IX

## COMPLAINTS OF SEXUAL MISCONDUCT

(*This procedure is used to investigate and adjudicate all complaints of sexual misconduct that do not fall under the Title IX Grievance Policy, above, including those by students against students; by students against faculty, staff or third-parties doing business with The Cooper Union, or by faculty, staff or third-parties doing business with The Cooper Union against either a student or faculty, staff or third-parties doing business with The Cooper Union.)*

## Filing a Complaint

It is in the best interest of the entire Cooper Union community for individuals to report incidents of gender-based discrimination, harassment and sexual misconduct. The Title IX Coordinator is designated to investigate reported incidents, address inquiries and coordinate The Cooper Union's compliance efforts. Any member of The Cooper Union community who believes they have been subjected to gender-based discrimination, harassment or sexual misconduct should submit a complaint, in writing if possible, to the Title IX Coordinator, an Academic Dean, or the Dean of Students. Individuals who observe or become aware of an incident of discrimination, harassment or sexual misconduct are encouraged to report the incident as well. Responsible employees are required to report any incident of which they become aware. The Deans will refer any complaints received to the Title IX Coordinator.

*Anonymous Reporting*: Although The Cooper Union encourages victims to talk to someone, The Cooper Union has an e-mail address, titleix@cooper.edu, for reporting. Because the system requires the reporting individual to use his/her e-mail address, the system will notify the user (before s/he enters information) that entering personally identifying information may serve as notice to The Cooper Union for the purpose of triggering an investigation.

*Reports from individuals other than the Complainant*: If The Cooper Union receives an anonymous report of an incident of gender-based discrimination, harassment or sexual misconduct or receives a report from a third party, the alleged victim will be promptly informed of the report. The policy and procedures will be applied in the same manner as if the alleged victim had reported the incident.

*Alcohol and drug use:* The health and safety of every student at The Cooper Union is of utmost importance. The Cooper Union recognizes that students who have been drinking and/or using drugs (whether such use is voluntary or involuntary) at the time that violence, including but not limited to domestic violence, dating violence, stalking, or sexual assault, occurs may be hesitant to report such incidents due to fear of potential consequences for their own conduct. The Cooper Union strongly encourages students to report domestic violence, dating

violence, stalking, or sexual assault to institution officials.  A bystander acting in good faith or a reporting individual acting in good faith that discloses any incident of domestic violence, dating violence, stalking, or sexual assault to Cooper Union officials or law enforcement will not be subject to The Cooper Union's code of conduct for violations of alcohol and/or drug use policies occurring at or near the time of the commission of the domestic violence, dating violence, stalking, or sexual assault.

*Seeking Help:*  Regardless of whether a community member decides to file a complaint with The Cooper Union, The Cooper Union strongly encourages the community member to seek out available medical and mental health resources, which The Cooper Union's Title IX Coordinator can direct victims to.

*Passage of Time*:  Community members who wish to make a complaint may contact any of the staff mentioned above at any time.  Please note that a delay in reporting could weaken the information, or The Cooper Union's ability to gather information that will be used to determine whether a person is responsible for sexual misconduct.  Furthermore, the ability of The Cooper Union to take action may be limited by the matriculation or employment status of the respondent.

*Unknown or Unaffiliated Assailant*:  If the respondent is unknown or is not a member of The Cooper Union community, the Title IX Coordinator will assist the complainant in identifying appropriate resources and contacting local law enforcement if the complainant would like to file a report.  In addition, The Cooper Union may take other steps to protect the complainant and the community.

*Contents of Complaint*:  Although individuals are encouraged to submit complaints in writing (electronically or by hard copy), complaints can be made orally.  The complaint should clearly describe the alleged incident, when and where it occurred, and the desired remedy, if known.

## WHO CAN I TALK TO?   WILL IT BE CONFIDENTIAL?

The Cooper Union encourages any person who has experienced sexual violence to talk to someone about what happened, so victims can get the support that they need, and The Cooper Union can respond appropriately.  Different employees on campus have different abilities to maintain confidentiality.

Some employees are required to maintain near complete confidentiality; talking to them is sometimes call a "*confidential communication*."  Only in the most rare circumstances are these employees permitted to disclose the contents of a confidential communication.  Examples of "Confidential Employees" include:

- Student Care Coordinator, Cassandra Jolicoeur
- Counselor, Elizabeth London

Some employees are required to report the details of a sexual misconduct incident (including the identities of both the victim and the alleged perpetrator) to the Title IX Coordinator. These employees are called "Responsible Employees." Complainants should be aware that a report to a Responsible Employee constitutes a report to The Cooper Union and generally obligates the Title IX Coordinator or his designee to investigate the incident and take appropriate steps to address the situation.

### Privacy

Even Cooper Union officers and employees who cannot guarantee confidentiality will maintain your privacy to the greatest extent possible. The information you provide to a non-confidential resource will be relayed only as necessary for the Title IX Coordinator to investigate and/or seek a resolution. Only people who have a need to know about the incident will be informed, and information will be shared only as necessary with investigators, the Complainant, witnesses and the Respondent to ensure an effective and thorough investigation. Although The Cooper Union will take all appropriate steps to safeguard the privacy of the parties, the information collected during the investigation process may be subpoenaed in civil or criminal proceedings.

### Advisors

Student Complainants and Respondents have a right to be accompanied by an advisor of his or her choice at all meetings, interviews and hearings related to an allegation of sexual misconduct. In cases involving allegations of domestic violence, dating violence, sexual assault or stalking, the advisor may be an attorney.

Employees are entitled to be accompanied by an advisor of their choice, who may be an attorney, in cases involving allegations of dating violence, domestic violence, sexual assault or stalking.

Advisors are not permitted to advocate on behalf of the individual or to address the investigator, the Title IX Coordinator, Designee of the Title IX Coordinator, or the Appeal Panel directly. The party may confer with the advisor as necessary, and the advisor may pass notes to the party during meetings and hearings. If the advisor is disruptive or otherwise fails to comply with these parameters, they may be asked to leave.

### Conflict of Interest

Both the Complainant and the Respondent have the right to have a fair and impartial investigation, determination and appeal. If either the Complainant or Respondent has any reason to believe that the investigator, the Title IX Coordinator,Designee of the Title IX Coordinator or any of the Appeal Panel members has a conflict of interest or would otherwise be unable to be fair and impartial, the concerned party should submit a letter explaining the basis for his or her concern. Concerns regarding the investigator, Designee of the Title IX Coordinator or the Appeal Panel should be submitted to the Title IX Coordinator. Concerns regarding the Title IX Coordinator should be submitted to the Dean

of Students.  The other party will be provided with a copy of the letter and will have an opportunity to respond.  If based upon those submissions and any independent inquiry the decision-maker may choose to make, it is determined that there is a conflict of interest, another individual will be appointed to take on the role in question.  If it is found that there is no such conflict, the individual will continue in his or her role.  Concerns regarding conflicts of interest should be raised as soon as they are identified and prior to the individual with the alleged conflict's rendering of his or her determination, e.g. prior to the submission of the investigation report, the determination, or the appeal decision.

**Notice**

Each party will receive reasonable and advance written or electronic notice of any meeting they are required or eligible to attend. Each party will be given prompt notice of any meeting relating to the proceeding at which either the complainant or the respondent will be present, except that the respondent will not be notified of meetings with the complainant relating solely to interim protective measures and other supportive accommodations.

## Processing A Complaint

Upon receipt of a complaint, the Title IX Coordinator will review the complaint to determine whether the facts as alleged would constitute a violation of this Policy.  If so, the Title IX Coordinator will open a formal investigation.

As soon as possible and no later than three business days after receiving the complaint, the Title IX Coordinator or the Designee of the Title IX Coordinator will contact the Complainant to schedule a meeting, at which time the Title IX Coordinator or Designee of the Title IX Coordinator will gather additional information about the allegations, as necessary, provide a written copy of this Policy and Procedure to the Complainant, explain the process, and identify available interim protective measures and support resources (as described below).

Within two business days of meeting with the Complainant, the Title IX Coordinator or Designee of the Title IX Coordinator will contact the Respondent to schedule a meeting, during which the Title IX Coordinator or Designee of the Title IX Coordinator will provide a written copy of this Policy and Procedure to the Respondent, explain the process, identify and explain any interim protective measures imposed that impact the Respondent, identify the provision(s) of this policy the Respondent has been accused of violating, identify potential sanctions, and identify available support resources.

The Title IX Coordinator, Designee of the Title IX Coordinator or a trained investigator appointed by the Coordinator will lead the investigation.  The investigation and adjudication process, excluding any appeal, should be complete within 60 days of the receipt of the complaint, if not sooner. Should this process last longer than 60 days, the Coordinator will communicate the reasons and expected timeline to all parties.

## Interim Protective Measures

After reviewing the complaint, the Title IX Coordinator, the Designee of the Title IX Coordinator, or the lead investigator in consultation with the Title IX Coordinator, may institute interim protective measures to ensure the Complainant's equal access to educational programs and activities, to protect the safety and well-being of the parties, as well as The Cooper Union community.

The Title IX Coordinator will determine which interim measures are appropriate for a particular Complainant and/or Respondent on a case-by-case basis. Not all of the measures listed below will be necessary in every case.. If the Complainant and/or Respondent identifies an interim measure that is not already provided, the Title IX Coordinator will consider whether the request can be granted. In those instances where interim measures affect both the Complainant and the Respondent. The Cooper Union will minimize the burden on the Complainant wherever appropriate.

Any interim protective measure put in place will remain in effect through the investigation process and until a decision is rendered at which time they may be continued, modified or lifted. Examples of available interim measures include:

- an order directing the parties not to contact one another;
- changes in housing accommodations provided by The Cooper Union;
- housing suspensions;
- changes in academic schedule or other academic accommodations;
- changes in Cooper Union work schedule, location or reporting line;
- changes in transportation arrangements provided by The Cooper Union;
- campus access restrictions;
- supplying Complainant with an escort to ensure they feel safe;
- interim suspension.

Interim measures may be instituted at any point during the investigation process. Complainants and Respondents are encouraged to request interim protective measures when needed.

Interim protective measures will be kept confidential to the extent possible.  Only those individuals who need to be informed in order to effectuate the measures will be informed.  For instance, if a Complainant or Respondent request a change in work schedule, his or her supervisor(s) will need to be informed in order to effectuate the change.

The Complainant or the Respondent may request review and modification of any protective measure(s) that directly impacts him or her, including review of the need for and terms of the protective measure(s), by submitting a letter to the Title IX Coordinator along with any evidence they wish to present.   In the event the interim measure impacts the other party, they

will be given an opportunity to respond to the request and present evidence as appropriate. The Title IX Coordinator or her designee will review the submissions and make a determination.

Upon reaching a determination with respect to a Complaint, the Title IX Coordinator will review any interim measures that were put in place.  Depending upon the circumstances, some or all of the protective measures may be lifted or they may be continued to assist the Complainant after a determination has been made, even if it is determined that some or all of the allegations have not been substantiated.

Failure to comply with a directive relating to a protective measure may lead to further disciplinary action.

In addition to the interim measures that The Cooper Union can institute, law enforcement may be able to provide additional protections, such as a restraining order.  The Cooper Union can assist students in contacting law enforcement and legal services organizations to learn about additional remedies that may be available.

## Negotiated Resolution

Where appropriate and with the consent of the Complainant, the Title IX Coordinator, Designee of the Title IX Coordinator or designated investigator may attempt to reach a resolution of the complaint through mediated discussions with the parties as amicably and privately as possible.  If a resolution that is satisfactory to both parties is reached, the matter will be considered closed.  If it becomes clear that a mediated resolution will not be possible, the matter will be formally investigated in accordance with this Policy. Complaints of sexual assault are not eligible for a negotiated resolution under any circumstances.

## Formal Investigation

Within seven business days of receiving the complaint, the Title IX Coordinator or Designee of the Title IX Coordinator will commence an investigation or will designate an investigator who has been trained regarding the investigation of claims of sexual misconduct.

The investigator will conduct a prompt, fair, impartial, and thorough investigation.  During the investigation, the investigator will:

- interview the Complainant, the Respondent, and any material witnesses (the investigator will not interview witnesses whose sole purpose is to provide character information);

- gather all relevant documentary and/or physical evidence from the Complainant, Respondent, and witnesses (this may include, but is not limited to, texts, emails, photos, Facebook posts, voicemail messages, etc.);

- complete the investigation in a timely manner, without unnecessary deviation from the intended timeline; and

- maintain equal communication with the Complainant and the Respondent on the status of the investigation and overall process.

Information Regarding Romantic and Sexual History
The investigator will not consider information concerning the romantic or sexual history of either the Complainant or the Respondent, except as provided by the Complainant or Respondent relating to their shared history.  If either offers such information, the other will have the right to respond.

Information Regarding Mental Health Diagnosis or Treatment History
Each party shall have the right to object to the investigator's consideration of his or her own mental health history or treatment.  In the event such an objection is raised, the investigator will neither gather nor consider information regarding mental health diagnosis or treatment.

Prior Conduct Violations
In conducting the investigation and coming to a final determination, the investigator will not consider prior alleged misconduct or violations of this policy.

Notification of Specific Allegations
Prior to the conclusion of the investigation, the Respondent will be given written notice of the date, time, location and factual allegations concerning the alleged violation.  The Respondent will then have an opportunity to provide any additional evidence or information, they may think is relevant.

Review of Statement
Prior to the conclusion of the investigation, the Complainant and Respondent will each have an opportunity to review the investigator's written recitation of the statements they presented during his or her interview(s) and to provide the investigator with any corrections or clarifications that may be necessary.

Impact Statement
Within two days of reviewing the investigator's recitation of his or her statements, the Complainant and Respondent may submit statements of impact to the Title IX Coordinator, which will be considered by the Title IX Coordinator in connection with determining an appropriate sanction in the event there is a finding of responsibility.

<u>Investigation Report</u>
At the conclusion of the investigation, the investigator will prepare a written investigation report.  The report will clearly set forth the sexual misconduct policy provisions alleged to have been violated, the alleged prohibited conduct and summaries of all witness interviews and any documentary or physical evidence considered as part of the investigation.  The report will further provide the investigator's assessment of whether it is more likely than not that the prohibited conduct occurred and the evidentiary basis for that assessment.

<u>Declining to Participate</u>
If the Complainant or the student Respondent chooses not to cooperate in the investigation, the investigator will still complete the investigation and prepare a report based solely upon the information available.  No adverse inference will be made as a result of a party's decision not to participate in the investigation, but a determination will be made based upon the information available.  Employee Respondents who refuse to cooperate in the investigation may be subject to disciplinary action, up to and including dismissal.

If the Complainant chooses to withdraw the complaint prior to the completion of the investigation, the Title IX Coordinator will determine whether to continue to pursue the complaint employing the factors outlined on page___.

# **Determination of Responsibility and Discipline**

The Investigator's fact-finding report and recommendations will be submitted to the Title IX Coordinator within four weeks of the Title IX Coordinator's receipt of the complaint, absent unanticipated circumstances.  The Title IX Coordinator will assess the information contained in the Investigator's report, including the investigator's recommended determination, conduct any further inquiry they may deem necessary and then make a final determination using the preponderance of the evidence standard; in other words, the Title IX Coordinator will determine whether it is more likely than not (51%) that a policy violation occurred.

If the Title IX Coordinator finds the Respondent responsible for violating this Policy, they shall determine the appropriate disciplinary sanction after considering the relevant factors, which include the severity of the violation,  in cases of sexual assault, the circumstances surrounding the lack of affirmative consent (such as force, threat, coercion, intentional incapacitation, etc.), the Respondent's state of mind (intentional, knowing, reckless, negligent, etc.), the Respondent's history of misconduct, including prior findings of sexual misconduct, the ongoing impact on the Complainant, the ongoing impact on the campus environment, and any ongoing threat to the campus community.  In determining the appropriate sanction, the Title IX Coordinator may consult with the Dean of Students and/or the student's academic dean if the Respondent is a student, the Dean of the Respondent's school if the respondent is a faculty member, or the Respondent's manager and/or the Director of Human Resources if the Respondent is a staff member.  Sanctions may include:
- expulsion,

- revocation of degree,
- suspension,
- demotion,
- termination of employment,
- revocation of honors or awards,
- warning or reprimand,
- disciplinary probation,
- loss of housing privilege,
- loss of other privileges (including but not limited to use of facilities and participation in campus organizations and activities),
- community service,
- mandated training and education.

The Title IX Coordinator will provide both the Complainant and the Respondent with a written Notice of Determination which will contain the rationale for such determination.  The Notice of Determination will be provided to the parties simultaneously and within five business days of receipt of the investigator's report and recommendation.  In cases of sexual assault, dating violence, domestic violence and/or stalking, the Complainant and the Respondent will be informed simultaneously and in writing of any sanctions imposed and the rationale for such sanction(s).  In other cases of sexual misconduct, the Complainant will only be informed of the sanction(s) to the extent such sanction(s) relate to the Complainant.  For instance, if the Respondent has been restricted from being present in the Complainant's office building or dormitory, the Complainant would be informed of that restriction.

## Appeals

Appeals are permitted in cases of alleged sexual assault, dating violence, domestic violence and stalking.  After receiving the written Notice of Determination, both the Complainant and the Respondent have five business days to appeal the decision.  During that time, both the Complainant and the Respondent will have an opportunity to review the investigation report (redacted to remove the names and personally identifying information of other students as required by law) thoroughly, but copies of the report will not be provided to them.  In order to initiate an appeal, the identified appealing party must submit a formal letter of appeal to the Title IX Coordinator specifying the grounds upon which the appeal is based as identified below andexplaining how those grounds materially affected the outcome, and providing supporting information.  The appeal letter must be submitted to the Title IX Coordinator by email at titleix@cooper.edu or by delivery to the Title IX Coordinator's office within five business days of the issuance of the Notice of Determination.  Sanction(s) imposed by the Title IX Coordinator will remain in effect while the appeal is pending.

The only accepted grounds for an appeal are:
- new evidence, which was not available at the time the Title IX Coordinator completed his/her review, has come to light;

- an error in the process, as outlined by this policy, which materially impacted the outcome.
- the sanction(s) imposed were not appropriate in light of the evidence presented.

Disagreement with the determination is not, by itself, grounds for appeal.  Whether a letter of appeal brings forward arguable grounds for an appeal is within the sole discretion of the Title IX Coordinator and is not, itself, appealable.  If the appeal letter does not bring forward sufficient grounds for appeal, the appeal will be denied and the matter will be closed.

If the appeal letter identifies arguable grounds for appeal, within two business days of receipt of the appeal, the Title IX Coordinator will (i) appoint three trained employees of The Cooper Union to serve on an Appeal Panel and (ii) provide the other party with an opportunity to review the appeal.  The non-appealing party will have five business days thereafter to submit materials in response to the appeal.

A party's decision not to participate in the investigatory process does not preclude him or her from appealing.  However, except in extraordinary circumstances, a party who does not respond to the investigator's inquiries during the investigatory process will be precluded from appealing on the ground that new evidence has come to light.

After reviewing the Investigator's Report and Recommendation, the Title IX Coordinator's Notice of Determination, and the materials submitted by the parties, the Appeal Panel may decide to:

- affirm the decision of the Title IX Coordinator.  In this case, the decision rendered in the Notice of Determination is final.

- affirm the decision as to whether a violation was committed but modify the sanctions imposed by the Title IX Coordinator.  In this instance, the decision as affirmed and the sanctions imposed by the Appeal Panel are not subject to further appeal

- remand the matter back to the Title IX Coordinator to:
    - reevaluate his/her decision in light of the Appeal Panel's findings and/or
    - reopen the investigation.  In this instance, the Title IX Coordinator's revised decision is subject to the Appeals Procedure.


The Appeal Panel's decision will be transmitted in writing to the Complainant, the Respondent, and the Title IX Coordinator simultaneously within five calendar days of the non-appealing party's submission.
If neither party files an appeal within five business days of the Notice of Determination, the Title IX Coordinator will provide both parties with written notice that the determination is final.

While the procedures and timelines outlined in this policy will be strictly enforced, the Title IX Coordinator has the authority to adjust the procedures and timeline as necessary and in the best interest of the parties.

## Timeline

The entire investigation process from receipt of complaint until issuance of the Notice of Determination (excluding an appeal) should be completed within 60 days.  If circumstances arise that require the extension of certain deadlines (including but not limited to unavailability of witnesses due to winter or summer break), the parties will be informed of the change and of the anticipated date of completion of that stage of the process.

| | |
|---|---|
| Within 3 business days of receipt of complaint | Title IX Coordinator or designee contacts the Complainant |
| Within 2 business days of meeting with Complainant | Title IX Coordinator or designee contacts the Respondent |
| Within seven business days of receipt of Complaint | Investigator is appointed and investigation commences |
| At any time during the process, but no later than 2 business days after reviewing the recitation of his or statement to investigator | Complainant and Respondent may submit an impact statement to the Title IX Coordinator |
| Within 6weeks of receipt of complaint | Investigation is completed and report and recommendation are submitted to the Title IX Coordinator |
| Within 5 calendar days of receipt of report and recommendation | Title IX Coordinator issues written Notice of Determination. |
| Within 5 business days of receipt of Notice of Determination | Appealing party must file letter of appeal |
| Within 2 business days of receipt of appeal letter from appealing party | Title IX Coordinator will determine whether letter of appeal identifies arguable grounds for appeal.  If so, the Title IX Coordinator will provide a copy of the letter of appeal to the non-appealing party and appoint an appeal panel. |
| Within five business days of receipt of letter of appeal | Non-appealing party submits response to appeal |
| Within five business days of receipt of non-appealing party's submission | Appeal Panel notifies parties of decision on appeal |

**Compliance with Sanctions and Accommodations**

At the conclusion of the investigation and adjudication process, the Title IX Coordinator will be responsible for ensuring compliance with all imposed sanctions and providing accommodations with the goal of preventing future incidents and assisting the Complainant.

**Ongoing Accommodations for the Complainant**

Regardless of the determination, the Complainant may request ongoing or additional accommodations.  Such requests should be directed to the Title IX Coordinator. Determinations as to whether such accommodations are appropriate or feasible will be made by the Title IX Coordinator in consultation, where appropriate, with the Dean of Students and/or the appropriate Academic Dean.  Ongoing accommodations may include:  moving the Complainant's residence, changing the Complainant's academic or teaching schedule, allowing the Complainant to withdraw from or retake a class without penalty, providing the Complainant with access to additional academic support.

**Transcript Notations**

Any student who is found responsible for domestic violence, dating violence, sexual assault, stalking or any other crime of violence, and suspended will have a notation on his or her transcript indicating, "suspended after a finding of responsibility for a policy violation."

Any student who is found responsible for domestic violence, dating violence, sexual assault, stalking or any other crime of violence, and expelled will have a notation on his or her transcript indicating, "expelled after a finding of responsibility for a policy violation."

Any student who withdraws from the Cooper Union  while a complaint of domestic violence, dating violence, sexual assault or stalking is pending against him or her and declines to complete the investigatory and disciplinary process, will have a notation on his or transcript indicating, "withdrew with conduct charges pending."

If a finding of responsibility is vacated for any reason, the transcript notation will be removed. Students shall have the right to seek the removal of a notation of suspension after one year has elapsed since the end of the suspension.  Students wishing to request removal should submit a letter to the Title IX Coordinator setting forth the justification for removal.  Notations of expulsion cannot be removed.

**Separate Rights of Faculty and Bargaining Unit Staff**

Except as otherwise required by law, complaints made by or against persons represented by a labor organization will be handled in a manner that is consistent with the applicable collective bargaining agreement.  Nothing herein precludes faculty and bargaining unit staff from seeking redress under their collective bargaining agreements.

Management and supervisory personnel in particular are responsible for taking reasonable and necessary action to prevent discrimination and harassment in the workplace and for responding promptly and thoroughly to any such claims. Those individuals include any officer or dean having formal supervisory responsibility over employees. Any person who believes that they have been subjected to sexual or gender-based harassment may initially choose to deal with the alleged offender directly through a face-to-face discussion, a personal telephone conversation, e-mail correspondence, or letters. In many cases, this may effectively resolve the situation; however, individuals are not required to address the alleged offender directly. Such an approach may be ineffective in correcting the problem, or an individual may be uncomfortable in handling the situation alone.

**RIGHTS IN CASES OF SEXUAL ASSAULT, DATING VIOLENCE, DOMESTIC VIOLENCE AND STALKING**

**Students' Bill of Rights**

All students have the right to:

1.  make a report to local law enforcement and/or state police;

2.  have disclosures of domestic violence, dating violence, stalking, and sexual assault treated seriously;

3.  make a decision about whether or not to disclose a crime or violation and participate in the judicial or conduct process and/or criminal justice process free from pressure by the institution;

4.  participate in a process that is fair, impartial, and provides adequate notice and a meaningful opportunity to be heard;

5.  be treated with dignity and to receive from the institution courteous, fair, and respectful health care and counseling services, where available;

6.  be free from any suggestion that the reporting individual is at fault when these crimes and violations are committed, or should have acted in a different manner to avoid such crimes or violations;

7.  describe the incident to as few institution representatives as practicable and not be required to unnecessarily repeat a description of the incident;

8.  be protected from retaliation by the institution, any student, the accused and/or the respondent, and/or their friends, family and acquaintances within the jurisdiction of the institution;

9.  access to at least one level of appeal of a determination;

10. be accompanied by an advisor of choice who may assist and advise a reporting individual, accused, or respondent throughout the judicial or conduct process including during all meetings and hearings related to such process; and

11. exercise civil rights and practice of religion without interference by the investigative, criminal justice, or judicial or conduct process of the institution.

**Rights of All Complainants**

- The right to request interim protective measures to ensure his or her safety during the complaint process.

- The right to a prompt, thorough, fair and impartial investigation and appropriate resolution of all credible complaints of sexual misconduct.

- The right to be treated with respect by The Cooper Union staff throughout the process.

- The right to be notified of available counseling, mental and physical health services on and off campus.

- The right to identify witnesses and to request that the Investigator contact those individuals as part of the investigation.

- The right to have an advisor present in a support or advisory role during the investigation and at any meeting relating to the complaint process.

- The right to report the incident to off-campus authorities and/or law enforcement and to be assisted by The Cooper Union staff in doing so.

- The right to know what provisions of this policy the respondent is charged with violating.

- The right to be informed of the determination and sanction in writing to the extent permissible by law.

- The right to privacy and the assurance that information regarding the complaint will be shared only with those necessary.

- The right to receive timely notice of any meeting relating to the complaint process at which respondent will be present.

**Rights of the Respondent**

- The right to a prompt, thorough, fair and impartial investigation and appropriate resolution of all credible complaints of sexual misconduct.

- The right to be treated with respect by The Cooper Union staff throughout the process.

- The right to be notified of available counseling, mental and physical health services, on and off campus.

50

- The right to identify witnesses and other parties, and to request that the Investigator contact those individuals as part of the investigation.

- The right to have an advisor present in a support or advisory role during the investigation and at any meeting relating to the complaint process.

- The right to receive written notice of which policy provisions they are alleged to have violated.

- The right to be notified of possible sanctions that may result if found responsible for violating this policy.

- The right to be informed of the determination and any sanction in writing.

- The right to privacy and the assurance that The Cooper Union will share information regarding the complaint only with those necessary.

- The right to receive timely notice of any meeting relating to the process at which the complainant will be present, except meetings related solely to interim protective measures or accommodations.

## COMPLIANCE WITH FEDERAL, STATE AND LOCAL LAWS PROMOTING EQUAL OPPORTUNITY, PROHIBITING DISCRIMINATION AND HARASSMENT AND AUTHORIZING AFFIRMATIVE ACTION

In accordance with all applicable laws and pursuant to its own policies and operating procedures, The Cooper Union provides for equal opportunity, prohibits unlawful discrimination and harassment, and takes affirmative action. The applicable laws include:

- **Title VI of the Civil Rights Act of 1964,** as amended, prohibits discrimination against any person on the basis of race, color, or national origin in programs or activities receiving federal financial assistance.

- **Title VII of the Civil Rights Act of 1964,** as amended, prohibits employment discrimination against any person because of race, color, religion, sex, pregnancy, or national origin.

- **Title IX of the Education Amendments of 1972,** as amended, prohibits discrimination on the basis of sex in the conduct or operation of a school's educational programs or activities, including employment in these programs and activities.

- **The Equal Pay Act of 1963,** prohibits discrimination on the basis of sex in rates of pay. The Lily Ledbetter Act of 2009 extends this protection. Executive Order 11246, as amended, prohibits discrimination in employment because of race, color, religion, sex, or national origin and requires affirmative action to ensure equality of opportunity in all aspects of employment.

- **Sections 503 of the Rehabilitation Act of 1973,** requires a federal contractor to take affirmative action to employ and advance in employment qualified workers with disabilities. **Section 504** prohibits the exclusion of any person solely on the basis of a disability from participation in or access to benefits of any federally financed program or activity; it also prohibits discrimination against any person solely on the basis of disability in any federally financed program or activity.

- **The Americans with Disabilities Act of 1990,** as amended, prohibits discrimination in public accommodations and in employment against a qualified person with a disability and requires an employer to provide qualified applicants and employees with reasonable accommodations.

- **The Age Discrimination in Employment Act of 1967,** as amended, prohibits discrimination in employment on the basis of age.

- **The Violence Against Women Act (VAWA),** as amended and reauthorized, prohibits domestic and sexual violence against any person.

- **The Campus Sexual Violence Elimination Act ("Campus SaVE"),** a provision of the Violence Against Women Reauthorization Act of 2013 that amended the Clery Act, requires that institutes of higher education provide data regarding incidents of sexual

assault, domestic violence, dating violence, and stalking; and develop policies and procedures concerning the education, awareness, and prevention of sexual assault, domestic violence, dating violence, and stalking on campus.

- **The Uniformed Services Employment and Reemployment Rights Act (USERRA),** prohibits discrimination in employment based on past, current, or future military obligations.

- **The Vietnam Era Veterans' Readjustment Assistance Act of 1974 and the Veterans Employment Opportunities Act of 1998,** as amended, prohibit job discrimination and require affirmative action to employ and advance in employment qualified special disabled veterans, veterans of the Vietnam Era, recently separated veterans, and any other veterans who served on active duty during a war or in a campaign or expedition for which a campaign badge has been authorized.

- **The Immigration Reform and Control Act of 1986,** prohibits employers from discriminating on the basis of citizenship status. The prohibition extends to employers who hire only U.S. citizens or U.S. citizens and green card holders, as well as to employers who prefer to employ unauthorized workers or temporary visa holders rather than U.S. citizens and other workers with employment authorization.

- **The Small Business Act of 1958,** as amended, Section 15(g)(1), requires federal contractors to afford maximum practicable business opportunities to Small Business Concerns, including businesses owned by disadvantaged individuals, disabled veterans, and women.

- **The New York Executive Law, Article 15,** Section 296(1), prohibits discrimination against any person in employment because of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, genetic predisposition or carrier status, marital status, or arrest record. Section 296(4) prohibits an educational institution from denying the use of its facilities to anyone otherwise qualified or permitting harassment of a student or applicant on the basis of color, race, religion, disability, national origin, sexual orientation, military status, sex, age, and marital status.

- **The New York State Articles 129-A and 129-B,** also known as "Enough is Enough," intended to combat sexual assault on college and university campuses statewide and which requires all colleges to adopt a set of comprehensive procedures and guidelines, to ensure the safety of all students attending colleges in New York State.

- **The New York Labor Law, Section 194,** prohibits discrimination on the basis of sex in rates of pay.

- **The New York City Human Rights Law, Chapter 1, Section 8-107,** makes it an unlawful discriminatory practice for an employer to discriminate against any person because of his or her actual or perceived age, race, creed, color, national origin, gender (including gender identity and expression), disability, marital status, sexual orientation, alienage or citizenship status, partnership status, unemployment status or status as a perceived or actual victim of domestic violence.

# RESOURCES AND SUPPORT FOR VICTIMS OF SEXUAL MISCONDUCT

Services provides by The Cooper Union are free of charge to all students. External agencies generally provide free consultation and crisis services, but may require use of insurance or payment of fees for other services. The Office of the Dean of Students will work with any student to address financial issues or concerns and ensure that costs is not a barrier to support of treatment.

## MEDICAL ATTENTION AND EVIDENCE PRESERVATION

Victims of sexual violence, including sexual assault, dating violence, domestic violence, and stalking, are encouraged to seek prompt medical attention and to report the incident to the police. To gain assistance in getting to an emergency room, a victim can call 911 or notify The Cooper Union's security guards or the Dean of Students office.  The nearest emergency rooms to The Cooper Union are at:

Beth Israel Medical Center
First Avenue and 16th Street
212.420.2840

Bellevue Hospital
First Avenue and 27th Street
212.562.4347

The hospital staff will do a detailed examination of the entire body, including an internal examination as appropriate, collect evidence, check for injuries, address pregnancy concerns and the possibility of exposure to sexually transmitted infections.  Victims are advised that the best way to preserve evidence of sexual assault is to avoid bathing or washing yourself before being examined.  Similarly, clothing, towels, sheets and other items should not be washed or moved, if possible.  The clothing worn at the time of the assault should be brought to the hospital in a sanitary container, such as a paper bag or a clean sheet.  If the clothing worn at the time of the assault is still being worn, it is advisable to bring a change of clothes to the hospital, if possible.

Seeking medical attention will in no way obligate a victim to file a complaint or press criminal charges.  Conversely, electing not to seek medical attention or to contact police will not impact The Cooper Union's investigation or grievance process.

Victims are advised that the best way to preserve evidence of sexual assault is to avoid bathing or washing yourself before being examined.  You should not take a shower, wash hands or face, comb your hair, or douche. Normal everyday behavior, such as going to the bathroom, can destroy or remove evidence of sexual assault; you should try to avoid doing so if possible. Similarly, you should try not to smoke or drink anything.   Altering your appearance can hide

bruising or lacerations that can be cited as evidence when pressing charges.  It is best not to apply make-up or any other substance that can change your appearance.

Evidence of the assault can be found in the fibers of your clothes, strands of your hair, or on other parts of your body, so it is important to try your best to preserve as much evidence as possible.  Clothing, towels, sheets and other items should not be washed or moved, if possible. The clothing worn at the time of the assault should be brought to the hospital in a sanitary container, such as a paper bag or a clean sheet.  If the clothing worn at the time of the assault is still being worn, it is advisable to bring a change of clothes to the hospital, if possible.

It is important to note that failure to take the steps described above **does not** preclude you from reporting an incident to The Cooper Union or to the police.


## **Privileged and Confidential Communications**

**Professional Counselors**

Professional, licensed counselors who provide mental-health counseling to members of the school community are not required to report any information about an incident to the Title IX coordinator without a victim's permission. Following is the contact information for these individuals:

**Cassandra Jolicoeur, Student Care Coordinator**
**cassandra.jolicoeur@cooper.edu**
**212-353-4006**

**Elizabeth London, Counselor**
**elizabeth.london@cooper.edu**

**Student Residence Hall**
**29 3rd Avenue, 2nd Floor**
**New York, NY 10003**


**Victim Advocacy Services**

**Bellevue Hospital Center : Sexual Assault Response Team SAFE Center**
462 First Avenue
CD Building, Ground Floor #GA74
New York, NY 10016

Contact: Carla Brekke , Program Coordinator
Phone: (212) 562-3435/3755
Fax: (212) 562-6103
E-Mail: carla.brekke@bellevue.nychhc.org

**Safe Horizon Crisis Center**
2 Lafayette Street #3
New York, NY 10007

Phone: (212) 577-7700

**External Resources**

Additional confidential counseling is available through one of the following local services.
External counselors will not report any information to The Cooper Union.

**St. Luke's-Roosevelt Hospital : Crime Victims Treatment Center - Roosevelt Office**
432 West 58th Street
Suite 114
New York, NY 10019

Contact: Christine Fowley, LCSW
Phone: 212-523-9058
E-Mail: ChFowley@chpnet.org

**Bellevue Hospital Center : Sexual Assault Response Team SAFE Center**
462 First Avenue
CD Building, Ground Floor #GA74
New York, NY 10016

Contact: Carla Brekke , Program Coordinator
Phone: (212) 562-3435/3755
Fax: (212) 562-6103
E-Mail: carla.brekke@bellevue.nychhc.org

**Beth Israel Medical Center : Rape Crisis & Domestic Violence Intervention Program**
Dept. of Social Work
317 E 17th St.
New York, NY 10003

Contact: Carole Sher , Program Coordinator
Phone: (212) 420-4516
Fax: (212) 420-2036
E-Mail: csher@chpnet.org

**New York Presbyterian Hospital DOVE : Domestic and Other Violent Emergencies Program**
622 W 168th St., HP2
New York, NY 10032

Contact: Alma Withim , LCSW Program Coordinator
Phone: (212) 305-9060
Fax: (212) 305-6196
E-Mail: withima@nyp.org

**Safe Horizon Crisis Center**
2 Lafayette Street #3
New York, NY 10007

Phone: (212) 577-7700

**WomanKind (New York Asian Women's Center)**
39 Bowery St.
PMB 375
New York, NY 10002

Contact: Julie Kim-Richards , Director of Client Services
Phone: (212) 732-0054 ext. 113
Fax: (212) 587-5731
E-Mail: info@nyawc.org
Hotline: (888) 888-7702 (24-hour Hotline)

**Gay and Lesbian Anti-Violence Project**
240 W 35th St., Ste. 200
New York, NY 10001

Contact: Ivana Chapcakova , Client Services
Phone: (212) 714-1184
Fax: (212) 714-2627
E-Mail: ivana.chapcakova@avp.org
Hotline: (212) 714-1141

**New York County District Attorney's Office**
1 Hogan Place, Room 231
New York, NY 10003

Phone: (212) 335-9040 – Social Services
Phone: (212) 335-9633 – Counseling


## Who Is Obligated to Report What I Tell Them to the Cooper Union?

A "responsible employee" is a Cooper Union employee who has the authority to redress sexual violence, who has the duty to report incidents of sexual violence or other student misconduct, or who a student could reasonably believe has this authority or duty.

A responsible employee must report to the Title IX Coordinator all relevant details about any incident of sexual misconduct – including the names of the victim and alleged perpetrator(s), any witnesses, and any other relevant facts, including the date, time and specific location of the alleged incident.

To the extent possible, information reported to a responsible employee will be shared only with people responsible for handling The Cooper Union's response to the report. A responsible employee should not share information with law enforcement without the victim's consent or unless the victim has also reported the incident to law enforcement.

The following categories of employees are the Cooper Union's responsible employees:

- Academic Advising Staff
- Student Affairs Staff
- Student Residence Assistant Staff (RA)
- Student Peer Mentor Staff
- Admissions Staff
- Campus Security Staff
- Laboratory Technical Staff
- Studio Technical Staff
- Deans (including Assistant and Associate Deans)
- Officers of the Institution
- Faculty


Before a victim reveals any information to a responsible employee, the employee should ensure that the victim understands the employee's reporting obligations – and, if the victim wants to maintain confidentiality, direct the victim to confidential resources.

If the victim wants to tell the responsible employee what happened but also maintain confidentiality, the employee should tell the victim that The Cooper Union will consider the request, but cannot guarantee that The Cooper Union will be able to honor it. In reporting the

details of the incident to the Title IX Coordinator, the responsible employee will also inform the Coordinator of the victim's request for confidentiality.

Responsible employees will not pressure a victim to request confidentiality, but will honor and support the victim's wishes, including for The Cooper Union to fully investigate an incident. By the same token, responsible employees will not pressure a victim to make a full report if the victim is not ready to do so.

*Public Awareness Events*

Sharing information regarding an incident of sexual misconduct at a public awareness event, such as Take Back the Night, the Clothesline Project, survivor speak-outs, and other forums, does not constitute notice to The Cooper Union and will not trigger an investigation under this policy.

## CAN I REQUEST THAT THE COOPER UNION NOT TAKE ACTION REGARDING AN INCIDENT?

If a victim of sexual violence discloses an incident to a responsible employee but wishes to maintain confidentiality or requests that no investigation into a particular incident be conducted or disciplinary action taken, The Cooper Union must weigh that request against The Cooper Union's obligation to provide a safe, non-discriminatory environment for all member of The Cooper Union community, including the victim.

If The Cooper Union honors the request for confidentiality, a victim must understand that The Cooper Union's ability to meaningfully investigate the incident and pursue disciplinary action against the alleged perpetrator(s) may be limited.

Although rare, there are times when The Cooper Union may not be able to honor a victim's request in order to provide a safe, non-discriminatory environment for the entire Cooper Union community.

The Title IX Coordinator will evaluate requests for confidentiality once a responsible employee is on notice of alleged sexual violence.  When weighing a victim's request for confidentiality or that no investigation or discipline be pursued, the Title IX Coordinator will consider a range of factors, including the following:

- The increased risk that the alleged perpetrator will commit additional acts of sexual or other violence, such as:
    - whether there have been other sexual violence complaints about the same alleged perpetrator;
    - whether the alleged perpetrator has a history of arrests or records from a prior school indicating a history of violence;

- o whether the alleged perpetrator threatened further sexual violence or other violence against the victim or others;
- o whether the sexual violence was committed by multiple perpetrators;
- whether the sexual violence was perpetrated with a weapon;
- whether the victim is a minor;
- whether The Cooper Union possesses other means to obtain relevant evidence of the sexual violence (e.g., security cameras or personnel, physical evidence);
- whether the victim's report reveals a pattern of perpetration (e.g., via illicit use of drugs or alcohol) at a given location or by a particular group.

The presence of one or more of these factors could lead The Cooper Union to investigate and, if appropriate, pursue disciplinary action. If none of these factors is present, The Cooper Union will likely respect the victim's request for confidentiality.

If The Cooper Union determines that it cannot maintain a victim's confidentiality, The Cooper Union will inform the victim prior to starting an investigation and will, to the extent possible, only share information with people responsible for handling The Cooper Union's response.

The Cooper Union will remain ever mindful of the victim's well-being, and will take ongoing steps to protect the victim from retaliation or harm and work with the victim to create a safety plan. Retaliation against the victim, whether by students or The Cooper Union's employees, will not be tolerated.

The Cooper Union will also:
- assist the victim in accessing other available victim advocacy, academic support, counseling, disability, and health or mental health services;
- provide other security and support, which could include issuing a no-contact order, helping arrange a change of living or working arrangements or course schedules (including for the alleged perpetrator pending the outcome of an investigation) or adjustments for assignments or tests; and
- inform the victim of the right to report a crime to campus or local law enforcement – and provide the victim with assistance if the victim wishes to do so.

The Cooper Union will not require a victim to participate in any investigation or disciplinary proceeding.

Because The Cooper Union is under a continuing obligation to address the issue of sexual violence campus-wide, reports of sexual violence (including non-identifying reports) will also prompt The Cooper Union to consider broader remedial action – such as increased monitoring, supervision or security at locations where the reported sexual violence occurred; increasing education and prevention efforts, including to targeted population groups; conducting climate assessments/victimization surveys; and/or revisiting its policies and practices.

If The Cooper Union determines that it can respect a victim's request for confidentiality, The Cooper Union will also take immediate action as necessary to protect and assist the victim.

## WILL INFORMATION ABOUT AN INCIDENT BE SHARED WITH MY PARENTS?

The Family Educational Rights and Privacy Act (FERPA) allows The Cooper Union to share information with parents when (i) there is a health or safety emergency or (ii) where the student is a dependent on the parent's prior year federal tax return.  Generally speaking, The Cooper Union will not disclose a report of domestic violence, dating violence, sexual assault or stalking to a student's parents without the student's permission.

## DUTY TO REPORT STATISTICS AND TIMELY WARNING

The Cooper Union has a duty to report data about various forms of sexual misconduct in accordance with *The Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Act* (Clery Act). No personally identifiable information is disclosed, but statistical information is disclosed as part of The Cooper Union's Annual Security Report. The information to be shared includes the date, location type (residence hall, public property, off-campus, etc.), and specific crime category.

The Clery Act also requires The Cooper Union to issue a "timely warning" when it receives a report of a crime that poses a serious and continuing threat to the campus community, except in circumstances where the issuance of the warning may compromise pending law enforcement efforts.  No personally identifying information about the victim will be disclosed.

## ADDITIONAL GOVERNMENT RESOURCES

The government resources listed here may provide additional assistance for students wishing to file an external complaint of sexual misconduct or students with inquiries regarding the application of Title IX and its implementing regulations:

http://www.notalone.gov

U.S. Department of Education, Office for Civil Rights
http://www.ed.gov/ocr

US Department of Education
Office for Civil Rights
New York – Region II
32 Old Slip, 26th Floor
New York, NY 10005
646-428-3800
OCR.NewYork@ed.gov

U.S. Department of Justice, Office on Violence Against Women
http://www.ovw.usdoj.gov

US Department of Justice
Office on Violence Against Women
145 N Street, NE, Suite 10W.121
Washington, DC 20530
(202) 307-6026

# COMPLAINTS OF DISCRIMINATION, IDENTITY-BASED OR DISCRIMINATORY HARASSMENT, AND RETALIATION INVOLVING STUDENTS, FACULTY, STAFF AND THIRD PARTIES

*(Complaints of sexual or sex-based harassment, sexual assault, sexual exploitation, dating violence, domestic violence, and stalking are governed by separate procedures, which can be found elsewhere in this policy.)*

All members of The Cooper Union community are expected to adhere to The Cooper Union's policies and to cooperate with the procedures for responding to complaints of discrimination and harassment. All are encouraged to report any conduct believed to be in violation of these policies. It is in the best interest of the entire Cooper Union community for incidents of discrimination and harassment to be reported and addressed promptly.

Management and supervisory personnel in particular are responsible for taking reasonable and necessary action to prevent discrimination and harassment in the workplace and for responding promptly and thoroughly to any such claims. Those individuals include any officer or dean having formal supervisory responsibility over employees.

Any person who believes that he or she has been the subject of discrimination or harassment may initially choose to deal with the alleged offender directly through a face-to-face discussion, a personal telephone conversation, e-mail correspondence, or letters. In many cases, this may effectively resolve the situation; however, individuals are not required to address the alleged offender directly. Such an approach may be ineffective in correcting the problem, or an individual may be uncomfortable in handling the situation alone.

Any individual who believes he or she has been subjected to discrimination or harassment should submit a complaint, if possible in writing.  After a complaint is received it will be referred to the Equal Opportunity Officer.

**To Whom Should Complaints Be Submitted**

If the complainant or respondent is a student, complaints can be submitted to the Equal Opportunity Officer, the Dean of Students, the Associate Dean of Students, or an Academic Dean.

If the complainant or respondent is a faculty member, complaints can be submitted to the Equal Opportunity Officer or an Academic Dean.

If the complainant or respondent is a staff member, complaints can be submitted to the Equal Opportunity Officer, the Director of Human Resources, or the employee's manager.

If the complainant or respondent is a third party doing business with the Cooper Union, complaints can be submitted to the Equal Opportunity Officer or the Director of Human Resources.

**Negotiated Resolution**

Where appropriate and with the consent of the Complainant, the Equal Opportunity Officer or their designee may attempt to mediate a resolution of the matter as amicably and privately as possible.  If a satisfactory resolution is reached, the matter will be considered closed.  If it becomes clear that a mediated resolution will not be possible, the matter will be investigated.

**Formal Investigation**

In the event mediation is unsuccessful or inappropriate, the Equal Opportunity Officer or their designee will designate an investigator.  The investigator will interview the complainant, the respondent and any material witnesses and will review any relevant documents or other evidence.  The investigator will then make a determination as to whether it is more likely than not that a policy violation has occurred.

**Notification of Outcome**

At the conclusion of the investigation under any of the procedures set forth above, the complaining party and the accused party will be notified of the outcome of the investigation.

**Discipline**

If a policy violation is found, appropriate discipline will be imposed.  If the respondent is a student, the Equal Opportunity Officer will consult with the Dean of Students and the student's academic dean to determine the appropriate discipline.  If the respondent is a faculty member, the Equal Opportunity Officer will consult with the academic dean to determine appropriate discipline.  If the respondent is a staff member, the Equal Opportunity officer will consult with the Director of Human Resources and/or the employee's manager to determine the appropriate discipline.

Penalties for a violation include, but are not limited to:

- warning
- probation
- loss of privileges
- demotion
- revocation of degree
- revocation of honors or awards

- training/counseling
- withholding promotion or pay increase
- suspension
- expulsion
- termination of employment

**IMPORTANT NOTICE TO ALL EMPLOYEES: Employees who have experienced conduct they believe is contrary to this policy have an obligation to take advantage of this complaint procedure. An employee's failure to fulfill this obligation could affect his or her rights in pursuing legal action. Also, please note, federal, state and local discrimination laws establish specific time frames for initiating a legal proceeding pursuant to those laws.**

**Separate Rights of Faculty and Bargaining Unit Staff**

Complaints against persons represented by a labor organization will be handled in a manner that is consistent with the applicable collective bargaining agreement.  Nothing herein precludes faculty and bargaining unit staff from seeking redress under their collective bargaining agreements.

**APPENDIX--NYS PENAL LAW**

Although The Cooper Union only enforces its own policies, community members should be aware that some of the conduct prohibited by Cooper Union Policy may also be a violation of the New York state penal law.

The Penal Law and Social Services Law definitions in this document are provided for information purposes only.  Those interested in filing a complaint with the police are encouraged to do so, and The Cooper Union will assist any complainant in contacting law enforcement.

New York Penal Code Section:

130.05 Sex offenses; lack of consent.

   1.  Whether or not specifically stated, it is an element of every  offense defined in this article that the sexual act was committed without consent of the victim.

   2. Lack of consent results from:

   (a) Forcible compulsion; or

   (b) Incapacity to consent; or

   (c)  Where the offense charged is sexual abuse or forcible touching, any circumstances, in addition to forcible compulsion or incapacity to consent, in which the victim does not expressly or impliedly acquiesce in the actor's conduct; or

   (d) Where the offense charged is rape in the third degree as defined in subdivision three of section 130.25, or criminal sexual act in the third degree as defined in subdivision three of section 130.40, in addition to forcible compulsion, circumstances under which, at the time of the act of intercourse, oral sexual conduct or anal sexual conduct, the victim clearly expressed that he or she did not consent to engage in such act, and a reasonable person in the actor's situation would have understood such person's words and acts as an expression of lack of consent to such act under all the circumstances.

   3. A person is deemed incapable of consent when he or she is:

   (a) less than seventeen years old; or

   (b) mentally disabled; or

   (c) mentally incapacitated; or

   (d) physically helpless; or

   (e)  committed to the care and custody or supervision of the state department of corrections and community supervision or a hospital, as such term is defined in subdivision two of section four hundred of the correction law, and the actor is an employee who knows or reasonably should know that such person is committed to the care and custody or supervision of such department or hospital. For purposes of this paragraph, "employee" means

        (i) an employee of the state department of corrections and community supervision who, as part of his or her employment, performs duties: (A) in a state correctional facility in which the victim is confined at the time of the offense consisting of providing custody, medical or mental health services, counseling services, educational programs, vocational training,

institutional parole services or direct supervision to inmates; or (B) of supervising persons released on community supervision and supervises the victim at the time of the offense or has supervised the victim and the victim is still under community supervision at the time of the offense; or

(ii) an employee of the office of mental health who, as part of his or her employment, performs duties in a state correctional facility or hospital, as such term is defined in subdivision two of section four hundred of the correction law in which the inmate is confined at the time of the offense, consisting of providing custody, medical or mental health services, or direct supervision to such inmates; or

(iii) a person, including a volunteer, providing direct services to inmates in a state correctional facility in which the victim is confined at the time of the offense pursuant to a contractual arrangement with the state department of corrections and community supervision or, in the case of a volunteer, a written agreement with such department, provided that the person received written notice concerning the provisions of this paragraph; or

(f) committed to the care and custody of a local correctional facility, as such term is defined in subdivision two of section forty of the correction law, and the actor is an employee, not married to such person, who knows or reasonably should know that such person is committed to the care and custody of such facility. For purposes of this paragraph, "employee" means an employee of the local correctional facility where the person is committed who performs professional duties consisting of providing custody, medical or mental health services, counseling services, educational services, or vocational training for inmates. For purposes of this paragraph, "employee" shall also mean a person, including a volunteer or a government employee of the state department of corrections and community supervision or a local health, education or probation agency, providing direct services to inmates in the local correctional facility in which the victim is confined at the time of the offense pursuant to a contractual arrangement with the local correctional department or, in the case of such a volunteer or government employee, a written agreement with such department, provided that such person received written notice concerning the provisions of this paragraph; or

(g) committed to or placed with the office of children and family services and in residential care, and the actor is an employee, not married to such person, who knows or reasonably should know that such person is committed to or placed with such office of children and family services and in residential care. For purposes of this paragraph, "employee" means an employee of the office of children and family services or of a residential facility in which such person is committed to or placed at the time of the offense who, as part of his or her employment, performs duties consisting of providing custody, medical or mental health services, counseling services, educational services, vocational training, or direct supervision to persons committed to or placed in a residential facility operated by the office of children and family services; or

(h) a client or patient and the actor is a health care provider or mental health care provider charged with rape in the third degree as defined in section 130.25, criminal sexual act in the third degree as defined in section 130.40, aggravated sexual abuse in the fourth degree as defined in section 130.65-a, or sexual abuse in the third degree as defined in section 130.55, and the act of sexual conduct occurs during a treatment session, consultation, interview, or examination; or

(i) a resident or inpatient of a residential facility operated, licensed or certified by (i) the office of mental health; (ii) the office for people with developmental disabilities; or (iii) the office of alcoholism and substance abuse services, and the actor is an employee of the facility not married to such resident or inpatient. For purposes of this paragraph, "employee" means either: an employee of the agency operating the residential facility, who knows or reasonably should know that such person is a resident or inpatient of such facility and who provides direct care services, case management services, medical or other clinical services, habilitative services or direct supervision of the residents in the facility in which the resident resides; or an officer or other employee, consultant, contractor or volunteer of the residential facility, who knows or reasonably should know that the person is a resident of such facility and who is in direct contact with residents or inpatients; provided, however, that the provisions of this paragraph shall only apply to a consultant, contractor or volunteer providing services pursuant to a contractual arrangement with the agency operating the residential facility or, in the case of a volunteer, a written agreement with such facility, provided that the person received written notice concerning the provisions of this paragraph; provided further, however, "employee" shall not include a person with a developmental disability who is or was receiving services and is also an employee of a service provider and who has sexual contact with another service recipient who is a consenting adult who has consented to such contact.

130.20 Sexual misconduct.
   A person is guilty of sexual misconduct when:
   1. He or she engages in sexual intercourse with another person without such person's consent; or
   2.  He or she engages in oral sexual conduct or anal sexual conduct with another person without such person's consent; or
   3. He or she engages in sexual conduct with an animal or a dead human body.
   Sexual misconduct is a class A misdemeanor.

 § 130.25 Rape in the third degree.
   A person is guilty of rape in the third degree when:
   1.  He or she engages in sexual intercourse with another person who is incapable of consent by reason of some factor other than being less than seventeen years old;
   2. Being twenty-one years old or more, he or she engages in sexual intercourse with another person less than seventeen years old; or
   3. He or she engages in sexual intercourse with another person without such person's consent where such lack of consent is by reason of some factor other than incapacity to consent.
   Rape in the third degree is a class E felony.

§ 130.30 Rape in the second degree.
   A person is guilty of rape in the second degree when:
   1.  being eighteen years old or more, he or she engages in sexual intercourse with another person less than fifteen years old; or

2. he or she engages in sexual intercourse with another person who is incapable of consent by reason of being mentally disabled or mentally incapacitated. It shall be an affirmative defense to the crime of rape in the second degree as defined in subdivision one of this section that the defendant was less than four years older than the victim at the time of the act.
  Rape in the second degree is a class D felony.

§ 130.35 Rape in the first degree.
  A person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person:
  1. By forcible compulsion; or
  2. Who is incapable of consent by reason of being physically helpless; or
  3. Who is less than eleven years old; or
  4. Who is less than thirteen years old and the actor is eighteen years old or more.
  Rape in the first degree is a class B felony.

§ 130.40 Criminal sexual act in the third degree.
  A person is guilty of criminal sexual act in the third degree when:
  1.  He or she engages in oral sexual conduct or anal sexual conduct with a person who is incapable of consent by reason of some factor other than being less than seventeen years old;
  2. Being twenty-one years old or more, he or she engages in oral sexual conduct or anal sexual conduct with a person less than seventeen years old; or
  3. He or she engages in oral sexual conduct or anal sexual conduct with another person without such person's consent where such lack of consent is by reason of some factor other than incapacity to consent.
  Criminal sexual act in the third degree is a class E felony.

  § 130.45 Criminal sexual act in the second degree.
  A person is guilty of criminal sexual act in the second degree when:
  1.  being eighteen years old or more, he or she engages in oral sexual conduct or anal sexual conduct with another person less than fifteen years old; or
  2.  he or she engages in oral sexual conduct or anal sexual conduct with another person who is incapable of consent by reason of being mentally disabled or mentally incapacitated.
  It shall be an affirmative defense to the crime of criminal sexual act in  the second degree as defined in subdivision one of this section that the defendant was less than four years older than the victim at the time of the act.
  Criminal sexual act in the second degree is a class D felony.

130.50 Criminal sexual act in the first degree.
  A person is guilty of criminal sexual act in the first degree when he or she engages in oral sexual conduct or anal sexual conduct with another person:
  1. By forcible compulsion; or
  2. Who is incapable of consent by reason of being physically helpless; or
  3. Who is less than eleven years old; or

4. Who is less than thirteen years old and the actor is eighteen years old or more.
Criminal sexual act in the first degree is a class B felony.


§ 130.52 Forcible touching.
A person is guilty of forcible touching when such person intentionally, and for no legitimate purpose, forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such person; or for the purpose of gratifying the actor's sexual desire.
For the purposes of this section, forcible touching includes squeezing, grabbing or pinching.
Forcible touching is a class A misdemeanor.


§ 130.53 Persistent sexual abuse.
A person is guilty of persistent sexual abuse when he or she commits the crime of forcible touching, as defined in section 130.52 of this article, sexual abuse in the third degree, as defined in section 130.55 of this article, or sexual abuse in the second degree, as defined in section 130.60 of this article, and, within the previous ten year period, excluding any time during which such person was incarcerated for any reason, has been convicted two or more times, in separate criminal transactions for which sentence was imposed on separate occasions, of forcible touching, as defined in section 130.52 of this article, sexual abuse in the third degree as defined in section 130.55 of this article, sexual abuse in the second degree, as defined in section 130.60 of this article, or any offense defined in this article, of which the commission or attempted commission thereof is a felony.
Persistent sexual abuse is a class E felony.

§ 130.55 Sexual abuse in the third degree.
A person is guilty of sexual abuse in the third degree when he or she subjects another person to sexual contact without the latter's consent; except that in any prosecution under this section, it is an affirmative defense that (a) such other person's lack of consent was due solely to incapacity to consent by reason of being less than seventeen years old, and (b) such other person was more than fourteen years old, and (c) the defendant was less than five years older than such other person.
Sexual abuse in the third degree is a class B misdemeanor.


§ 130.60 Sexual abuse in the second degree.
A person is guilty of sexual abuse in the second degree when he or she subjects another person to sexual contact and when such other person is:
1. Incapable of consent by reason of some factor other than being less than seventeen years old; or
2. Less than fourteen years old.
Sexual abuse in the second degree is a class A misdemeanor.

§ 130.65 Sexual abuse in the first degree.

A person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact:

1. By forcible compulsion; or

2. When the other person is incapable of consent by reason of being physically helpless; or

3. When the other person is less than eleven years old; or

4. When the other person is less than thirteen years old and the actor is twenty-one years old or older.

Sexual abuse in the first degree is a class D felony.

§ 130.65-a Aggravated sexual abuse in the fourth degree.

1. A person is guilty of aggravated sexual abuse in the fourth degree when:

(a) He or she inserts a foreign object in the vagina, urethra, penis, rectum  or  anus  of another person and the other person is incapable of consent by reason of some factor other than being  less  than  seventeen years old; or

(b)  He  or she inserts a finger in the vagina, urethra, penis, rectum or anus of another person causing physical injury  to  such  person  and such  person is incapable of consent by reason of some factor other than being less than seventeen years old.

2. Conduct performed for a valid medical purpose does not violate the provisions of this section.

Aggravated sexual abuse in the fourth degree is a class E felony.

§ 130.66 Aggravated sexual abuse in the third degree.

1. A  person is guilty of aggravated sexual abuse in the third degree when he or she inserts a foreign object in the vagina,  urethra,  penis, rectum or anus of another person:

(a) By forcible compulsion; or

(b)  When  the other person is incapable of consent by reason of being physically helpless; or

(c) When the other person is less than eleven years old.

2. A person is guilty of aggravated sexual abuse in the third degree when he or she inserts a foreign object in the vagina, urethra, penis, rectum or anus of another person causing physical injury to such person and such person is incapable of consent by reason of being mentally disabled or mentally incapacitated.

3. Conduct performed for a valid medical purpose does not violate the provisions of this section.

Aggravated sexual abuse in the third degree is a class D felony.

§ 130.67 Aggravated sexual abuse in the second degree.

1. A  person is guilty of aggravated sexual abuse in the second degree  when he or she inserts a finger in the vagina, urethra, penis, rectum or anus of another person causing physical injury to such person:

(a) By forcible compulsion; or

(b) When the other person is incapable of consent by reason of being physically helpless; or

(c) When the other person is less than eleven years old.

2.  Conduct performed for a valid medical purpose does not violate the provisions of this section.

Aggravated sexual abuse in the second degree is a class C felony.

§ 130.65 Sexual abuse in the first degree.

A  person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact:

1. By forcible compulsion; or

2. When the other person is incapable of consent by reason of being physically helpless; or

3. When the other person is less than eleven years old; or

4. When the other person is less than thirteen years old and the actor is twenty-one years old or older.

Sexual abuse in the first degree is a class D felony.

§ 130.90 Facilitating a sex offense with a controlled substance.

A  person  is  guilty  of facilitating a sex offense with a controlled substance when he or she:

1. knowingly and unlawfully possesses a controlled substance or any preparation, compound, mixture or substance that requires a prescription to obtain and administers such substance or preparation, compound, mixture or substance that requires a prescription to obtain to another person without such person's consent and with intent to commit against such person conduct constituting a felony defined in this article; and

2. commits or attempts to commit such conduct  constituting  a  felony defined in this article.

Facilitating  a  sex  offense with a controlled substance is a class D felony.

§ 130.95 Predatory sexual assault.

A  person is guilty of predatory sexual assault when he or she commits the crime of rape in the first degree, criminal sexual act in the first degree, aggravated sexual abuse in the first degree, or course of sexual conduct against a child in the first degree, as defined in this article, and when:

1.  In the course of the commission of the crime or the immediate flight therefrom, he or she:

(a) Causes serious physical injury to the victim of such crime; or

(b) Uses or threatens the immediate use of a dangerous instrument; or

2. He or she has engaged in conduct constituting the crime of rape in the first degree, criminal sexual act in the first degree, aggravated  sexual abuse in the first degree, or course of sexual conduct against a child in the first degree, as defined in this article, against one or more additional persons; or

3. He or she has previously been subjected to a conviction for a felony defined in this article, incest as defined in section 255.25 of this chapter or use of a child in a sexual performance as defined in section 263.05 of this chapter.

Predatory sexual assault is a class A-II felony.

§ 130.96 Predatory sexual assault against a child.

A person is guilty of predatory sexual assault against a child when, being eighteen years old or more, he or she commits the crime of rape in the first degree, criminal sexual act in the first

degree, aggravated sexual abuse in the first degree, or course of sexual conduct against a child in the first degree, as defined in this article, and the victim is less than thirteen years old.

  Predatory sexual assault against a child is a class A-II felony.


§ 120.45 Stalking in the fourth degree.

  A person is guilty of stalking in the fourth degree when he or she intentionally, and for no legitimate purpose, engages in a course of conduct directed at a specific person, and knows or reasonably should know that such conduct:

  1. is likely to cause reasonable fear of material harm to the physical health, safety or property of such person, a member of such person's immediate family or a third party with whom such person is acquainted;  or

  2. causes material harm to the mental or emotional health of such person, where such conduct consists of following, telephoning or initiating communication or contact with such person, a member of such person's immediate family or a third party with whom such person is acquainted, and the actor was previously clearly informed to cease that conduct; or

  3.  is  likely to cause such person to reasonably fear that his or her employment, business or career is threatened, where such conduct consists of appearing, telephoning or initiating communication or contact at such person's place of employment or business, and the actor was previously clearly informed to cease that conduct.

 For the purposes of subdivision two of this section, "following" shall include the unauthorized tracking of such person's movements or location through the use of a global positioning system or other device.

  Stalking in the fourth degree is a class B misdemeanor.


120.50 Stalking in the third degree.

  A person is guilty of stalking in the third degree when he or she:

  1.  Commits the crime of stalking in the fourth degree in violation of section 120.45 of this article against three or more persons, in three or more separate transactions, for which the actor has not been previously convicted; or

  2. Commits the crime of stalking in the fourth degree in violation of section 120.45 of this article against any person, and has previously been convicted, within the preceding ten years of a specified predicate crime, as defined in subdivision five of section 120.40 of this article, and the victim of such specified predicate crime is the victim, or an immediate family member of the victim, of the present offense; or

  3.  With intent to harass, annoy or alarm a specific  person, intentionally engages in a course of conduct directed at such person which is likely to cause such person to reasonably fear physical injury or serious physical injury, the commission of a sex offense against, or the kidnapping, unlawful imprisonment or death of such person or a member of such person's immediate family; or

  4.  Commits the crime of stalking in the fourth degree and has previously been convicted within the preceding ten years of stalking in the fourth degree.

  Stalking in the third degree is a class A misdemeanor.

§ 120.55 Stalking in the second degree.

A person is guilty of stalking in the second degree when he or she:

1. Commits the crime of stalking in the third degree as defined in subdivision three of section 120.50 of this article and in the course of and in furtherance of the commission of such offense: (i) displays, or possesses and threatens the use of, a firearm, pistol, revolver, rifle, shotgun, machine gun, electronic dart gun, electronic stun gun, cane sword, billy, blackjack, bludgeon, plastic knuckles, metal knuckles, chuka stick, sand bag, sandclub, slingshot, slungshot, shirken, "Kung Fu Star", dagger, dangerous knife, dirk, razor, stiletto, imitation pistol, dangerous instrument, deadly instrument or deadly weapon; or (ii) displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; or

2. Commits the crime of stalking in the third degree in violation of subdivision three of section 120.50 of this article against any person, and has previously been convicted, within the preceding five years, of a specified predicate crime as defined in subdivision five of section 120.40 of this article, and the victim of such specified predicate crime is the victim, or an immediate family member of the victim, of the present offense; or

3. Commits the crime of stalking in the fourth degree and has previously been convicted of stalking in the third degree as defined in subdivision four of section 120.50 of this article against any person; or

4. Being twenty-one years of age or older, repeatedly follows a person under the age of fourteen or engages in a course of conduct or repeatedly commits acts over a period of time intentionally placing or attempting to place such person who is under the age of fourteen in reasonable fear of physical injury, serious physical injury or death; or

5. Commits the crime of stalking in the third degree, as defined in subdivision three of section 120.50 of this article, against ten or more persons, in ten or more separate transactions, for which the actor has not been previously convicted.

Stalking in the second degree is a class E felony.

§ 120.60 Stalking in the first degree.

A person is guilty of stalking in the first degree when he or she commits the crime of stalking in the third degree as defined in subdivision three of section 120.50 or stalking in the second degree as defined in section 120.55 of this article and, in the course and furtherance thereof, he or she:

1. intentionally or recklessly causes physical injury to the victim of such crime; or

2. commits a class A misdemeanor defined in article one hundred thirty of this chapter, or a class E felony defined in section 130.25, 130.40 or 130.85 of this chapter, or a class D felony defined in section 130.30 or 130.45 of this chapter.

Stalking in the first degree is a class D felony.

Social Services Law section 459-a provides

"Victim of domestic violence" means any person over the age of sixteen, any married person or any parent accompanied by his or her minor child or children in situations in which such person or such person's child is a victim of an act which would constitute a violation of the penal law, including, but not limited to acts constituting disorderly conduct, harassment,

aggravated harassment, sexual misconduct, forcible touching, sexual abuse, stalking, criminal mischief, menacing, reckless endangerment, kidnapping, assault, attempted assault, attempted murder, criminal obstruction of breathing or blood circulation, or strangulation; and (i) such act or acts have resulted in actual physical or emotional injury or have created a substantial risk of physical or emotional harm to such person or such person's child; and (ii) such act or acts are or are alleged to have been committed by a family or household member.

  2. "Family or household members" mean the following individuals:

  (a) persons related by consanguinity or affinity;

  (b) persons legally married to one another;

  (c) persons formerly married to one another regardless of whether they still reside in the same household;

  (d) persons who have a child in common regardless of whether such persons are married or have lived together at any time;

  (e)  unrelated persons who are continually or at regular intervals living in the same household or who have in the past continually or at regular intervals lived in the same household;

  (f)  persons who are not related by consanguinity or affinity and who are or have been in an intimate relationship regardless of whether such persons have lived together at any time. Factors that may be considered in determining whether a relationship is an "intimate relationship" include, but are not limited to: the nature or type of relationship, regardless of whether the relationship is sexual in nature; the frequency of interaction between the persons; and the duration of the relationship. Neither a casual acquaintance nor ordinary fraternization between two individuals in business or social contexts shall be deemed to constitute an "intimate relationship"; or

  (g) any other category of individuals deemed to be a victim of domestic violence as defined by the office of children and family services in regulation.

  3. "Parent" means a natural or adoptive parent or any individual lawfully charged with a minor child's care or custody.