## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| REBECCA GARTENBERG, PERIE HOFFMAN, JACOB KHALILI, GABRIEL KRET, TAYLOR ROSLYN LENT, BENJAMIN MEINER, MICHELLE MEINER, MEGHAN NOTKIN, GILA ROSENZWEIG, and ANNA WEISMAN,<br><br><br>Plaintiffs,<br><br>v.<br><br>THE COOPER UNION FOR THE ADVANCEMENT OF SCIENCE AND ART,<br><br><br>Defendant. | Case No. 24-cv-2669<br><br>Hon. John P. Cronan, U.S.D.J. |

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT AND MOTION TO STRIKE

Aaron Stiefel
Debra E. Schreck
Shlomo Amar (*pro hac vice* application forthcoming)
Melissa E. Romanovich (*pro hac vice* application forthcoming)
Ziva M. Rubinstein (*pro hac vice* application forthcoming)
Alex S. Tepler
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street New York, NY 10019-9710
T: 212.836.8000
F: 212.836.8689
aaron.stiefel@arnoldporter.com
debra.schreck@arnoldporter.com

Baruch Weiss
Bridgette C. Gershoni (*pro hac vice* application forthcoming)
Michael J. Gershoni (*pro hac vice* application forthcoming)
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave, NW
Washington, DC 20001-3743
P: 202.942.5000
F: 202.942.5999
baruch.weiss@arnoldporter.com

Ziporah Reich
**THE LAWFARE PROJECT**
633 Third Avenue, 21st Floor
New York, NY 10017
T: 212.339.6995
brooke@thelawfareproject.org
ziporah@thelawfareproject.org

*Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT.................................................................................... 1

ARGUMENT ............................................................................................................... 3

I.    LEGAL STANDARD ........................................................................................ 3

II.   PLAINTIFFS HAVE SUFFICIENTLY PLED A TITLE VI CLAIM................................. 3

    A.    The Prohibitions of Title VI Extend to Antisemitism ............................. 3

    B.    Plaintiffs Have Sufficiently Alleged That Defendant Violated Title VI
        Because It Was Deliberately Indifferent to the Existence of a Hostile
        Educational Environment.................................................................. 6

        1.    The Complaint Alleges Plaintiffs Experienced "Severe" or
            "Pervasive" Harassment at CU that Deprived Them of CU's
            Educational Opportunities and Benefits ...................................... 6

            a.    Plaintiffs Endured "Severe" or "Pervasive" Harassment at
                CU ................................................................................ 7

            b.    The "Severe" or "Pervasive" Hostile Environment at CU
                Has Deprived Plaintiffs of Educational Benefits and
                Opportunities................................................................. 10

        2.    Defendant Was Deliberately Indifferent to the Hostile Environment........11

            a.    CU's Actions and Inactions Were Unreasonable in Light of
                the Circumstances ..........................................................11

            b.    Defendant's Continued Deliberate Indifference Makes
                Plaintiffs Vulnerable to Continued Harassment........................... 12

    C.    CU Is a Private Institution and Is Not Bound by the First Amendment ............... 14

III.  THE COMPLAINT PROPERLY STATES CLAIMS UNDER NEW YORK
      STATE AND NEW YORK CITY LAWS ...................................................... 16

IV.   PLAINTIFFS SUFFICIENTLY ALLEGE BREACH OF CONTRACT........................ 17

    A.    CU's Policies Are Binding Contracts Containing Specific Promises to
        Enrolled Students ............................................................................ 18

    B.    CU's Purported "Broad Discretion" Does Not Negate the Breaches .................. 19

i

V.    THE COMPLAINT SUFFICIENTLY ALLEGES PLAINTIFFS' COMMON LAW CLAIMS ........................................................................................ 20

    A.    Plaintiffs Sufficiently Allege Common Law Negligence ..................................... 20

    B.    Plaintiffs Sufficiently Allege Common Law Premises Liability ......................... 21

    C.    Plaintiffs Sufficiently Allege Negligent Infliction of Emotional Distress ........... 22

VI.    PLAINTIFFS' REQUESTED RELIEF IS PROPER ........................................................ 23

    A.    Plaintiffs Are Entitled to Punitive Damages ......................................................... 24

    B.    Plaintiffs Are Entitled To Injunctive Relief .......................................................... 24

CONCLUSION ....................................................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Annabi v. New York Univ.*,
  2023 WL 6393422 (S.D.N.Y. 2023) ...................................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................3

*Aslin v. Univ. of Rochester*,
  2019 WL 4112130 (W.D.N.Y. 2019) ..............................................................13

*Aulicino v. New York City Dep't of Homeless Servs.*,
  580 F.3d 73 (2d Cir. 2009) ................................................................................9

*Banks v. Gen. Motors, LLC*,
  81 F.4th 242 (2d Cir. 2023) ............................................................................10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..........................................................................................3

*Brown v. New York Design Ctr., Inc.*,
  215 A.D.3d 1 (1st Dep't 2023) ..........................................................................22

*Caronia v. Philip Morris USA, Inc.*,
  22 N.Y.3d 439 (N.Y. 2013) ........................................................................20, 21

*Chauca v. Abraham*,
  89 N.E.3d 475 (2017) ......................................................................................24

*Christian Legal Soc. v. Martinez*,
  561 U.S. 661 (2010) ........................................................................................14

*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
  526 U.S. 629 (1999) ......................................................................................6, 7

*Doe v. Sarah Lawrence Coll.*,
  453 F. Supp. 3d 653 (S.D.N.Y. 2020) ............................................................18

*Doe v. Syracuse Univ.*,
  440 F. Supp. 3d 158 (N.D.N.Y. 2020) ............................................................20

*Doe v. Yeshiva Univ.*,
  2023 WL 8236316 (S.D.N.Y. 2023) ...............................................................19

*Dube v. State Univ. of N.Y.*,
    900 F.2d 587 (2d Cir.1990)............................................................................14

*Erznoznik v. City of Jacksonville*,
    422 U.S. 205 (1975)..................................................................................16

*Felber v. Yudof*,
    851 F.Supp.2d 1182 (N.D. Cal. 2011) ..........................................................14

*Francis v. Kings Park Manor, Inc.*,
    992 F.3d 67 (2d Cir. 2021)............................................................................3

*Hayut v. State Univ. of N.Y.*,
    352 F.3d 733 (2d Cir. 2003)...............................................................9, 10, 11

*Healy v. James*,
    408 U.S. 169 (1972)..............................................................................14, 15

*Hill v. Colorado*,
    530 U.S. 703 (2000)..................................................................................16

*Hyman v. Cornell Univ.*,
    2017 WL 1194231 (N.D.N.Y. 2017), *aff'd*, 721 F. App'x 5 (2d Cir. 2017) ..........17

*In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*,
    528 F. Supp. 2d 303 (S.D.N.Y. 2007)...........................................................20

*Katz v. United Synagogue of Conservative Judaism*,
    135 A.D.3d 458 (1st Dep't 2016) .................................................................21

*Lehey v. Northwell Health, Inc.*,
    2024 WL 1703697 (S.D.N.Y. 2024)..............................................................16

*Lipsky v. Commonwealth United Corp.*,
    551 F.2d 887 (2d Cir. 1976)........................................................................23

*Mandel v. Bd. of Trustees of California State Univ.*,
    2018 WL 1242067 (N.D. Cal. 2018) .......................................................10, 14

*Manhattan Cmty. Access Corp. v. Halleck*,
    587 U.S. 802 (2019)..................................................................................14

*Matthew v. Texas Comptroller of Pub. Accts.*,
    2022 WL 4626511 (S.D.N.Y. 2022)..............................................................17

*McGrath v. Dominican Coll. of Blauvelt, New York*,
    672 F. Supp. 2d 477 (S.D.N.Y. 2009)...........................................................22

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
   715 F.3d 102 (2d Cir. 2013)...................................................................16

*Mirand v. City of New York*,
   84 N.Y.2d 44 (1994) ....................................................................20, 21

*Mortimer v. City of New York*,
   2018 WL 1605982 (S.D.N.Y. 2018)........................................................20

*Muniz v. City of New York*,
   2023 WL 6294169 (S.D.N.Y. 2023)........................................................17

*Newman v. Point Park Univ.*,
   2022 WL 969601 (W.D. Pa. 2022) .........................................................14

*Novio v. New York Acad. of Art*,
   286 F. Supp. 3d 566 (S.D.N.Y. 2017)......................................................16

*Pasquaretto v. Long Island Univ.*,
   106 A.D.3d 794 (2d Dep't 2013) ...........................................................21

*Potrzeba v. Sherburne-Earlville High Sch. through Sherburne-Earlville Cent. Sch.
   Dist. Bd. of Educ.*,
   2023 WL 8827178 (N.D.N.Y. 2023) .........................................................22

*Redd v. New York Div. of Parole*,
   678 F.3d 166 (2d Cir. 2012)...................................................................7

*Rendell-Baker v. Kohn*,
   457 U.S. 830 (1982)...........................................................................14

*Rodriguez v. City of New York*,
   594 F. Supp. 3d 534 (E.D.N.Y. 2022) ................................................22, 23

*Santos v. Art of Nat'l Beauty Ctr.*,
   58 Misc. 3d 1201(A) (N.Y. Sup. Ct. 2017)...............................................22

*TC v. Valley Cent. Sch. Dist.*,
   777 F. Supp. 2d 577 (S.D.N.Y. 2011), *on reconsideration sub nom.* ..................11

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
   393 U.S. 503 (1969)...........................................................................15

*Tubbs v. Stony Brook Univ.*,
   343 F. Supp. 3d 292 (S.D.N.Y. 2018).......................................................14

*Vega v. Miller*,
   273 F.3d 460 (2d Cir. 2001)..................................................................14

*Virginia v. Black,*
    538 U.S. 343 (2003) ............................................................................... 15

*Widmar v. Vincent,*
    454 U.S. 263 (1981) ........................................................................ 14, 15

*Zeno v. Pine Plains Cent. Sch. Dist.,*
    702 F.3d 655 (2d Cir. 2012) ................................................. 6, 7, 11, 13

## **Other Authorities**

34 C.F.R. § 100.3(b)(1)(iv) ................................................................... 11

N.Y. Exec. Law § 300 ............................................................................ 16

New York Civil Rights Law ........................................................ 1, 16, 17

New York State Human Rights Law ............................................ 1, 16, 17

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* ..................................... *passim*

U.S. Const. amend. I .................................................................. 2, 14, 15, 16

Plaintiffs Rebecca Gartenberg et al. ("Plaintiffs") submit this memorandum of law in opposition to the Motion to Dismiss and Motion to Strike Plaintiffs' Complaint (the "Motion" or "MTD") filed by Defendant The Cooper Union for The Advancement of Science and Art ("CU" or the "School").

## PRELIMINARY STATEMENT

CU's Motion is predicated on a sanitized recasting of the Complaint and ignores or significantly distorts Plaintiffs' allegations of antisemitic harassment, and trivializes the harms Plaintiffs have suffered as a result. The Motion thus mirrors the deliberate indifference CU has exhibited in allowing its campus to devolve into a hostile environment for Jews for whom Israel and Zionism are fundamental to their beliefs and identities. As detailed below, Plaintiffs' 70-page, 231-paragraph Complaint pleads facts that are more than sufficient to state claims under Title VI of the Civil Rights Act of 1964 and the New York State and New York City Human Rights Laws, and claims for breach of contract and tort.

Defendant would have this Court believe that Plaintiffs are complaining about nothing more than protected "geo-political" speech that is anti-Zionist but not antisemitic. CU claims that it is thus powerless to act and has violated no obligations to Plaintiffs. As a university, however, CU is no doubt well aware that characterizing anti-Zionism as untethered to antisemitism has been thoroughly discredited. The U.S. State Department, for example, includes in its definition of antisemitism the delegitimization of the Jewish People's historic and cultural connection to the land of Israel and the denial of Jews' right to self-determination. Hateful chants, such as "From the river to the sea, Palestine will be free," which demand that Jews be denied a homeland in Israel, falls squarely within that definition of antisemitism. Moreover, much of the speech alleged in the Complaint is independent of anti-Zionism. Calls to "Globalize the Intifada from New York to

Gaza" brazenly promote violence against Jews, including in New York—not a political viewpoint. And employing language such as, "there is only one solution: intifada revolution," to invoke Hitler's "final solution" is plainly antisemitism.

Defendant's Motion attempts to deny the fact that CU has permitted antisemitic conduct targeted at Plaintiffs. Yet the ugly October 25, 2023 incident at the CU library detailed in the Complaint was precisely that. A mob of pro-Hamas protesters, who moments earlier called for violence against Jews everywhere, gathered outside of the library and rattled the library's locked doors while yelling, "let us in!" as the identifiably Jewish Plaintiffs stood, plainly visible, inside. As alleged in the Complaint, CU failed to prevent the incident, CU told the police not to intervene, and CU opted not to discipline the wrongdoers and send a message about future misconduct on campus.

As explained in detail below, Plaintiffs' allegations satisfy the Title VI pleading requirements, amply describing the severe and pervasive harassment to which CU has been deliberately indifferent. A private institution subject to the requirements of Title VI, CU cannot shirk its responsibilities to its students, including Plaintiffs, by invoking the First Amendment, which does not even apply to a private school like CU. Moreover, the Complaint identifies specific contractual obligations and promises that CU blatantly breached, as well as negligence on the part of CU, which now refuses to stand behind policies it adopted to ensure a safe campus environment. Plaintiffs are entitled to enjoy the campus opportunities and resources that CU offers without being harassed because they are Jewish and identify with Israel. Plaintiffs have serious claims, and they should have the opportunity to prove those claims at trial. Defendant's Motion should be denied in all respects.

## ARGUMENT

### I.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On a motion to dismiss, the reviewing court must "accept all factual allegations as true, and draw all reasonable inferences in plaintiff's favor." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (internal citation omitted).

### II.     PLAINTIFFS HAVE SUFFICIENTLY PLED A TITLE VI CLAIM

#### A.  The Prohibitions of Title VI Extend to Antisemitism

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*., prohibits discrimination on the basis of "race, color, or national origin" by educational institutions that receive federal funding. This prohibition extends to antisemitism.[1] Indeed, OCR and the U.S. Department of Justice ("DOJ") have emphasized repeatedly that Title VI prohibits discrimination against, including harassment of, Jewish people on the basis of their "actual or perceived . . . shared ancestry or ethnic characteristics."[2] Both the Trump and Biden Administrations have shared OCR's

---

[1] *See* Off. for Civ. Rights ("OCR"), U.S. Dep't of Educ. ("DOE"), Dear Colleague Letter (May 7, 2024), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-202405-shared-ancestry.pdf at 1 ("To be clear, Title VI's protections against discrimination based on race, color, and national origin encompass antisemitism and other forms of discrimination when based on shared ancestry or ethnic characteristics.") ("2024 Dear Colleague Letter").

[2] *See* OCR, DOE, *Dear Colleague Letter* (May 25, 2023), https://www2.ed.gov/about/offices/list/ocr/docs/antisemitism-dcl.pdf at 1 ("2023 Dear Colleague Letter"); OCR, DOE, *Dear Colleague Letter* (Nov. 7, 2023), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-202311-discrimination-harassment-shared-ancestry.pdf; OCR, DOE, *FACT SHEET: Protecting Students from Discrimination Based on Shared Ancestry or Ethnic Characteristics* (Jan. 4, 2023), https://www2.ed.gov/about/offices/list/ocr/docs/ocr-factsheet-shared-ancestry-202301.pdf; OCR, DOE, *Know Your Rights: Title VI and Religion* (Jan. 17, 2017), https://www2.ed.gov/about/offices/list/ocr/docs/know-rights-201701-religious-disc.pdf; OCR, DOE, *Dear Colleague Letter*, (Oct. 26, 2010), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.pdf; Letter from Thomas E. Perez, Asst. Att'y Gen., Civ. Rights Div., DOJ, to Russlyn H. Ali, Asst. Sec'y for Civil Rights, OCR, DOE, *Re: Title VI and Coverage of Religiously Identifiable Groups* (Sept. 8, 2010), https://www.justice.gov/sites/default/files/crt/legacy/2011/05/04/090810_AAG_Perez_Letter_to_Ed_OCR

longstanding view. *See* Complaint ("Compl.") ¶¶ 35, 147 (citing Executive Order 13899 and The U.S. National Strategy to Counter Antisemitism (the "National Antisemitism Strategy")).

Defendant attempts to distinguish antisemitism from anti-Zionism, arguing that Title VI prohibits only the former while the Complaint alleges only the latter. CU treats Zionism as if it were a political view like any other, rather than an integral part of the national origin and identity of many Jews. But for Zionist Jews, including Plaintiffs, their belief in Israel as their ancestral national homeland is fundamental to their Jewish identity. Defendant would deny these individuals the right to define themselves, their histories, and their beliefs. Hate focused on Plaintiffs' shared Zionist ideology targets their identities as Jews; it is indistinguishable from antisemitism.

As OCR recognizes, Jews share more than a common religious faith.  They are a people with a shared national heritage deeply rooted in the land of Israel.[3] For many Jews, Zionism is consonant with their Jewish ancestry—namely, the historic reality that the Jewish people originated in ancient Israel and have yearned to return there for millennia. Hence, the Zionist component of their Judaism is an expression of Jews' shared "national origin," a characteristic explicitly protected by Title VI.

The U.S. government has, therefore, long rejected the argument Defendant attempts here: that anti-Zionism is independent of antisemitism. President Biden's National Antisemitism Strategy describes as follows the plight of Jewish students who are harassed because of their affinity for Israel:

> Jewish students . . . are targeted for derision and exclusion on college campuses, often because of their real or perceived views about the State of Israel. **When Jews**

---

_Title%20VI_and_Religiously_Identifiable_Groups.pdf; OCR, DOE, *Dear Colleague Letter* (Sept. 13, 2004), https://www2.ed.gov/about/offices/list/ocr/letters/religiousrights2004.pdf.

[3] *See 2023 Dear Colleague Letter*, *supra* note 2.

**are targeted because of their beliefs or their identity, when Israel is singled out because of anti-Jewish hatred, that is antisemitism**. And that is unacceptable.[4]

Plaintiffs acknowledge that not every criticism of Israel amounts to actionable antisemitism under Title VI. To assist in determining what constitutes prohibited antisemitism under Title VI, Executive Order 13899 requires that those charged with enforcing Title VI consider the Working Definition of Anti-Semitism adopted by the International Holocaust Remembrance Alliance ("IHRA") and the accompanying "Contemporary Examples of Anti-Semitism,"[5] which must be considered "to the extent" any such "examples might be useful **as evidence** of discriminatory intent."[6]

CU ignores that the Complaint includes allegations that fall squarely within IHRA's examples of extreme forms of anti-Zionism that cross the line from criticism of Israeli policy to prohibited antisemitism, including: (a) "Calling for, aiding, or justifying the killing or harming of Jews in the name of a radical ideology or an extremist view of religion," *see, e.g.*, Compl. ¶ 77 (recounting student protesters' chants for globalization of the intifada, i.e., calling for violence against Jews); and (b) "Denying the Jewish people their right to self-determination, e.g., by claiming that the existence of a State of Israel is a racist endeavor," *see, e.g.*, *id.* ¶ 59 (describing posters plastered across the Foundation Building's windows labeling the Jewish people's right to

---

[4] *See The U.S. National Strategy to Counter Antisemitism*, The White House (May 2023), https://www.whitehouse.gov/wp-content/uploads/2023/05/U.S.-National-Strategy-to-Counter-Antisemitism.pdf at 9 (emphasis added).

[5] As recently as July 17, 2024, the State Department, along with the Foreign Ministries of multiple other countries, issued the following guidance for countering antisemitism: "The legally non-binding '[IHRA] Working Definition of Antisemitism' is an important internationally recognized instrument used by over 40 U.N. member states since its adoption in 2016. In addition, hundreds of sub-national public authorities, universities, sports bodies, NGOs, and corporations rely on it." *Global Guidelines for Countering Antisemitism*, U.S. Dep't of State (July 17, 2024), https://www.state.gov/wp-content/uploads/2024/07/Final-Global-Guidelines-Text-for-Distribution-7.17.24.pdf at 2.

[6] *2024 Dear Colleague Letter*, *supra* note 1, at 17 n.34 (emphasis added); *see also* OCR, DOE, *Questions and Answers on Executive Order 13899 (Combatting Anti-Semitism) and OCR's Enforcement of Title VI of the Civil Rights Act of 1964* (Jan. 19, 2021), https://www2.ed.gov/about/offices/list/ocr/docs/qa-titleix-antisemitism- 20210119.pdf at 1 ("Executive Order 13899 . . . requires federal agencies to consider the [IHRA] working definition of anti-Semitism and the IHRA's contemporary examples of anti-Semitism in enforcing Title VI.").

self-determination a "racist ideolog[y] and movement[]"). Plaintiffs' allegations detail how CU

acted with deliberate indifference toward these and similar forms of unlawful anti-

Zionism/antisemitism on its campus—for months.

### B. Plaintiffs Have Sufficiently Alleged That Defendant Violated Title VI Because It Was Deliberately Indifferent to the Existence of a Hostile Educational Environment

To plead a Title VI violation, Plaintiffs must allege facts sufficient to show: (1) that

Defendant had substantial control over the harassers and the context in which the harassment

occurred; (2) the harassers engaged in severe or pervasive harassment that deprived Plaintiffs of

the School's educational opportunities or benefits; (3) Defendant had "actual knowledge" of the

hostile environment; and (4) Defendant acted with deliberate indifference to the hostile

environment. *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665–66 (2d Cir. 2012). Plaintiffs

have pled each of these elements. Plaintiffs allege that Defendant exercised control over the

students who harassed Plaintiffs, as well as the "context in which the known harassment

occur[ed]." *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 644–45

(1999); *see, e.g.*, Compl. ¶¶ 153, 211. The Complaint also alleges that CU had actual notice of the

harassment and hostile environment Plaintiffs were enduring, as well as other safety concerns CU

failed to address. *See, e.g.*, Compl. ¶¶ 67, 71, 74, 97, 112. The remaining elements of a Title VI

claim—severe or pervasive harassment and "deliberate indifference"—are addressed in turn,

below.

### 1. The Complaint Alleges Plaintiffs Experienced "Severe" or "Pervasive" Harassment at CU that Deprived Them of CU's Educational Opportunities and Benefits

Contrary to Defendant's inaccurate assertion that Plaintiffs take issue only with

Defendant's "fail[ure] to stop the October 25 Protest," MTD at 14, the Complaint alleges deliberate

indifference based on a slew of actions and inactions by CU that "cause[d] students to undergo

harassment" on and after October 25 and thereafter that has been severe and/or pervasive. *Davis*, 526 U.S. at 630. The Complaint makes clear that Plaintiffs have suffered more than "just [a] few isolated incidents or 'sporadic racial slurs.'" MTD at 8.[7] As a result of the hostile environment, Plaintiffs have been deprived of the educational benefits and other opportunities at CU.

### a.  Plaintiffs Endured "Severe" or "Pervasive" Harassment at CU

Contrary to CU's assertion, the Complaint pleads facts showing Plaintiffs were "personally singled out for being Jewish or subjected to antisemitic insults," MTD at 8, and the harassment they experienced was thus "severe" or "pervasive." *Zeno*, 702 F.3d at 667. Harassment is "severe" or "pervasive" when it "undermines and detracts from the victims' educational experience, [such] that the victims are effectively denied equal access to an institution's resources and opportunities." *Davis*, 526 U.S. at 651. Plaintiffs "need not show that [the] hostile [educational] environment was both severe *and* pervasive; only that it was sufficiently severe *or* sufficiently pervasive." *Redd v. New York Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012) (emphasis in original). Even a single act can be so "severe" or "pervasive" that it creates a hostile educational environment for students in violation of Title VI. *See id.* at 175–76 (collecting cases).

---

[7] *See, e.g.*, Compl. ¶¶ 49–53 (Defendant, unlike other peer institutions and inconsistent with its past practices in comparable situations, made no statement immediately after the heinous October 7 Hamas attacks to express unequivocal support for its Jewish students who stand with Israel); *id.* ¶¶ 54–55 (Defendant permitted students to vandalize and tear down posters of kidnapped Israelis, without consequence); *id.* ¶¶ 57–68 (Defendant failed to immediately remove inflammatory posters with antisemitic messaging plastered across the Foundation Building's large windows, in violation of School policies, before returning them intact to the students who subsequently re-posted them elsewhere); *id.* ¶¶ 69–75 (administrators ignored Plaintiffs' warnings about the potential for violence at the planned October 25 protest, instead suggesting that Plaintiffs and other Jewish students stay inside during the protest); *id.* ¶¶ 77–80 (during the October 25 protest, protesters shouted antisemitic slogans and calls for violence and eventually stormed past building security unimpeded); *id.* ¶¶ 81, 89 (Defendant declined police intervention despite multiple calls from Plaintiffs who feared for their safety); *id.* ¶¶ 104, 111 (more anti-Israel and antisemitic posters and fliers have been hung around campus since October 7, including those calling for violence against Jews—e.g., "intifada" and resistance "by any means necessary"); *id.* ¶¶ 91 & n. 25, 97–98 (CU's messaging to the School community has, time and again, minimized the trauma Plaintiffs endured during the October 25 protest and thereafter); *id.* ¶ 99 (CU has failed to discipline flagrant violations of school policies); *id.* ¶ 112 (CU has continued to endorse and support antisemitic programming on its campus); *id.* ¶¶ 107–09 (Plaintiffs' peers, professors, and alumni have minimized their trauma and expressed solidarity against them and against those who support Israel).

Plaintiffs have been repeatedly singled out, ridiculed, and antagonized because of their Jewish and pro-Israel identities, which has contributed to a hostile environment on CU's campus.[8] The Complaint alleges, for example, that, on October 25, "demonstrators shouted antisemitic chants and threats of violence—directed at Plaintiffs and other Jewish and/or pro-Israel students." Compl. ¶ 77. Those chants included: "Globalize the intifada from New York to Gaza," "There is only one solution intifada revolution," "Long live the intifada," "Resistance is justified when people are occupied," "Hey hey, ho ho, Israel has got to go," "It is right to rebel, Israel go to Hell," and "Shame on you." *Id.* ¶ 77. Later, outside of the library, the protesters again singled out Plaintiffs, pounding on the doors and glass windows, shouting hateful slogans and holding intimidating signs bearing antisemitic, anti-Israel messaging while Plaintiffs were readily observable inside. *Id.* ¶¶ 85–87. These are not policy pronouncements about the State of Israel; they are calls for violence against Jews, including in New York, directed at Plaintiffs and other Jews on the CU campus. As recited in the Complaint, Plaintiffs were targeted because they are Jewish and pro-Israel. *See, e.g.*, *id.* ¶¶ 92–93; *id.* ¶¶ 85–86.

Even after October 25, the School's actions and inactions—e.g., permitting the plastering of hateful anti-Israel, antisemitic posters, stickers, graffiti, and fliers on campus in violation of the School's own policies—have continued to facilitate anti-Israel harassment on campus targeting Jewish students, including Plaintiffs. *Id.* ¶¶ 104, 202. Plaintiffs' peers, faculty, and alumni have also singled them, and other Jewish students, out for their identities and affinity for Israel. *See, e.g.*, *id.* ¶ 107 (Muslim Student Association's statement in the School's newspaper calling Plaintiffs' account of library events "a false narrative"); *id.* ¶ 109 (alumni letter with more than

---

[8] *See supra* note 7.

three hundred and fifty signatories—including CU faculty and administrators—that "expressed 'solidarity' with the CU students who demonstrated against Israel and Jews on October 25, 2023").

CU attempts to rely on only two of the factors discussed in *Aulicino v. New York City Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009),[9] and attempts to isolate and minimize each harassing and discriminatory incident pled in the Complaint.[10] But that effort is inconsistent with the well-established body of case law requiring the Court to consider the "totality of the circumstances" to determine whether the harassment Plaintiffs suffered was "severe" or "pervasive." *Id.*; *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003).[11]

As examples, the Complaint plainly alleges that the protesters on October 25 "obstructed the hallway and entrances to classrooms on the seventh floor, interfering with the ability of students to attend class." Compl. ¶ 82. In the aftermath of the protest—and in light of President Sparks's seemingly empty promises to enforce the Code of Conduct against those who harassed Plaintiffs and other Jewish students during the protest—"Plaintiffs did not attend classes . . . out of concern for their safety." *Id.* ¶ 99. In addition to disrupting Plaintiffs' studying and school work, the protesters and CU's conduct also caused Plaintiffs to suffer extreme psychological harm: they feared for their safety on campus, avoided the library and other campus locations, engaged therapists in an effort to cope with the hostile environment, and experienced other psychological effects, including intense anxiety and panic attacks. *See, e.g.*, *id.* ¶ 142.

---

[9] "Whether the challenged conduct is sufficiently severe or pervasive 'depends on the totality of the circumstances,'" considering a non-exclusive list of factors, such as: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a 'mere offensive utterance'; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted." *Aulicino*, 580 F.3d at 82.

[10] *See, e.g.*, MTD at 12–13 (focusing only on *Aulicino* factors 1 and 3 and arguing that, "[o]nce references to postings and political expression are eliminated from the Complaint, Plaintiffs' Title VI claims rely solely on an event that lasted for 'approximately 20 minutes' during the October 25 Protest").

[11] It also ignores the numerous allegations in the Complaint that satisfy each of the five considerations outlined in *Aulicino*. *See, e.g.*, *supra* note 7; Compl. ¶¶ 85, 92–93, 95.

Offensive symbols or visuals, like the ones posted repeatedly and in violation of School policy—without consequence—on the CU campus since October 7, *see, e.g.*, *id.* ¶¶ 57–68, 104, can also contribute to a hostile environment. *See, e.g.*, *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 265 (2d Cir. 2023). The Complaint's allegations—that protestors and others on the CU campus targeted Plaintiffs and other Jewish students through verbal and written messaging calling for violence against Jews (e.g., invoking Hitler's final "solution," promoting globalized "intifada," and encouraging resistance "by any means necessary," Compl. ¶¶ 77, 111)—plainly belie Defendant's claim that protestors did not act in a threatening or aggressive way, and merely "rais[ed] political slogans," *see* MTD at 13. As do Plaintiffs' allegations that protestors shouted hateful messages, pounded on glass windows, and rattled the doors of the library with Plaintiffs visible inside, screaming "let us in!" Compl. ¶¶ 85–87. Ultimately, whether the harassment was "severe" or "pervasive" is a factual question "best left for trial." *Hayut*, 352 F.3d at 745.

### b. The "Severe" or "Pervasive" Hostile Environment at CU Has Deprived Plaintiffs of Educational Benefits and Opportunities

CU argues that Plaintiffs "do not meet the 'high bar' for stating a claim for deliberate indifference" because they cannot show CU's inaction was "discriminatory in effect, such that it deprived the plaintiffs of educational benefits and opportunities." MTD at 7. But the Complaint makes clear that Plaintiffs *were* deprived of educational benefits and opportunities because of CU's failures to protect them as Jewish students who have an affinity for Israel.

In *Mandel v. Bd. of Trustees of California State Univ.*, 2018 WL 1242067, at *21 (N.D. Cal. 2018), the Title VI claim was dismissed, in part, because the plaintiffs failed to "plead sufficient details to show a concrete, negative effect on" their education, as is required. Here, by contrast, Plaintiffs have sufficiently detailed the negative effects the hostile environment at CU has had on their education and otherwise. *See* Compl. ¶¶ 64, 82, 84–86, 99, 142, 210.

Moreover, to sustain a Title VI claim, Plaintiffs need only allege actions that "'[r]estrict an individual **in any way** in the enjoyment of any advantage or privilege enjoyed by others receiving any service, financial aid, or other benefit' under the school system." *Zeno*, 702 F.3d at 666 (quoting 34 C.F.R. § 100.3(b)(1)(iv)) (emphasis added). *Zeno* defines "educational benefits" broadly to "include an academic environment free from racial hostility." *Id.* Owing to the hostile campus environment, Plaintiffs' academic experiences were degraded, as they were unable to experience the benefits of campus life, fearing for their safety during the academic year, engaging therapists to deal with the trauma they endured, and experiencing intense anxiety and panic attacks. *See* Compl. ¶¶ 71–77, 142.

### 2.    Defendant Was Deliberately Indifferent to the Hostile Environment

Deliberate indifference exists where the defendant's response to known discrimination is "clearly unreasonable in light of the known circumstances" or "when remedial action only follows after a lengthy and unjustified delay." *Hayut*, 352 F.3d at 751. The deliberate indifference "must, at a minimum, cause [the student] to undergo harassment or make them liable or vulnerable to it." *TC v. Valley Cent. Sch. Dist.*, 777 F. Supp. 2d 577, 596 (S.D.N.Y. 2011), *on reconsideration sub nom. DC v. Valley Cent. Sch. Dist.*, 2011 WL 3480389 (S.D.N.Y. 2011) (internal citation omitted).

### a.    CU's Actions and Inactions Were Unreasonable in Light of the Circumstances

As pled in the Complaint, Defendant's response to the escalating harassment of Plaintiffs and other pro-Israel Jewish students was unreasonable in light of the circumstances. *See Zeno*, 702 F.3d at 668 (sufficiency of the school's response is measured "'in light of the known circumstances,'" and as those circumstances change, "the sufficiency of a response may also have to evolve").

The Complaint alleges that Defendant was well-aware of brewing hostilities on campus and the overall uptick in harassment of pro-Israel Jewish students. As Defendant acknowledges, CU was on notice of the potential for violence and harassment on college campuses following Hamas's brutal attacks on Israel on October 7, 2023. Compl. ¶ 56; MTD at 15. In the days following, Jewish students hung posters of kidnapped Israelis in areas permitted by the School's posting policy, and the posters were almost immediately "vandalized, leaving just scraps of paper behind." Compl. ¶ 54. On October 23, just two days before the library incident, CU students "posted large signs laced with inflammatory anti-Israel, antisemitic messages" in School windows that faced the street, in violation of School policy. *Id*. ¶ 57. And when posters advertising the October 25 protest bearing the colors of the Palestinian flag with a raised fist were plastered around campus, Plaintiffs notified the Administration and expressed concerns for their safety. *Id*. ¶¶ 69– 75. At least one administrator acknowledged that such events tend to get "violent." *Id*. ¶ 73. Notwithstanding the escalating circumstances, CU acted unreasonably by, for instance, allowing protesters to storm past security into the building and declining police intervention. *See, e.g.*, *id.* ¶¶ 80, 95.

### b. Defendant's Continued Deliberate Indifference Makes Plaintiffs Vulnerable to Continued Harassment

The Complaint's allegations of Defendant's deliberate indifference leading up to the October 25 protest are sufficient. *See supra* Section II.B. The Complaint further alleges that Defendant's subsequent inactions have left Plaintiffs vulnerable to continued harassment on the basis of their shared ancestry and affinity with Israel. Plaintiffs allege, for example, that "Cooper Union has failed to timely investigate the acts of discrimination and harassment on October 25," Compl. ¶ 156(e), and "has failed to discipline responsible students" who harassed and intimidated

Plaintiffs, in the face of School policies that prohibit the sort of misconduct engaged in by the offending students, *see id.* ¶ 96.

Defendant does not address Plaintiffs' claim that CU took zero disciplinary action. Notably, in *Zeno*, the Second Circuit found that the school was deliberately indifferent notwithstanding that it disciplined each student involved because "the District should have done more." *Zeno*, 702 F.3d at 670. Here, Plaintiffs additionally allege that Defendant tried to downplay the library incident, while President Sparks responded only by emphasizing the importance of "peaceful protest." Compl. ¶¶ 96–98.

Defendant points to generalized statements that it claims "condemn[ed] discrimination of any kind, including antisemitism." MTD at 15. But, as pled, those statements contained empty promises devoid of concrete action. Compl. ¶¶ 99–103. Courts in this circuit find that "remedial actions [that] were little more than half-hearted measures" could form the basis for a claim of deliberate indifference. *Zeno*, 702 F.3d at 670; *see also Aslin v. Univ. of Rochester*, 2019 WL 4112130, at *16 (W.D.N.Y. 2019). And while Defendant contends that it removed some antisemitic postings and "[t]here is no mandated timeline for removing posters," MTD at 16, courts have recognized that "[r]esponses that are not reasonably calculated to end harassment are inadequate." *Zeno*, 702 F.3d at 669.

Defendant fails to address Plaintiffs' allegations that offensive signs with hateful, antisemitic, anti-Israel messaging were repeatedly posted on campus—with no timely or sufficient remediation or disciplinary action. *See, e.g.*, Compl. ¶ 104–12. As an example, on February 27, 2024, Defendant permitted the display—for days—of a large banner with the words "RESIST COLONIALISM FROM THE BRONX TO PALESTINE 'BY ANY MEANS NECESSARY,'" a recognized call for violence against Jews and supporters of Israel. *Id.* ¶¶ 111–12. The cases that

CU cites, where universities conducted prompt and adequate investigations, stand in stark contrast to Defendant's failure to conduct a meaningful, timely investigation or mete out discipline.[12]

### C.  CU Is a Private Institution and Is Not Bound by the First Amendment

The thrust of CU's Motion is that the speech on campus that contributed to a hostile environment for Plaintiffs was protected "political expression" under the First Amendment.  *See, e.g.*, MTD at 9. Defendant's argument misses the mark on many levels.

First, CU is a private institution, albeit one that receives federal funding. *See* Compl. ¶ 32. In contrast to students at public or state institutions, students at private colleges do not enjoy First Amendment protections. *See Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 812 (2019); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982). Even on a public or state-run campus where the First Amendment *does* apply, a university may "prohibit[] . . . actions which materially and substantially disrupt the work and discipline of the school," such as activities that "infringe [on] reasonable campus rules, interrupt classes, or substantially interfere with the opportunity of other students to obtain an education." *Healy v. James*, 408 U.S. 169, 189 (1972). CU cannot invoke the First Amendment to excuse its inaction.[13]

---

[12] *Mandel*, 2018 WL 1242067 at *19 (plaintiffs failed to allege facts showing investigations were conducted "with unreasonable delays or inadequate efforts"); *Tubbs v. Stony Brook Univ.*, 343 F. Supp. 3d 292 (S.D.N.Y. 2018) (the university promptly conducted a Title IX investigation, reached out to plaintiff to relay details of the investigative process, and promptly calendared a hearing on plaintiff's complaint).

[13] The cases Defendant cites to support its "political expression" position—*Dube v. State Univ. of N.Y.*, 900 F.2d 587 (2d Cir.1990); *Vega v. Miller*, 273 F.3d 460, 467 (2d Cir. 2001); *Felber v. Yudof*, 851 F.Supp.2d 1182 (N.D. Cal. 2011); and *Newman v. Point Park Univ.*, 2022 WL 969601, at *25 n.16 (W.D. Pa. 2022)—are inapposite; each concerns incidents that took place on a public or state-run university campus, messaging that is different from that alleged here, or reflect scenarios where the court applied an incorrect and more restrictive level of scrutiny than appropriate. In *Felber*, the court treated an on-campus plaza as if it was a "traditional public forum"—"entitled to special protection under the First Amendment," 851 F.Supp.2d at 1188, rather than a "limited public forum." *Christian Legal Soc. v. Martinez*, 561 U.S. 661, 680 (2010) (explaining that a less restrictive level of scrutiny should be applied to speech in limited public forums, like universities); *see also Widmar v. Vincent*, 454 U.S. 263, 268 n.5 (1981) ("A university differs in significant respects from public forums such as streets or parks or even municipal theaters.").

Second, even if CU *were* bound by the First Amendment—which it is not—it would still have the authority under the U.S. Constitution, and a responsibility under Title VI, to punish students who harass their Jewish peers on campus and thereby interfere with the victims' ability to participate in school activities.  The harassing students have no First Amendment right to deprive the Jewish students of a full range of educational opportunities, nor do they have the right to obstruct the school's educational mission, especially when they do so through threats of violence. *See, e.g.*, *Virginia v. Black*, 538 U.S. 343, 362–63 (2003); *Healy*, 408 U.S. at 189; *see also Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 513 (1969) (the government can "prohibit[] . . . actions [that] materially and substantially disrupt the work and discipline of the school"). Because "[a] university's mission is education," the Supreme Court has "never denied a university's authority to impose reasonable regulations compatible with that mission upon the use of its campus and facilities." *Widmar*, 454 U.S. at 268 n.5.

Third, even if CU were bound by the First Amendment and even if the First Amendment would bar the school from imposing discipline on harassing students, CU still has means that it must employ to satisfy its Title VI obligations. "The fact that harassment may involve conduct that includes speech in a public setting or speech that is also motivated by political or religious beliefs . . . does not relieve a school of its obligation to respond under Title VI . . . if the harassment creates a hostile environment in school for a student or students."[14] Numerous remedies outside of disciplining the speaker remain at the school's disposal.[15] And CU, as alleged, and by its own admission, imposed none.

---

[14] *2024 Dear Colleague Letter*, *supra* note 1, at 3.

[15] *See id.* ("Schools have a number of tools for responding to a hostile environment—including tools that do not restrict any rights protected by the First Amendment. To meet its obligation, a university can, among other steps, communicate its opposition … provide counseling and support for students affected by harassment; or take steps to establish a welcoming and respectful school campus . . . ").

Contrary to Defendant's claim, Plaintiffs do not ask CU to limit political speech or "enforce orthodoxies." MTD at 11. They, instead, seek redress for CU's violations of Title VI. For example, it is not that Plaintiffs endured harassment and discrimination "because Cooper Union organized a lecture" by an anti-Israel activist, and it is not because Plaintiffs find a visiting speaker's views objectionable that they allege CU failed to mitigate the hostile environment. MTD at 10. Rather, CU, as part of a core Humanities and Social Sciences course, required Plaintiffs and other Jewish students to attend a lecture by a known anti-Israel activist.[16] CU should not be permitted to evade liability by downplaying and mischaracterizing Plaintiffs' allegations.

## III.   THE COMPLAINT PROPERLY STATES CLAIMS UNDER NEW YORK STATE AND NEW YORK CITY LAWS

The Complaint sufficiently alleges that Defendant violated both the New York State Human Rights Law ("NYSHRL") and the New York Civil Rights Law ("NYCRL"). As amended in 2019, the NYSHRL must "be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed." N.Y. Exec. Law § 300. Courts in this district now analyze claims under the NYSHRL "closer to the more liberal standards of the New York City Human Rights Law." *Lehey v. Northwell Health, Inc.*, 2024 WL 1703697, at *3 (S.D.N.Y. 2024). Furthermore, the NYCHRL is to be read "independently from similar or identical provisions of New York state or federal statutes," *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013), and is to be "construed broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Novio v. New York Acad. of Art*, 286 F. Supp. 3d 566, 584 (S.D.N.Y. 2017) (citations omitted).

---

[16] *See Hill v. Colorado*, 530 U.S. 703, 718 (2000) (quoting *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 209 (1975)) (the Supreme Court has "repeatedly recognized the [First Amendment] interests of unwilling listeners in situations where 'the degree of captivity makes it impractical for the unwilling viewer or auditor to avoid exposure'").

Thus, as this Court recognized in *Muniz v. City of New York*, 2023 WL 6294169, at \*14 (S.D.N.Y. 2023), the "NYSHRL's requirements for discrimination claims are," since 2019, "more lenient than federal law claims," and "the NYCRHL's requirements are more lenient still." Because, as explained above, Plaintiffs have sufficiently stated a claim under Title VI, the Court should deny Defendant's Motion to dismiss Plaintiffs' claims under the NYSHRL and NYCRL. *See Hyman v. Cornell Univ.*, 2017 WL 1194231, at \*10 (N.D.N.Y. 2017), *aff'd*, 721 F. App'x 5 (2d Cir. 2017) ("Facts sufficient to sustain a cause of action under [NYHRL §] 296 will support a cause of action under [§] 40-c of the [NYCRL].").

Defendant is incorrect in asserting that Plaintiffs must provide "comparator evidence" at the motion to dismiss stage to state a claim under the NYCHRL. MTD at 17. Rather, "[i]t is sufficient to show 'differential treatment of any degree based on a discriminatory motive." *Matthew v. Texas Comptroller of Pub. Accts.*, 2022 WL 4626511, at \*8 (S.D.N.Y. 2022). The Complaint alleges that pro-Israel Jewish students were treated less well than other groups. *See, e.g.*, Compl. ¶¶ 44–49, 64. As this Court held in *Matthew*, 2022 WL 4626511, at \*8, an allegation that the defendant responded to concerns differently than it did for other groups is "sufficient to plead that [Defendant] undertook his conduct at least in part for a discriminatory reason."

## IV. PLAINTIFFS SUFFICIENTLY ALLEGE BREACH OF CONTRACT

"New York law recognizes an implied contract between students and the university they attend, which is created upon enrollment," Compl. ¶ 196; MTD at 18, and Defendant does not dispute that CU entered into contracts with Plaintiffs through its policies. Plaintiffs thus allege that CU breached multiple contractual obligations, Compl. ¶¶ 194–206, resulting in damage to Plaintiffs, *id.* ¶ 158. CU also breached the implied covenant of good faith and fair dealing through its failure to enforce its own policies in good faith. *Id.* ¶ 203. As explained below, Defendant

mischaracterizes the facts and has failed to show Plaintiffs would not be entitled to relief under the facts as pled.

### A.  CU's Policies Are Binding Contracts Containing Specific Promises to Enrolled Students

To prevail on a breach of contract claim, Plaintiffs must show "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." MTD at 18 (quoting *Annabi v. New York Univ.*, 2023 WL 6393422, at *7 (S.D.N.Y. 2023)). While generalized policies are not enforceable, breach of contract claims survive when plaintiffs identify specific rights to which they were entitled under campus policies. *See Doe v. Sarah Lawrence Coll.*, 453 F. Supp. 3d 653, 668 (S.D.N.Y. 2020).

Instead of attempting to address Plaintiffs' well-pled allegations, Defendant mischaracterizes the Complaint to fit its own narrative. Indeed, CU has failed to "provide Plaintiffs a campus free from unlawful discrimination and harassment," but that is not the only breach alleged. MTD at 19. The Complaint identifies multiple breaches by Defendant, including its failure to perform under and enforce the School's: (i) Human Rights Policy; (ii) Student Code of Conduct; (iii) Non-Discrimination Policy; (iv) Posting Policy; (v) Policy on Campus Safety and Security; and (vi) Building Access Policy. *See, e.g.*, Compl. ¶ 199. As just two examples: Defendant breached its contractual duty under the Building Access Policy by allowing a mob of antisemitic protestors, including people that may not even have been students at CU, to enter the Foundation Building without swiping ID cards. *Id.* ¶¶ 77, 80. That breach resulted in Plaintiffs being harassed by an antisemitic mob. *Id.* ¶ 85. Defendant's policy required specific action, which Defendant did not take. Such policies are neither general nor vague, as Defendant claims, *see* MTD at 19.

In addition, CU has breached implied contracts with Plaintiffs. "Under New York law, an implied contract is formed when a university accepts a student for enrollment…. The terms of the

implied contract are 'contained in the university's bulletins, circulars and regulations made available to the student.' Implicit . . . is the requirement that the institution 'act in good faith in its dealing with its students.'" *Doe v. Yeshiva Univ.*, 2023 WL 8236316 at *11 (S.D.N.Y. 2023) (citations omitted). As the Complaint alleges, CU was on notice of antisemitic activity that violated several of its policies and failed to act to enforce those policies or provide adequate protection to Plaintiffs. Compl. ¶¶ 59–60, 71, 100–02. The continuing harassment and discriminatory conduct Plaintiffs endured after October 25, which Defendant could have mitigated by enforcing its policies, are further indications of Defendant's continuing breaches and failure to act in good faith. *See, e.g.*, *Id.* ¶¶ 104, 109–11.

As pled, CU's breaches of both its express and implied contracts resulted in harm to Plaintiffs, including their inability to enjoy the full benefits of the School, needing to engage therapists, and, in at least one case, a Plaintiff having to delay graduation. *Id.* ¶ 142. In sum, Plaintiffs allege facts sufficient to satisfy each prong of a breach of contract claim.

### B.  CU's Purported "Broad Discretion" Does Not Negate the Breaches

Defendant's invocation of its supposedly "broad discretion" to discipline students does not permit the school to ignore and breach its contractual obligations. The Complaint alleges that Defendant's policies specify obligations to Plaintiffs and to Defendant's other students; those policies contain specific promises, including that discipline "will be imposed," *Id.* ¶¶ 122, 199(a). Plaintiffs have suffered harm as a result of CU's policy breaches.

Contrary to Defendant's assertion, MTD at 20, Plaintiffs' suit takes issue not with duties that third parties owe to CU but with duties that CU owes to Plaintiffs and other Jewish students under the referenced contracts, which CU failed to perform. And Defendant is simply wrong in arguing that universities do not owe a duty of care to "protect [students] from the tortious acts of third parties." MTD at 21. In fact, "schools are under a duty to adequately supervise the students

in their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision." *Mirand v. City of New York*, 84 N.Y.2d 44, 49 (1994). CU's purported discretion—broad or not—can be explored in discovery, but it is certainly no basis to dismiss Plaintiffs' well-pled claims of contractual breaches.

## V.    THE COMPLAINT SUFFICIENTLY ALLEGES PLAINTIFFS' COMMON LAW CLAIMS

### A.  Plaintiffs Sufficiently Allege Common Law Negligence

The Complaint alleges that: (1) CU's awareness of concerns Plaintiffs raised prior to the October 25 protest, as well as its supervision of, participation in, and imposition of control over the protest, gave rise to a duty of reasonable care to Plaintiffs to keep them safe from reasonably foreseeable harassment by fellow students and other protestors; (2) CU breached its duty to Plaintiffs by failing to prevent the mob of protestors from storming the Foundation Building and harassing and intimidating Plaintiffs by seeking entry into, and banging on the doors and glass windows of, the library while chanting antisemitic slogans with Plaintiffs plainly visible inside; and (3) Plaintiffs have suffered severe trauma and emotional distress as a result of CU's negligence in breaching the duty of care it owed to Plaintiffs. *See* Compl. ¶¶ 60–95; 207–15. These allegations are sufficient to plead negligence. *See Doe v. Syracuse Univ.*, 440 F. Supp. 3d 158, 181 (N.D.N.Y. 2020).

Under New York law, a plaintiff can recover for negligence, including negligent infliction of emotional distress, "even though no physical injury occurred." *Mortimer v. City of New York*, 2018 WL 1605982, at *27 (S.D.N.Y. 2018); *see also In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 528 F. Supp. 2d 303, 309 (S.D.N.Y. 2007). CU's reliance on *Caronia v. Philip Morris USA, Inc.*, 22 N.Y.3d 439 (N.Y. 2013) is misplaced; there, the Court of Appeals was not presented with

the question of whether, absent present physical injury, the plaintiffs could "pursue an independent equitable cause of action for medical monitoring." *Caronia*, 22 N.Y.3d at 446.

CU also wrongly asserts that it "does not owe Plaintiffs a duty of care to protect them from the tortious acts of third parties." MTD at 21. Although New York has rejected the doctrine of *in loco parentis* at the college level, the facts alleged here support negligence claims because a duty "may be imposed upon a college where it has encouraged its students to participate in an activity and taken affirmative steps to supervise and control the activity." *Pasquaretto v. Long Island Univ.*, 106 A.D.3d 794, 796 (2d Dep't 2013); *see also Katz v. United Synagogue of Conservative Judaism*, 135 A.D.3d 458, 460 (1st Dep't 2016). Here, the Complaint alleges CU's duty of care to Plaintiffs owing to the School's prior notice of concerns raised by Plaintiffs prior to the October 25 protest, *see, e.g.*, Compl. ¶¶ 60–63, 67, 70, 73–74, as well as its having supervised, controlled, participated in, and encouraged participation in the October 25 protest, *id*. ¶¶ 69–70, 77, 80–95.

### B. Plaintiffs Sufficiently Allege Common Law Premises Liability

CU argues, without elaboration, that the Complaint fails to state a premises liability claim because Plaintiffs' allegations do not establish that CU had "sufficiently specific . . . notice of the dangerous conduct . . . that the third-party acts could reasonably have been anticipated." MTD at 21 (citing *Mirand*, 84 N.Y.2d at 49).[17] On the contrary, however, the Complaint is replete with examples of CU's specific knowledge and notice of the threat posed by the October 25 protestors. *See, e.g.*, Compl. ¶¶ 60–63, 67, 70, 73–74. Plaintiffs voiced their concerns regarding the protest to at least three CU Deans. *See id*. ¶¶ 73–74.

---

[17] *Mirand* lends no support to CU's argument. There, the New York Court of Appeals held that it was not irrational for a jury to conclude that the defendant school was on notice of danger to the plaintiff from a fellow student because the school was made aware of a prior altercation and took no action to prevent escalation. *Mirand*, 84 N.Y.2d at 55.

CU also incorrectly asserts that Plaintiffs' premises liability claim is duplicative of their negligence claim because, per CU, the claims are "based on identical facts related to the October 25 Protest[.]" MTD at 21. As CU acknowledges, Plaintiffs' premises liability claim requires a distinct showing of "specific knowledge or notice." *Id*. Moreover, the factual predicates of the negligence and premises liability claims are somewhat overlapping, but not identical, *compare* Compl. ¶¶ 207–15 *with id*. ¶¶ 216–24, defeating CU's argument. *See Santos v. Art of Nat'l Beauty Ctr.*, 58 Misc. 3d 1201(A) at *4 (N.Y. Sup. Ct. 2017) (holding claims not duplicative because "[a]lthough some of their respective elements overlap, they have distinct and different elements and are supported by distinct facts.").

Finally, at this early stage of the litigation, it is unclear whether and to what extent damages to be awarded for the common law negligence and premises liability claims will overlap. Consequently, at this stage, the claims should not be dismissed as duplicative. *See, e.g.*, *McGrath v. Dominican Coll. of Blauvelt, New York*, 672 F. Supp. 2d 477, 492 (S.D.N.Y. 2009) (denying dismissal of claims as duplicative where it was unclear whether damages would overlap).

### C.  Plaintiffs Sufficiently Allege Negligent Infliction of Emotional Distress

Plaintiffs' allegations sufficiently allege a claim for negligent infliction of emotional distress ("NIED"). *See* Compl. ¶¶ 225–31. CU's arguments to the contrary are factually and legally incorrect.

CU errs in insisting that Plaintiffs must plead "extreme and outrageous" conduct to state a claim for NIED. To the contrary, several recent decisions have held that "extreme and outrageous conduct is not an element of a claim for negligent infliction of emotional distress under New York law." *Potrzeba v. Sherburne-Earlville High Sch. through Sherburne-Earlville Cent. Sch. Dist. Bd. of Educ.*, 2023 WL 8827178, at *13 (N.D.N.Y. 2023); *Brown v. New York Design Ctr., Inc.*, 215 A.D.3d 1, 7 (1st Dep't 2023); *Rodriguez v. City of New York*, 594 F. Supp. 3d 534, 548 (E.D.N.Y.

2022) ("[T]he Second Circuit, [...] does not list 'extreme and outrageous conduct' as an element of [NIED]."). This is not merely a "minority view," as CU suggests. MTD at 22 n. 13.

Second, CU argues that Plaintiffs' NIED claim fails because the Complaint supposedly "contains no plausible allegations that Plaintiffs physical safety was objectively endangered." MTD at 22. This is belied, however, by the Complaint's allegations, including: (1) demonstrators entered the Foundation Building without swiping student ID cards, *see* Compl. ¶ 80; (2) NYPD officers offered to enter the building to address the chaos, *see id.* ¶ 81; (3) CU locked the doors to the library after the protestors stormed the building, *see id.* ¶ 85; (4) protestors attempted to enter the library, banging on and rattling the locked library doors and shouting "let us in!," *see id.*; (5) unable to gain entry, the protestors swarmed the exterior of the library banging on the windows and holding antisemitic signs against the glass, *see id.* ¶ 87; (6) President Sparks locked her own office door and exited the building through a back door to avoid the protestors, *see id.* ¶ 91; (7) CU administration offered *Plaintiffs* potential "solutions" and an alternative exit to avoid the demonstrators, *see id.* ¶ 92; and (8) CU's subsequent emails to its students regarding the event included a plan to "ensure a safe campus" that upholds CU's policies and Student Code of Conduct, *see id.* ¶ 101. Thus, the Complaint plainly alleges facts from which one could conclude that Plaintiffs were in danger as a result of CU's failures.

## VI.    PLAINTIFFS' REQUESTED RELIEF IS PROPER

CU's request to strike Plaintiffs' prayer for punitive damages and injunctive relief should be rejected. The Second Circuit has long recognized that motions to strike are highly disfavored and should be granted only if "there is a strong reason for doing so." *See, e.g.*, *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). As explained below, both punitive damages and injunctive relief are warranted here given the allegations and to ensure that Plaintiffs and other Jewish students do not suffer harassment and discrimination in the future.

### A.  Plaintiffs Are Entitled to Punitive Damages

CU does not dispute that punitive damages are available as a matter of law for Plaintiffs' NYCHRL, state common law tort, and breach of contract claims. *See* MTD at 23. Nonetheless, CU maintains that Plaintiffs have not "met the stringent pleadings standards to recover such damages" under those claims because "Plaintiffs have not alleged that [CU] acted in a willful, wanton, or egregious manner. *Id.* at 23–24.

But CU's own caselaw confirms that no such requirement exists under the NYCHRL. *See Chauca v. Abraham*, 89 N.E.3d 475, 481 (2017) (holding that engaging in a "conscious disregard of the rights of others or conduct so reckless as to amount to such disregard" is sufficient for determining punitive damages under the NYCHRL). Because CU does not dispute that Plaintiffs have sufficiently pled that CU engaged in a "conscious disregard of the rights of others or conduct so reckless as to amount to such disregard," CU's argument necessarily fails as a matter of law. *See* Compl. ¶¶ 57–95.

CU's remaining argument that the Complaint lacks allegations that would support punitive damages under Plaintiffs' common law tort and breach of contract claims is demonstrably false. The Complaint alleges, for example, that CU knew that protests such as the one held on October 25 "tend to get 'violent.'" *Id.* ¶ 73. Despite that knowledge, CU declined police intervention, which at least one Plaintiff requested "out of fear for that Plaintiff's safety and the safety of other Jewish students." *Id.* ¶ 81; *see also id.* ¶¶ 57–95. Such allegations are more than sufficient to state a claim that CU acted in a willful, wanton and/or egregious manner. Whether CU's conduct is a predicate for punitive damages can only be determined with certainty after trial on a full factual record.

### B.  Plaintiffs Are Entitled To Injunctive Relief

CU errs in asserting that Plaintiffs' requested injunctive relief involves improper "particular remedial demands." MTD at 24. The relief Plaintiffs seek is not only permissible but "necessary

and appropriate" to prevent CU from continuing to discriminate against Jewish students. Compl.
¶¶ 67–69 (Prayer for Relief). CU does not, and cannot, explain how, for example, enjoining CU
from applying its policies in a discriminatory manner would amount to "strip[ping] away [CU]'s
broad discretion in managing its own academic and administrative affairs." MTD at 44.

CU also wrongly argues that injunctive relief is improper because "Plaintiffs do not plead
the possibility of future violations" by CU. MTD at 25. This argument ignores the multitude of
allegations in the Complaint detailing antisemitic instances occurring on CU's campus *after*
October 25. Compl. ¶¶ 16, 96–115. These incidents suggest that violations are likely to recur.
Regrettably, the incidents have continued since the filing of the Complaint. Finally, CU's argument
that "several of the Plaintiffs [..] cannot establish the possibility of future harm because they have
since graduated," MTD at 25, is a red herring that ignores the fact that the majority of Plaintiffs
remain enrolled at CU. Compl. ¶¶ 22–31.

## CONCLUSION

For the reasons detailed above, Plaintiffs respectfully request that CU's Motion to Dismiss
and Motion to Strike be Denied.

Dated:    New York, New York
          July 31, 2024

                                        Respectfully submitted,


                                        By: */s/* Aaron Stiefel _____

                                        Aaron Stiefel
                                        Debra E. Schreck
                                        Shlomo Amar (*pro hac vice* application
                                        forthcoming)
                                        Melissa E. Romanovich (*pro hac vice* application
                                        forthcoming)
                                        Ziva M. Rubinstein (*pro hac vice* application
                                        forthcoming)
                                        Alex S. Tepler

**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street New York, NY 10019-9710
T: 212.836.8000
F: 212.836.8689
aaron.stiefel@arnoldporter.com
debra.schreck@arnoldporter.com

Baruch Weiss
Bridgette C. Gershoni (*pro hac vice* application
forthcoming)
Michael J. Gershoni (*pro hac vice* application
forthcoming)
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave, NW
Washington, DC 20001-3743
P: 202.942.5000
F: 202.942.5999
baruch.weiss@arnoldporter.com

Ziporah Reich
**THE LAWFARE PROJECT**
633 Third Avenue, 21st Floor
New York, NY 10017
T: 212.339.6995
brooke@thelawfareproject.org
ziporah@thelawfareproject.org

**CERTIFICATE OF SERVICE**

I, Aaron Stiefel, hereby certify that a copy of the foregoing Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint and Motion to Strike, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 31, 2024.

DATED: July 31, 2024

_/s/_ Aaron Stiefel _____
Aaron Stiefel