UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| REBECCA GARTENBERG, PERIE HOFFMAN, JACOB KHALILI, GABRIEL KRET, TAYLOR ROSLYN LENT, BENJAMIN MEINER, MICHELLE MEINER, MEGHAN NOTKIN, GILA ROSENZWEIG, and ANNA WEISMAN,<br><br>Plaintiffs,<br><br>v.<br><br>THE COOPER UNION FOR THE ADVANCEMENT OF SCIENCE AND ART<br><br>Defendant. | Case No. 24-cv-2669<br><br>Hon. John P. Cronan, U.S.D.J. |

**DEFENDANT THE COOPER UNION FOR THE ADVANCEMENT OF SCIENCE AND ART'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT AND MOTION TO STRIKE**

PATTERSON BELKNAP WEBB & TYLER LLP
Lisa E. Cleary
Jacqueline L. Bonneau
1133 Avenue of the Americas
New York, NY 10036
Phone: (212) 336-2000
Fax: (212) 336-2222
lecleary@pbwt.com
jbonneau@pbwt.com

*Attorneys for The Cooper Union for the Advancement of Science and Art*

15220636

## TABLE OF CONTENTS

                                                      **Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

I.      THE TITLE VI CLAIM MUST BE DISMISSED ............................................................. 1

          A.      The Challenged Conduct Constitutes Political Speech ............................................. 1

          B.      Cooper Union's Response Was Not "Clearly Unreasonable" ................................. 3

          C.      Plaintiffs Do Not State a Claim of "Severe and Pervasive" Harassment ................ 5

II.     THE REMAINING DISCRIMINATION CLAIMS MUST BE DISMISSED ................... 6

III.    PLAINTIFFS FAIL TO STATE ANY COMMON LAW CLAIM .................................... 7

IV.    THE REQUESTED RELIEF MUST BE STRUCK ........................................................... 10

CONCLUSION ................................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
   570 U.S. 205 (2013) ...................................................................................................................3

*Boman v. Bluestem Unified Sch. Dist. No. 205*,
   2000 WL 297167 (D. Kan. Jan. 28, 2000) .................................................................................5

*Christian Legal Soc. v. Martinez*,
   561 U.S. 661 (2010) ...................................................................................................................2

*D.S. by & through C.S. v. Rochester City Sch. Dist.*,
   2020 WL 7028523 (W.D.N.Y. Nov. 30, 2020) .........................................................................5

*Daeisadeghi v. Equinox Great Neck, Inc.*,
   794 F. App'x 61 (2d Cir. 2019) .................................................................................................5

*Doe v. Indyke*,
   457 F. Supp. 3d 278 (S.D.N.Y. 2020) .....................................................................................10

*Doe v. Sarah Lawrence Coll.*,
   453 F. Supp. 3d 653 (S.D.N.Y. 2020) .......................................................................................7

*Doe v. Syracuse Univ.*,
   440 F. Supp. 3d 158, 181 (N.D.N.Y. 2020) ..............................................................................8

*Doe v. Yeshiva Univ.*,
   2023 WL 8236316 (S.D.N.Y. Nov. 28, 2023) ...........................................................................7

*Dube v. State Univ. of N.Y.*,
   900 F.2d 587 (2d Cir. 1990) .....................................................................................................2

*Felber v. Yudof*,
   851 F. Supp. 2d 1182 (N.D. Cal. 2011) ....................................................................................2

*Finn v. Barney*,
   471 F. App'x 30 (2d Cir. 2012) .................................................................................................6

*Frankel et al. v. Regents of the University of California et al.*,
   No. 2:24-cv-04702 (C.D. Cal. Aug. 13, 2024) .........................................................................3

*Frisby v. Schultz*,
   487 U.S. 474 (1988) ...................................................................................................................3

*Higgins v. 120 Riverside Boulevard at Trump Place Condo.*,
  2022 WL 3920044 (S.D.N.Y. Aug. 31, 2022) ............................................................................10

*Katz v. United Synagogue of Conservative Judaism*,
  135 A.D.3d 458 (2016) .........................................................................................................8, 9

*Kestenbaum v. President and Fellows of Harvard College*,
  2024 WL 3658793 (D. Mass. Aug. 6, 2024) ...............................................................................3

*Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. Of Educ.*,
  526 U.S. 629 (1999) ...................................................................................................................5

*Mandel v. Bd. of Trustees of California State Univ.*,
  2018 WL 1242067 (N.D. Cal. Mar. 9, 2018) ..............................................................................2

*Matthew v. Texas Comptroller of Pub. Accts.*,
  2022 WL 4626511 (S.D.N.Y. Sept. 30, 2022) ............................................................................6

*Mirand v. City of New York*,
  84 N.Y.2d 44 (1994) ................................................................................................................7, 8

*New York Univ. v. Cont'l Ins. Co.*,
  87 N.Y. 2d 308 (1995) ..............................................................................................................10

*Newman v. Point Park Univ.*,
  2022 WL 969601 (W.D. Pa. Mar. 31, 2022) ..............................................................................2

*Pasquaretto v. Long Island University*,
  106 A.D.3d 794 (2013) ..............................................................................................................8

*PC-41 Doe v. Poly Prep Country Day Sch.*,
  590 F. Supp. 3d 551 (E.D.N.Y. 2021) ........................................................................................9

*StandWithUs Ctr. For Legal Justice v. Massachusetts Inst. of Tech.*,
  2024 WL 3596916 (D. Mass. July 30, 2024) ....................................................................3, 4, 5

*Vega v. Miller*,
  273 F.3d 460 (2d Cir. 2001) .......................................................................................................2

*Widmar v. Vincent*,
  454 U.S. 263 (1981) ...................................................................................................................2

*Zeno v. Pine Plains Cent. School Dist.*
  702 F.3d 655 (2d Cir. 2012) ...................................................................................................5, 6

## Other Authorities

Civil Rights Act of 1964, Title VI ...................................................................................... *passim*

OCR, *Dear Colleague Letter: First Amendment* (July 28, 2003) ................................................... 3

OCR, *Dear Colleague Letter: Title VI and Shared Ancestry or Ethnic Characteristics Discrimination*, (May 7, 2024) ................................................................... 3, 4

U.S. Const. Amend. I ............................................................................................................... 2, 3

15220636

Defendant Cooper Union respectfully submits this Reply Memorandum of Law in further support of its motion to dismiss and motion to strike the Complaint filed by Plaintiffs.

PRELIMINARY STATEMENT

As Plaintiffs admit in their Complaint, Cooper Union, consistent with its non-discrimination obligations, took steps to address the conduct of which they complain—the College removed unauthorized postings, publicly condemned discrimination, coordinated with local law enforcement to ensure campus safety, offered counseling and resources to students, and initiated an investigation into the October 25th Protest. These responses are consistent with OCR guidance, on which Plaintiffs themselves rely, as to how schools can comply with Title VI. Ignoring the fatal implication of these admissions, Plaintiffs argue that Cooper Union should be held liable for failing to impose their preferred discipline on pro-Palestinian protesters. Permitting Plaintiffs to move forward with their claims would allow them to interpose themselves in Cooper Union's core administrative functions, including with respect to pedagogical and curricular decisions; enforcement of campus policies; student discipline; ensuring campus safety; and hiring/firing decisions. The weight of the authorities mandating dismissal of Plaintiffs' claims is overwhelming. Indeed, such dismissal is consistent with the legal position, under both state and federal law, which recognizes that colleges have a significant measure of authority over their administrative decisions, especially on curricular, pedagogical, academic, and disciplinary issues. In light of Plaintiffs' own admissions about Cooper Union's actions and the weight of authorities cited by the College, which Plaintiffs fail to distinguish, the case should be dismissed.

I.      THE TITLE VI CLAIM MUST BE DISMISSED

    A.      The Challenged Conduct Constitutes Political Speech

As set forth in the Motion, the vast majority of the conduct at issue in the Complaint

constitutes political speech with which Plaintiffs disagree, rather than discriminatory conduct that is actionable under Title VI.[1] In order to characterize various political expressions cited in the Complaint as antisemitic, however, Plaintiffs rely on the "legally non-binding" IHRA working definition of antisemitism. Opp. at 5. On this basis, Plaintiffs argue that posters placed at Cooper Union were discriminatory because they labeled Zionism a "racist ideology and movement," and accused Israel of committing "occupation and apartheid." Compl. ¶ 59 (cleaned up). But Plaintiffs ignore that the Second Circuit has held that such statements are protected political speech. *See Vega v. Miller*, 273 F.3d 460, 467 (2d Cir. 2001) (discussing *Dube v. State Univ. of N.Y.,* 900 F.2d 587 (2d Cir. 1990)). *Dube* and *Vega* are binding authorities. Multiple courts from other circuits have also independently concluded that allegations of anti-Zionist expression, without more, are insufficient to state a hostile environment claim under Title VI. *See Felber v. Yudof*, 851 F. Supp. 2d 1182 (N.D. Cal. 2011); *Newman v. Point Park Univ.*, 2022 WL 969601 (W.D. Pa. Mar. 31, 2022) (Title VII); *Mandel v. Bd. of Trustees of California State Univ.*, 2018 WL 1242067 (N.D. Cal. Mar. 9, 2018). The overwhelming weight of judicial precedent disfavors Plaintiffs' Title VI claim and cautions against censoring such political expression. Plaintiffs do not meaningfully distinguish this precedent. *See* Opp. at 14. Although they argue that *Felber*'s reasoning is inapplicable because it rested on the "traditional public forum" doctrine,[2] Plaintiffs ignore that the initial phase of the October 25 Protest took place *outside* the Foundation Building on a public sidewalk, *see* Compl. ¶¶ 76-77; 80, which is "the

---

[1] This is underscored by Plaintiffs' focus in the Opposition on their allegation that Cooper Union required students to attend a lecture by Omer Bartov, a professor of Genocide Studies at Brown University. Opp. at 16. Plaintiffs do not allege that they experienced harassment, discrimination, or humiliation at this lecture. Instead, they single out the lecture only because they object to the political views of the speaker, i.e., that he is an "anti-Israel" activist. *Id*.
[2] *Widmar* affirms that "First Amendment rights of speech and association extend to the campuses of state universities," and that "the campus of a public university, at least for its students, possesses many of the characteristics of a public forum." *Widmar v. Vincent*, 454 U.S. 263, 268–69 n.5 (1981). *Christian Legal Soc. v. Martinez*, 561 U.S. 661 (2010), merely held that a state school's recognition program for student organizations ought to be analyzed under the "limited-public-forum" doctrine. *Id*., at 683. Neither decision conflicts with *Felber*.

2

archetype of a traditional public forum," *Frisby v. Schultz*, 487 U.S. 474, 480 (1988).

Plaintiffs try to avoid the decisive impact of this precedent by arguing that Cooper Union is not bound by the First Amendment. *See* Opp. at 14. Contrary to Plaintiffs' argument, Cooper Union has never claimed to be a public university subject to the First Amendment. Rather, Cooper Union argued that private universities are not required by Title VI to *censor* expression that is First Amendment-protected. *See* Mot. at 10. Title VI does not distinguish between public and private universities with respect to their non-discrimination obligations, and Plaintiffs cite no authority to the contrary. Title VI does not (and cannot) require recipients of federal funds—be they public or private—to violate First Amendment protections in order to comply with their obligations under the law.³ *See, e.g., Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 206 (2013). As such, even if Cooper Union is not otherwise bound by the First Amendment, it does not violate Title VI simply by not silencing protected speech.

### B. Cooper Union's Response Was Not "Clearly Unreasonable"

As another district court addressing Title VI claims arising from campus protests recently explained, "[b]oiled down to its essence, deliberate indifference means affirmatively choosing to do the wrong thing, or doing nothing, despite knowing what the law requires." *StandWithUs Ctr. For Legal Justice v. Massachusetts Inst. of Tech.*, 2024 WL 3596916, at *4 (D. Mass. July 30, 2024).⁴ It is "a stringent standard of fault and requires that the College's response to the

---

³ OCR, *Dear Colleague Letter: Title VI and Shared Ancestry or Ethnic Characteristics Discrimination*, (May 7, 2024), at 2 ("May 2024 OCR Letter); OCR, *Dear Colleague Letter: First Amendment* (July 28, 2003) ("OCR's regulations should not be interpreted in ways that would lead to the suppression of protected speech on public or private campuses."); *see also* Amicus Curiae Brief of Foundation for Individual Rights and Expression [Dkt. #87], *Kestenbaum et al. v. President and Fellows of Harvard College*, No. 1:24-cv-10092 (D. Mass. July 16, 2024) (Declaration of Jacqueline Lee Bonneau ("Bonneau Decl.") Ex. 2).

⁴ This action is distinguishable from the recent decision in *Kestenbaum v. President and Fellows of Harvard College*, 2024 WL 3658793 (D. Mass. Aug. 6, 2024). *Kestenbaum* found that plaintiffs had met their burden to establish deliberate indifference based, *inter alia*, on allegations that Harvard security failed to intervene in physical altercations at the protest encampment. *Id.*, at *6. There are no similar allegations made here. The facts in *Frankel et al. v. Regents of the University of California et al.*, No. 2:24-cv-04702 (C.D. Cal. Aug. 13, 2024) are similarly inapposite. *See* Bonneau Decl. Ex. 3.

3

incidents was so lax, so misdirected, or so poorly executed as to be clearly unreasonable under the known circumstances." *Id.* (cleaned up). Plaintiffs do not satisfy this stringent test. Plaintiffs acknowledge that Cooper Union could have complied with Title VI and the latest OCR guidance by "communicating its opposition, providing counseling and support for students affected by harassment; or taking steps to establish a welcoming and respectful school campus." Opp. at 15 (cleaned up). By Plaintiffs' own admissions, and despite their claims to the contrary, the allegations in the Complaint show that this is exactly what Cooper Union did:

   i. *Ensuring Campus Safety*: Cooper Union coordinated closely with the NYPD before and during the protest; and NYPD were present at the October 25 Protest throughout. *See* Compl. ¶¶ 56, 80-81. Cooper Union subsequently announced continued engagement with the NYPD for ensuring campus safety. *See id.*, ¶ 101.
   ii. *Communicating Opposition*: President Sparks in her community messages repeatedly condemned discrimination of any kind, including antisemitism, and emphasized zero tolerance for hate on campus. *See id.*, ¶¶ 98-102.
  iii. *Providing Counseling and Support*: Cooper Union announced a suite of mental health resources for students. *See* Cleary Decl. Ex. 4; Bonneau Decl. Ex. 1.
   iv. *Removing Unauthorized Posters*: Cooper Union swiftly removed all unauthorized posters, signs, and graffiti on campus. *See* Compl. ¶¶ 65, 99, 100, 104, 112.
    v. *Disciplinary Action*: On November 3, President Sparks announced a review of the events on campus for any potential discrimination. *See id.*, ¶¶ 99, 101.

Plaintiffs cannot meet their pleading burden to show that Cooper Union's actions were "clearly unreasonable." To the contrary, Plaintiffs' conclusory criticisms that its responses were "inadequate" or "empty promises" notwithstanding, Opp. at 13, the Complaint admits that Cooper Union responded in a manner consistent with the OCR's guidance identifying reasonable responses to alleged discrimination.[5] Unable to dispute these factual admissions, *see id.*, at 13-14, Plaintiffs instead argue that Cooper Union was "deliberately indifferent" because it allegedly did not mete out their preferred discipline to pro-Palestinian students. *See, e.g.*, Compl. ¶¶ 96, 99, 167; Opp. at 2, 12, 14. Setting aside the privacy concerns raised by public disclosure of student

---

[5] May 2024 OCR Letter at 2.

4

discipline, which Cooper Union cannot reveal, as the Supreme Court has recognized, a school does not have to impose disciplinary measures to avoid Title VI liability. *See Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. Of Educ.,* 526 U.S. 629, 648 (1999). By their own admission, Plaintiffs cannot contend that Cooper Union "affirmatively ch[ose] to do the wrong thing, or d[id] nothing." *StandWithUs Ctr.*, 2024 WL 3596916, at *4. Thus, their Title VI claim fails.

### C. Plaintiffs Do Not State a Claim of "Severe and Pervasive" Harassment

Despite their repeated reliance on *Zeno*, that case confirms Plaintiffs here did not show "severe and pervasive harassment" that deprived them of educational benefits sufficient to state a Title VI claim. There, the plaintiff was subjected to verbal attacks, racist jokes and slurs, physical assaults, death threats, and even symbols of lynching, consistently for about four years. *See Zeno v. Pine Plains Cent. School Dist.* 702 F.3d 655, 659–63 (2d Cir. 2012). None of those factors are present here. Plaintiffs have not identified any conduct that is "physically threatening or humiliating." *Daeisadeghi v. Equinox Great Neck, Inc.*, 794 F. App'x 61, 64 (2d Cir. 2019); *see also D.S. by & through C.S. v. Rochester City Sch. Dist.*, 2020 WL 7028523, at *10 (W.D.N.Y. Nov. 30, 2020). Plaintiffs continue to rely mainly on the events of October 25. *See* Opp. at 8-9. Some of the challenged speech at the protest is political expression on public property, which was not plausibly directed at Plaintiffs. *See* Compl. ¶ 77. Nor was the protest inside the Foundation Building solely directed at Plaintiffs. *See id.*, ¶¶ 82, 84 (alleging demonstrators congregated outside the President's office). The Muslim Student Association's statements, which merely disputed Plaintiffs' characterization of the October 25 Protest, cannot be considered discriminatory. Opp. at 8. And it is unclear how a banner installed as part of an art exhibition expressing a vague political statement about "colonialism" in the Bronx and Palestine, *see id.*, at 13, could be considered speech "directed at" Plaintiffs. *See, e.g., Boman v. Bluestem Unified Sch. Dist. No. 205*, 2000 WL 297167, at *4 (D. Kan. Jan. 28, 2000). Plaintiffs

5

fail to cite any authority establishing that political speech either on banners/posters or at political demonstrations constitutes "objectively offensive" expression satisfying the "severity" requirement to state a Title VI claim. *Zeno*, 702 F.3d at 665.

## II. THE REMAINING DISCRIMINATION CLAIMS MUST BE DISMISSED

As Plaintiffs concede, they must allege "differential treatment of any degree based on a discriminatory motive" to state an NYCHRL claim. *Matthew v. Texas Comptroller of Pub. Accts.*, 2022 WL 4626511, at *8 (S.D.N.Y. Sept. 30, 2022). Although Plaintiffs point to their allegations about the College's statements in response to the October 7 attack and other national events, these allegations are insufficient to give rise to an inference of differential treatment based on antisemitic animus. Plaintiffs' primary complaint appears to be that Cooper Union waited two days to issue a statement responding to the October 7 attack. But the "comparator" statements cited in the Complaint were also issued several days after the incidents in question.[6] Moreover, Plaintiffs cite no authority to support the proposition that differences in the timing or wording of institutional statements, standing alone, are sufficient to allege a discriminatory motive. The only other allegation Plaintiffs identify in support of the NYCHRL claim, *see* Opp. at 17, is a statement that "Plaintiffs had no doubt that [Cooper Union] would have prevented the placement of the posters or immediately removed them had they targeted a group other than Jews." Compl. ¶ 64. No matter how lenient the pleading standard, an NYCHRL claim cannot be based on subjective, speculative feelings alone. Because Plaintiffs have not met the more lenient

---

[6] *Compare* Will Wright, *George Floyd and the arrest,* June 25, 2021, https://www.nytimes.com/2021/06/25/us/george-floyd-death-derek-chauvin.html, (first coverage of George Floyd's death published on 5/26/20) *with* Compl. ¶ 45 (Cooper Union statement issued 6/1/20); COMPARE U.S. DEPT. OF HOMELAND SECURITY, *SEVP modifies temporary exemptions for nonimmigrant students taking online courses during fall 2020 semester* (July 6, 2020), https://www.ice.gov/news/releases/sevp-modifies-temporary-exemptions-nonimmigrant-students-taking-online-courses-during (ICE directive issued 7/6/20) *with* Compl. ¶ 46 (Cooper Union statement issued 7/13/20); *compare 8 Dead in Atlanta Spa Shootings, With Fears of Anti-Asian Bias*, Mar. 17, 2021, https://www.nytimes.com/live/2021/03/17/us/shooting-atlanta-acworth (article on Atlanta spa shooting published 3/17/21) *with* Compl. ¶ 47 (Cooper Union statement issued 3/19/21). The court may take judicial notice of these news reports with respect to their publication date. *See Finn v. Barney*, 471 F. App'x 30, 32 (2d Cir. 2012).

NYCHRL pleading standard, their NYSHRL claim must also fail.

### III.  PLAINTIFFS FAIL TO STATE ANY COMMON LAW CLAIM

Breach of Contract: Plaintiffs rightly concede that "generalized [campus] policies are not enforceable" in a breach of contract action.  Opp. at 18.  Yet, Plaintiffs repeatedly argue that Cooper Union "breached implied contracts" with Plaintiffs because third parties "violated several of its policies and [the College] failed to . . . enforce those policies or provide adequate protection."  *Id*., at 18-19.  Setting aside factual inaccuracies regarding the lack of discipline, because Plaintiffs do not identify specific contractual requirements violated, they seek what amounts to the admittedly impermissible enforcement of "generalized policies."  *Id*., at 18.  Plaintiffs' reliance on *Doe v. Yeshiva Univ.*, 2023 WL 8236316, at *11 (S.D.N.Y. Nov. 28, 2023) is misplaced.  The plaintiff in that action identified specific breaches of campus policies, including that the defendant violated the express written notice requirements of the applicable Title IX policy.  *See id.*, at *12.  By contrast, Plaintiffs here do not name a single clause in any campus policy with which the College failed to comply.  *See* Mot. at 19-20.  Plaintiffs argue Cooper Union breached the Building Access Policy, "by allowing" demonstrators to enter the Foundation Building without swiping in.  Opp. at 18.  But Plaintiffs do not identify the "required specific action," *id.*, that the College failed to take in violation of this policy, as they must do. *Doe v. Sarah Lawrence Coll.*, 453 F. Supp. 3d 653, 668 (S.D.N.Y. 2020).  The policy provides only that "students, faculty, and staff must swipe in" with their IDs before entering campus buildings.  Compl. ¶ 199(f) (cleaned up).  It does not legally require any action by *Cooper Union*, let alone to impose specific discipline.  The other policies cited give Cooper Union broad discretion, but also do not mandate specific action.  Plaintiffs' reliance on *Mirand* is inapposite—that case involved *tort* claims "for negligent supervision" of schoolchildren and does not address breach of contract at all, let alone at the university level.  *Mirand v. City of New York*, 84 N.Y.2d

7

44, 46 (1994).

Common Law Negligence: Plaintiffs effectively concede that they did not sustain any physical harm or property injury.  *See* Compl. ¶ 226; Opp. at 20-21.  This alone is fatal to their negligence action.  Plaintiffs do not allege any physical harm and identify no relevant authority that dispenses with the physical harm requirement in negligence actions.  Rather, each case they cite stands for the uncontroversial position that an *NIED* claim can be maintained in the absence of physical injury.[7]  On the duty element, Plaintiffs abandoned their initial argument that the College was allegedly negligent because it "refuse[d] police intervention," Compl. ¶ 81, and "fail[ed] to prevent" demonstrators from entering the Foundation Building.  *Id.*, ¶ 212.  Instead, for the first time and without support, Plaintiffs argue that the College "supervised, controlled, participated in, and encouraged participation in" the October 25 Protest.  Opp. at 21.  This new "participation" theory does not appear in the Complaint, is entirely unsubstantiated and sharply contradicts Plaintiffs' assertions that the security guards tried preventing the demonstrators from entering the Foundation Building, *see* Compl. ¶¶ 80, 209, and that the demonstrators later protested outside President Sparks's office.  *See id.*, ¶ 82.  Even on this newly surfaced theory, *Pasquaretto v. Long Island University*, 106 A.D.3d 794 (2013), does not lend support to Plaintiffs' argument that Cooper Union owed them a duty of care to protect them from any tortious actions of the demonstrators.  The court there *dismissed* a student's negligence action for injuries sustained during a fraternity's initiation, holding that the college did not owe the student any duty of care with respect to the event.  *Id.*, at 796.  *Pasquaretto* reaffirmed that colleges have "no legal duty to shield their students from the dangerous activity of other students."  *Id.*, at 795.[8]

---

[7] *Doe v. Syracuse Univ.*, which Plaintiffs also cite, does not address this issue directly, but notably dismissed breach of contract and negligence claims holding that a private college does not owe "a duty of care . . . stemming from its disciplinary proceedings." 440 F. Supp. 3d 158, 181 (N.D.N.Y. 2020).
[8] *Katz v. United Synagogue of Conservative Judaism*, 135 A.D.3d 458 (2016) is similarly inapposite.  Plaintiff Katz suffered an injury during a study-abroad program in Israel that the defendant organized.  The defendant initially

8

<u>Premises Liability</u>:  Plaintiffs' failure to cite a single precedent that recognizes a premises liability claim for emotional distress alone is fatal to their claims.  Moreover, contrary to their assertions, courts routinely dismiss claims as duplicative at the pleading stage where, as here, "the gravamens of the claims are substantially identical." *PC-41 Doe v. Poly Prep Country Day Sch.*, 590 F. Supp. 3d 551, 571 (E.D.N.Y. 2021) (cleaned up).

<u>NIED</u>: Plaintiffs' own assertions and admissions reveal that their physical safety was not "unreasonably endangered."  Mot., at 6, 22.  *First*, Plaintiffs never dispute something plainly implicit in the Complaint: that the demonstrators were nonviolent and did not cause *any* physical harm or property damage.  *See id*.  Plaintiffs thus fail to establish that the demonstrators posed any danger to *anyone*.  To support the assertion that their safety was threatened, Plaintiffs point to President Sparks's October 25 and November 3 emails on "a safe campus."  Opp. at 23.  But President Sparks has consistently maintained that the October 25 demonstration was a "peaceful protest."  Compl. ¶ 98; Opp. at 13; Cleary Decl. Ex. 2.  Again, Plaintiffs ignore how, on October 25, both they and the demonstrators staged their respective protests between 1:00 p.m. and 4:00 p.m. in close physical proximity on a public sidewalk without any barriers separating them.  *See* Compl. ¶¶ 77-80.  Plaintiffs do not allege that their safety was endangered during those three hours.  Plaintiffs admit they then followed the demonstrators into the Foundation Building.  *See id*., ¶ 84.  Apart from referring to "banging" or "chanting" outside the library, Plaintiffs fail to plead how admittedly nonviolent demonstrators could later endanger their safety, when the two groups were separated by allegedly locked doors.  Opp. at 23.  The NIED claim must be

---

"represented that it would assist [Katz] with medical care," but later "refused to arrange for such treatment." *Id.*, at 461.  Katz suffered complications as a result.  The study-abroad program "did not take place in a university environment" but rather in a remote town in the Negev desert, where Katz faced language barriers and difficulty accessing healthcare.  *See id*., at 460-61.  Those factors, which led the court to hold that the defendant owed Katz a duty of care, are inapplicable here.

dismissed.⁹

## IV. THE REQUESTED RELIEF MUST BE STRUCK

Punitive Damages:  Contrary to Plaintiffs' assertion that such motions are disfavored, "[c]ourts have not hesitated to dismiss prayers for such damages . . . because pleadings did not meet the high bar for punitive damages."  *Doe v. Indyke*, 457 F. Supp. 3d 278, 283-84 (S.D.N.Y. 2020) (cleaned up).  Contrary to Plaintiffs' assertions, the moving papers argue that "Plaintiffs have not met the stringent pleading standard to recover [punitive] damages under the[] NYCHRL," and cite the correct standard for punitive damages under the NYCHR.  Mot. at 23.  The sole reason Plaintiffs provide for why Cooper Union's conduct constituted "willful, wanton, or egregious" behavior is that the College allegedly refused NYPD intervention at the protest.  Opp. at 24.  But common-law punitive damages are unavailable unless the wrongdoer "engag[es] in conduct that may be characterized as gross and morally reprehensible and of such wanton dishonesty as to imply a criminal indifference to civil obligations."  *New York Univ. v. Cont'l Ins. Co.,* 87 N.Y. 2d 308, 315-16 (1995).  Plaintiffs have not met this standard.

Injunctions:  Plaintiffs offer no reasons for why an injunction requiring Cooper Union to fire faculty and expel students is "necessary and appropriate," Opp. at 24-25, nor do they cite any authority that such sweeping injunctions have ever been granted in other Title VI cases.  The Complaint also did not identify the likelihood of future injury from April 9, 2024, the date it was filed.  Although Plaintiffs now assert, without support, that "[t]hese incidents… are likely to recur," *id*., at 25, the Complaint lacks even such a bald assertion.

## CONCLUSION

For the foregoing reasons, the Court should grant Cooper Union's motion.

---

⁹ This District maintains the requirement of "extreme and outrageous" conduct in NIED claims.  *See*, *e.g.*, *Higgins v. 120 Riverside Boulevard at Trump Place Condo.*, 2022 WL 3920044, at *29 (S.D.N.Y. Aug. 31, 2022).

Dated: August 14, 2024
      New York, New York

                              Respectfully submitted,
                              */s/ Lisa E. Cleary*
                              Lisa E. Cleary
                              Jacqueline L. Bonneau
                              PATTERSON BELKNAP WEBB & TYLER LLP
                              1133 Avenue of the Americas
                              New York, NY 10036
                              Phone: (212) 336-2000
                              lecleary@pbwt.com
                              jbonneau@pbwt.com

## CERTIFICATE OF SERVICE

    I, Lisa E. Cleary, hereby certify that a copy of the foregoing Reply Brief in Further Support of Its Motion to Dismiss the Complaint and Motion to Strike, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on August 14, 2024.

DATED:  August 14, 2024                          */s/ Lisa E. Cleary*
                                                                        Lisa E. Cleary