# EXHIBIT 2.

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXANDER KESTENBAUM and STUDENTS AGAINST ANTISEMITISM, INC., | Case Number:  1:24-cv-10092-RGS |
| *Plaintiff*, | ***AMICUS CURIAE* BRIEF OF FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION IN SUPPORT OF NEITHER PARTY** |
| v. | |
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE, | **LEAVE TO FILE GRANTED ON JULY 16, 2024** |
| *Defendants*. | |

Dustin F. Hecker (BBO No. 549171)
HECKER ADR LLC
43 Bradford Street
Needham, MA 02492
*Local counsel of record for Amicus Curiae
Foundation for Individual Rights and
Expression*

Jeffrey D. Zeman* (not admitted in
   Mass.)
Amanda Nordstrom* (not admitted in
   Mass.)
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION
510 Walnut St., Suite 900
Philadelphia, PA. 19106
Tel:   (215) 717-3473
jeff.zeman@thefire.org
amanda.nordstrom@thefire.org

*\*Of counsel*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

INTEREST OF AMICUS CURIAE ............................................................................ 1

SUMMARY OF ARGUMENT ................................................................................... 2

ARGUMENT ............................................................................................................. 3

    I.    COLLEGES AND UNIVERSITIES MUST PROTECT SPEECH WHILE ADDRESSING
        DISCRIMINATORY HARASSMENT ..................................................................... 3

        A.    Federal anti-discrimination law does not require abridging freedom
            of expression or academic freedom. .......................................................... 4

        B.    Courts have consistently and correctly protected free expression
            and academic freedom on campus. ............................................................ 7

    II.    MISINTERPRETATIONS OF HARASSMENT STANDARDS ROUTINELY SILENCE
        SPEECH ON CAMPUS ....................................................................................... 9

        A.    FIRE has advocated on behalf of students and faculty silenced by
            speech codes that ignore Davis. .............................................................. 10

        B.    The current moment presents a real danger of silencing student and
            faculty expression in the name of anti-discrimination. ............................ 12

        C.    The Court should evaluate this case in light of the threat to
            expressive rights and academic freedom presented by
            misinterpreting harassment obligations. .................................................. 14

CONCLUSION ........................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Adams v. U.S. Forest Serv.*,
   671 F.3d 1138 (9th Cir. 2012) ................................................................ 6

*B.H. ex rel. Hawk v. Easton Area Sch. Dist.*,
   725 F. 3d 293 (3d Cir. 2013)................................................................. 8

*Bair v. Shippensburg Univ.*,
   280 F. Supp. 2d 357 (M.D. Pa. 2003) ................................................. 8

*Booher v. Bd. of Regents*,
   1998 U.S. Dist. LEXIS 11404 (E.D. Ky. July 21, 1998)..................... 8

*Bryant v. Indep. Sch. Dist. No. I-38 of Garvin Cnty.*,
   334 F.3d 928 (10th Cir. 2003) .............................................................. 8

*Corry v. Leland Stanford Junior Univ.*,
   No. 740309 (Cal. Super. Ct. Feb. 27, 1995) ....................................... 8

*Dambrot v. Cent. Mich. Univ.*,
   55 F.3d 1177 (6th Cir. 1995) ............................................................... 7

*Davis v. Monroe County Board of Education*,
   526 U.S. 629 (1999)................................................................. *passim*

*DeJohn v. Temple Univ.*,
   537 F.3d 301 (3d Cir. 2008)............................................................ 7, 8

*Doe v. Univ. of Mich.*,
   721 F. Supp. 852 (E.D. Mich. 1989).................................................. 8

*Felber v. Yudof*,
   851 F. Supp. 2d 1182 (N.D. Cal. 2011) .............................................. 8

*Healy v. James*,
   408 U.S. 169 (1972)........................................................................... 2

*McCauley v. Univ. of the V.I.*,
   618 F.3d 232 (3d Cir. 2010)................................................................ 7

*Novoa v. Diaz*,
   641 F. Supp. 3d. 1218 (N.D. Fl. 2022) ............................................... 1

*Novoa v. Diaz*,

No. 22-13994 (N.D. Fl. Nov. 30, 2022)......................................................................... 1

*Nungesser v. Columbia Univ.*,
   244 S. Supp. 3d 345 (S.D.N.Y. 2017) ..................................................................... 9

*Pegues v. Baker Univ.*,
   No. CIV.A. 11-2136-KHV, 2011 WL 4436613 (D. Kan. Sept. 23, 2011) ............... 6

*Roberts v. Haragan*,
   346 F. Supp. 2d 853 (N.D. Tex. 2004) ................................................................... 7

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
   515 U.S. 819 (1995)................................................................................................ 2

*Saxe v. State Coll. Area Sch. Dist.*,
   240 F.3d 200 (3d Cir. 2001).................................................................................... 8

*Skinner v. Ry. Lab. Executives' Ass'n*,
   489 U.S. 602 (1989)................................................................................................ 9

*Stafford v. George Washington Univ.*,
   No. 18-CV-2789, 2019 WL 2373332 (D.D.C. June 5, 2019).................................. 6

*T.E. v. Pine Bush Cent. Sch. Dist.*,
   58 F. Supp. 3d 332 (S.D.N.Y. 2014)....................................................................... 6

*UWM Post, Inc. v. Bd. of Regents of the Univ. of Wis. Sys.*,
   774 F. Supp. 1163 (E.D. Wis. 1991)....................................................................... 8

*Zeno v. Pine Plains Cent. Sch. Dist.*,
   702 F.3d 655 (2d Cir. 2012).................................................................................... 8

**Statutes**

Mass. Gen. Laws ch. 265, § 13A, Assault and Battery................................................. 15

Title IX, Education Amendments of 1972 ..................................................................... 8

Title VI, 42 U.S.C. § 2000d et seq.......................................................................... *passim*

**Other Authorities**

Brief for *Amicus Curiae* FIRE in Support of Plaintiff-Appellant, *Heim v. Daniel*, 81 F.4th 212
   (2d Cir. 2023)......................................................................................................... 1

Letter from Catherine E. Lhamon, Assistant Sec'y for Civil Rights, U.S. Dep't of Educ. (May 7,
   2024) ................................................................................................................... 4, 6

Letter from Gerald A. Reynolds, Assistant Sec'y for Civil Rights, U.S. Dep't of Educ. (July 28, 2003) ................................................................................................................ 5

Letter from Jessie Appleby, Program Officer, to Llatetra Brown Esters, Dean, (July 13, 2023). 12

Letter from Sabrina Conza, Program Analyst, to Lindsay Kendrick, Dean, (April 29, 2022) ..... 11

Office for Civil Rights, Dep't of Educ., *About OCR* ................................................................. 4

Adam Steinbaugh & Alex Morey, *UMass Amherst faces new lawsuit over event implicating Israeli-Palestinian conflict*, FIRE (Apr. 29, 2019) ............................................................. 9

Bob McGovern, *Attorneys: Babson will not punish pro-Trump duo for Wellesley ride*, BOSTON HERALD (Dec. 19, 2016) ...................................................................................................... 10

Daniel Arkin and Daniella Silva, et al., *More than 2,000 people arrested nationwide in pro-Palestinian campus protests*, NBC NEWS (May 2, 2024)................................................... 14

FIRE, *American University launches bogus harassment investigation into students who criticized leaked Supreme Court abortion ruling in private group chat*, FIRE (June 24, 2022)...... 11

Greg Lukianoff, *UC Santa Barbara investigates professor for anti-Israel e-mail*, FIRE (May 1, 2009) ............................................................................................................................... 9

Ikram Mohamed, Pooja Salhotra, et al., *Dozens more arrested at UT-Austin as police use pepper spray, flash bangs to break up protests*, TEXAS TRIBUNE, (April 29, 2024).................... 14

Jessica Schladebeck, *Emory University Gaza protesters hit with tear gas, rubber bullets amid clashes with police*, NEW YORK DAILY NEWS, (April 25, 2024) ...................................... 14

Jordan Howell, *Free speech promises be damned, Brandeis bans Students for Justice in Palestine*, FIRE (Nov. 7, 2023) ..................................................................................... 13

Lauren del Valle, *Their fraternity is expelled. They're removed from classes. And another disturbing Syracuse frat video surfaces*, CNN (Apr. 23, 2018) ....................................... 10

Lily Kepner, *'Culture of fear': Why a Texas Tech professor was suspended over Middle East war posts, Austin America-Statesman* (Mar. 18, 2024) ......................................................... 13

Marie Fazio, Pro-Palestinian protesters describe chaotic scene during police closure of Tulane encampment, NOLA.COM (May 2, 2024) ......................................................................... 14

U.S. Dep't of Educ., *Race, Color, or National Origin Discrimination, Frequently Asked Questions,*.............................................................................................................. 6

Russ McQuaid, *IU offers concessions in wake of arrests at Dunn Meadow protests*, FOX59, (Apr. 30, 2024).................................................................................................................. 14

Sabrina Conza, *Zionist and civil liberties groups join FIRE in defending expressive rights of Duke Students Supporting Israel chapter*, FIRE (Dec. 17, 2021) ...................................... 9

Sabrina Conza, *FIRE to NYU: Uphold your free speech promises and stop investigating anti-Zionist statement*, FIRE (April 29, 2022) ....................................................................... 11

Sabrina Conza, *Lafayette denies recognition to Students for Justice in Palestine chapter over concerns about its proposed protected speech*, FIRE (March 6, 2023).............................. 9

Tim Cushing, *University of Oregon Slaps Student with Five Conduct Charges Over Four Words*, TECHDIRT (Aug. 28, 2014) ...................................................................................... 10

*University says sorry to janitor over KKK book*, ASSOCIATED PRESS (July 15, 2008) ............... 11

Vimal Patel, *Police Treatment of a Dartmouth Professor Stirs Anger and Debate,* NEW YORK TIMES, (May 3, 2024)..................................................................................................... 14

Zach Greenberg, *Rockland Community College suspends student for pro-Palestinian advocacy*, FIRE (Nov. 13, 2023) .............................................................................................. 12

## INTEREST OF *AMICUS CURIAE*[1]

The Foundation for Individual Rights and Expression (FIRE) is a nonpartisan, nonprofit organization dedicated to defending the individual rights of all Americans to free speech and free thought—the essential qualities of liberty. FIRE recognizes that colleges and universities play a vital role in preserving free thought within a free society. To this end, we place a special emphasis on defending the individual rights of students and faculty members on our nation's campuses, including freedom of speech, freedom of association, due process, legal equality, religious liberty, and sanctity of conscience. To best prepare students for success in our democracy, FIRE believes the law must remain unequivocally on the side of robust free speech and academic freedom rights.

Since 1999, FIRE has successfully defended First Amendment rights on campuses nationwide through public advocacy, targeted litigation, and *amicus curiae* filings in cases that implicate student and faculty rights. *See, e.g.*, Order Granting Prelim. Inj. Mot., *Novoa v. Diaz*, 641 F. Supp. 3d. 1218, 2022 WL 16985720 (N.D. Fl. 2022), *appeal pending* No. 22-13994 (docketed Nov. 30, 2022); Br. for *Amicus Curiae* FIRE in Supp. of Pl.-Appellant, *Heim v. Daniel*, 81 F.4th 212 (2d Cir. 2023).

FIRE's decades of experience defending the rights of students and faculty demonstrate that freedom of expression is too often sacrificed when campus administrators have trouble apprehending the line between unlawful conduct and protected speech. To ensure universities aren't forced to abandon their commitment to freedom of expression, FIRE has an interest in this Court's application of the appropriate legal standard for campuses addressing allegations of discriminatory harassment.

---

[1] No counsel for a party authored this brief in whole or in part. Further, no person, other than *amicus*, its members, or its counsel contributed money intended to fund preparing or submitting this brief.

## SUMMARY OF ARGUMENT

Colleges and universities are supposed to be places for students to speak freely. Students come to campus to debate, to argue, to hash out the fraught political problems of the day—to test their ideas and come out the other side either persuaded otherwise or more confident in their own reasoning. "The vigilant protection of constitutional freedoms is nowhere more vital" than at our institutions of higher education, as they are "peculiarly the 'marketplace of ideas.'" *Healy v. James*, 408 U.S. 169, 180–81 (1972) (cleaned up). Students cannot engage in "free speech and creative inquiry in one of the vital centers for the Nation's intellectual life, its college and university campuses" if discriminatory harassment has deprived them of equal access to their education. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 836 (1995). But nor can they if, in their efforts to combat harassment, colleges violate students' and faculty's freedom of speech.

The Supreme Court has held that discriminatory harassment, which may include expressive conduct, only loses the First Amendment's protection if it is "so severe, pervasive, and objectively offensive, and [] so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 651 (1999). Yet the Department of Education has said schools must, pursuant to their obligations under the federal anti-discrimination law, Title VI, restrict or punish speech that falls short of that standard. That is wrong. *Davis*—the Supreme Court's only decision on the issue—controls, as federal courts have consistently recognized. Adhering to the Court's *Davis* standard is the only way to both protect free speech on campus and address discriminatory harassment.

FIRE has over twenty years of experience defending students and faculty facing threats to their free speech and academic freedom from college and university administrators. Unfortunately,

too many colleges and universities ignore the *Davis* standard in addressing discriminatory harassment, chilling and censoring protected discussion and debate. The political unrest resulting from Hamas's October 7, 2023 attack on Israel illustrates the importance of sorting protected speech from unprotected conduct, to ensure college campuses remain open for all students to exercise their expressive rights. Where, as here, students allege a mix of conduct and speech, the Court must evaluate Harvard's Title VI obligations according to the constitutional standard established in *Davis*.

For these reasons, FIRE urges this Court to faithfully apply the standard the Supreme Court established in *Davis* to protect free speech on campus.

## ARGUMENT

### I.    Colleges and Universities Must Protect Speech While Addressing Discriminatory Harassment.

In *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), the Supreme Court established a definition of peer-on-peer discriminatory harassment for educational contexts that strikes a constitutional balance between the First Amendment and federal anti-discrimination statutes like Title VI. The Court took pains in *Davis* to make sure K–12 schools would not infringe upon free speech when discharging their responsibilities to provide equal access to education. Because the First Amendment applies in full force at public colleges and universities, courts have consistently struck down colleges' vague or overly broad harassment policies in a nearly unbroken line of precedent stretching back decades. Requiring a private college to infringe on free speech and academic freedom to enforce a federal statute would produce an absurd result: forcing private universities to enforce policies in ways that would be unconstitutional at a public middle school. It would also threaten free inquiry at some of our country's most important institutions of learning and research.

3

A. **Federal anti-discrimination law does not require abridging freedom of expression or academic freedom.**

Colleges and universities that receive federal funding are obligated under federal anti-discrimination statutes, like Title VI, to address discriminatory harassment on their campuses.[2] But students and faculty also have First Amendment rights, and as the Department of Education's Office for Civil Rights reminded institutions nationwide earlier this month, "[n]othing in Title VI or regulations implementing it requires or authorizes a school to restrict any rights otherwise protected by the First Amendment."[3] The Supreme Court drew the line dividing protected student speech from unprotected discriminatory harassment in its landmark 1999 decision in *Davis*.

*Davis* sets the standard for when federally funded educational institutions must take action in cases of unwelcome discriminatory peer harassment: when the discriminatory harassment is "so severe, pervasive, and objectively offensive, and [] so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities." *Davis*, 526 U.S. at 651. This constitutional standard permits schools to combat discriminatory harassment while protecting student speech rights.

*Davis* was a 5–4 decision. As the Court divided over how best to thread the needle of addressing discriminatory harassment while safeguarding student speech, the majority crafted the *Davis* standard specifically to *avoid* requiring educational institutions to infringe upon expressive

---

[2] "Discrimination on the basis of race, color, and national origin is prohibited by Title VI of the Civil Rights Act of 1964; sex discrimination is prohibited by Title IX of the Education Amendments of 1972; discrimination on the basis of disability is prohibited by Section 504 of the Rehabilitation Act of 1973; and age discrimination is prohibited by the Age Discrimination Act of 1975. These civil rights laws enforced by OCR extend to all state education agencies, elementary and secondary school systems, colleges and universities, vocational schools, proprietary schools, state vocational rehabilitation agencies, libraries, and museums that receive U.S. Department of Education funds." OFFICE FOR CIVIL RIGHTS, DEP'T OF EDUC., *About OCR*, https://www2.ed.gov/about/offices/list/ocr/aboutocr.html (last visited May. 13, 2024).
[3] Letter from Catherine E. Lhamon, Assistant Sec'y for Civil Rights, U.S. Dep't of Educ. (May 7, 2024), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-202405-shared-ancestry.pdf.

4

rights. Justice O'Connor's majority opinion took pains to explicitly address Justice Kennedy's concern, in dissent, that permitting schools to police hostile environments, even to the limited extent permitted by the majority, would violate students' First Amendment rights. *Id.* at 652; *id.* at 667 (Kennedy, J., dissenting). The result is a standard purposefully designed to impose what the Court characterized as "very real limitations" on schools' liability for discriminatory peer harassment, in recognition of the importance of protecting student speech. *Id.* at 652.

In its Title VI guidance, the federal government has consistently emphasized that the statutory requirement to guarantee students equal access to education regardless of race, color, or national origin does not require abridging free expression. In 2003, the U.S. Department of Education's Office for Civil Rights issued a "Dear Colleague" letter informing colleges and universities "in the clearest possible terms that OCR's regulations are not intended to restrict the exercise of any expressive activities protected under the U.S. Constitution," and that "[n]o OCR regulation should be interpreted to impinge upon rights protected under the First Amendment to the U.S. Constitution or to require recipients to enact or enforce codes that punish the exercise of such rights."[4] The 2003 letter made clear that "the offensiveness of a particular expression, standing alone, is not a legally sufficient basis to establish a hostile environment."[5] Echoing *Davis*, OCR wrote that the statutes within its jurisdiction (which include Title VI) only prohibit harassment that is "sufficiently serious to deny or limit a student's ability to participate in or benefit from the educational program."[6] To this day, OCR's "Frequently Asked Questions" page advises universities to meet their Title VI obligations not by restricting speech, but by "ensuring competing

---

[4] Letter from Gerald A. Reynolds, Assistant Sec'y for Civil Rights, U.S. Dep't of Educ. (July 28, 2003), https://www2.ed.gov/about/offices/list/ocr/firstamend.html.
[5] *Id.*
[6] *Id.*

views are heard" and establishing a campus culture respectful of students' diverse backgrounds and views.[7] Courts routinely apply the *Davis* standard to evaluate Title VI claims against schools based on peer discrimination. *See*, *e.g.*, *Stafford v. George Washington Univ.*, No. 18-CV-2789, 2019 WL 2373332, *11 (D.D.C. June 5, 2019); *T.E. v. Pine Bush Cent. Sch. Dist.*, 58 F. Supp. 3d 332, 356 (S.D.N.Y. 2014); *Pegues v. Baker Univ.*, No. 11-2136-KHV, 2011 WL 4436613, *3 (D. Kan. Sept. 23, 2011).

Yet earlier this month, in a new "Dear Colleague" letter regarding schools' Title VI obligations, OCR defined "hostile environment" harassment as "unwelcome conduct based on race, color, or national origin that, based on the totality of circumstances, is subjectively and objectively offensive and is so severe *or* pervasive that it limits or denies a person's ability to participate in or benefit from a school's education program or activity."[8]

Unable to avoid the leading case on the issue, the above-described guidance repeatedly cites *Davis* when describing the conditions under which colleges and universities must intervene to meet their Title VI obligations, while falling far short of the actual, constitutional standard. OCR distorts *Davis*'s definition of discriminatory harassment by requiring punishable conduct be only "severe or pervasive" instead of both "severe and pervasive." *See Adams v. U.S. Forest Serv.*, 671 F.3d 1138, 1145 (9th Cir. 2012) ("'And' does not mean 'or.'"). OCR's change from "and" to "or" flatly ignores the Supreme Court's holding that a cognizable harassment claim "depends" as much "on the alleged persistence and severity" of the harasser's actions as it does on the actions' alleged effect on the victim. *Davis*, 526 U.S. at 652. OCR also advises schools that they are expected to

---

[7] Race, Color, or National Origin Discrimination, Frequently Asked Questions, U.S. Dep't of Educ., https://www2.ed.gov/about/offices/list/ocr/frontpage/faq/race-origin.html (last modified May 11, 2023).

[8] Letter from Catherine E. Lhamon, *supra* note 3 (emphasis added).

act on expression that merely "limits" a student's education, far less than the "effective[] deni[al] of equal access" the Supreme Court described. Again, regardless of its policy preferences, OCR is not free to ignore the rulings of our nation's highest court.

The *Davis* Court drew a careful line between actionable harassment and protected expression to protect students' free speech rights. When institutions censor or punish speech that is severe but not pervasive (or vice versa) and that doesn't deprive a student of equal access, they violate the First Amendment.

### B.    Courts have consistently and correctly protected free expression and academic freedom on campus.

Were this Court to require a private university to censor speech protected by the First Amendment at public colleges and universities, it would permit the political branches of government to deprive private university students and faculty of expressive freedoms guaranteed to everyone else. Because public college students possess full First Amendment rights, courts nationwide have consistently invalidated overly broad harassment policies at public colleges and universities. *See, e.g.*, *DeJohn v. Temple Univ.*, 537 F.3d 301, 318–19 (3d Cir. 2008) (invalidating sexual harassment policy on First Amendment grounds and holding that because policy failed to require that speech in question "objectively" created a hostile environment, it provided "no shelter for core protected speech"); *McCauley v. Univ. of the V.I.*, 618 F.3d 232, 247–53 (3d Cir. 2010) (invalidating harassment policy on First Amendment grounds); *Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177 (6th Cir. 1995) (declaring discriminatory harassment policy facially unconstitutional).[9]

---

[9] *See also, e.g.*, *Roberts v. Haragan*, 346 F. Supp. 2d 853, 871–73 (N.D. Tex. 2004) (finding university sexual harassment policy unconstitutionally overbroad); *Bair v. Shippensburg Univ.*, 280 F. Supp. 2d 357, 367–70 (M.D. Pa. 2003) (enjoining enforcement of harassment policy due to overbreadth); *Booher v. Bd. of Regents*, No. 2:96-cv-135, 1998 U.S. Dist. LEXIS 11404, at *21–33 (E.D. Ky. July 21, 1998) (finding university sexual harassment policy void for vagueness and overbreadth); *Corry v. Leland Stanford Junior Univ.*, No. 740309, 1995 WL 18262175, at *1–9 (Cal. Super. Ct. Feb. 27, 1995) (slip op.) (declaring private university's "harassment by personal

And as the only Supreme Court ruling defining discriminatory harassment in the educational context, the *Davis* standard—no more and no less—is the only permissible standard for public university discrimination policies.[10] Courts thus use it to evaluate whether campus policies violate students' free speech rights. *See, e.g.*, *DeJohn*, 537 F.3d at 317–19 (citing failure to fulfill *Davis*' objectivity requirement in invalidating sexual harassment policy). Courts also have effectively protected students' expressive rights by applying the standard in both higher education and K–12 schools. *See, e.g.*, *B.H. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F. 3d 293, 322–23 (3d Cir. 2013) (holding school district could not invoke Title IX to prohibit students from wearing "I <3 boobies" bracelets intended to increase breast cancer awareness); *Felber v. Yudof*, 851 F. Supp. 2d 1182, 1188 (N.D. Cal. 2011) (dismissing Title VI claim because public university students' criticisms of Israel and support for Hamas and Hezbollah were pure political speech and expressive conduct that did not suffice to create a hostile environment). It simply cannot be that the federal government could require private universities to enforce policies against speech that the government itself could not enforce at a public middle school. *Cf. Nungesser v. Columbia Univ.*, 244 S. Supp. 3d 345, 371 (S.D.N.Y. 2017) (applying *Davis* to a private university, courts

---

vilification" policy violated student free expression rights); *UWM Post, Inc. v. Bd. of Regents of the Univ. of Wis. Sys.*, 774 F. Supp. 1163, 1168–77 (E.D. Wis. 1991) (declaring racial and discriminatory harassment policy facially unconstitutional); *Doe v. Univ. of Mich.*, 721 F. Supp. 852, 861–69 (E.D. Mich. 1989) (enjoining enforcement of unconstitutional discriminatory harassment policy).

[10] Though *Davis* concerned Title IX's prohibition on sex-based discrimination, courts regularly apply it to cases involving other federal anti-discrimination statutes, such as Title VI, which bars discrimination based on race, color, or national origin. *See, e.g.*, *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665 n.10 (2d Cir. 2012) (applying *Davis* to Title VI claim and observing that "[a]lthough the harassment in *Davis*, and the 'deliberate indifference' standard outlined by the Supreme Court, arose under Title IX, we have endorsed the *Davis* framework . . . outside the scope of Title IX"); *Bryant v. Indep. Sch. Dist. No. I-38 of Garvin Cnty.*, 334 F.3d 928, 934 (10th Cir. 2003) (applying *Davis* to a Title VI student-on-student harassment claim); *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 206 n.5 (3d Cir. 2001) (observing that *Davis* "applies equally" to harassment claims under "Title VI and other relevant federal anti-discrimination statutes").

consider "students' rights to free speech and the University's own responsibility as an academic institution to promote free speech and debate"); *Skinner v. Ry. Lab. Executives' Ass'n*, 489 U.S. 602, 614 (1989) ("Although the Fourth Amendment does not apply to a search or seizure, even an arbitrary one, effected by a private party on his own initiative, the Amendment protects against such intrusions if the private party acted as an instrument or agent of the Government"). This Court must follow the *Davis* standard in evaluating Plaintiffs' allegations.

## II.    Misinterpretations of Harassment Standards Routinely Silence Speech on Campus.

FIRE has protected campus speakers on both sides of the Israeli-Palestinian conflict since long before October 7, 2023.[11] But that conflict is hardly the only controversial issue discussed on campus. University censorship in the name of preventing discrimination touches speech on virtually every topic. It can even silence speech intended to *criticize* discrimination, as discussed *infra*. To protect free speech and academic freedom on campus, the Court must faithfully apply the *Davis* standard. Universities must ensure unlawful conduct does not deprive its students of the benefits of their education, but Title VI cannot constitutionally turn schools into censors.

---

[11] Greg Lukianoff, *UC Santa Barbara investigates professor for anti-Israel e-mail*, FIRE (May 1, 2009), https://www.thefire.org/news/blogs/eternally-radical-idea/uc-santa-barbara-investigates-professor-anti-israel-e-mail; Adam Steinbaugh & Alex Morey, *UMass Amherst faces new lawsuit over event implicating Israeli-Palestinian conflict*, FIRE (Apr. 29, 2019), https://www.thefire.org/news/umass-amherst-faces-new-lawsuit-over-event-implicating-israeli-palestinian-conflict; Sabrina Conza, *Zionist and civil liberties groups join FIRE in defending expressive rights of Duke Students Supporting Israel chapter*, FIRE (Dec. 17, 2021), https://www.thefire.org/news/zionist-and-civil-liberties-groups-join-fire-defending-expressive-rights-duke-students; Sabrina Conza, *Lafayette denies recognition to Students for Justice in Palestine chapter over concerns about its proposed protected speech*, FIRE (Mar. 6, 2023) https://www.thefire.org/news/lafayette-denies-recognition-students-justice-palestine-chapter-over-concerns-about-its.

### A.    FIRE has advocated on behalf of students and faculty silenced by speech codes that ignore *Davis*.

Public and private institutions nationwide frequently buckle to political pressure to investigate and punish speech that would never be found unprotected under *Davis*. For example, 18 students, all members of Syracuse University's Theta Tau fraternity, were removed from classes after a private video of them participating in satirical skits *mocking* bigoted beliefs was leaked to the public.[12] A female student at the University of Oregon faced five misconduct charges, including an allegation of "harassment," solely for yelling "I hit it first" at a passing couple she did not know.[13] And Babson University charged two students with harassment for waving a Trump flag on Wellesley University's campus the day after the 2016 presidential election.[14]

Further examples from FIRE's own work demonstrate the long-standing nature of the threat. In 2007, Indiana University-Purdue University Indianapolis found student-employee Keith John Sampson guilty of racial harassment for merely reading the book *Notre Dame vs. The Klan: How the Fighting Irish Defeated the Ku Klux Klan*—silently, to himself. Only after successful intervention by FIRE did the university reverse its racial harassment finding against him.[15]

---

[12] Astonishingly, administrators did not recognize the skits' satirical nature and instead summarily suspended the students, citing Syracuse's overbroad anti-harassment policy. Lauren del Valle, *Their fraternity is expelled. They're removed from classes. And another disturbing Syracuse frat video surfaces*, CNN (Apr. 23, 2018), https://www.cnn.com/2018/04/23/us/new-video-syracuse-university-theta-thau-frat/index.html.

[13] Tim Cushing, *University of Oregon Slaps Student with Five Conduct Charges Over Four Words*, TECHDIRT (Aug. 28, 2014), https://www.techdirt.com/articles/20140827/12064428343/university-oregon-slaps-student-with-five-conduct-charges-over-four-words.shtml.

[14] Bob McGovern, *Attorneys: Babson will not punish pro-Trump duo for Wellesley ride*, BOSTON HERALD (Dec. 19, 2016), https://www.bostonherald.com/2016/12/19/attorneys-babson-will-not-punish-pro-trump-duo-for-wellesley-ride.

[15] *University says sorry to janitor over KKK book*, ASSOCIATED PRESS (July 15, 2008), http://www.nbcnews.com/id/25680655/ns/us_news-life/t/university-says-sorry-janitor-over-kkk-book.

In April 2022, New York University School of Law investigated NYU's Law Students for Justice in Palestine for harassment after the group responded to an email Law Students for Israel sent to a student listserv.[16] LSJP's statement criticized Zionists, alleging "Israel is not a 'victim' that needs saving from Palestinian terror'" and "people living under occupation have a right to resist their violent occupation."[17] Although eleven other student groups responded in support of LSJP, the university claimed university policy required an investigation into complaints it had received about the statement.[18]

In May 2022, American University formally investigated eight law students for harassment after students discussed the leaked *Dobbs v. Jackson* decision in a class GroupMe chat, including their personal opinions on abortion rights, other Supreme Court cases, and upcoming planned protests.[19] A Christian, pro-life classmate argued with the students in the chat and reported the exchange to administrators. The messages investigated included entirely normal and obviously protected political expression, including, "[t]here was a request for info about abortion protests. No one asked for your personal opinion," and "I'm still stuck on the part of conservatives shouldn't be thought of as people who overturn rights like [O]bergefell and [L]oving when they are why we needed those cases in the first place."[20]

---

[16] Letter from Sabrina Conza, Program Analyst FIRE, to Lindsay Kendrick, Dean of Students, N.Y. Univ. Sch. of Law (Apr. 29, 2022), https://www.thefire.org/research-learn/fire-letter-new-york-university-school-law-april-29-2022.

[17] *Id.*

[18] Sabrina Conza, *FIRE to NYU: Uphold your free speech promises and stop investigating anti-Zionist statement*, FIRE (Apr. 29, 2022), https://www.thefire.org/news/fire-nyu-uphold-your-free-speech-promises-and-stop-investigating-anti-zionist-statement.

[19] FIRE, *American University launches bogus harassment investigation into students who criticized leaked Supreme Court abortion ruling in private group chat*, FIRE (June 24, 2022), https://www.thefire.org/news/american-university-launches-bogus-harassment-investigation-students-who-criticized-leaked.

[20] American Univ. Students' GroupMe Chat Tr., available at https://www.thefire.org/research-learn/american-university-students-groupme-transcript-re-abortion-rights-may-2-2022.

In July 2023, the University of Baltimore investigated and reprimanded a student for discriminatory harassment after she expressed dislike for the term "cisgender," and referred to trans people as "transformers" in an online class discussion forum on "names and gender" for an Archaeology of Language course.[21] When classmates accused her of transphobia she apologized for her posts and claimed she was expressing views that were not her own in an attempt to play devil's advocate and determine whether it was a safe forum to discuss controversial topics.[22] A student nevertheless filed a complaint, leading the university to conduct a wholly unwarranted investigation that lasted more than two months and resulted in a written reprimand.

### B.    The current moment presents a real danger of silencing student and faculty expression in the name of anti-discrimination.

In November 2023, New York's Rockland Community College suspended and banned from campus an anti-Zionist Jewish student for her pro-Palestinian advocacy, which included shouting, "From the river to the sea, Palestine will be free," at a pro-Israel demonstration on campus.[23] The college charged the student with "Discriminatory/Harassing Behavior" and numerous conduct violations, including disrupting the event, even though the student didn't block anyone from attending and her remarks lasted only a few seconds before she left peacefully. Administrators never explained how the student violated any college policies but found her responsible for all charges and suspended her until the fall 2024 semester.

In November 2023, Brandeis University President Ronald Liebowitz banned the campus chapter of Students for Justice in Palestine for, in part, social media posts stating, "From the river

---

[21] Letter from Jessie Appleby, Program Officer, to Llatetra Brown Esters, Dean, (July 13, 2023), https://www.thefire.org/research-learn/fire-letter-university-baltimore-july-13-2023.
[22] *Id.*
[23] Zach Greenberg, *Rockland Community College suspends student for pro-Palestinian advocacy*, FIRE (Nov. 13, 2023), https://www.thefire.org/news/rockland-community-college-suspends-student-pro-palestinian-advocacy.

to the sea, Palestine will be free," a phrase he opined should be banned from campus entirely.[24] In its letter to the Brandeis chapter of SJP, the university justified the derecognition claiming such "a genuine threat or harassment" is not protected by the university's free expression policy.

Texas Tech University suspended and investigated an assistant professor in March 2024 after a media outlet published a roundup of his social media activity, including posts critical of Israel's treatment of Palestinians.[25] The university announced it was investigating whether any of the "antisemitic sentiments" expressed by the professor in his social media comments had "found their way into the classroom."[26] The professor was reinstated after FIRE wrote to the university.

The above examples represent just cases FIRE has been directly involved with since the October 7 Hamas attack on Israel and the resulting political unrest on college campuses. But university administrators' recent difficulties distinguishing between peaceful protest, civil disobedience, and genuine misconduct are well documented: Indiana University convened an ad hoc committee to change a decades-old policy to ban tents in anticipation of protestors' plans for an encampment, then sent in riot police and snipers to respond to and arrest student demonstrators.[27] At the University of Texas at Austin, police responded to student protestors with a chilling show of force, employing pepper spray and flash-bang explosives to disperse the crowd,

---

[24] Jordan Howell, *Free speech promises be damned, Brandeis bans Students for Justice in Palestine*, FIRE (Nov. 7, 2023), https://www.thefire.org/news/free-speech-promises-be-damned-brandeis-bans-students-justice-palestine.
[25] Lily Kepner, *'Culture of fear': Why a Texas Tech professor was suspended over Middle East war posts,* AUSTIN AMERICA-STATESMAN (Mar. 18, 2024, 5:28 PM), https://www.statesman.com/story/news/politics/2024/03/18/jairo-funez-flores-texas-tech-university-professor-suspended-palestinian-hamas-israel-war-posts/72975898007.
[26] *Id.*
[27] Russ McQuaid, *IU offers concessions in wake of arrests at Dunn Meadow protests*, FOX59, (Apr. 30, 2024, 9:24 AM), https://fox59.com/indiana-news/iu-offers-concessions-in-wake-of-arrests-at-dunn-meadow-protests.

13

culminating in the arrest of over 100 protestors over the course of two protests.[28] At Emory University, Police used rubber bullets and tear gas on protestors.[29] At Dartmouth, officers wrestled a 65-year-old professor to the ground.[30] At Tulane, police donned body armor and carried "less than lethal devices" to forcibly remove protestors from campus.[31] Similar scenes of disproportionate police responses to student protests unfolded rapidly in recent weeks on campuses across the country, and more than 2,000 people, including many peaceful protestors engaging in protected speech, have been arrested in connection with the student protests nationwide.[32] Requiring schools to restrict protected speech to combat discrimination risks only more of this.

**C.    The Court should evaluate this case in light of the threat to expressive rights and academic freedom presented by misinterpreting harassment obligations.**

Harvard does not need to suppress speech to address unlawful conduct that deprives students of an education. Plaintiffs have alleged incidents of peer-on-peer conduct that may underly a Title VI violation, if ignored. *See, e.g.,* Doc. 63, Second Am. Compl. ¶¶ 115 (restraining and assaulting Jewish student), 116–120 (blocking students from leaving and entering buildings), 141 (surrounding and intimidating Jewish students in science center lobby), 125 (taking over

---

[28] Ikram Mohamed, Pooja Salhotra, et al., *Dozens more arrested at UT-Austin as police use pepper spray, flash bangs to break up protests*, TEXAS TRIBUNE, (April 29, 2024, 10:00 PM), https://www.texastribune.org/2024/04/29/university-texas-pro-palestinian-protest-arrest.

[29] Jessica Schladebeck, *Emory University Gaza protesters hit with tear gas, rubber bullets amid clashes with police*, NEW YORK DAILY NEWS, (April 25, 2024, 3:07 PM), https://www.nydailynews.com/2024/04/25/emory-university-student-protests-rubber-bullets-tear-gas.

[30] Vimal Patel, *Police Treatment of a Dartmouth Professor Stirs Anger and Debate,* NEW YORK TIMES, (May 3, 2024), https://www.nytimes.com/live/2024/05/03/us/college-campus-protests#dartmouth-professor-police-protests.

[31] Marie Fazio, *Pro-Palestinian protesters describe chaotic scene during police closure of Tulane encampment*, NOLA.COM (May 1, 2024), https://www.nola.com/news/education/tulane-protesters-describe-chaotic-encampment-closure/article_f8e86592-07e2-11ef-9f1c-9b1e29cea2fa.html.

[32] Daniel Arkin and Daniella Silva, et al., *More than 2,000 people arrested nationwide in pro-Palestinian campus protests*, NBC NEWS (May 2, 2024, 8:54 PM), https://www.nbcnews.com/news/us-news/2000-people-arrested-nationwide-palestinian-campus-protests-rcna150446.

indoor common area and accosting Jewish students). The University should address such conduct and can do so using content-neutral policies and, if warranted, criminal statutes. *See, e.g.*, Mass. Gen. Laws ch. 265, § 13A, Assault or assault and battery.

But Plaintiffs' allegations also include numerous examples of protected student and faculty speech. *See, e.g.,* Doc. 63, Second Am. Compl. ¶¶ 71 (speech during 2019 student council meeting), 73 (Instagram post), 82 (outdoor display decrying Zionism), 100 (on-campus protests and social media posts), 101 (open letter), 108 (photography competition), 114 (protest march and "die-in"), 143 (speaking event).

Ruling Title VI requires Harvard to regulate objectively offensive speech that is only "severe **or** pervasive," or that does not deny, but merely limits, a student's access to education, will violate the First Amendment rights of the speaker. *See*, *supra*, Section I.A. An outdoor display decrying Zionism (Doc. 63, Second Am. Compl. ¶ 82), for example, might be severe, but relegated to one spot on campus, not pervasive. A protest march through the University (*Id.* ¶ 114) could meet the definition of "pervasive" without being severe. With student and faculty free speech rights at stake, the Court must understand the "constellation of surrounding circumstances," *Davis*, 526 U.S. at 651 (cleaned up), that informs a finding of discriminatory harassment not as Plaintiffs have described—taking multiple speakers' individual expressions and lumping them together as the cause of the Plaintiffs' suffering—but as *Davis* intended: to protect student speech. *See Davis*, 526 U.S. at 651–52.

## CONCLUSION

FIRE urges the Court to faithfully apply the standard the Supreme Court established in *Davis* to protect the free speech and academic freedom of students and professors on campus.

Dated: July 16, 2024

*Dustin F Hecker*
_____

Dustin F. Hecker (BBO No. 549171)
HECKER ADR LLC
43 Bradford Street
Needham, MA 02492
*Local counsel of record for Amicus Curiae*
*Foundation for Individual Rights and*
*Expression*

Of counsel:

*Jeffrey D Zeman*
_____

Jeffrey D. Zeman (not admitted in Mass.)
Amanda Nordstrom (not admitted in Mass.)
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION
510 Walnut St., Suite 900
Philadelphia, PA. 19106
Tel:    (215) 717-3473
jeff.zeman@thefire.org
amanda.nordstrom@thefire.org

**CERTIFICATE OF SERVICE**

The undersigned certifies that on July 16, 2024, he caused all counsel of record to be served by the court's ECF system at the email addresses on record for them with the *Amicus Curiae* Brief of Foundation for Individual Rights and Expression in Support of Neither Party.

*Dustin F Hecker*

Dustin F. Hecker
*Local counsel of record for Amicus Curiae*
*Foundation for Individual Rights and*
*Expression*

17