UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| REBECCA GARTENBERG, PERIE HOFFMAN, JACOB KHALILI, GABRIEL KRET, TAYLOR ROSLYN LENT, BENJAMIN MEINER, MICHELLE MEINER, MEGHAN NOTKIN, GILA ROSENZWEIG, and ANNA WEISMAN,<br><br>Plaintiffs,<br><br>v.<br><br>THE COOPER UNION FOR THE ADVANCEMENT OF SCIENCE AND ART,<br><br>Defendant. | Case No. 24-cv-2669<br><br>Hon. John P. Cronan, U.S.D.J. |

**PLAINTIFFS' SUR-REPLY IN FURTHER SUPPORT OF THEIR OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE**

Aaron Stiefel
Debra E. Schreck
Shlomo Amar (*pro hac vice* application forthcoming)
Melissa E. Romanovich (*pro hac vice* application forthcoming)
Ziva M. Rubinstein (*pro hac vice* application forthcoming)
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street New York, NY 10019-9710
T: 212.836.8000
F: 212.836.8689
aaron.stiefel@arnoldporter.com
debra.schreck@arnoldporter.com

Baruch Weiss
Bridgette C. Gershoni (*pro hac vice* application forthcoming)
Michael J. Gershoni (*pro hac vice* application forthcoming)
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave, NW
Washington, DC 20001-3743
P: 202.942.5000
F: 202.942.5999
baruch.weiss@arnoldporter.com

Ziporah Reich
**THE LAWFARE PROJECT**
633 Third Avenue, 21st Floor
New York, NY 10017
T: 212.339.6995
ziporah@thelawfareproject.org

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**Page**

THE *HARVARD*, *UCLA* AND *MIT* DECISIONS SUPPORT PLAINTIFFS' OPPOSITION TO CU'S MOTION TO DISMISS AND MOTION TO STRIKE ............................................. 1

    I.    The Allegations In *Harvard* Are Analogous To Plaintiffs' Title VI Allegations ........ 1

    II.    The Allegations In *Harvard* Are Analogous To Plaintiffs' Breach of Contract Allegations .................................................................................................................. 5

    III.    The *Harvard* Court Deferred Ruling on the Same First Amendment Argument CU Attempts Here ............................................................................................................ 5

    IV.    The *UCLA* Court Rejected the Same Argument CU Advances Here—That Jewish Students' Beliefs about Israel Are Merely a Political View ........................................ 6

    V.    The *MIT* Decision Supports Plaintiffs' Assertion That CU Was Deliberately Indifferent To Its Campus Devolving Into A Hostile Environment For Jews ............ 7

    VI.    This Court Should Deny Defendant's Motion To Strike Plaintiffs' Prayer for Injunctive Relief, As Did the *Harvard* Court ............................................................. 9

CONCLUSION ........................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Frankel et al. v. Regents of the Univ. of California, et al.*,
  2024 WL 3811250 (C.D. Cal. Aug. 13, 2024) ........................................................................1, 6

*Hayut v. State Univ. of N.Y.*,
  352 F.3d 733 (2d Cir. 2003) .................................................................................................4, 8

*Kestenbaum v. President and Fellows of Harvard Coll.*,
  2024 WL 3658793 (D. Mass. Aug. 6, 2024) .................................................................. *passim*

*StandWithUs Ctr. For Legal Just. v. Massachusetts Inst. of Tech.*,
  2024 WL 3596916 (D. Mass. July 30, 2024) ................................................................1, 7, 8, 9

*TC v. Valley Cent. Sch. Dist.*,
  777 F. Supp. 2d 577 (S.D.N.Y. 2011) ........................................................................................8

**Other Authorities**

Title VI of the Civil Rights Act of 1964 ............................................................................... *passim*

34 C.F.R. § 100.3(b)(1)(iv) ...............................................................................................................2

In accordance with this Court's order, dated August 19, 2024, Plaintiffs Rebecca Gartenberg et al. ("Plaintiffs") submit this sur-reply in further support of their Opposition to the Motion to Dismiss and Motion to Strike Plaintiffs' Complaint (the "Motions") (ECF Nos. 19, 20) filed by Defendant The Cooper Union for The Advancement of Science and Art ("CU" or the "School").

CU's August 14, 2024 Reply Brief ("Reply") (ECF No. 23) cites three recent decisions involving allegations of antisemitic harassment on college campuses in violation of Title VI of the Civil Rights Act of 1964 ("Title VI") and other causes of action: (i) *StandWithUs Ctr. For Legal Just. v. Massachusetts Inst. of Tech.*, 2024 WL 3596916 (D. Mass. July 30, 2024) ("*MIT*"); (ii) *Kestenbaum v. President and Fellows of Harvard Coll.*, 2024 WL 3658793 (D. Mass. Aug. 6, 2024) ("*Harvard*"); and (iii) *Frankel et al. v. Regents of the Univ. of California, et al.*, 2024 WL 3811250 (C.D. Cal. Aug. 13, 2024) ("*UCLA*"). For the reasons discussed herein, each of these decisions supports a finding that the Complaint more than satisfies the requisite pleading standards. The Court should deny CU's Motions in their entirety.

**THE *HARVARD*, *UCLA* AND *MIT* DECISIONS SUPPORT PLAINTIFFS' OPPOSITION TO CU'S MOTION TO DISMISS AND MOTION TO STRIKE**

**I.     The Allegations In *Harvard* Are Analogous To Plaintiffs' Title VI Allegations**

Several days after Plaintiffs submitted their Opposition to CU's Motions (the "Opposition" or "Opp.") (ECF No. 22), the United States District Court for the District of Massachusetts denied, in part, a similar motion to dismiss in a case brought against Harvard College. CU attempts to gloss over this relevant decision by relegating it to a footnote and cherry picking just one of the many allegations the *Harvard* court considered in finding the plaintiffs had sufficiently pleaded deliberate indifference, i.e., that "Harvard security failed to intervene in physical altercations at the protest encampment." Reply at 3 n. 4; *see also Harvard*, 2024 WL 3658793, at *6.

1

CU's reliance on this single allegation, in an effort to distinguish the *Harvard* decision, is misleading. First, allegations of physical altercations or violence are **not** required to state a claim under Title VI. *See, e.g.*, 34 C.F.R. § 100.3(b)(1)(iv) (expressly defining discriminatory actions as those that, *inter alia*, "[r]estrict an individual in any way in the enjoyment of any advantage or privilege enjoyed by others receiving any service, financial aid, or other benefit" under the school system). Second, Plaintiffs allege similar inaction here by CU security. *See, e.g.*, Compl. ¶¶ 12, 80–81, 89. Third, beyond that single allegation, Plaintiffs' allegations are comparable in several respects to those in *Harvard*, all of which the court considered in finding "that Harvard's response failed Title VI's commands." *Harvard*, 2024 WL 3658793, at *7. For example:

- In *Harvard*, "[p]rotestors marched through campus, staged classroom walkouts, and rallied in campus common areas, at times staying overnight . . . During these events, demonstrators chanted provocative slogans such as 'from the river to the sea,' 'free Palestine,' and 'globalize the intifada.'" 2024 WL 3658793, at *1. Here, the Complaint similarly alleges that students and faculty members participated in a walkout and demonstration, protested in and around campus and chanted the same antisemitic slogans, including calls for violence against Jews. *See, e.g.*, Compl. ¶¶ 77, 80–82, 85.

- In *Harvard*, "posters memorializing Israeli citizens taken hostage by Hamas were vandalized" with antisemitic messaging. 2024 WL 3658793, at *2. Here too, "posters on campus with images of innocent Israelis who were kidnapped by Hamas on October 7" "were vandalized, leaving just scraps of paper behind." Compl. ¶ 54.

- In *Harvard*, when protesters "erected an encampment in Harvard Yard," "Harvard did nothing to stop '[p]eople with backpacks, tents, suitcases, and carts' from descending on the Yard." 2024 WL 3658793, at *2 (alteration in original). Here too, despite CU's

2

notice of the October 25, 2023 demonstration, *see* Compl. ¶ 71, and notice that it could result in violence, *see id.* ¶¶ 73–74, the CU administration did not condemn the demonstration, did nothing to prevent protesters from storming the Foundation Building and did nothing to protect Plaintiffs, who were holed up in the library while a mob of protesters pounded on glass windows and rattled the doors chanting, "let us in!" along with antisemitic slogans. *See id.* ¶¶ 80, 82, 85, 87, 90. Rather, CU administrators and faculty either ignored or downplayed Plaintiffs' fears. *See, e.g.*, *id.* ¶ 71 ("Dean Shoop did not respond"); *id.* ¶ 74 (Plaintiffs were simply told to stay inside during the protest to avoid "disturbance" and "unintended consequences").

- In *Harvard*, "[d]uring one of the protest rallies, demonstrators blockaded Jewish students in a study room," and "during another, protesters 'surrounded and intimidated' Jewish students." 2024 WL 3658793, at *2. Here too, CU locked Plaintiffs in the library while protesters banged on and rattled the library doors, and protesters intimidated Plaintiffs through the library's glass windows with antisemitic, anti-Israel signs and hateful chants. *See, e.g.*, Compl. ¶¶ 85, 87.

- In *Harvard*, "while Harvard police officers were on scene at the encampment, when a Jewish student was openly 'charged' and 'push[ed],' the officers failed to react." 2024 WL 3658793, at *6 (alteration in original). Plaintiffs here have similarly alleged that they "never saw any police or School administrators attempt to intervene," even though they (and friends, loved ones and alumni) called the police. *See* Compl. ¶ 89. In addition, then-President Sparks instructed police officers not to intervene. *See id.* ¶¶ 12, 81.

3

- In *Harvard*, "[a]lthough [the plaintiffs] complained repeatedly to various Harvard offices and administrators, they claim that the situation has not improved." 2024 WL 3658793, at *2. Plaintiffs here similarly alerted CU administrators and faculty of antisemitic harassment since October 7. *See, e.g.*, Compl. ¶¶ 50, 62–63, 67, 71, 73–74, 76. Instead of investigating and addressing Plaintiffs' complaints, CU has been deliberately indifferent to Plaintiffs' concerns, leaving them to fend for themselves. *See, e.g.*, *id.* ¶ 75. And, as in *Harvard*, the situation at CU has not improved but has worsened. *See, e.g.*, *id.* ¶¶ 104, 111.

- In *Harvard*, "[t]he ongoing tumult caused many Jewish and Israeli students to fear for their personal safety and hindered their ability to complete their academic studies." 2024 WL 3658793, at *2. Students at Harvard "feared walking about campus, missed classes, and felt isolated from their classmates." *Id.* Here too, Plaintiffs fear for their safety at CU. They have been deprived of the opportunity to enjoy the benefits of a CU education and campus experience. Their school work has suffered, and they have experienced psychological harm, including anxiety and panic attacks. *See, e.g.*, Compl. ¶ 142; *see also* Opp. at 9.

The well-established body of case law in this and other jurisdictions requires courts to consider the totality of the circumstances or, "a constellation of non-dispositive factors," when evaluating a deliberate indifference claim. *Harvard*, 2024 WL 3658793, at *5; *see also Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003). Considering all the above, and as explained in the Opposition, CU's actions and inactions were inadequate and unreasonable, and these facts, among others, show that CU has "failed its Jewish students." *Harvard*, 2024 WL 3658793, at *6.

**II.     The Allegations In *Harvard* Are Analogous To Plaintiffs' Breach of Contract Allegations**

This Court should arrive at the same conclusion as did the *Harvard* court and deny CU's motion to dismiss Plaintiffs' breach of contract claims, which are nearly identical to those in *Harvard*. In *Harvard*, the plaintiffs identified several examples of Harvard's failures to follow its own policies and procedures, which "suffice[d] to state a breach of contract claim." *Harvard*, 2024 WL 3658793, at *8. And because the plaintiffs alleged several instances of "Harvard selectively enforc[ing its] Policies" and that "the students [who] allegedly engaged in antisemitic conduct have not faced any discipline," the court concluded that "Harvard breached the implied covenant by failing to evenhandedly administer its policies." *Id.* at *9. Here too, the Complaint identifies in detail multiple policies, provisions and promises that CU has failed to enforce and has breached. *See, e.g.*, Compl. ¶¶ 57, 65, 77, 80, 99, 112, 116–141, 199.

**III.    The *Harvard* Court Deferred Ruling on the Same First Amendment Argument CU Attempts Here**

CU invokes the First Amendment in an effort to justify its failures to uphold the law, protect Jewish students and/or punish those who violated CU's policies. However, in denying Harvard's motion and waiting to address the First Amendment issue on a fully-developed factual record, the court expressed doubt "that Harvard can hide behind the First Amendment to justify avoidance of its Title VI obligations." *Harvard*, 2024 WL 3658793, at *6. CU's First Amendment argument fails for the reasons outlined in Plaintiffs' Opposition. *See* Opp. at 14–16. And this Court should likewise allow Plaintiffs to develop a full factual record to rebut CU's incorrect assertion that the First Amendment protects its failures here.

## IV. The *UCLA* Court Rejected the Same Argument CU Advances Here—That Jewish Students' Beliefs about Israel Are Merely a Political View

Two weeks after Plaintiffs submitted their Opposition, the United States District Court for the Central District of California issued a preliminary injunction against the University of California – Los Angeles ("UCLA"), prohibiting UCLA from excluding Jewish students from ordinarily-available portions of UCLA's programs, activities and campus areas, including "exclusion of Jewish students based on religious beliefs concerning the Jewish state of Israel." *UCLA*, 2024 WL 3811250, at *8.[1] Attempting to downplay this decision, CU states in a footnote, without explanation, that the facts in *UCLA* are "inapposite." Reply at 3 n.4.

But CU ignores that the *UCLA* court accepted for purposes of the preliminary injunction motion the *UCLA* plaintiffs' assertions "that supporting the Jewish state of Israel is their sincerely held religious belief." *UCLA*, 2024 WL 3811250, at *2 n.4. Here too, Plaintiffs allege that they are "Orthodox Jewish students whose affinity with Israel is part of their identities." Compl. ¶ 10; *see also id.* ¶ 41 ("Plaintiffs, as Jewish students at Cooper Union whose identities include an affinity with Israel as their ancestral homeland, fall squarely within the protections of Title VI.").

The *UCLA* court squarely rejected the argument CU advances here—namely, that Zionism should be treated as a mere political view rather than an integral part of the national origin and identity of many Jews. *See UCLA*, 2024 WL 3811250, at *6. In recent weeks (and since Plaintiffs filed their Opposition on July 31), New York University, other institutions around the country and a member of Congress have recognized, consistent with the *UCLA* decision, that, for many Jews, the belief in Zionism—i.e., that Israel is the ancestral, national and religious homeland of the

---

[1] While the plaintiffs in *UCLA* asserted that they were likely to succeed on the merits of various causes of action, including Title VI claims, the *UCLA* court resolved the motion for a preliminary injunction based on "only" plaintiffs' free exercise claims "in the interest of judicial economy." *UCLA*, 2024 WL 3811250, at *6.

Jewish People—is part and parcel of their religious or ethnic identities.[2] Similarly, for many Jews, anti-Zionism—defined as a belief that Israel does not have the right to exist as a Jewish state or homeland—is not merely a political view: it is antisemitism. This Court should likewise reject CU's attempts to deny Plaintiffs the right to define themselves, their identities and their beliefs.

V. **The *MIT* Decision Supports Plaintiffs' Assertion That CU Was Deliberately Indifferent To Its Campus Devolving Into A Hostile Environment For Jews**

As a threshold matter, the Court should reject CU's request that the Court adopt the more stringent pleading standard that the District of Massachusetts articulated in *MIT*, which would require plaintiffs alleging a Title VI claim based on deliberate indifference to show that the defendant institution "affirmatively cho[se] to do the wrong thing, or d[id] nothing, despite knowing what the law requires." Reply at 3. The Second Circuit and other courts in this District have articulated a different standard for demonstrating deliberate indifference under Title VI, i.e., that the defendant's response to known discrimination has been "clearly unreasonable in light of the known circumstances" or "when remedial action only follows after a lengthy and unjustified

---

[2] *See, e.g.*, *NYU's Guidance and Expectations on Student Conduct*, NYU, https://www.nyu.edu/students/student-information-and-resources/student-community-standards/nyu-guidance-expectations-student-conduct.html (last visited Sept. 2, 2024) ("For many Jewish people, Zionism is a part of their Jewish identity. Speech and conduct that would violate the NDAH [University's Non-discrimination and Anti-Harassment Policy and Procedures for Students] if targeting Jewish or Israeli people can also violate the NDAH if directed toward Zionists."); *Mutual Understandings Between the University of Illinois Urbana-Champaign (the "University") and the Jewish United Fund Chicago ("JUF"), Hillel International ("Hillel"), Illini Hillel, and Illini Chabad*, Aug. 30, 2024 (on file with parties) ("The University agrees that the protection offered by the University's Nondiscrimination Policy . . . extends to harassment or discrimination of Jewish students, including prohibited harassment or discrimination based on real or perceived Zionist aspects of their Jewish identity, and the University will protect Jewish students equally with its efforts to combat other forms of prohibited harassment or discrimination."); Letter from Ritchie Torres, Congressman, to University Presidents and Chancellors (Aug. 26, 2024), https://jewishinsider.nyc3.digitaloceanspaces.com/wp-content/uploads/2024/08/26142450/Letter-to-College-Leaders-on-Antisemitism-With-Watermark.pdf ("The substitution of the word 'Zionist' for 'Jew' is the modus operandi of the new antisemitism. Colleges and universities must make it clear that word games will fool no one. Engaging in harassment, intimidation, and discrimination against 'Zionists' is antisemitism both in intent and in effect, and academia should never hesitate to say so clearly and punish it swiftly."); *see also Non-Discrimination Policy*, George Mason Univ. (Aug. 27, 2024), https://universitypolicy.gmu.edu/policies/non-discrimination-policy/ ("The DEI office will consider the IHRA definition of anti-Semitism and examples (as set forth in U.S. Executive Order 13899 and Chapter 471 of the 2023 Virginia Acts of Assembly) to the extent that they might be useful as evidence of discriminatory intent, without diminishing or infringing any right protected under the Constitution and laws of the United States and the Commonwealth of Virginia.").

delay." *Hayut*, 352 F.3d at 751; *see also, TC v. Valley Cent. Sch. Dist.*, 777 F. Supp. 2d 577, 596 (S.D.N.Y. 2011).

Even if this Court were to apply the *MIT* standard, the allegations in the Complaint plainly satisfy it. Indeed, a cursory review of the Complaint shows that it is replete with examples of CU's "affirmatively choosing to do the wrong thing" and "doing nothing, despite knowing what the law requires." *MIT*, 2024 WL 3596916, at *4. CU's actions and failures to act stand in stark contrast to the allegations in *MIT*. For example:

- "MIT took steps to contain the escalating on-campus protests that, in some instances, posed a genuine threat to the welfare and safety of Jewish and Israeli students, who were at times personally victimized by the hostile demonstrators." *MIT*, 2024 WL3596916, at *5. Here, CU acknowledged in advance that events such as the October 25, 2023 demonstration "tend to get 'violent.'" Compl. ¶ 73. "Rather than take necessary action to address that Plaintiff's concerns, however, [CU's Associate Dean for Academic Affairs] suggested, in sum and substance, that the Plaintiff and other Jewish students stay inside the Building." *Id.* And while Plaintiffs were locked in the campus library with demonstrators pounding on glass windows, rattling the doors, displaying hateful messages and chanting "let us in!" along with antisemitic slogans, CU refused police intervention—even after one Plaintiff (and others) called the police out of fear for the Jewish students' safety. *Id.* ¶ 81.

- "MIT began by suspending student protestors from nonacademic activities, permitting them only to attend academic classes, while suspending one of the most undisciplined of the pro-Palestine student groups." *MIT*, 2024 WL3596916, at *5. Here, "upon

8

information and belief, Cooper Union has taken no disciplinary action in connection with the events of October 25." Compl. ¶¶ 79, 99.

- "MIT attempt[ed] to peacefully clear" trespassing students. *MIT*, 2024 WL3596916, at *5. Here, CU did no such thing, instead permitting demonstrators to storm the Foundation Building and later express their hateful, antisemitic messaging in a demonstration outside the library, chanting, pounding on glass windows and rattling doors, while visibly-Jewish Plaintiffs gathered inside. Compl. ¶ 80. "The School did not check for student IDs, contrary to Cooper Union's Building Access policy, which requires all students to swipe their ID cards upon entering." *Id.*

As these examples show, CU, in the words of the *MIT* court, "affirmatively cho[se] to do the wrong thing, or d[id] nothing, despite knowing what the law requires." *MIT*, 2024 WL 3596916, at *4. And these examples, alone or in conjunction with Plaintiffs' other detailed allegations, easily meet the Second Circuit's standard for pleading deliberate indifference, as explained in Plaintiffs' Opposition.

### VI. This Court Should Deny Defendant's Motion To Strike Plaintiffs' Prayer for Injunctive Relief, As Did the *Harvard* Court

In *Harvard*, just as CU has done here, Harvard moved to strike the plaintiffs' requests for injunctive relief. The court observed, however, that motions to strike are "disfavored" and are "rarely granted." 2024 WL 3658793, at *9 (citations omitted). The court denied Harvard's motion, finding that injunctive relief could be "viable as a remedy" if the plaintiffs were to prevail. *Id.* at *9. Here too, there is "no reason at this time to strike the prayer" for injunctive relief, and CU's Motion to Strike should be denied. *Id.*

9

**CONCLUSION**

For the reasons detailed above and in Plaintiffs' Opposition, the Court should deny CU's Motion to Dismiss and Motion to Strike in all respects. In light of the rapidly-evolving litigation landscape with respect to the claims pleaded in Plaintiffs' Complaint and the issues addressed in the parties' motion papers, Plaintiffs respectfully request and can be available for oral argument with respect to Defendant's motion papers, pursuant to Rule 6.C of this Court's Individual Rules and Practices in Civil Cases.

Dated:   New York, New York
         September 2, 2024

                                             Respectfully submitted,

                                             By: */s/ Aaron Stiefel*

Aaron Stiefel
Debra E. Schreck
Shlomo Amar (*pro hac vice* application forthcoming)
Melissa E. Romanovich (*pro hac vice* application forthcoming)
Ziva M. Rubinstein (*pro hac vice* application forthcoming)
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street New York, NY 10019-9710
T: 212.836.8000
F: 212.836.8689
aaron.stiefel@arnoldporter.com
debra.schreck@arnoldporter.com

Baruch Weiss
Bridgette C. Gershoni (*pro hac vice* application forthcoming)
Michael J. Gershoni (*pro hac vice* application forthcoming)

10

**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave, NW
Washington, DC 20001-3743
P: 202.942.5000
F: 202.942.5999
baruch.weiss@arnoldporter.com

Ziporah Reich
**THE LAWFARE PROJECT**
633 Third Avenue, 21st Floor
New York, NY 10017
T: 212.339.6995
ziporah@thelawfareproject.org

11

## CERTIFICATE OF SERVICE

    I, Aaron Stiefel, hereby certify that a copy of the foregoing Sur-Reply in Further Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss and Motion to Strike, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 2, 2024.

DATED:  September 2, 2024

                                                        */s/ Aaron Stiefel*

                                                        Aaron Stiefel