UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| REBECCA GARTENBERG, PERIE HOFFMAN, JACOB KHALILI, GABRIEL KRET, TAYLOR ROSLYN LENT, BENJAMIN MEINER, MICHELLE MEINER, MEGHAN NOTKIN, GILA ROSENZWEIG, and ANNA WEISMAN,<br><br>Plaintiffs,<br><br>v.<br><br>THE COOPER UNION FOR THE ADVANCEMENT OF SCIENCE AND ART,<br><br>Defendant. | Case No. 24-cv-2669<br><br>Hon. John P. Cronan, U.S.D.J. |

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR RECONSIDERATION OF OPINION AND ORDER REGARDING
DEFENDANT'S MOTION TO DISMISS

Aaron Stiefel
Debra E. Schreck
Melissa E. Romanovich
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street New York, NY 10019-9710
T: 212.836.8000
F: 212.836.8689
aaron.stiefel@arnoldporter.com
debra.schreck@arnoldporter.com
melissa.romanovich@arnoldporter.com

Baruch Weiss
Bridgette C. Gershoni
Michael J. Gershoni
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave, NW
Washington, DC 20001-3743
P: 202.942.5000
F: 202.942.5999
baruch.weiss@arnoldporter.com
bridgette.gershoni@arnoldporter.com
michael.gershoni@arnoldporter.com

Ziporah Reich
**THE LAWFARE PROJECT**
633 Third Avenue, 21st Floor
New York, NY 10017
T: 212.339.6995
ziporah@thelawfareproject.org

*Attorneys for Plaintiffs*

Plaintiffs Rebecca Gartenberg et al. ("Plaintiffs") respectfully submit this memorandum of law in support of their Motion for Reconsideration of the Court's February 5, 2025 Opinion and Order ("Opinion" or "Op.") (ECF No. 39) concerning Defendant's Motion to Dismiss Plaintiffs' Complaint.  Plaintiffs do not seek reconsideration of the Court's denial of Cooper Union's Motion to Dismiss or its dismissal of Counts VI, VII, and VII and partial dismissal of Count V.[1]  Rather, Plaintiffs request reconsideration only of certain aspects of the Court's First Amendment analysis.  Without clarification, the Opinion risks causing manifest injustice by unduly narrowing the scope of harassing conduct that may be challenged under Title VI.

## INTRODUCTION

Plaintiffs greatly appreciate the Court's careful consideration of the important issues their Complaint raises, as well as of the arguments made by the Parties in connection with Cooper Union's Motion to Dismiss.  Although the Court upheld Plaintiffs' Title VI claim, in analyzing Cooper Union's ("Cooper Union" or the "School") First Amendment arguments, the Court classified certain alleged antisemitic conduct as not violative of Title VI but rather as "pure speech on matters of public concern" that cannot on its own "support a claim for an objectively hostile educational environment" and, therefore, is not actionable.  Op. at 34-35.  Plaintiffs respectfully seek the Court's reconsideration and clarification of that determination for two reasons.

First, regardless of whether "political speech" or speech related to matters of public concern is actionable in other contexts, the U.S. Supreme Court has squarely held that college campuses have "special characteristics" that set them apart because of their unique educational function.  *Healy v. James*, 408 U.S. 169, 180 (1972) (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506, (1969)).  Even "political speech" that *occurs on a college campus*

---

[1] Plaintiffs reserve, and do not waive, their right to appeal the Court's denial of claims through the Opinion of ECF No. 39.

may be restricted if it causes "substantial disruption" to or a "material interference" in a student's ability to enjoy the benefits of that school's educational environment. *See Tinker*, 393 U.S. at 514.

Second, even assuming, *arguendo*, that *Healy*'s "special characteristics" do not apply, the First Amendment does not shield Cooper Union from liability for its deliberate indifference to the harassing speech alleged in the Complaint, even if that speech could be deemed "political" in nature. Title VI requires Cooper Union to ameliorate a hostile environment on campus, regardless of whether the speech contributing to the hostile environment is constitutionally protected. Indeed, the U.S. Department of Education's Office for Civil Rights ("OCR") has made clear that schools such as Cooper Union can and, therefore, must take action to protect student victims of harassment and remedy a hostile environment on campus, and can do so without infringing First Amendment rights. Rather than disciplining a speaker, for example, a school can implement other measures, such as publicly denouncing hateful rhetoric and taking other proactive steps to support and protect affected students.[2] Because schools have an array of options they can employ to comply with Title VI, beyond punishing the speaker, they may be held liable for not acting. The fact that schools may independently restrict speech in their efforts to comply with Title VI does not justify allowing antisemitic incidents to go unaddressed or render Title VI constitutionally invalid.[3]

Plaintiffs respectfully ask the Court to reconsider its First Amendment analysis and make clear that all incidents of harassment alleged in the Complaint, including those where the

---

[2] *See* OCR, U.S. Dep't of Educ. ("DOE"), Dear Colleague Letter (May 7, 2024), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-202405-shared-ancestry.pdf, at 3 ("2024 Dear Colleague Letter").

[3] In its Opinion, the Court holds that, although Cooper Union is a private institution, the First Amendment applies because any court-imposed remedy requiring the School to discipline students for political speech would constitute state action. We understand the Court's ruling as limiting only the judiciary's ability to compel a private school to suppress or punish speech that is constitutionally protected. However, the ruling does not restrict a private institution's authority to discipline students for harassing political speech that violates its own policies, even if that speech would otherwise be constitutionally protected. Such discipline would not implicate the First Amendment because it is lacking state action.

harassment was accomplished through political speech, may constitute a basis for Title VI relief.

## LEGAL STANDARD

Plaintiffs acknowledge that the standard for granting a motion for reconsideration is "strict" and that such motions are to be "employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Morgan Stanley Mortgate Pass-Through Certificates Litig.*, No. 09-CV-02137 LTS SN, 2013 WL 5745938, at *1 (S.D.N.Y. Oct. 23, 2013) (quotation marks and citation omitted). That said, a court may grant such a motion where the moving party can "set[] forth concisely the matters or controlling decisions which the moving party believes the court has overlooked," Local Civil Rule 6.3, and that "might reasonably be expected to alter the conclusion reached by the court," including, for example, "to correct a clear error or prevent manifest injustice." *Olaf Sööt Design, LLC v. Daktronics, Inc.*, No. 15 CIV. 5024 (RWS), 2018 WL 6929176, at *1 (S.D.N.Y. Dec. 7, 2018). The decision to grant a party's motion for reconsideration is within the district court's discretion. *See Varela v. Flintlock Const., Inc.*, No. 01-CV-2736 (DLC), 2002 WL 342657, at *1 (S.D.N.Y. Mar. 5, 2002). Plaintiffs submit that reconsideration of certain aspects of the Opinion is warranted, as explained below.

## ARGUMENT

### I. THE SUPREME COURT HAS MADE CLEAR THAT SCHOOLS MAY PROSCRIBE HARASSING "POLITICAL SPEECH" ON CAMPUS

In assessing the interplay between Title VI and the First Amendment, the Court stated that it "does not construe Title VI as allowing for liability based on speech that is reasonably designed or intended to contribute to debate on matters of public concern, and that is expressed through generally accepted methods of communication." Op. at 26. The Court further observed that the government may not "conscript private institutions to act as censors by dangling the threat of civil liability for a hostile environment." *Id*.

3

The Opinion, however, does not fully consider Supreme Court precedent recognizing that universities, due to their unique educational function, may regulate speech to prevent substantial disruption. The Supreme Court in *Healy* made clear that, although free speech related to matters of public concern may be widely protected elsewhere, universities have authority to impose "reasonable regulations" on speech to maintain order on their campuses and ensure that students can obtain an education. 408 U.S. at 192-94. The *Healy* decision, which Plaintiffs cited in their Opposition to Defendant's Motion to Dismiss (ECF No. 22), but which was not referenced in the Opinion, explicitly acknowledged that the "special characteristics of the school environment" allow for restrictions on speech that substantially disrupts or interferes with educational activities. *Id.* at 189 (quotations omitted).

In *Healy*, the Court considered a state college's rejection of the application of a student group, Students for a Democratic Society, to organize on campus. *See id.* at 174. While recognizing that First Amendment protections extend to students on state college campuses, the Court held that, "[i]n the context of the 'special characteristics of the school environment,' the power of the government to prohibit 'lawless action' is not limited to acts of a criminal nature." *Id*. at 189 (quoting *Tinker*, 393 U.S. at 506). The Court emphasized that "[a]ssociational activities need not be tolerated where they infringe reasonable campus rules, interrupt classes, or substantially interfere with the opportunity of other students to obtain an education." *Healy*, 408 U.S. at 189. The *Healy* Court remanded the case for further fact-finding to determine whether the student group was "willing to abide by reasonable campus rules and regulations" and would not pose a threat to "the rights of others to be secure and to be let alone." *Id.* at 194.

Thus, *Healy* makes clear that colleges have the authority to restrict even political speech when necessary to prevent substantial disruption of students' ability to learn. *See generally id.* As

the Supreme Court has affirmed time and again, school campuses are not town squares, and school officials can and must maintain order and decorum among the student body by reasonably censoring disruptive and offensive speech. *See id*; *see also Tinker*, 393 U.S. at 507; *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988); *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682 (1986). Therefore, Title VI does not conflict with First Amendment protections and fits perfectly within the Supreme Court's jurisprudence that expects schools to prevent and punish speech that is harmful to their educational mission.[4]

Notably, the Court in *Healy* did not evaluate at the motion to dismiss stage whether the specific incidents alleged as harassment were actionable. Instead, the Court allowed the parties to engage in discovery to develop evidence on what constitutes a "substantial disruption" or a "material interference" with school activities. *See generally Healy*, 408 U.S. 169; *see also Tinker*, 393 U.S. at 514. In the same vein, Plaintiffs respectfully request that the portions of the Opinion that suggest that certain instances of harassment constitute protected—not actionable—political speech be amended to reflect that such speech can form the basis for Title VI liability if it creates a hostile educational environment.

Additionally, *Healy* recognized that, even in the context of prior restraint—a doctrine that generally forbids government censorship before speech occurs—colleges may impose restrictions to prevent substantial disruption. This acknowledgment reinforces that the unique role of educational institutions permits some limitations on speech that might not be acceptable in other public forums. 408 U.S at 189-90.

---

[4] *Tinker* and most of its progeny discuss K-12 schools and the speech restrictions allowed in those settings. And although the precise contours of *Tinker*'s application to on-campus college speech has been the subject of much debate among courts and scholars, there is no debate that it extends under the facts of the present case, as made clear by *Healy*.

5

Accordingly, while the Court's analysis may apply in non-school settings, *Healy* requires an adjustment to account for the "special characteristics" of schools. *Id.* at 189. On campus, any harassment that violates reasonable campus rules and interferes with other students' ability to obtain an education—even if it takes the form of political speech—may be censored and punished. *See id*.

## II. TITLE VI REQUIRES SCHOOLS TO ADDRESS A HOSTILE EDUCATIONAL ENVIRONMENT, EVEN WHEN IT INVOLVES PROTECTED SPEECH

To the extent the Opinion is interpreted to suggest that schools have no obligation under Title VI to ameliorate a hostile educational environment caused by harassment that qualifies as protected speech, it would conflict with established case law and guidance from OCR.

OCR addressed precisely this issue in its 2024 Dear Colleague Letter.[5] Consistent with the Opinion, the OCR Letter states: "Nothing in Title VI or regulations implementing it requires or authorizes a school to restrict any rights otherwise protected by the First Amendment to the U.S. Constitution."[6] Of note, however, the 2024 Dear Colleague Letter *also states*:

> The fact that harassment may involve conduct that includes speech in a public setting or speech that is also motivated by political or religious beliefs, however, does not relieve a school of its obligation to respond under Title VI as described below, if the harassment creates a hostile environment in school for a student or students.[7]

Thus, while Title VI *does not* compel a school to restrict speech, it *does* impose upon a school that receives federal funding an obligation to act when harassment creates an environment that deprives students of equal educational access. Schools have a variety of tools at their disposal to meet this obligation while still respecting the First Amendment. For example, although not disciplining or silencing a speaker, a school can publicly affirm that the speech is inconsistent with

---

[5] *See 2024 Dear Colleague Letter*, *supra* note 2.
[6] *Id.* at 2.
[7] *Id.* at 3.

6

the school's values, provide support and resources to affected students, offer physical security to victimized students, implement educational programming and training to prevent further harm and take steps to ensure that targeted students feel safe and fully included in campus life.

This approach is well established in other civil rights contexts, as well. Under Title VII, for example, employers are required to address workplace harassment that creates a hostile environment, even when the conduct at issue involves speech. The obligation is not to suppress speech but rather to prevent and address a discriminatory environment that denies individuals equal access to the benefits of the workplace. The Fourth Circuit made this point emphatically in a Title IX case, in the face of a First Amendment defense:

> [T]he Complaint alleges that [the defendant] could have taken other steps in response to the harassment that would not have implicated any First Amendment concerns. For example, the University could have more vigorously denounced the harassing and threatening conduct, . . . conducted a mandatory assembly of the student body to discuss and discourage such harassment through social media, or hired an outside expert to assist in developing policies for addressing and preventing harassment. Additionally, [the defendant] could have offered counseling services for those impacted by the targeted harassment. To be sure, Title IX required none of those specific actions. . . . Consideration of an educational institution's remedial options, however, inheres in the deliberate indifference analysis. . . . In other words, when an educational institution claims that it has done all it can to address instances of sexual harassment and threats, a reviewing court should consider whether the institution failed to take other obvious and reasonable steps. ***The Complaint thus adequately alleges that [the defendant] could have addressed the harassing and threatening [speech] . . . without exposing itself to First Amendment liability***.

*Feminist Majority Found. v. Hurley*, 911 F. 3d 674, 693 (4th Cir. 2018) (emphasis added).

The fact that schools may elect to suppress speech to ensure compliance with Title VI does not render Title VI constitutionally suspect. Indeed, that reasoning is at odds with longstanding First Amendment jurisprudence. Many laws, including, for example, defamation laws, Title VII and Title IX, impose obligations that may lead some regulated entities to adopt restrictive policies in an effort to avoid liability, but that does not render such statutes unconstitutional, so long as

7

there are lawful and constitutional means of compliance. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 279 (1964) (acknowledging that defamation laws may induce "self-censorship," but declining to deem the defamation law unconstitutional). Title VI does not require schools to suppress speech but instead mandates that they take reasonable steps to prevent and remedy a hostile educational environment. Accordingly, reconsideration is warranted to ensure that the Opinion is not interpreted in a way that suggests that Title VI imposes unconstitutional restrictions on speech or that schools are free to ignore antisemitic harassment simply because it takes the form of speech on matters of public concern.

## **CONCLUSION**

For the reasons detailed above, Plaintiffs respectfully request that the Court reconsider and amend its Opinion to provide that the incidents of antisemitic harassment detailed in the Complaint, including those constituting political speech, may serve as the basis for Title VI liability.

Dated:   New York, New York
         February 19, 2025

Respectfully submitted,

By: */s/ Aaron Stiefel*

Aaron Stiefel
Debra E. Schreck
Melissa E. Romanovich
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street New York, NY 10019-9710
T: 212.836.8000
F: 212.836.8689
aaron.stiefel@arnoldporter.com
debra.schreck@arnoldporter.com
melissa.romanovich@arnoldporter.com

Baruch Weiss
Bridgette C. Gershoni
Michael J. Gershoni
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave, NW
Washington, DC 20001-3743
P: 202.942.5000
F: 202.942.5999
baruch.weiss@arnoldporter.com
bridgette.gershoni@arnoldporter.com
michael.gershoni@arnoldporter.com

Ziporah Reich
**THE LAWFARE PROJECT**
633 Third Avenue, 21st Floor
New York, NY 10017
T: 212.339.6995
ziporah@thelawfareproject.org

## CERTFICATE OF COMPLIANCE

  I, Aaron Stiefel, hereby certify, pursuant to Local Civil Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York, that the word count of this memorandum of law complies with the word limit set forth in Local Civil Rule 6.3.  According to the word-processing system used to prepare this memorandum of law, the total word count for all printed text exclusive of the material omitted under Local Civil Rule 6.3 is 2,529 words.

DATED:  February 19, 2025

                */s/ Aaron Stiefel*

                Aaron Stiefel