# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| REBECCA GARTENBERG, PERIE HOFFMAN, JACOB KHALILI, GABRIEL KRET, TAYLOR ROSLYN LENT, BENJAMIN MEINER, MICHELLE MEINER, MEGHAN NOTKIN, GILA ROSENZWEIG, and ANNA WEISMAN<br><br>Plaintiffs,<br><br>v.<br><br>THE COOPER UNION FOR THE ADVANCEMENT OF SCIENCE AND ART<br><br>Defendant. | Case No. 24-cv-2669<br><br>**ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT** |

Defendant The Cooper Union for the Advancement of Science and Art ("Cooper Union" or "the College"), by and through its undersigned counsel, Patterson Belknap Webb & Tyler LLP, responds to Plaintiffs Rebecca Gartenberg, Perie Hoffman, Jacob Khalili, Gabriel Kret, Taylor Roslyn Lent, Benjamin Meiner, Michelle Meiner, Meghan Notkin, Gila Rosenzweig, and Anna Weisman's (collectively, "Plaintiffs") Complaint as follows:

After the tragic events of October 7, 2023, Cooper Union promptly condemned Hamas's attack on Israel. The College's administration, staff, and faculty has been highly responsive to student concerns – including from Plaintiffs – regarding safety and security. More generally, Cooper Union has remained committed to protecting every student's right to learn in a safe and secure learning environment free from discrimination or harassment.

Cooper Union leadership and staff anticipated, prepared for, and promptly responded to the student-led walkout on campus on October 25, 2023. Due to Cooper Union's collaborative efforts and partnership with the New York City Police Department ("NYPD") prior to, and during,

the event, the demonstration proceeded without physical harm to any person and without disruption to the academic program or damage to the campus. Security team members and police officers from NYPD were on campus throughout the event to ensure the safety of all students, faculty members, and staff. In a NYPD briefing on the morning of October 26, 2023, NYPD Chief of Patrol, John Chell reported that NYPD officers were present throughout the protest and that "there was no direct threat, there was no damage and there was no danger to any students in the school." Contrary to certain false statements circulating in the press or on social media, Cooper Union never locked the doors of the library with students still inside, and it did not lock the doors until the regular closing hours for the library that evening. The decisions taken by Cooper Union's staff and leadership team ensured the integrity of academic spaces was preserved throughout the protest.

Immediately after the events of October 25, 2023, Cooper Union promptly initiated a comprehensive internal review to assess the events for potential discrimination and violations of campus policy and scrutinize the College's response to the demonstration. In addition to reviewing the video footage of the day's events, the fact-gathering process focused on whether any members of the Cooper Union community violated its internal policies. The review involved conducting extensive interviews with students, staff, and faculty to understand their perspectives of the demonstration and Cooper Union's responses. A senior member of the Cooper Union administration reached out to several plaintiffs inviting them to share their perspectives on the events of October 25, 2023. However, after a several-month delay, Plaintiffs informed Cooper Union that they did not wish to participate in the investigation. Following the conclusion of this review process, Cooper Union initiated disciplinary proceedings against students who were found to have violated campus policies.

Cooper Union denies each and every allegation, statement, matter, and thing contained in the Complaint except as it is expressly admitted below.  The repetition of the Complaint's subheadings is done solely for organizational purposes and is not an admission as to their truth.

## PRELIMINARY STATEMENT

1.    The record demonstrates that Cooper Union worked strategically to prepare for and respond to the events of October 25, 2023, in a manner that preserved the safety of students and their right to learn on a campus free from discrimination.  The record also shows that Cooper Union ensured that its campus policies would be enforced in an impartial and even-handed manner.  Cooper Union has at all times acted consistently with its obligations under federal, state, and city anti-discrimination statutes as well as New York common law.  Cooper Union denies the allegations in Paragraph 1.  Consistent with its obligation to ensure that no student is subject to discrimination based on national ancestry, Cooper Union has remained vigilant in its efforts to monitor, and effectively respond to, any allegations of discrimination or harassment in the face of a nationwide student protest movement.  The steps Cooper Union has taken to address potential discrimination on its campus include, *inter alia*:  (1) conducting a thorough investigation into on-campus demonstrations that occurred in October 2023; (2) after a review of the investigation materials, commencing disciplinary proceedings against students involved in that demonstration pursuant to Cooper Union's Code of Conduct; (3) offering additional programming and learning about the Israeli-Palestinian conflict from a series of different perspectives to facilitate informed and civil discourse on this topic; and (4) offering support and resources to those members of the Cooper Union community who have been impacted by the horrific terrorist attacks in Israel on October 7, 2023, the subsequent military action in Gaza, and the resulting protest movement in the United States.    As has been confirmed by Cooper Union's internal review and

3

contemporaneous official statements issued by the NYPD, the library doors were not locked during the relevant time at the October 25, 2023 protest. Students, staff, and faculty were able to enter and exit the library throughout the demonstration, and many did so.

2.      Cooper Union emphatically denounces antisemitism and is committed to combatting any form of hate or discrimination on campus. Cooper Union is also committed to upholding the academic freedom of its students as well as the academic freedom of the institution itself to create an educational environment centered around the free exchange of ideas. Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 2, and therefore denies the same.

3.      Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3, and therefore denies the same.

4.      Cooper Union admits that Hamas conducted a horrific terrorist attack on Israel on October 7, 2023, which triggered a response from Israel. Cooper Union further admits that it was aware of certain student demonstrations in response to these incidents that were planned for October 25, 2023. Cooper Union in fact increased its coordination and cooperation with the New York City Police Department (NYPD) in the days following the terrorist attacks and in advance of the October 25 demonstration. Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 4, and therefore denies the same.

5.      Cooper Union's highest priority has always been to ensure the safety and security of all the members of its community. To the extent Paragraph 5 alleges that Cooper Union's preparation for and response to these demonstrations was negligent, unreasonable, insufficient or otherwise improper, Cooper Union denies that allegation. On October 13, 2023, in addition to

15552671

taking steps to provide additional resources and support to the student community, the Director of Campus Safety and Security announced that the security team was collaborating with the NYPD as its security partner "regarding any potential threatening activity in the areas around the campus, the City, and neighboring boroughs." The statement continued that Cooper Union's security would, "continue to monitor the situation and provide updates as events unfold." This was a proactive measure taken by the Cooper Union administration to safeguard the safety and security of its community. Cooper Union denies the remaining allegations in Paragraph 5.

6.  Cooper Union denies the allegations in Paragraph 6. Cooper Union's then-president, Laura Sparks ("President Sparks"), issued a statement to the Cooper Union community mere days after those attacks, on October 11, 2023, entitled "Standing Against Terrorism and for Peace," which expressed outrage at "the violent and deadly terrorist attacks on Israeli people by Hamas." The statement continued, "There is no place for terrorism in our society, and that is exactly what we witnessed on Saturday with the taking of hostages, the raping of women, and the brutal killing of innocent people, including infants, children, and the elderly. These are horrific acts that cannot be justified or rationalized under any context."

7.  Cooper Union denies that its statements in response to the October 7, 2023 terrorist attacks were inadequate. On October 9, 2023, Natalie Brooks, the Chief Talent Officer, Chris Chamberlin, the Dean of Students, and Demetrius Eudell, the Vice President of Academic Affairs issued a joint statement ("October 9 statement") to the Cooper Union community, entitled "Support for Students, Faculty, and Staff re: Israel-Hamas War," that aimed to provide quickly a set of resources for the Cooper Union community, including access to the Counseling Program, and other resources. The October 9 statement noted "the upsetting news of war between Israel and Hamas in the Middle East as well as reports of devastation and aggressions in many other

5

parts of the world."  The statement also continued that "[m]any members of our campus community are impacted directly and indirectly by these horrific events."  Cooper Union denies that the statement was either inadequate or only issued as a result of pressure from students and/or alumni.  Further, as stated above, the statement President Sparks issued just two days later set forth Cooper Union's institutional position on the October 7 attacks.  The remaining allegations in Paragraph 7 are denied.

8.      Cooper Union denies that its response to the Hamas attacks were "inadequate," and to the extent Paragraph 8 alleges that student protestors were "emboldened" by the College's response, Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of that statement and therefore denies the same.  Cooper Union admits that on October 23, 2025, it acted within hours to remove postings that did not comply with the College's Posting Policy. Cooper Union admits that on October 23, 2023, it became aware that posters entitled "Conversations with Palestinians in Gaza" had been placed in the Colonnade windows located on the first floor of the Foundation Building.  Cooper Union understands, upon information and belief, that the contents of these posters were not the original words of the students but rather reprinted from an article published in a progressive Jewish publication called "Jewish Currents." The Facilities Manager informed the Director of Campus Safety and Security about the posters; both the College's Chief Talent Officer and President Sparks were also informed.  The posters were not placed in an approved location in accordance with the campus Posting Policy.  The Chief Talent Officer consulted with the Dean of the School of Art to determine whether the posters were connected to an authorized art project or exhibit.  As soon as it was determined that the posters were not connected to an authorized class or exhibit, Cooper Union staff took down the posters. Cooper Union denies that it unduly delayed removal of the posters or acted solely in response to

6

student and parent complaints—Cooper Union's staff removed the posters within a matter of hours once they determined that they were not authorized. The remaining allegations in Paragraph 8 are denied.

9.      Cooper Union admits that on October 25, 2023, several Cooper Union students held a pro-Palestine demonstration on a public sidewalk in front of Cooper Union's Foundation Building between approximately 1:00 PM and 4:00 PM. This demonstration took place on public property, and not on Cooper Union's campus. Although the pro-Palestine demonstrators chanted loudly, they did not engage in physical violence or property destruction. Plaintiffs and other pro-Israel students, who were aware of the planned demonstration, staged a counter-protest at the same time and in close proximity to the pro-Palestine demonstrators. There were no physical interactions between the respective group of demonstrators whatsoever for the duration of the demonstration. Cooper Union denies that the pro-Palestine demonstrators "targeted" Plaintiffs. Cooper Union admits that some of the protestors used some of the slogans cited in Paragraph 9, but lacks information sufficient to form a belief as to whether there is a uniform or widely recognized understanding of each of these slogans, as alleged by Plaintiffs. Cooper Union lacks information sufficient to form a belief as to the truth of the allegations that protestors wore masks in an attempt to conceal their identities. Cooper Union denies that the demonstration went "unchecked by the School." Although the demonstration occurred on public property, and was outside of the College's control, Cooper Union nevertheless alerted the NYPD when administrators learned about the planned walkout. Cooper Union leadership remained in constant contact with the NYPD, who were present at the scene throughout the demonstration to monitor the situation. Cooper Union lacks sufficient information to form a belief as to the truth of

15552671

Plaintiffs' allegations as to their own interpretation and understanding of these events. The remaining allegations in Paragraph 9 are denied.

10.    Cooper Union admits that a smaller number of the pro-Palestine demonstrators transitioned inside the Foundation Building and protested outside President Sparks's office on the seventh floor of the Cooper Union Foundation Building, where Cooper Union admits the President and the other members of the President's staff were working. This group of demonstrators later descended the staircase of the Foundation Building, eventually protesting for approximately ten minutes in total outside the library and in the Colonnade, both of which are located on the first floor. Cooper Union admits that certain members of this group made noise on the windows of the library and chanted slogans during this time. Cooper Union's Manager of Facilities and members of the Facilities Department, were present on the scene throughout this demonstration, standing outside the library doors to ensure the demonstrators did not enter the library. Both Cooper Union's security team and the NYPD were also in the immediate vicinity of the library for the duration of the demonstration held there. The head of Cooper Union's security team was also present in the library at certain times during the demonstration, and other members of the Cooper Union security team followed the demonstrators to the Colonnade after they were prevented from entering the library. Cooper Union denies that Plaintiffs were "trapped" in the library during this demonstration. Although Cooper Union staff closed the library doors for roughly 20 minutes to minimize disruption to those studying and participating in events inside the library the doors were not locked either from within or without. Students, staff, and faculty continued to freely enter and exit the space during the duration of the demonstration. Cooper Union staff also offered Plaintiffs the option of leaving the Foundation Building via an alternate exit. Cooper Union lacks information sufficient to form a belief as to the allegations in Paragraph

8

15552671

10 regarding Plaintiffs' intentions in gathering in the library and what the student protestors could or could not observe through the library windows.  The remaining allegations in Paragraph 10 are denied.

11.     Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11, and therefore denies the same.

12.     Cooper Union denies the allegations of Paragraph 12.  The NYPD was present in the Foundation Building throughout the demonstration, something that the Chief of Department of the NYPD John Chell acknowledged in a press conference the following day.  Cooper Union denies that President Sparks refused to permit the NYPD to enter the building.  Further, the outer doors of the President's office are locked by default at all times. Cooper Union's campus security team advised President Sparks's staff to close – but not lock – the inner doors of her office. Throughout the afternoon, President Sparks was in close communication with the members of her leadership team to monitor and coordinate Cooper Union's strategic responses to the demonstration.  When the demonstrators were on the seventh floor outside President Sparks's office, the College's Director of Campus Safety and Security, Thomas Tresselt, who was on site throughout the demonstration, recommended that President Sparks avoid using force to disperse the demonstrators, because, in his professional opinion, the demonstrators did not currently represent an imminent threat to the physical safety of members of the Cooper Union community and had not damaged anyone's property.  An NYPD officer from the 9th Precinct, who was also present on the scene, agreed with the Director of Campus Safety and Security's assessment and offered to have members of the NYPD remain on the seventh floor of the building to be ready to intervene should the then-current threat assessment change.  President Sparks concurred with the recommendations of these public safety and security professionals and took the NYPD up on its

offer to remain in the building to ensure they could respond quickly if warranted.  Cooper Union is not aware of any offer by the NYPD to physically intervene to disperse the demonstrators by force. Nor did President Sparks prevent the NYPD from intervening or tell them to "stand down." Indeed, as Chief John Chell of the NYPD emphasized in a public press conference the following day, officers from the NYPD were at the College "all day from start to finish."  Chief Chell stated during this press conference that the NYPD did not see any reason to intervene because there were "no direct threats, there was no damage and there's no danger to any students in that school." President Sparks remained in the Foundation Building until the demonstration concluded, and other members of the Cooper Union administration and security team were present in the library and outside the library doors throughout the demonstration. The remaining allegations in Paragraph 12 are denied.

13.    Cooper Union admits that the College stationed a security guard on the seventh floor and by the Colonnade during the fall semester of 2023.  Cooper Union denies the remaining allegations of Paragraph 13.  On the evening of October 25, 2023, President Sparks issued a statement to the community about the October 25 Protest, making it clear that "there is no place at Cooper Union for activities that disrupt students' ability to learn, faculty's ability to teach, or anyone's sense of safety and security on our campus."  President Sparks reiterated that, "[t]here is no place at Cooper for hateful and violent language or actions." On October 30, 2023, President Sparks and Ron Vogel, the President of the Cooper Union Alumni Association, issued another community statement that, "threats to the safety of our students must be investigated and addressed. No student should fear for their safety on Cooper Union's campus.  Cooper [Union]'s administrative and security team are in the process of a comprehensive review of [October 25] events and resulting complaints."  President Sparks and Vogel emphasized that, "Once the review

process is complete, any disciplinary actions consistent with Cooper policies and the Code of Conduct will be initiated as required." On November 3, in conjunction with a comprehensive agenda for campus safety, student care, and learning, President Sparks issued yet another community statement that, "The Cooper Union remains a place committed to the safety and security for all. We are dedicated to exactly that – to ensuring our campus is a safe place of learning."

14.    Cooper Union denies the allegations of Paragraph 14.  President Sparks issued multiple statements in October and November 2023—in direct response to the October 7 terrorist attacks and the events of October 25—condemning discrimination in all forms and making it clear that the College would not tolerate hateful or violent language or actions by members of the Cooper Union community.   As President Sparks promised the Cooper Union community on October 31 and November 3, 2023, Cooper Union undertook a prompt investigation into the events of October 25 and initiated disciplinary action against students who were found to have violated campus policies, including the Code of Conduct.  Although none of Plaintiffs ever submitted a formal complaint to the College in connection with the events of October 25, on December 1, 2023, Cooper Union's Title IX Coordinator who was responsible for interviewing students in connection with the College's investigation into the events of October 25, emailed nine of the ten Plaintiffs to invite them to participate in the investigation.  Cooper Union was not initially aware that the tenth Plaintiff, Anna Weisman, had been present in the library at the time of the demonstration.  Approximately two and a half months after Cooper Union's initial outreach to Plaintiffs regarding the investigation, and after additional follow-up from the College, Plaintiffs communicated through counsel that they declined to participate in the review process.  Cooper

Union has at all times complied with its obligations under federal, state, and New York City law as well as its own campus policies.

15.     Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15, and therefore denies the same.

16.     Paragraph 16 contains legal conclusions to which no response is required.  To the extent a response is required, Cooper Union denies the allegations and characterizations of its actions in Paragraph 16.  All the remaining allegations in Paragraph 16 are denied.

17.     Paragraph 17 contains legal conclusions to which no response is required.  To the extent a response is required, Cooper Union denies the characterizations of its actions in Paragraph 17.  All the remaining allegations in Paragraph 17 are denied.

## JURISDICTION AND VENUE

18.     Paragraph 18 contains legal conclusions to which no response is required.

19.     Paragraph 19 contains legal conclusions to which no response is required.

20.     Paragraph 20 contains legal conclusions to which no response is required.

## PARTIES

21.     Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21, and therefore denies the same.

22.     Cooper Union admits that Rebecca Gartenberg is a master's degree candidate in Cooper Union's electrical engineering graduate program, who received her undergraduate degree in electrical engineering from Cooper Union.  Cooper Union admits that Gartenberg identifies as Jewish.

23.    Cooper Union admits that Perie Hoffman was previously a sophomore and is currently a junior majoring in chemical engineering at the Albert Nerken School of Engineering. Cooper Union admits that Hoffman identifies as Jewish.

24.    Cooper Union admits that Jacob Khalili was a senior majoring in electrical engineering. Mr. Khalili graduated from Cooper Union with his class in 2024. Cooper Union admits that Khalili identifies as Jewish.

25.    Cooper Union admits that Gabriel Kret was a sophomore and is currently a junior majoring in mechanical engineering at the Albert Nerken School of Engineering. Cooper Union admits that Kret identifies as Jewish.

26.    Cooper Union admits that Taylor Roslyn Lent was a sophomore and is currently a junior majoring in chemical engineering at the Albert Nerken School of Engineering. Cooper Union admits that Lent identifies as Jewish.

27.    Cooper Union admits that Benjamin Meiner was a senior majoring in mechanical engineering. Mr. Meiner graduated from Cooper Union with his class in 2024. Cooper Union admits that Benjamin Meiner identifies as Jewish.

28.    Cooper Union admits that Michelle Meiner was a senior majoring in mechanical engineering. Ms. Meiner graduated from Cooper Union with his class in 2024. Cooper Union admits that Michelle Meiner identifies as Jewish.

29.    Cooper Union admits that Meghan Notkin was a sophomore and currently a junior majoring in electrical engineering at the Albert Nerken School of Engineering. Cooper Union admits that Notkin identifies as Jewish.

15552671

30.     Cooper Union admits that Gila Rosenzweig was a senior majoring in civil engineering.  Ms. Rosenzweig graduated from Cooper Union with her class in 2024.  Cooper Union admits that Rosenzweig identifies as Jewish.

31.     Cooper Union admits that Anna Weisman was a sophomore and currently a junior majoring in electrical engineering.  Cooper Union admits that Weisman identifies as Jewish.

32.     Paragraph 32 contains legal conclusions to which no response is required.  Cooper Union admits that it is a private college located in New York, New York, and incorporated under the laws of the State of New York.  Cooper Union also admits that the College receives over $3M in federal funding.

## **FACTS**

33.     Paragraph 33 contains legal conclusions to which no response is required.

34.     Paragraph 34 contains legal conclusions to which no response is required.

35.     Cooper Union admits that the cited Executive Order was issued by then-President Trump in December 2019.  To the extent Paragraph 35 purports to quote or characterize statements or documents, those statements and documents speak for themselves, and thus no response is required.

36.     Paragraph 36 contains legal conclusions to which no response is required.  To the extent the allegations in this Paragraph purports to quote or characterize statements or documents, those statements and documents speak for themselves, and thus no response is required.  The remaining allegations in Paragraph 36 are denied.

37.     Paragraph 37 contains legal conclusions to which no response is required.  To the extent that this Paragraph purports to quote or characterize statements or documents, those statements and documents speak for themselves, and thus no response is required.

14

38.    Paragraph 38 contains legal conclusions to which no response is required.  To the extent a response is required, Cooper Union lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 38.

39.    Cooper Union admits that the cited resolution was approved by the U.S. House of Representatives on December 5, 2023.  To the extent Paragraph 39 purports to quote or characterize statements or documents, those statements and documents speak for themselves, and no response is required.

40.    Cooper Union admits that New York Governor Kathy Hochul issued the letter cited in Paragraph 40 on December 9, 2023.  To the extent Paragraph 40 purports to quote or characterize statements or documents, those statements and documents speak for themselves, and no response is required.

41.    Paragraph 41 contains legal conclusions to which no response is required.  Cooper Union admits that Plaintiffs identify as Jewish students who have an affinity with Israel as their ancestral homeland.

42.    Cooper Union admits the allegations in Paragraph 42.

43.    Cooper Union admits that the College was founded in 1859 by Peter Cooper, who envisioned an institution founded on civil discourse and societal engagement.  Just prior to the Civil War, Peter Cooper strove to create an institution in which people of all religions, genders, races, and backgrounds could congregate, learn from one another, and enrich their lives through education.  He believed that education serves not only as an essential building block to personal accomplishment but also to active civic engagement and the bridging of societal divides. Peter Cooper's foundational precept has guided Cooper Union throughout its existence.  Cooper Union has always been rooted in the philosophy of equal access to education for all of society.  Cooper

15

Union denies that the College failed to safeguard the freedom of its Jewish students to pursue their scholarly, artistic, and intellectual interests. To the extent Paragraph 43 purports to quote or characterize statements or documents, those statements and documents speak for themselves, and no response is required.

44.     Paragraph 44 contains legal conclusions to which no response is required. Cooper Union denies the characterization of its response to the October 7 terrorist attacks in Paragraph 44. Mere days after the attacks, on October 11, 2023, President Sparks issued an impassioned statement forcefully condemning the October 7 attacks, grieving for the lives lost, and calling for the return of the hostages. As set forth above, the College also issued an initial statement two days earlier, on October 9, 2023, which was the first day after the attacks that students returned to campus. The remaining allegations in Paragraph 44 are denied.

45.     Cooper Union admits that it issued certain statements in June 2020 in response to the murder of George Floyd, Ahmaud Arbery, Tony McDade and Breonna Taylor. To the extent the allegations in Paragraph 45 are intended to imply that these June 2020 statements were more timely than the October 2023 statements, Cooper Union denies that allegation. To the extent the allegations in Paragraph 45 purport to quote or characterize statements or documents, those statements and documents speak for themselves, and no response is required.

46.     Cooper Union admits that it issued a statement on July 13, 2020 in response to a proposed ICE regulation. To the extent the allegations in Paragraph 46 purport to quote or characterize statements or documents, those statements and documents speak for themselves, and no response is required.

47.     Cooper Union admits that it issued a statement on March 19, 2021 in response to acts of violence against the Asian American and Pacific Islander communities. To the extent the

allegations in Paragraph 47 purport to quote or characterize statements or documents, those statements and documents speak for themselves, and thus no response is required.

48.    The allegations in Paragraph 48 purport to quote or characterize statements or documents.  Those statements and documents speak for themselves, and no response is required.

49.    Cooper Union denies the allegations in Paragraph 49 that purport to characterize the nature of Cooper Union's response to the October 7, 2023, terrorist attacks.  Four days after the attacks, on October 11, 2023, Cooper Union issued a community statement, unequivocally condemning Hamas's October 7 attacks on Israel as horrific, brutal, and unjustifiable acts of violence.  Cooper Union denies that this response was untimely or that its initial response to the October 7 attacks was to "say nothing."  This statement followed an earlier statement issued by Cooper Union administrators on October 9, 2023—the first day students returned to campus after the October 7 attacks—that acknowledged the impact that the attacks had on members of the Cooper Union community and offered support and resources to those individuals who had been directly and indirectly impacted by the violence.  The remaining allegations in Paragraph 49 are denied.

50.    Cooper Union admits that the Cooper Union Hillel is a Jewish student group.  Cooper Union further admits that the Cooper Union Hillel contacted members of the Cooper Union administration regarding the October 7 terrorist attacks.  Cooper Union's then-Dean of Students responded directly to this outreach to assure members of the Cooper Union Hillel that "we are all here for you," and to ensure they were aware of the resources available to students impacted by the October 7 terrorist attacks.  To the extent the allegations of Paragraph 50 purport to quote or characterize statements or documents, those statements and documents speak for themselves, and no response is required.  Cooper Union lacks knowledge or information sufficient

17

to form a belief as to the truth of the remaining allegations in paragraph 50, and therefore denies the same.

51.     Cooper Union admits that senior Cooper Union administrators Natalie Brooks, Christopher Chamberlin, and Demetrius Eudell issued the October 9 statement informing the members of the Cooper Union community about counseling and mental health resources available to them.   The October 9 statement was not meant to represent the College's position on the October 7 attacks.   On October 11, President Sparks issued her statement setting out Cooper Union's position specifically on the October 7 attacks.   The October 11 statement forcefully condemned the October 7 attacks and made specific reference to the violence and brutality of those attacks.   Cooper Union lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 51 concerning Plaintiffs' response to the October 9 statement.   The remaining allegations in paragraph 51 are denied.

52.     Cooper Union admits that Cooper Union's then-Dean of Students Christopher Chamberlin wrote to past and present members of the Cooper Union Hillel on October 12, 2023. Cooper Union admits that Chamberlin's email to Hillel was not published publicly, but President Sparks issued a statement to the Cooper Union community condemning the October 7 terrorist attacks the previous day.   To the extent that the allegations of Paragraph 52 purport to quote or characterize statements or documents, those statements and documents speak for themselves, and no response is required.   Cooper Union denies the remaining allegations of Paragraph 52.

53.     Cooper Union denies the allegations of Paragraph 53.   Cooper Union has at all times complied with its obligation under federal, state, and New York City law as well as its own campus policies.   After promptly condemning the October 7 attacks, the Cooper Union

administration announced increased resources for those affected by the attacks, as well as increased campus safety and security measures.

54.    Cooper Union admits that posters with images of individuals who had been kidnapped by Hamas were posted on campus in compliance with the Cooper Union Posting Policy.  On October 17, 2023, the Cooper Union Hillel put up posters in the lobby of the campus building at 41 Cooper Square ("41 CS") as part of a vigil held for the victims of October 7. Hillel's vigil received the full support of the Cooper Union administration: President Sparks, the Dean of Students, the Chief Talent Officer, and the Director of Campus Safety and Security, all attended Hillel's vigil.  Although Cooper Union's Posting Policy provides that posters connected with an event should be removed once the event has concluded, the posters remained in the lobby of 41 CS for nearly a week after the vigil.  Cooper Union ultimately removed the posters in accordance with the Posting Policy, and the Chief Talent Officer notified Hillel of the removal adding that "[a]ll of the items are in my office in facilities if you wish to retrieve them."  Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 54, and therefore denies the same.

55.    Paragraph 55 includes legal conclusions to which no response is required.  To the extent the allegations in Paragraph 55 purport to quote or characterize statements or documents, those statements and documents speak for themselves, and no response is required.  The remaining allegations in the paragraph are denied.

56.    Paragraph 56 includes legal conclusions to which no response is required. Cooper Union admits that it issued a campus security statement prior to October 13, 2023.  To the extent the allegations in Paragraph 56 purport to quote or characterize statements or documents, those statements and documents speak for themselves, and no response is required.  Cooper Union lacks

19

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 56, and therefore denies the same.

57.    Paragraph 57 includes legal conclusions to which no response is required. To the extent the allegations in Paragraph 57 purport to quote or characterize statements or documents, those statements and documents speak for themselves, and no response is required.  Cooper Union admits that on October 23, 2023, some students put up large posters in the Colonnade windows on the first floor of the Foundation Building.  The posters, which occupied almost the entirety of the Colonnade windows, faced the street.  Staff removed the posters after senior members of the Cooper Union administration determined that the signs were not in compliance with the Posting Policy or connected with any authorized class project.  Cooper Union admits that certain students were present at the time the posters were removed but lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 57 and therefore denies the same.

58.    Cooper Union admits that the Colonnade windows of the Foundation Building are reserved for College-sanctioned advertising and authorized class projects, and that students and faculty must receive permission in advance before posting there.   The remaining allegations of Paragraph 58 consist of legal conclusions, to which no response is required, or else purport to characterize documents and statements, which speak for themselves, and therefore require no response.  Cooper Union's policies and disciplinary procedures, including the Posting Policy, provide wide latitude and discretion for the College to determine what, if any, disciplinary measures should be imposed in the event of a policy violation.  Furthermore, the Posting Policy only provides that unauthorized posters are subject to removal but does not prescribe any disciplinary penalties.

15552671

59.     Paragraph 59 sets forth legal conclusions to which no response is required. To the extent the allegations in Paragraph 59 purport to quote or characterize statements or documents, those statements and documents speak for themselves, and thus no response is required.  As stated above, Cooper Union understands, upon information and belief, that the contents of these posters were not the original words of the students but rather reprinted from an article published in a progressive Jewish publication called "Jewish Currents."   The remaining allegations in Paragraph 59 are denied.

60.     Cooper Union admits that the Facilities staff informed the Director of Campus Safety and Security about the posters were being placed in the Colonnade windows.  The security staff were not authorized to take down posters, and, in any event, would not have been aware of whether the posters had previously been authorized consistent with Cooper Union's policies. Cooper Union conducted an inquiry into the postings, and once it determined that the postings were unauthorized, it took steps to remove them within hours.  Cooper Union lacks sufficient information or knowledge to form a belief as to the remainder of the allegations in Paragraph 60, and therefore denies the same.

61.     Paragraph 61 contains legal conclusions and non-factual assertions to which no response is required.  To the extent that a response is necessary, Cooper Union denies the allegations in Paragraph 61, including the allegation that the College had a duty to remove the posters immediately.  Cooper Union removed the posters within hours after they were put up as soon as it determined that the posting was unauthorized.

62.     Cooper Union admits that it received complaints regarding these posters, and that they were removed promptly once an investigation had been conducted into their posting.  Cooper Union further admits that some Cooper Union students complained to Dean Shoop and Dean

21

Savizky about the posters on the morning of October 23. Dean Shoop had not at this point seen the posters himself, and when he went up to view the posters, Cooper Union staff were already in the process of removing them. Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62, and therefore denies the same.

63.    Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63, and therefore denies the same.

64.    Cooper Union denies the allegation that the College would have removed the posters sooner if another group had been "targeted." Cooper Union strives to enforce its posting policies consistently at all times, regardless of the content of any specific posting at issue. Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 64, and therefore denies the same.

65.    Cooper Union admits that staff deposited the Colonnade posters at the Facilities office, consistent with the Posting Policy. The students who had designed the posters later retrieved their work from the Facilities office. Cooper Union admits that these posters were used by the demonstrators during their October 25 protest outside the Foundation Building, which took place on public property. In addition to the events of October 25, 2023, Cooper Union also reviewed the incidents involving the Colonnade posters as part of its comprehensive investigation to determine whether students violated campus policies. Following this review, Cooper Union initiated disciplinary action against all students who were found to have violated campus policies. The remaining allegations in Paragraph 65 are denied.

66.    Cooper Union admits that Doug Ashford reposted images of the posters to his private social media account. Cooper Union denies that it failed to take any action with respect

to the posters.  Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 66, and therefore denies the same.

67.    Paragraph 67 contains legal conclusions and non-factual assertions to which no response is required.  Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 67, and therefore denies the same.

68.    Paragraph 68 contains legal conclusions and non-factual assertions to which no response is required.  To the extent that a response is necessary, Cooper Union denies the allegations in the paragraph.  Cooper Union has at all times complied with its obligations under federal, state, and local laws, in addition to its own campus policies.

69.    To the extent the allegations in Paragraph 69 purport to quote or characterize statements or documents, those statements and documents speak for themselves, and thus no response is required.  Cooper Union denies that the October 25 walkout, which took place on public property, was sanctioned or authorized by the College in any manner whatsoever.  The College only learned about the walkout on October 24, when staff and senior members of the administration saw the posters and signs advertising the walkout.  Despite limited knowledge of the scope and nature of the walkout, Cooper Union's leadership and staff prepared for the event expeditiously.  At President Sparks's direction, Cooper Union devised a security plan, and notified the NYPD's 9th Precinct about the walkout.  Additional campus security officers were also directed to be stationed on campus for the event.  The NYPD assured Cooper Union that there would be police detail assigned to campus for the duration of the walkout.  Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 69 and therefore denies the same.

15552671

70.    Cooper Union denies that any professor cancelled their classes on October 25, 2023, to encourage students to participate in the walkout.  The allegation that an art professor encouraged their students to attend and draw pictures of the demonstration is also denied.  Cooper Union admits that an adjunct professor in the School of Architecture moved their drawing class outside to the park.  Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 70, and therefore denies the same.

71.    Cooper Union admits that a student reached out to Dean Shoop about the proposed walkout.  The remaining allegations in the Paragraph are denied.

72.    Paragraph 72 contains legal conclusions to which no response is required.  Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 72 and therefore denies the same.

73.    Cooper Union admits that a student reached out to Dean Savizky complaining about the walkout.  However, Cooper Union denies that Dean Savizky informed any student to stay inside the building.  Cooper Union also denies that Dean Savizky said that events such as the walkout tended to become "violent."  On the morning of October 25, 2023, Cooper Union had a full security detail stationed at the Foundation Building, encompassing both the standard number of security officers and the additional officers assigned for the event.  Cooper Union's security precautions ensured that the walkout and demonstration took place without any physical injury or property damage to anyone.  The remaining allegations in the Paragraph are denied.

74.    Cooper Union admits that on the morning of October 25, 2023, Plaintiff Michelle Meiner emailed Dean Shoop and Dean Shoop, saying that she was "a little concerned for [her] safety" in connection with the walkout.  About 15 minutes later, Dean Shay responded that, "always prudent to be aware of your surroundings . . . If you're in the building attending class or

24

working in lab, you are away from the disturbance and any unintended consequences." Dean Shay added that, "Cooper security staff are well aware of the proposed event and will be extra-vigilant." Less than two hours later, Dean Shoop responded that, Cooper Union was not "anticipating anything other than a peaceful walk-out," adding that "[i]n an abundance of caution, I know that our security team has an increased presence." To the extent the allegations in Paragraph 74 purport to quote or characterize statements or documents, those statements and documents speak for themselves, and thus no response is required.

75.    Cooper Union's foremost priority has always been ensuring campus safety and security. Far from being negligent or callous, senior members of Cooper Union's administration received Plaintiffs' concerns solicitously. On October 24, 2023, Plaintiff Khalili emailed President Sparks cc'ing Plaintiff Gila Rosenzweig and another student, wishing to discuss "how Jewish students are feeling on campus" that week seeking "more that [sic] the twenty minutes allotted." President Sparks responded positively within a few hours, copying both the Dean of Students and her assistant to schedule a meeting with Plaintiff Khalili and other correspondents on the email thread. Over the next four days, President Sparks and her assistant followed up with Plaintiff Khalili on four separate occasions requesting Plaintiff Khalili and others to send in their availability for a meeting. President Sparks also encouraged everyone to "talk from a space where they felt comfortable," suggesting that she was available to meet over Zoom or Teams. Plaintiff Khalili ultimately declined to schedule a meeting with President Sparks, although he was appreciative that President Sparks made "a commitment to take the time to meet with us." On January 26, 2024, President Sparks followed up with Plaintiff Khalili, welcoming him back to the campus and making it clear that her "door is always open" and that she "would be happy to facilitate a meeting." On February 1, Plaintiff Khalili responded saying that he "appreciate[d]"

the follow-up, thanked her for offering, and expressed a desire to "focus on my schoolwork, and personal life."    The remainder of Paragraph 75 contains legal conclusions and non-factual assertions to which no response is required.  To the extent that a response is necessary, Cooper Union denies the allegations in Paragraph 75.

76.    Cooper Union admits that the posters that had been retrieved from the Facilities office were later placed on a public sidewalk outside the Foundation Building on October 25, 2023.  Cooper Union admits that the sidewalk as well as the larger area called "Cooper Square," outside the Foundation Building is public property.  The College does not exercise any authority or control over any events and activities that take place on public property.  A member of Cooper Union's security team inquired about the posters with the students who put them on the sidewalk. The students confirmed that they wanted the posters to be present for the walkout planned for later that day.  The students also told Cooper Union's security team that they would remove posters from the sidewalk after the walkout concluded.  Cooper Union staff then consulted with the Chair of Community Affairs at the NYPD's 9th Precinct for guidance on the most appropriate course of action regarding the posters.  An NYPD officer inspected the posters that were placed on the public sidewalk, verified that their content did not appear to incite violence or vandalism, and informed Cooper Union staff that the NYPD would permit the posters to remain in place. Cooper Union admits that Cooper Union staff told Plaintiffs that they would not remove posters from the public sidewalk.  The remaining allegations in Paragraph 76 are denied.

77.    Cooper Union is not obliged to respond to several of the allegations in this Paragraph, in light of the Court's recent orders, holding that those allegations do not constitute a basis for holding Cooper Union liable under the claims brought in this Complaint.  *See* Dkt. 44 at 2-3; Dkt. 39 at 33-34.  Cooper Union admits that there was a demonstration held by pro-Palestine

demonstrators on public property outside the Foundation Building that began at approximately 1:00 PM. Cooper Union admits that some of the demonstrators had their faces covered. The demonstrators carried posters and led chants. Some Cooper Union faculty members were outside the Foundation Building as observers but did not participate in the demonstration. Cooper Union's Director of Campus Safety and Security was present at the entrance of the Foundation Building along with three campus security officers and three officers from the NYPD. Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 77, and therefore denies the same.

78.    Cooper Union admits that pro-Israel students, including several Plaintiffs, engaged in a counterprotest nearby the pro-Palestine demonstrators. Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 78, and therefore denies the same.

79.    Paragraph 79 contains legal conclusions to which no response is required. Cooper Union admits that a fire alarm sounded inside the Foundation Building at 2:00 PM, indicating smoke on the fifth floor. The New York City Fire Department ("FDNY") arrived on scene and evacuated the building. During the evacuation, the pro-Palestine demonstrators called for President Sparks to come outside. President Sparks remained in the lobby of the Foundation Building until the FDNY gave the all-clear signal, at which point she returned to her office on the seventh floor. Cooper Union reviewed the security footage of the hallway and found no evidence suggesting that anyone tampered with the fire alarm. The College admits that no disciplinary proceedings have been brought related to the fire alarm going off in the Foundation Building on October 25, 2023. Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 79, and therefore denies the same,

27

including the implication that Cooper Union has knowledge of the identity of the individual who pulled the alarm.

80.    Cooper Union admits that at approximately 3:35–3:45 PM, roughly half of the pro-Palestine demonstrators moved inside the Foundation Building, and that some of these demonstrators carried signs and chanted slogans.  The Director of Campus Safety and Security requested his staff to ensure that all students who entered the Foundation Building swipe their ID cards.  Although some of the demonstrators swiped their ID cards before entering, not all the demonstrators did so.  The security team prevented some of the students from accessing the building, but several other demonstrations were able to reach the internal staircase.  At this point, the security team began controlling the elevators manually so that the demonstrators could not access them.  At the same time, an engineer was stationed at the elevators to guarantee access to persons with disabilities who needed to utilize the elevators.  Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 80, and therefore denies the same.

81.    As noted above, the NYPD was present in the Foundation Building throughout the demonstration: something that the Chief of Department of the NYPD John Chell confirmed in a press conference the following day.  Cooper Union denies that President Sparks prevented the NYPD officers from entering the Foundation Building.  Cooper Union admits that in anticipation of the walkout, the College's security team and members of the NYPD were stationed near the Foundation Building to monitor and respond as necessary to the event.  At around 3:35–3:45 PM, as the demonstrators entered the Foundation Building, there were six members of Cooper Union's security team and three officers from the NYPD stationed at the building.  Cooper Union denies that President Sparks declined an offer of police intervention.  President Sparks was in close

communication with both the NYPD and campus security throughout the afternoon until the demonstrators dispersed. When the demonstrators were on the seventh floor outside President Sparks's office, the Cooper Union's on-site security team and an NYPD officer on site in the building recommended against the use of force to remove the demonstrators from the building. The NYPD offered to remain in the building to continue monitoring the situation in case further intervention became necessary, and President Sparks took them up on that offer. President Sparks never prevented the NYPD from intervening to disperse the demonstrators. The remaining allegations in Paragraph 81 are denied.

82. Cooper Union admits that the pro-Palestine demonstrators who entered the Foundation Building went up the stairs to the seventh floor where they proceeded to President Sparks's office. Once the demonstrators were outside the office, they began chanting for President Sparks to come outside. The demonstrators did not attempt to damage any property or open the doors. Cooper Union admits that there was a report of a student being unable to go to class due to the presence of the demonstrators in the Foundation Building Multiple security officers were stationed throughout the seventh floor of the Foundation Building to observe the approximately 20-25 demonstrators who were present and ensure that the environment remained safe, and classes were not disrupted. There was a security detail monitoring the demonstrators in the Foundation Building throughout the afternoon. Cooper Union lacks sufficient knowledge or information to form a belief as to the truth of the allegation that Plaintiffs contacted other Jewish students in the building. The remaining allegations in Paragraph 82 are denied.

83. Paragraph 83 contains legal conclusions to which no response is required. To the extent that a response is necessary, Cooper Union denies the allegations in Paragraph 83. As set

forth above, Cooper Union actively monitored the situation, in consultation with the NYPD, throughout the day.

84.    Cooper Union admits that some Plaintiffs entered the library but initially sat at the back of the library.  As video evidence will show, Plaintiffs moved to the large glass walls separating the library from the Colonnade at some later point in the afternoon.  At President Sparks's direction, Cooper Union's Chief Talent Officer, Natalie Brooks, who was outside the library at the time, went to check in on Plaintiffs, who had gathered at the table near the back bookshelf.  The library was full of students studying, students coming in and out to study, receive tutoring, and participate in the "ledger day" celebration, enjoying popcorn, chocolates, and cake. Brooks gathered some popcorn, went over to Plaintiffs, asked how everyone was doing, and offered them snacks.  Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 84, and therefore denies the same.

85.    Cooper Union admits that to minimize disruption to those studying and participating in events inside the library, the library doors were closed for roughly twenty minutes when the student demonstrators descended from the seventh floor towards the first floor.  Cooper Union denies, however, that the doors were ever locked, either from within or without.  Cooper Union students, staff and faculty continued to enter and exit the space during the demonstration. Cooper Union admits that some of the pro-Palestine demonstrators descended the stairs from the seventh floor and attempted to enter the library.  However, a Cooper Union staff member who was stationed outside the library, informed the demonstrators that they were not permitted to enter.  Upon hearing this, the demonstrators left the library doors and proceeded to the Colonnade. Security officers and NYPD officers were present onsite nearby to monitor the demonstrators in case the tone of the protest escalated.  The demonstrators did not cause any physical harm or

property damage at any time over the course of the afternoon.  Some of the Plaintiffs asked Brooks where the demonstrators were in the building.  Cooper Union admits that Brooks responded by saying that the demonstrators were coming down the stairwell.  The remaining allegations in Paragraph 85 are denied.

86.    Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 86, and therefore denies the same.

87.    Cooper Union admits that the pro-Palestine demonstrators proceeded to the Colonnade from the library doors, where they continued their protest outside the glass walls of the library.   Cooper Union further admits that the demonstrators banged the floor and the glass walls as they were chanting and holding signs.  In response to this demonstration, the Cooper Union security team installed stanchions in the lobby to guide the demonstrators from the Colonnade to the exit.   Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 87, and therefore denies the same.

88.    Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88, and therefore denies the same.

89.    Cooper Union admits that the demonstrators were in the vicinity of the library for approximately 10 minutes.  Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89, and therefore denies the same.

90.     Cooper Union admits that President Sparks did not come to the library while the demonstration was taking place.  However, senior members of the Cooper Union administration, including Natalie Brooks, were present in the library at the time and in close communication with President Sparks throughout the demonstration.  Cooper Union denies the remaining allegations in the Paragraph.

15552671

91.     Cooper Union denies that President Sparks refused police intervention.  As set forth above, President Sparks accepted the recommendation of the Cooper Union security team and the NYPD that physical intervention to remove the demonstrators from the building by force was not warranted and would be ill-advised.  President Sparks accepted the NYPD's offer to remain on the scene throughout the demonstration so that they could quickly intervene in the event circumstances changed and physical intervention became warranted.  Throughout the afternoon, President Sparks was coordinating Cooper Union's strategic response to the demonstration from her office.  Cooper Union denies that the internal doors to President Sparks's office were locked at the instruction of Cooper Union's security team.  To the extent the allegations in Paragraph 91 purport to quote or characterize statements or documents, those statements and documents speak for themselves, and thus no response is required.  After the demonstrators dispersed, Tresselt and Brooks offered any student who might not want to leave out the front of the Foundation Building the option of leaving through the back doors used in graduation ceremonies.  Cooper Union admits that Brooks informed Plaintiffs that President Sparks and her staff chose to use that exit.   All the remaining allegations in the Paragraph are denied.

92.     Cooper Union admits that a librarian offered some of the students in the library the option of moving to the mezzanine space if the noise of the demonstration bothered them.  The mezzanine is on the second floor of the library and is an open space with multiple entrances.  No one took up the librarian on her offer.  Cooper Union further admits that Brooks informed students, including several Plaintiffs, that the demonstrators had dispersed and offered them the ability to use the back door of the Great Hall to exit the Foundation building if they had concerns for any reason.  Brooks also offered Plaintiffs Uber rides home.  Plaintiffs responded that they would discuss the options.  In the meantime, Brooks went back out into the lobby where things

32

appeared normal, and individuals were setting up for another event at the College.  The remaining allegations in Paragraph 92 are denied.

93.    Cooper Union denies the allegations in Paragraph 93.

94.    Cooper Union admits that the demonstrators left the campus of their own accord, following the stanchions that the security team had placed from the Colonnade to one of the exits, after the Cooper Union security team prevented them from entering the library.  As set forth above, Cooper Union security officers and the NYPD were present inside the Foundation Building throughout the demonstration.  The NYPD subsequently made a public statement asserting that there were no threats to student safety during this incident.  The remainder of Paragraph 94 contains legal conclusions and non-factual assertions to which no response is required.  To the extent that a response is necessary, Cooper Union denies the remaining allegations in the paragraph.

95.    Cooper Union admits that Brooks gave Plaintiffs her cell phone number and/or email address and assured them that Cooper Union would order an Uber without any problem if any of them changed their mind about wanting an Uber home, or if the student in class wanted to get in touch with her.  Cooper Union further admits that Tresselt also offered Plaintiffs a security escort from the building, but denies that any of the Plaintiffs accepted Tresselt's offer.  Plaintiffs thanked Tresselt and Brooks and later left the Foundation building in two different groups.  Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 95, and therefore denies the same.

96.    Paragraph 96 contains legal conclusions and non-factual assertions to which no response is required.  To the extent that a response is necessary, Cooper Union denies all the allegations in the paragraph.  Cooper Union undertook a prompt review of the events of October

33

23 and October 25, 2023, and initiated disciplinary action against students who were found to have violated campus policies.  Cooper Union also issued forceful statements on October 25 and October 31 reiterating, *inter alia*, that there is "no place at Cooper for hateful and violent language or actions."

97.     Cooper Union denies that Dean Shoop was contacted by email on October 25 by students regarding the library incident.  However, Cooper Union admits that a student contacted Dean Shay about the events of October 25, 2023 expressing the feeling "unsafe, unwelcome, and unwanted."  Acknowledging that Dean Shay was "probably the wrong person to ask about this," the student inquired whether any students would be "punished for their actions" that transpired on October 25.  Cooper Union further admits that Dean Shay responded by stating that she was present in 41CS for the entirety of the evening, and that she did not witness anything other than "a peaceful gathering" outside the Foundation Building.  Dean Shay continued that she would be "coming to work and class as usual."  To the extent the allegations in Paragraph 97 purport to quote or characterize statements or documents, those statements and documents speak for themselves, and thus no response is required.  Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 97, and therefore denies the same.

98.     Cooper Union admits that President Sparks issued a message to the Cooper Union community on October 25, 2023 regarding the library incident.  To the extent the allegations in Paragraph 98 purport to quote or characterize statements or documents, those statements and documents speak for themselves, and no response is required.  The remaining allegations in the paragraph are denied.

15552671

99.     Cooper Union admits that President Sparks issued a message to the Cooper Union community on October 25, 2023 regarding the library incident. To the extent the allegations in Paragraph 99 purport to quote or characterize statements or documents, those statements and documents speak for themselves, and no response is required. Cooper Union denies that it has taken no disciplinary action in connection with the events of October 25. Cooper Union conducted a thorough investigation of this incident and initiated disciplinary proceedings against several students in connection with their actions that day. Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 99, and therefore denies the same.

100.    Cooper Union admits that President Sparks and the President of the Cooper Union Alumni Association, Ron Vogel, issued a statement regarding the library incident to the Cooper Union community on October 31, 2023. To the extent the allegations in Paragraph 100 purport to quote or characterize statements or documents, those statements and documents speak for themselves, and no response is required. The remaining allegations in the paragraph are denied.

101.    Cooper Union admits that President Sparks issued a statement regarding the October 25 protest to the Cooper Union community on November 3, 2023. To the extent the allegations in Paragraph 101 purport to quote or characterize statements or documents, those statements and documents speak for themselves, and no response is required. In her November 3, 2023, message to the Cooper Union community, President Sparks outlined the basic policies to which the administration is committed, including ensuring the safety of all members of the Cooper Union community, upholding the principles of academic freedom, safeguarding the students' rights and freedoms under the Code of Conduct, reiterating the responsibilities for all members of the community to take care of each other, and preserving a campus on which no hate

or discrimination of any kind is tolerated.  President Sparks condemned discrimination of any kind, including antisemitism.  The College also announced a suite of mental health resources for anyone who was affected by the events that were transpiring in the Middle East, and the creation of an internal task force of students, faculty, and staff to recommend special programming and educational events about the history of the Middle East.  At the same time, Cooper Union also initiated a comprehensive review of events on campus for any potential discrimination or violations of campus policies.  The review also functioned as a mechanism through which students could share their experiences and perspectives of the events of October 25.  The remaining allegations in the paragraph are denied.

102.    Cooper Union denies the allegations of Paragraph 102.  To enhance the security on campus as protests continue throughout New York City and ensure a safe learning and working environment for the members of the community, President Sparks announced on November 3, that Cooper Union would be increasing its collaboration with the NYPD's 9th Precinct and heightening the presence of campus security.  As set forth above, Cooper Union also conducted a thorough investigation of the October 25, 2023 demonstration and initiated disciplinary proceedings against multiple students in connection with their conduct during that demonstration.

103.    The allegations of Paragraph 103 contain legal conclusions to which no response is required.  To the extent any response is required, Cooper Union denies the allegations of Paragraph 103.

104.    Cooper Union is not obliged to respond to the allegations in this Paragraph, in light of the Court's recent orders, holding that those allegations do not constitute a basis for holding Cooper Union liable under the claims brought in this Complaint.  *See* Dkt. 44 at 2-3; Dkt. 39 at 33-34.  Cooper Union admits that postings critical of Israel or in support of Palestine have

15552671

occasionally appeared on campus in the time since the October 25, 2023 demonstration.  When Cooper Union has been made aware of such postings, it has conducted a review to determine whether they comply with the College's policies, including its Posting Policy and it has acted swiftly to remove any postings that violate Cooper Union policies.  Cooper Union further admits that graffiti with the words "Free Palestine" in small lettering was found in multiple places outside of the Foundation Building.  Cooper Union removed this graffiti on the Foundation Building.  The remaining allegations of Paragraph 104 are denied.

105.    Cooper Union is not obliged to respond to the allegations in this Paragraph, in light of the Court's recent orders, holding that those allegations do not constitute a basis for holding Cooper Union liable under the claims brought in this Complaint.  *See* Dkt. 44 at 2-3; Dkt. 39 at 33-34.  Cooper Union admits that the Cooper Union Students for Justice in Palestine held a vigil on public property in front of Cooper Union's Foundation Building on November 9, 2023.  To the extent that Paragraph 105 alleges that this vigil was organized or condoned by the College, Cooper Union denies that allegation. Cooper Union's chapter of the Students for Justice in Palestine is not a recognized organization or association on campus.  Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 105 and therefore denies the same.

106.    Cooper Union is not obliged to respond to the allegations in this Paragraph, in light of the Court's recent orders, holding that those allegations do not constitute a basis for holding Cooper Union liable under the claims brought in this Complaint.  *See* Dkt. 44 at 2-3; Dkt. 39 at 33-34.  To the extent the allegations in Paragraph 106 purport to quote or characterize statements or documents, those statements and documents speak for themselves, and no response is required.  The remaining allegations in the paragraph are denied.  Cooper Union lacks knowledge or

information sufficient to form a belief as to the remaining allegations in Paragraph 106 and therefore denies the same.

107.    Cooper Union is not obliged to respond to the allegations in this Paragraph, in light of the Court's recent orders, holding that those allegations do not constitute a basis for holding Cooper Union liable under the claims brought in this Complaint. *See* Dkt. 44 at 2-3; Dkt. 39 at 33-34. Cooper Union admits that The Pioneer is Cooper Union's student-run newspaper. To the extent that Paragraph 107 alleges that the Cooper Union exercises editorial control over the Pioneer, Cooper Union denies that allegation. Cooper Union does not have any advance knowledge of what will be printed in The Pioneer, until the editions are released. Cooper Union admits that the Muslim Student Association, along with other student groups, published statements in The Pioneer's November 20, 2023 issue. The November 20, 2023 edition also carried several pieces expressing a pro-Israel perspective. To the extent the allegations in Paragraph 107 purport to quote or characterize statements or documents, those statements and documents speak for themselves, and no response is required. Cooper Union lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 107 and therefore denies the same.

108.    Cooper Union is not obliged to respond to the allegations in this Paragraph, in light of the Court's recent orders, holding that those allegations do not constitute a basis for holding Cooper Union liable under the claims brought in this Complaint. *See* Dkt. 44 at 2-3; Dkt. 39 at 33-34. Cooper Union admits that the Black Student Union published a statement in The Pioneer's November 20, 2023 issue. To the extent the remaining allegations in this Paragraph purport to quote or characterize statements or documents, those statements and documents speak for themselves, and no response is required.

15552671

109.    Cooper Union is not obliged to respond to the allegations in this Paragraph, in light of the Court's recent orders, holding that those allegations do not constitute a basis for holding Cooper Union liable under the claims brought in this Complaint.  *See* Dkt. 44 at 2-3; Dkt. 39 at 33-34.  Cooper Union admits that an online petition for a letter dated December 5, 2023, circulated within the Cooper Union community, purportedly containing signatures of persons affiliated with the College.  To the extent the allegations in this Paragraph purport to quote or characterize statements or documents, those statements and documents speak for themselves, and no response is required.  Cooper Union lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 109 and therefore denies those allegations.

110.    Cooper Union is not obliged to respond to the allegations in this Paragraph, in light of the Court's recent orders, holding that those allegations do not constitute a basis for holding Cooper Union liable under the claims brought in this Complaint.  *See* Dkt. 44 at 2-3; Dkt. 39 at 33-34.  Cooper Union admits that the letter dated December 5, 2023, contained over 350 names of purported Cooper Union-affiliated individuals.  Cooper Union further admits that certain Cooper Union social media accounts also follow the private social media accounts of certain members of the Cooper Union community.  However, Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 110, and therefore denies the same.

111.    Cooper Union is not obliged to respond to the allegations in this Paragraph, in light of the Court's recent orders, holding that those allegations do not constitute a basis for holding Cooper Union liable under the claims brought in this Complaint.  *See* Dkt. 44 at 2-3; Dkt. 39 at 33-34.  Cooper Union admits that on February 27, 2024, a banner was hung in the gallery in the 41 CS building.  Cooper Union further admits that its Student Affairs department reposted the

39

Black Students Union's exhibition (including the banner) on social media. Reposting exhibitions on social media is standard practice for all registered and approved student events, if that is requested. Cooper Union denies that any member of the Cooper Union Facilities Staff assisted in hanging this banner. The banner was subsequently removed. To the extent Paragraph 111 alleges that Cooper Union sanctioned or condoned the posting of this banner or its messaging, Cooper Union denies that allegation. To the extent the allegations in this Paragraph purport to quote or characterize statements or documents, those statements and documents speak for themselves, and no response is required. Cooper Union lacks sufficient knowledge or information to form a belief as to the remaining allegations of Paragraph 111.

112.    Cooper Union is not obliged to respond to the allegations in this Paragraph, in light of the Court's recent orders, holding that those allegations do not constitute a basis for holding Cooper Union liable under the claims brought in this Complaint. *See* Dkt. 44 at 2-3; Dkt. 39 at 33-34. Cooper Union admits that Brooks received complaints from alumni regarding the language in the banner and admits further that Brooks informed alumni that the banner would be removed by a certain day. Cooper Union, however, denies that Brooks defended the exhibit or endorsed its messaging. Cooper Union admits that the banner was subsequently removed on March 3, 2024. Cooper Union lacks sufficient knowledge or information to form a belief as to the remainder of the allegations in Paragraph 112 and therefore denies the same.

113.    Cooper Union is not obliged to respond to the allegations in this Paragraph, in light of the Court's recent orders, holding that those allegations do not constitute a basis for holding Cooper Union liable under the claims brought in this Complaint. *See* Dkt. 44 at 2-3; Dkt. 39 at 33-34. Cooper Union admits that Professor Bartov, who holds the Dean's Chair in Holocaust and Genocide Studies at Brown University, was invited to lecture at Prof. Atina Grossman's class

"HSS 4 | The Refugee: Transnational History, Global Present" at Cooper Union's campus on April 1, 2024. The lecture was held in lieu of Prof. Grossman's regular class time. The lecture was entitled "The Never Again Syndrome: Uses and Misuses of Holocaust Memory and the Weaponization of Language." Cooper Union denies the remaining allegations of Paragraph 113, including the allegation that attendance at this lecture was mandatory. Cooper Union also organized other lectures and events on campus throughout the year to facilitate a civil and informed dialogue affording a variety of perspectives on recent events in the Middle East.

114. Cooper Union is not obliged to respond to the allegations in this Paragraph, in light of the Court's recent orders, holding that those allegations do not constitute a basis for holding Cooper Union liable under the claims brought in this Complaint. *See* Dkt. 44 at 2-3; Dkt. 39 at 33-34. Cooper Union admits that on March 25, 2024, Plaintiff Khalili emailed Prof. Grossman (cc'ing President Sparks and Vice President Eudell) objecting to this lecture by Prof. Bartov. Prof. Grossman responded with a lengthy email to Plaintiff Khalili, inviting him to attend the lecture and adding that, "The event is open to *all* Cooper students, faculty, and staff. Registration is not required; the URL, as far as I understand, is a tool for trying to judge how many pizzas to order!" Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Dr. Bartov's views and how they are perceived. Cooper Union denies the remaining allegations of Paragraph 114.

115. Cooper Union is not obliged to respond to the allegations in this Paragraph, in light of the Court's recent orders, holding that those allegations do not constitute a basis for holding Cooper Union liable under the claims brought in this Complaint. *See* Dkt. 44 at 2-3; Dkt. 39 at 33-34. Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 115 and therefore denies the same.

15552671

116.    Cooper Union admits that it has a Policy Upholding Human Rights and Title IX Protections, a Posting Policy, a Policy on Campus Safety and Security, and a Building Access Policy.  To the extent the allegations in this Paragraph purport to quote or characterize statements or documents, those statements and documents speak for themselves, and no response is required. The remainder of Paragraph 116 contains legal conclusions and non-factual assertions to which no response is required.  To the extent that a response is necessary, Cooper Union denies the remaining allegations in the paragraph.

117.    Cooper Union admits that its campus policies are available on the College's website.  The remainder of Paragraph 117 contains legal conclusions to which no response is required.  To the extent a response is required, Cooper Union denies the remaining allegations of Paragraph 117.

118.    Cooper Union denies the allegations in Paragraph 118.  Cooper Union initiated disciplinary proceedings against several students related to alleged violation of its policies in connection with the October 25, 2023 demonstration.

119.    Paragraph 119 purports to quote or characterize statements or documents.  Those statements and documents speak for themselves, and no response is required.

120.    Paragraph 120 purports to quote or characterize statements or documents.  Those statements and documents speak for themselves, and no response is required.

121.    Paragraph 121 purports to quote or characterize statements or documents.  Those statements and documents speak for themselves, and no response is required.

122.    To the extent the allegations in Paragraph 122 purport to quote or characterize statements or documents, those statements and documents speak for themselves, and no response is required.  Cooper Union denies the allegation that it has not taken any disciplinary action

42

concerning the events relevant to the Complaint. Cooper Union has in fact initiated disciplinary proceedings against multiple students related to alleged violation of its policies in connection with the October 25, 2023 demonstration.

123.   Paragraph 123 purports to quote or characterize statements or documents. Those statements and documents speak for themselves, and no response is required.

124.   Paragraph 124 contains legal conclusions and non-factual assertions to which no response is necessary. To the extent that a response is necessary, Cooper Union denies the allegations in the paragraph.

125.   Paragraph 125 purports to quote or characterize statements or documents. Those statements and documents speak for themselves, and no response is required.

126.   Paragraph 126 purports to quote or characterize statements or documents. Those statements and documents speak for themselves, and no response is required.

127.   Paragraph 127 purports to quote or characterize statements or documents. Those statements and documents speak for themselves, and no response is required.

128.   To the extent the allegations in Paragraph 128 purport to quote or characterize statements or documents, those statements and documents speak for themselves, and no response is required. Cooper Union denies the remaining allegations of Paragraph 128.

129.   Paragraph 129 purports to quote or characterize statements or documents. Those statements and documents speak for themselves, and no response is required.

130.   Paragraph 130 contains legal conclusions to which no response is required. To the extent that a response is necessary, Cooper Union denies the allegations in the paragraph. Cooper Union has in fact initiated disciplinary proceedings against multiple students in connection with alleged violations of Cooper Union policy stemming from the October 25, 2023 demonstration.

43

131.    Cooper Union admits that it has certified its compliance with Title VI.    The remainder of Paragraph 131 purports to quote or characterize statements or documents.    Those statements and documents speak for themselves, and no response is required.

132.    Paragraph 132 contains legal conclusions to which no response is required.    To the extent that a response is necessary, Cooper Union denies the allegations in the paragraph.    Cooper Union has in fact initiated disciplinary proceedings against multiple students in connection with alleged violations of Cooper Union policy stemming from the October 25, 2023 demonstration.

133.    Paragraph 133 purports to quote or characterize statements or documents.    Those statements and documents speak for themselves, and no response is required.

134.    Paragraph 134 purports to quote or characterize statements or documents.    Those statements and documents speak for themselves, and no response is required.

135.    Paragraph 135 purports to quote or characterize statements or documents.    Those statements and documents speak for themselves, and no response is required.

136.    Paragraph 136 contains legal conclusions to which no response is required.    To the extent that a response is necessary, Cooper Union denies the allegations in the paragraph.    Cooper Union has in fact initiated disciplinary proceedings against multiple students in connection with alleged violations of Cooper Union policy stemming from the October 25, 2023 demonstration.

137.    Paragraph 137 purports to quote or characterize statements or documents.    Those statements and documents speak for themselves, and no response is required.

138.    Paragraph 138 purports to quote or characterize statements or documents.    Those statements and documents speak for themselves, and no response is required.

139.    Paragraph 139 contains legal conclusions to which no response is required.    To the extent that a response is necessary, Cooper Union denies the allegations in the paragraph.    Cooper

15552671

Union has in fact initiated disciplinary proceedings against multiple students in connection with alleged violations of Cooper Union policy stemming from the October 25, 2023 demonstration.

140.    Paragraph 140 purports to quote or characterize statements or documents. Those statements and documents speak for themselves, and no response is required.

141.    Paragraph 141 contains legal conclusions to which no response is required. To the extent that a response is necessary, Cooper Union denies the allegations in the paragraph. Cooper Union has in fact initiated disciplinary proceedings against multiple students in connection with alleged violations of Cooper Union policy stemming from the October 25, 2023 demonstration.

142.    Paragraph 142 contains legal conclusions to which no response is required. Cooper Union admits that Plaintiff Khalili withdrew from two classes in Fall 2023. However, none of the other Plaintiffs dropped any classes. All the relevant Plaintiffs (including Khalili) who had been scheduled to graduate graduated on time. Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 142, and therefore denies the same.

143.    Paragraph 143 contains legal conclusions to which no response is required. To the extent that a response is necessary, Cooper Union denies the allegations in the paragraph.

## COUNT I

(Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.)

144.    Cooper Union incorporates its responses to the foregoing paragraphs as though fully stated herein.

145.    Paragraph 145 contains legal conclusions to which no response is required.

146.    Paragraph 146 purports to quote or characterize statements or documents. Those statements and documents speak for themselves, and no response is required.

45

147.    Paragraph 147 purports to quote or characterize statements or documents.  Those statements and documents speak for themselves, and no response is required.

148.    Paragraph 148 purports to quote or characterize statements or documents.  Those statements and documents speak for themselves, and no response is required.

149.    Cooper Union admits that Plaintiffs were currently enrolled students at the time the Complaint was filed, and that they identify as Jewish and their affinity with Israel is part of their identities.  Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 149.

150.    Cooper Union admits that it receives federal funding.  The remainder of Paragraph 150 contains legal conclusions to which no response is required.

151.    Paragraph 151 contains legal conclusions to which no response is required.  To the extent that a response is required, Cooper Union denies the allegations in the paragraph.

152.    Paragraph 152 contains legal conclusions to which no response is required.  To the extent that a response is necessary, Cooper Union denies the allegations in the paragraph.

153.    Paragraph 153 contains legal conclusions to which no response is required.  To the extent that a response is necessary, Cooper Union denies the allegations in the paragraph.

154.    Paragraph 154 contains legal conclusions to which no response is required.  To the extent that a response is necessary, Cooper Union denies the allegations in the paragraph.

155.    Paragraph 155 contains legal conclusions to which no response is required.  To the extent that a response is necessary, Cooper Union lacks knowledge or information sufficient to form a belief as to the allegations in the paragraph and therefore denies the same.

156.    Paragraph 156 contains legal conclusions to which no response is required.  To the extent that a response is necessary, Cooper Union denies the allegations in Paragraph 156.

46

157.    Paragraph 157 contains legal conclusions to which no response is required.  To the extent that a response is necessary, Cooper Union denies the allegations in Paragraph 157.

158.    Paragraph 158 contains legal conclusions to which no response is required.  Cooper Union admits that Plaintiff Khalili withdrew from two classes in Fall 2023.  However, none of the other Plaintiffs dropped any classes.  All the relevant Plaintiffs (including Khalili) who had been scheduled to graduate graduated on time.  To the extent that a further response is necessary, Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 158 and therefore denies the same.

159.    Paragraph 159 contains legal conclusions to which no response is required.

160.    Paragraph 160 contains legal conclusions to which no response is required.

161.    Paragraph 161 contains legal conclusions to which no response is required.

## COUNT II

(New York Executive Law § 296 et seq.)

162.    Cooper Union incorporates its responses to the foregoing paragraphs as though fully stated herein.

163.    Paragraph 163 contains legal conclusions to which no response is required.

164.    Cooper Union admits that Plaintiffs identify as Jewish with an affinity toward Israel.  The remainder of Paragraph 164 contains legal conclusions to which no response is required.

165.    Paragraph 165 contains legal conclusions to which no response is required.  To the extent that a response is necessary, Cooper Union denies the allegations in the paragraph.

166.    Cooper Union denies the allegations in Paragraph 166.

167.    Cooper Union denies the allegations in Paragraph 167.

168.    Paragraph 168 contains legal conclusions to which no response is required.  To the extent that a response is necessary, Cooper Union denies the allegations in the paragraph.

169.     Paragraph 169 contains legal conclusions to which no response is required.  To the extent that a response is necessary, Cooper Union lacks sufficient knowledge or information to form a belief as to the truth of these allegations and therefore denies the same.

170.    Paragraph 170 contains legal conclusions to which no response is required.  Cooper Union admits that Plaintiff Khalili withdrew from two classes in Fall 2023.  However, none of the other Plaintiffs dropped any classes.  All the relevant Plaintiffs (including Khalili) who had been scheduled to graduate graduated on time.  To the extent that a further response is necessary, Cooper Union lacks sufficient knowledge or information to form a belief as to the truth of these allegations and therefore denies the same.

171.    Paragraph 171 contains legal conclusions to which no response is required.

172.    Paragraph 172 contains legal conclusions to which no response is required.

173.    Paragraph 173 contains legal conclusions to which no response is required.

174.    Paragraph 174 contains legal conclusions to which no response is required.

## COUNT III

(New York Civil Rights Law § 40, et seq.)

175.    Cooper Union incorporates its responses to the foregoing paragraphs as though fully stated herein.

176.    Paragraph 176 contains legal conclusions to which no response is required.

177.    Paragraph 177 contains legal conclusions to which no response is required.

178.    Paragraph 178 contains legal conclusions to which no response is required.

179.    Paragraph 179 contains legal conclusions to which no response is required.  To the extent that a response is necessary, Cooper Union admits that Plaintiffs identify as Jewish with an affinity for Israel but denies the remainder of the allegations in the paragraph.

180.    Paragraph 180 contains legal conclusions to which no response is required.  To the extent that a response is necessary, Cooper Union lacks sufficient information or knowledge to form a belief as to the truth of these allegations and therefore denies the same.

181.    Paragraph 181 contains legal conclusions to which no response is required.  Cooper Union admits that Plaintiff Khalili withdrew from two classes in Fall 2023.  However, none of the other Plaintiffs dropped any classes.  All the relevant Plaintiffs (including Khalili) who had been scheduled to graduate graduated on time.  To the extent that a further response is necessary, Cooper Union lacks sufficient information or knowledge to form a belief as to the truth of these allegations and therefore denies the same.

182.    Paragraph 182 contains legal conclusions to which no response is required.

183.    Paragraph 183 contains legal conclusions to which no response is required.

184.    Paragraph 184 contains Plaintiffs' undertaking to which no response is required.

### COUNT IV

(N.Y.C. Admin. Code § 8-107)

185.    Cooper Union incorporates its responses to the foregoing paragraphs as though fully stated herein.

186.    Paragraph 186 contains legal conclusions to which no response is required.

187.    Paragraph 187 contains legal conclusions to which no response is required.

15552671

188.    Paragraph 188 contains legal conclusions to which no response is required.  To the extent a response is necessary, Cooper Union admits that Plaintiffs identify as Jewish with an affinity for Israel but otherwise denies the remaining allegations of this paragraph.

189.    Paragraph 189 contains legal conclusions to which no response is required.  Cooper Union admits that Plaintiff Khalili withdrew from two classes in Fall 2023.  However, none of the other Plaintiffs dropped any classes.  All the relevant Plaintiffs (including Khalili) who had been scheduled to graduate graduated on time.  To the extent that a further response is necessary, Cooper Union lacks sufficient information or knowledge to form a belief as to the truth of these allegations and therefore denies the same.

190.    Paragraph 190 contains legal conclusions to which no response is required.

191.    Paragraph 191 contains legal conclusions to which no response is required.

192.    Paragraph 192 contains legal conclusions to which no response is required.

193.    Paragraph 193 contains Plaintiffs' undertaking to which no response is required.

## COUNT V

### (Breach of Contract)

194.    Cooper Union incorporates its responses to the foregoing paragraphs as though fully stated herein.

195.    Paragraph 195 contains legal conclusions to which no response is required.

196.    Paragraph 196 contains legal conclusions to which no response is required.

197.    Paragraph 197 contains legal conclusions to which no response is required.  To the extent a response is necessary, Cooper Union denies the allegations in Paragraph 197.

198.    Paragraph 198 contains legal conclusions to which no response is required.  To the extent that a response is necessary, Cooper Union denies the allegations in the paragraph.

50

15552671

199.    Cooper Union is not obligated to admit or deny many of the allegations in Paragraph 199 to the extent that they relate to claims that the Court has already dismissed.   To the extent the allegations in Paragraph 199 purport to quote or characterize statements or documents, those statements and documents speak for themselves, and thus no response is required.  The remainder of paragraph 199 contains legal conclusion to which no response is required.  To the extent a response is necessary, Cooper Union denies the remaining allegations in the paragraph.

200.    Paragraph 200 contains legal conclusions to which no response is required.  To the extent that a response is necessary, Cooper Union denies the allegations in the paragraph.

201.    Paragraph 201 contains legal conclusions to which no response is required.  To the extent that a response is necessary, Cooper Union denies the allegations in the paragraph.

202.    Paragraph 202 contains legal conclusions to which no response is required.  To the extent that a response is necessary, Cooper Union denies the allegations in the paragraph.

203.    Paragraph 203 contains legal conclusions to which no response is required.  To the extent that a response is necessary, Cooper Union denies the allegations in the paragraph.

204.    Paragraph 204 contains legal conclusions to which no response is required.  Cooper Union admits that Plaintiff Khalili withdrew from two classes in Fall 2023.  However, none of the other Plaintiffs dropped any classes.  All the relevant Plaintiffs (including Khalili) who had been scheduled to graduate graduated on time.  To the extent that a further response is necessary, Cooper Union lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

205.    Paragraph 205 contains legal conclusions to which no response is required.

206.    Paragraph 206 contains legal conclusions to which no response is required.

51

## COUNT VI

### (Common Law Negligence)

207.    Cooper Union incorporates its responses to the foregoing paragraphs as though fully stated herein.

208.    Cooper Union is not obligated to admit or deny the allegations in Paragraph 208 to the extent that they relate to claims that the Court has already dismissed.

209.    Cooper Union is not obligated to admit or deny the allegations in Paragraph 209 to the extent that they relate to claims that the Court has already dismissed.

210.    Cooper Union is not obligated to admit or deny the allegations in Paragraph 210 to the extent that they relate to claims that the Court has already dismissed.

211.    Cooper Union is not obligated to admit or deny the allegations in Paragraph 211 to the extent that they relate to claims that the Court has already dismissed.

212.    Cooper Union is not obligated to admit or deny the allegations in Paragraph 212 to the extent that they relate to claims that the Court has already dismissed.

213.    Cooper Union is not obligated to admit or deny many of the allegations in Paragraph 213 to the extent that they relate to claims that the Court has already dismissed.   The remaining allegations are denied.

214.    Cooper Union is not obligated to admit or deny the allegations in Paragraph 214 to the extent that they relate to claims that the Court has already dismissed.

215.    Cooper Union is not obligated to admit or deny the allegations in Paragraph 215 to the extent that they relate to claims that the Court has already dismissed.

## COUNT VII

### (Premises Liability)

216.    Cooper Union incorporates its responses to the foregoing paragraphs as though fully stated herein.

217.    Cooper Union is not obligated to admit or deny the allegations in Paragraph 217 to the extent that they relate to claims that the Court has already dismissed.

218.    Cooper Union is not obligated to admit or deny the allegations in Paragraph 218 to the extent that they relate to claims that the Court has already dismissed.

219.    Cooper Union is not obligated to admit or deny the allegations in Paragraph 219 to the extent that they relate to claims that the Court has already dismissed.

220.    Cooper Union is not obligated to admit or deny the allegations in Paragraph 220 to the extent that they relate to claims that the Court has already dismissed.

221.    Cooper Union is not obligated to admit or deny the allegations in Paragraph 221 to the extent that they relate to claims that the Court has already dismissed.

222.    Cooper Union is not obligated to admit or deny many of the allegations in Paragraph 222 to the extent that they relate to claims that the Court has already dismissed.   The remaining allegations are denied.

223.    Cooper Union is not obligated to admit or deny the allegations in Paragraph 221 to the extent that they relate to claims that the Court has already dismissed.

224.    Cooper Union is not obligated to admit or deny the allegations in Paragraph 221 to the extent that they relate to claims that the Court has already dismissed.

**COUNT VIII**

(Negligent Infliction of Emotional Distress)

225.    Cooper Union incorporates its responses to the foregoing paragraphs as though fully stated herein.

226.    Cooper Union is not obligated to admit or deny the allegations in Paragraph 226 to the extent that they relate to claims that the Court has already dismissed.

227.    Cooper Union is not obligated to admit or deny the allegations in Paragraph 227 to the extent that they relate to claims that the Court has already dismissed.

228.    Cooper Union is not obligated to admit or deny the allegations in Paragraph 228 to the extent that they relate to claims that the Court has already dismissed.

229.    Cooper Union is not obligated to admit or deny many of the allegations in Paragraph 229 to the extent that they relate to claims that the Court has already dismissed.   The remaining allegations are denied.

230.    Cooper Union is not obligated to admit or deny the allegations in Paragraph 230 to the extent that they relate to claims that the Court has already dismissed.

231.    Cooper Union is not obligated to admit or deny the allegations in Paragraph 231 to the extent that they relate to claims that the Court has already dismissed.

232.    Cooper Union denies each and every allegation not expressly addressed in the preceding paragraphs of this Answer.

## RESPONSE TO JURY DEMAND

Cooper Union denies that Plaintiffs are entitled to a trial by jury on the claims asserted in the Complaint.

## RESPONSE TO PRAYER FOR RELIEF

Cooper Union denies that Plaintiffs are entitled to any form of relief, including but not limited to the relief sought in pages 67–69 of the Complaint.

## AFFIRMATIVE DEFENSES

15552671

Having answered the allegations in the Complaint, Cooper Union asserts the following affirmative defenses.  By asserting the matters set forth below, Cooper Union does not allege or admit that it has the burden of proof and/or the burden of persuasion with respect to any of these matters.  Cooper Union reserves the right to amend its Answer to assert additional affirmative defenses, and/or supplement, alter, change, or withdraw defenses, based on continuing investigation and discovery.  Cooper Union asserts as follows:

### FIRST AFFIRMATIVE DEFENSE

At all times Cooper Union acted reasonably, properly, lawfully, and in good faith, without malice, in accordance with the Constitution and laws of the United States, the State and City of New York, and all applicable laws, rules and regulations.

### SECOND AFFIRMATIVE DEFENSE

Cooper Union has not violated any of Plaintiffs' rights, privileges, or immunities under the Constitution or laws of the United States or the State of New York or any political subdivision thereof.

### THIRD AFFIRMATIVE DEFENSE

The complaint fails to state a claim upon which relief can be granted.

### FOURTH AFFIRMATIVE DEFENSE

Cooper Union's actions were taken for legitimate, non-retaliatory, non-discriminatory business reasons.

### FIFTH AFFIRMATIVE DEFENSE

Cooper Union acted at all relevant times in a reasonable manner and in good faith towards Plaintiffs.

### SIXTH AFFIRMATIVE DEFENSE

15552671

Cooper Union took prompt and appropriate action in response to complaints of harassment and discrimination.

## SEVENTH AFFIRMATIVE DEFENSE

Cooper Union has appropriate policies and procedures in place to prevent and remedy claims of discrimination and harassment, and Cooper Union enforced those policies in a fair and even-handed manner.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs cannot demonstrate that Cooper Union acted with deliberate indifference to severe and pervasive harassment that denied Plaintiffs equal access to educational programs.

## NINTH AFFIRMATIVE DEFENSE

Cooper Union did not violate any of Plaintiffs' reasonable expectations in relation to any contract, and Plaintiffs made no formal complaint of specific policy violations to which Cooper Union failed to respond.

## TENTH AFFIRMATIVE DEFENSE

The conduct complained of may consist of nothing more than what a reasonable victim of discrimination would consider petty slights and trivial inconveniences, and thus Plaintiffs' claims under the New York City Human Rights Law and New York State Human Rights Law must be dismissed.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims fail because they have not sustained any damages.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs failed to mitigate or otherwise lessen or reduce their injuries alleged in the Complaint.

15552671

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs have not alleged that they have been treated differently from similarly situated persons outside of their protected class.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs have not alleged irreparable harm or any other relevant basis upon which they might secure injunctive relief.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs have not joined parties necessary for the just adjudication of their claims.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs have not joined parties necessary for securing injunctive relief.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs seek remedies beyond what is permitted by federal and New York anti-discrimination statutes as well New York State common law.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs have not alleged that Cooper Union engaged in discrimination with willful or wanton negligence, or recklessness or any other facts upon which they might secure punitive damages.

## NINETEENTH AFFIRMATIVE DEFENSE

The injuries and damages alleged by Plaintiffs were caused by third parties over whom Cooper Union neither had nor has control.

## TWENTIETH AFFIRMATIVE DEFENSE

Any imposition of liability, damages, penalties, or other relief against Cooper Union for the negligent, intentional, malicious, criminal and/or other acts or omissions of individuals who

15552671

are not subject to Cooper Union's control or authority, including members of the New York City Policy Department, would violate Cooper Union's procedural and substantive due process rights under the Fourteenth Amendment to the U.S. Constitution and Article I, Section 6 of the New York State Constitution.

## TWENTY FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of unclean hands.

**WHEREFORE,** Cooper Union respectfully requests that this Court enter judgment in its favor dismissing the Complaint in its entirety and with prejudice, together with attorneys' fees, expert fees, and for such other and further relief as the Court deems just and proper.

Dated:    New York, New York
          February 26, 2025

Respectfully submitted,

*/s/ Lisa E. Cleary*
Lisa E. Cleary
Jacqueline L. Bonneau
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Phone: (212) 336-2000
Fax: (212) 336-2222
lecleary@pbwt.com
jbonneau@pbwt.com

*Attorneys for Defendant The Cooper Union for the Advancement of Science and Art*

58

15552671